**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| LISA DUER | ) | CIVIL ACTION FILE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 1:14-cv-01589-AT |
| BENSUSSEN DEUTSCH & | ) | |
| ASSOCIATES, INC.; and ELI LILLY | ) | |
| AND COMPANY; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | **JURY TRIAL DEMANDED** |

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Now comes Plaintiff Lisa Duer and hereby opposes Defendants' motion to dismiss [Doc. 35].

INTRODUCTION

Defendants' motion should be denied.  As set forth in Plaintiff's Amended Complaint, Defendants unlawfully copied Plaintiff's photograph of her product and used the photograph to promote Defendants' product.  Compare Exhibit C-1 [Doc. 25-3] with Exhibit D-2 [Doc. 25-6].  Defendants unlawfully copied language in Plaintiff's instruction sheet and used the copied language to promote Defendants' product. Compare Exhibit C-2 [Doc. 25-4] with Exhibit D-1 [Doc. 25-5].  Defendants unlawfully copied the size, shape, color, and configuration of Plaintiff's product and sold it to

Plaintiff's customers and potential customers.  Compare Exhibit A [Doc. 25-1] with

Exhibit D-1 [Doc. 25-5].

Defendants falsely represented they are distributors of Plaintiff's product, when in

fact they are distributors of a knock-off product (Amended Complaint at para. 54-59).

Defendants deceptively removed Plaintiff's patent number from Plaintiff's photograph

and then used the altered photograph to promote Defendants' product. (Amended

Complaint at para. 67-68).  Defendants falsely represented they have a valid license to

manufacture and sell Plaintiff's product, when in fact they do not. (Amended Complaint

at para. 69).  Defendants lied to Plaintiff about why they chose not to purchase product

from her.  (Amended Complaint at para. 75-96).

These allegations properly support claims for patent infringement, copyright

infringement, trade dress infringement, unfair competition, false advertising, fraud,

tortious interference, violation of the Georgia Uniform Deception Trade Protection Act,

punitive damages and attorney's fees.[1]

In response to Plaintiff's allegations, Defendants do not deny the alleged conduct.

Instead, Defendants argue that Ms. Duer's product is not deserving of patent protection,

---

[1] Plaintiff withdraws her claims for conversion (Count VII) and unjust enrichment (VIII) from her amended complaint.

trade dress protection or copyright protection.  This defense, however, is an issue for trial following discovery, not an issue to be resolved on a motion to dismiss.

ARGUMENT AND CITATION OF AUTHORITY

I. DEFENDANT'S RULE 12(B)(6) MOTION SHOULD BE DENIED.

The party moving for dismissal has the burden of showing that no claim has been stated.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).  The threshold of sufficiency to which a complaint is held at the motion to dismiss stage is "exceedingly low."  United States v. Baxter Int'l, Inc., 345 F.3d 866, 881 (11th Cir. 2003).  A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citations and quotations omitted). In ruling on a motion to dismiss, the Court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). All reasonable inferences are drawn in plaintiff's favor.  Fuller v. Johannessen, 76 F.3d 347, 349-350 (11th Cir. 1996).  "In

passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that '[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate.'" ITI Holdings, Inc. v. Prof'l Scuba Ass'n Int'l, LLC, 2006 U.S. Dist. LEXIS 78033 (M.D. Fla. 2006) (citation omitted).

Plaintiff filed her complaint on May 23, 2014. [Doc.1]. Defendants requested that Plaintiff consent to an extension of time to respond to Plaintiff's complaint, and Plaintiff agreed to a thirty day extension. [Doc. 7]. On July 21, 2014, Defendants answered Plaintiff's complaint, raised defenses and asserted counterclaims. Defendants did not file any motion to dismiss. On August 11, 2014 (within 21 days following the filing of Defendant's answer), Plaintiff filed an amended complaint pursuant to Federal Rule of Civil Procedure 15. Plaintiff's amended complaint is very similar to Plaintiff's original complaint. In her amended complaint, Plaintiff added copyright registration information, added allegations regarding fraud committed by Defendants, and added claims for tortious interference, and violation of the Georgia Uniform Deceptive Trade Practices Act.

Despite having no difficulty answering Plaintiff's original complaint, raising defenses to Plaintiff's complaint and asserting counterclaims against Plaintiff, Defendants have now taken the position that Plaintiff's amended complaint is so legally defective that Plaintiff's claims should be dismissed with prejudice prior to Plaintiff having any

opportunity to conduct any discovery.  As set forth in more detail below, Defendants'

motion should be denied.

II.   PLAINTIFF'S CLAIM FOR TRADE DRESS INFRINGEMENT IS
      ACCURATELY PLED

"In order to prevail on a trade dress infringement claim under § 43(a) of the

Lanham Act, the plaintiff must prove three elements: (1) its trade dress is inherently

distinctive or has acquired secondary meaning, (2) its trade dress is primarily non-

functional, and (3) the defendant's trade dress is confusingly similar." Garden Meadow,

Inc. v. Smart Solar, Inc., 2014 U.S. Dist. LEXIS 74701 (M.D. Fla. June 2, 2014) (holding

Plaintiff's claim of trade dress infringement was properly pled through Plaintiff's

allegations that Plaintiff "has extensively advertised and promoted" its product and that

Plaintiff was the first to introduce its product), citing AmBrit, Inc. v. Kraft, Inc., 812 F.2d

1531, 1535 (11th Cir. 1986).  As set forth below, Plaintiff properly pleads all three

elements.

A. **Plaintiff Properly Pleads That Its Trade Dress is Inherently Distinctive or
   Has Acquired Secondary Meaning**.

"Secondary meaning occurs when in the minds of the public, the primary

significance of [trade dress] is to identify the source of the product rather than the product

itself." Garden Meadow, Inc. v. Smart Solar, Inc., 2014 U.S. Dist. LEXIS 74701 (M.D.

Fla. June 2, 2014), citing Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC,

702 F.3d 1312, 1322 (11th Cir. 2012).  "Secondary meaning 'is the connection in the consumer's mind between the mark and the product's producer, whether that producer is known or unknown.'" United States Pharm. Corp. v. Breckenridge Pharm., Inc., 2010 U.S. Dist. LEXIS 97171, 15-16 (N.D. Ga. Sept. 16, 2010), citing Miller's Ale House v. Boynton Carolina Ale House, LLC 702 F.3d 1312, 1322 (11th Cir. 2012).  Whether secondary meaning exists is a question of fact. Id., citing Conagra, Inc. v. Singleton, 743 F.2d 1508, 1513 (11th Cir. 1984).

Factors to consider in determining whether a trade dress has secondary meaning include "(1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture." Id., citing Conagra, Inc. v. Singleton, 743 F.2d 1508, 1513 (11th Cir. 1984).  Further, in the Eleventh Circuit, "proof of intentional copying is probative evidence on the secondary meaning issue." United States Pharm. Corp. v. Breckenridge Pharm., Inc., 2010 U.S. Dist. LEXIS 97171, 15-16 (N.D. Ga. Sept. 16, 2010) (denying Defendant's motion to dismiss Plaintiff's trade dress infringement claim when Plaintiff pled intentional copying of the product by Defendant, that Plaintiff maintained exclusive use of trade dress, spent money promoting products, and alleged that "[t]he purchasing public has come to

associate the TANDEM OB and NOREL SR trade dresses with Plaintiff and Plaintiff's trade dresses have achieved significant secondary meaning."); see also, Niles Audio Corp. v. OEM Sys. Co., 174 F. Supp. 2d 1315, 1319 (S.D. Fla. 2001) (denying Defendant's motion to dismiss Plaintiff's trade dress claims arising from Plaintiff's configuration of its audio speakers).

"As noted by the Supreme Court, secondary meaning is a type of distinctiveness. Masterbuilt Mfg. v. Bruce Foods Corp., 2011 U.S. Dist. LEXIS 4009, 4-8 (M.D. Ga. Jan. 14, 2011) (holding Plaintiff sufficiently alleged the distinctiveness element of its trade dress claim, and that "Twombly and Iqbal do not require a pleading party to 'allege with precision each element of a claim.'"), citing Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210-11 (2000).

In Masterbuilt Mfg. v. Bruce Foods Corp., 2011 U.S. Dist. LEXIS 4009, 4-8 (M.D. Ga. Jan. 14, 2011), Defendant argued that Plaintiff's Amended Complaint did not contain sufficient "factual" allegations to support a claim for trade dress infringement.  In rejecting Defendant's argument, the Court held:

> "Plaintiff's infringement allegations focus on Defendant's alleged infringement of the trade dress developed in the overall appearance of Plaintiff's Electric Digital Smoker. Plaintiff identifies the features of its product that are distinctive and non-functional, including: (1) the *overall shape and profile* of the Electric Digital Smoker; and (2) the *configuration, design, and placement* of the door of the Electric Digital Smoker. Plaintiff specifies Defendant's allegedly infringing products *and provides pictures of the products*. The Court is satisfied that these allegations, when read in

conjunction with the entire Amended Complaint, put Defendant on notice of a plausible cause of action arising from the alleged facts. The allegations also raise the right to relief above the speculative level."

Masterbuilt Mfg. v. Bruce Foods Corp., 2011 U.S. Dist. LEXIS 4009, 4-8 (M.D. Ga. Jan. 14, 2011) (emphasis added).

Here, Plaintiff properly alleges inherent distinctiveness and secondary meaning. Plaintiff pleads that the shape of her product is rectangular, that seven slides with days of the week are organized vertically down the left side of the product, that different colors appear on the slide, and that this appearance has become well known to the consuming public as being associated with or originating from Plaintiff.  (Amended Complaint, Doc. 25 at para. 17-18, 46.)

Rather than simply relying on written allegations in her complaint regarding the look of her product, Plaintiff attaches to her complaint two color pictures of her product to demonstrate the distinctiveness and secondary meaning associated with her product. Amended Complaint at Ex. A [Doc. 25-1], Ex. C-1 [Doc. 25-3].  Rather than simply allege that Defendant's product is an exact copy of Plaintiff's product, Plaintiff attaches to her complaint two color pictures of Defendants' product.  Amended Complaint at Ex.

D-1 [Doc. 25-5] and D-2 [Doc. 25-6].  The allegations in, and exhibits to, Plaintiff's complaint more than adequately state a claim for trade dress infringement.[2]

### B.     Plaintiff Properly Pleads That Its Trade Dress is Primarily Non-Functional.

At the pleading stage of the litigation, Plaintiffs are "merely required to allege their trade dress is non-functional."  RMS Titanic, Inc. v. Zaller, 978 F. Supp. 2d 1275, 1293 (N.D. Ga. 2013) (holding that the non-functional element of trade dress infringement is a question of fact not suitable for resolution in a motion to dismiss).  A functional characteristic is one that is "essential to the use or purpose of the article or [one that] affects the cost or quality of the article." Niles Audio Corp. v. OEM Sys. Co., 174 F. Supp. 2d 1315, 1318 (S.D. Fla. 2001), citing Epic Metals Corp. v. Souliere, 99 F.3d at 1039. "There is no bright line test for functionality." Niles Audio Corp. v. OEM Sys. Co., 174 F. Supp. 2d 1315, 1318 (S.D. Fla. 2001).  *"The question of whether features are nonfunctional is one of fact."* Niles Audio Corp. v. OEM Sys. Co., 174 F. Supp. 2d 1315, 1318 (S.D. Fla. 2001) (emphasis added); see also, Masterbuilt Mfg. v. Bruce Foods

---

[2] To the extent necessary, Plaintiff's proposed second amended complaint attached hereto alleges additional facts related to inherent distinctiveness and secondary meaning, such as the fact that tens of thousands of dollars have been spent widely marketing Plaintiff's product for over five years and that, with the exception of Defendants' unlawful copying, Plaintiff has maintained exclusive use of her trade dress. (Second Amended Complaint at para. 47-57). Plaintiff is also aware of at least one instance of actual confusion between Defendants' product and Plaintiff's product. (Second Amended Complaint at para. 27).

Corp., 2011 U.S. Dist. LEXIS 4009, 4-8 (M.D. Ga. Jan. 14, 2011) (denying Defendant's motion to dismiss trade dress infringement claim when plaintiff alleged non-functionality of an overall shape and profile of product and attached a picture of Plaintiff's product to the complaint).

Here, Plaintiff does not use the word "non-functional" in her amended complaint. She does, however, identify several non-functional elements of her protectable trade dress.  These non-functional elements include the rectangular shape of her product, the vertical organization of the days of the week down the left hand side of the product and colors of her product.  Rather than simply relying on these allegations, Plaintiff also attaches two color images of her product.  (Amended Complaint at Ex. A and C-1).  A review of these images demonstrates the non-functionality of these elements.  The rectangular shape is not "essential to the use or purpose" of the device.  The device could be of any shape.  Plaintiff chose a distinctive rectangle.  The vertical organization of the days of the week down the left hand side of the product is not "essential to the use or purpose" of the device.  The days of the week could be organized in any manner (i.e., horizontally, diagonally, in multiple rows, down the right side, etc.)  or there could be no days of the week.  Plaintiff chose a vertical organization down the left side and Plaintiff chose to include days of the week.  The color scheme is also not "essential to the use or

purpose" of the product.  Plaintiff chose red and green, but any colors or no colors could have been chosen.

Defendants' argument that Plaintiff's patent somehow justifies dismissing Plaintiff's trade dress claim is wrong.  Claim 1 does not claim a red and green color scheme.  Claim 2 does not claim a vertical organization of days of the week.  Claim 8 recites one embodiment of the dimensions of the product, but those dimensions are in combination with all of the elements of claims 1, 2 and 3.  The patented device is certainly not limited to those dimensions.

During this lawsuit, Defendants are free to argue and attempt to develop evidence they believe disproves Plaintiff's trade dress infringement claim, but Plaintiff has gone well beyond the minimum level of a notice pleading requirement sufficient to defeat Defendants' motion to dismiss.[3]

### C.   **Plaintiff Properly Pleads Confusion.**

Defendants do not contend Plaintiff has not properly pled confusion. In any event, Plaintiff's allegations at Amended Complaint paragraph 48-49 satisfy this pleading element as does a comparison of Plaintiff's product at Exhibit A and C-1 with

---

[3] To the extent necessary, Plaintiff's proposed second amended complaint attached hereto alleges additional facts regarding the non-functional nature of Plaintiff's trade dress elements. (Second Amended Complaint at para. 47-57).

Defendants' product at D-1 and D-2.  In addition, Plaintiff is aware of at least one

instance of actual consumer confusion between Defendants' and Plaintiff's products.

(Proposed Second Amended Complaint at para. 27)

III.   PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY FEDERAL LAW.

     **A.**   **Plaintiff's Claim for False and Deceptive Advertising Is Not**
       **Preempted by Federal Law.**

Contrary to Defendants' argument, Plaintiff's claim for false and deceptive

advertising is not preempted by federal copyright law.  First, false advertising is

actionable under Section 43(a) of the Lanham Act.  <u>See</u>, 15 U.S.C. 1125(a).[4]

Here, as reflected in Exhibit D-2, Plaintiff's false advertising claim arises from

Defendants' false statement that Defendant BDA distributes the dosage adherence tool

pictured in that Exhibit.  (Amended Complaint at para. 54-56 and Ex. D-2).  Defendants

seem to argue that because Defendants unlawful copying of that picture also constitutes

copyright infringement, Defendants' false statement that they distribute the actual

product pictured in the photograph cannot constitute false advertising.  Defendants are

---

[4] Plaintiff specifically references Section 43(a) of the Lanham Act in its trade dress
infringement claim (Count III) and its unfair competition claim (Count V).  It is an oversight
that Plaintiff did not specifically reference Section 43(a) of the Lanham Act in its Count IV
for False and Deceptive Advertising, although Defendants seemed to understand the nature
of that claim when they answered Plaintiff's original complaint.  To clarify, Plaintiff's false
and deceptive advertising claim is based on Section 43(a) of the Lanham Act.  The proposed
second amended complaint attached hereto includes this edit.

incorrect.  While it is true that the image in D-2 is an unlawful copy of Plaintiff's

photograph, and that the reproduction of that photograph constitutes copyright

infringement, it is also true that Defendants' false statement that the actual product in the

photograph is distributed by Defendants, when in fact it is not, constitutes false

advertising.  The product pictured is Plaintiff's actual product, not Defendants' knock-off

product. In that regard, Defendants (1) have caused a likelihood of consumer confusion

(Lanham Act unfair competition, Count V) and (2) have misrepresented the nature,

characteristics and qualities of its goods (Lanham Act false advertising, Count IV) by

falsely stating that BDA is the distributor of the product featured in the picture.

### B.   <u>Plaintiff's Claim for Unfair Competition Is Not Preempted by Federal Law</u>.

As set forth above with respect to false advertising, Plaintiff's unfair competition

claim is pursuant to Section 43(a) of the Lanham Act.  <u>See</u> Amended Complaint at para.

70.  Section 43(a) of the Lanham Act creates a "federal cause of action for unfair

competition." <u>Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.</u>, 496 F.3d 1231,

1247-1248 (11th Cir. Ga. 2007).  "Section 43(a)'s general purpose is to 'protect persons

engaged in commerce against unfair competition.'" <u>Optimum Techs., Inc. v. Henkel</u>

<u>Consumer Adhesives, Inc.</u>, 496 F.3d 1231, 1247-1248 (11th Cir. Ga. 2007).  Section

43(a)'s language -- which prohibits a "false designation of origin" -- has been construed

by the courts as creating a federal action for "passing off," which occurs "when a

producer misrepresents his own goods or services as someone else's." Optimum Techs.,
Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1247-1248 (11th Cir. Ga.
2007).

Here, Plaintiff's claim arises from Defendants' false and misleading representation
of fact that it distributes Plaintiff's product.  As set forth in the Amended Complaint,
Defendants falsely state that BDA is the distributor of the product pictured in Exhibit D-
2.  Defendants' false representation that they are distributing the product pictured in D-2
(Plaintiff's actual product) is likely to cause confusion and mistake and to deceive as to
the affiliation, connection or association of Defendants with another person (Plaintiff)
and is likely to cause confusion and mistake and to deceive as to the origin, sponsorship,
or approval of Defendants' goods and commercial activities.  The fact that use of
Plaintiff's photograph also constitutes copyright infringement, does not somehow change
the fact that the product in the picture is not Defendants' product, it is Plaintiff's product.
It is Defendants' misrepresentation regarding the origin of the product in the picture, not
the picture itself, that constitutes unfair competition, passing off and false advertising.

As set forth in the Amended Complaint and Exhibit D-2 attached thereto,
Defendants have falsely represented that the product pictured (Plaintiff's product) is

distributed by BDA, when Defendants know it is not.  This constitutes unfair competition in violation of Section 43(a) of the Lanham Act.[5]

### C.  Plaintiff's Claim for Tortious Interference With Business Relations Is Not Preempted By Federal Law.

If state law involves different or additional elements for recovery, then it is not preempted by federal law because it is not the same action.  Telecom Tech. Servs. v. Rolm Co., 388 F.3d 820 (11th Cir. 2004), citing Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1549 (11th Cir. 1996).  Plaintiff's tortious interference claim involves different and additional elements.  Contrary to Defendants' arguments, Plaintiff's tortious interference claim is not "akin to claims of infringement and preempted by federal law."  Plaintiff's tortious interference claim arises from Defendants' false statement to Plaintiff's customers and potential customers (including Ely Lilly) that Defendants are parties to a valid license agreement with Ravi Navare, thereby enticing Plaintiff's customers and potential customers to purchase product from Defendant BDA, not Plaintiff.  Plaintiff knew nothing of this purported license until Defendants asserted it as a defense in their answer.  See Defendants' Answer [Doc. 37] at para. 26; Affidavit of Ravi Navare [Doc. 36-1] at para. 28.  Mr. Navare states the following with respect to the license:

---

[5] Plaintiff's proposed Second Amended Complaint adds additional allegations regarding the unlawful nature of Defendants' passing off.  (Second Amended Complaint at 70-80).

> "On September 9, 2011, I entered into a license agreement with BDA on behalf of CPI.  Under the terms of the agreement, I licensed the dosage reminder invention and associated rights to BDA.  I also licensed to BDA all of my research and development information, know-how, design and technical data related to the invention."

Navare Declaration [Doc. 36-1 at para. 28].

Through discovery, Plaintiff intends to determine the exact terms of this license, the circumstances surrounding the entry of this license and exactly what BDA thinks it licensed from Mr. Navare and what Mr. Navare thinks he licensed to BDA.[6]  What is clear at this point, however, is that Mr. Navare claims to have licensed much more than patent, copyright and trade dress rights.  The invalidity of this license, Defendant BDA's knowledge regarding the invalidity of this purported license, and BDA's false representations to Plaintiff's customers (like Ely Lilly) regarding the validity of this license are directly at issue in Plaintiff's tortious interference claim.  The validity of this license is determined by state law and involves elements that are different from and in addition to claims for copyright, patent and trade dress infringement.  See, e.g., Telecom Tech. Servs. v. Rolm Co., 388 F.3d 820 (11th Cir. 2004) (finding that a tortious interference claim involves an additional element from copyright infringement when questions of breach of a license agreement are at issue).  There are many grounds upon

---

[6] Mr. Navare has already ignored a document subpoena issued by Plaintiff related to the license.  His failure to comply with the subpoena will likely come before the Court soon.

which the license is invalid (lack of consideration, fraud, improper party, illegality, etc.). As such, Plaintiff's state law claim for tortious interference is not preempted.

Defendants' argument that Plaintiff has somehow not adequately pled the elements of a tortious interference claim is likewise incorrect.  Plaintiff properly pleads (i) wrongful conduct by defendant (i.e., misrepresenting to Plaintiff's customers that Defendant entered a valid license with Mr. Navare and that this purported license conferred the right to manufacture Plaintiff's product (amended complaint at paragraph 109))[7]; (ii) that Defendant intended to injure Plaintiff (amended complaint para. 114; 128-130)[8]; (iii)  Defendant's wrongful conduct caused a third party (e.g., Lilly) not to do business with Plaintiff (amended complaint at 19-26); and (iv) that Defendant's wrongful

---

[7] The reason Plaintiff has not alleged specific facts about the circumstances surrounding and nature of the purported license between BDA and Mr. Navare is because Defendants concealed this license from Plaintiff until Defendants filed their answer, and Defendants have thus far refused to provide Plaintiff with a copy of the purported license.  Plaintiff contends that its claim for tortious interference, as pled, meets the notice pleading requirement, although Plaintiff has added additional allegations at paras. 107-120 of the proposed second amended complaint attached hereto.

[8] Defendant's intent to injure Plaintiff is also supported by Defendant's deceitful conduct in lying to Plaintiff regarding why Defendant was not purchasing products from Plaintiff and subsequently deceiving Plaintiff into believing that BDA was going to purchase product from Plaintiff for Amgen while BDA was actually secretly manufacturing product for itself. (Amended Complaint at para. 25-26; 75, 77, 79, 82, 83, 84, 85, 90-94).

conduct caused damage to Plaintiff (i.e., Defendant made sales to (at least) Lilly that Plaintiff should have made (amended complaint 26, 115-116, and Exhibit D-1 and D-2)).

### D.  Plaintiff's GUDTPA Claim is Not Preempted.

Defendant's argument that Plaintiff's claim for violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. 10-1-371 et seq. is preempted by federal law is incorrect.

In a preemption analysis involving Florida's Uniform Deceptive Trade Practices Act, the Court held "Unlike a claim for copyright infringement, this particular claim [Florida's Uniform Deceptive Trade Practices Act] requires the 'extra element' of a deceptive act or unfair practice."  Ediciones Musicales Y Rep v. San Martin, 582 F. Supp. 2d 1358 (U.S.D.C. S.D. FL. 2008) (concluding that federal copyright law does not preempt Florida's Uniform Deceptive Trade Practices Act).  To the extent Defendants are attempting to argue that the Lanham Act somehow preempts the GUDTPA, Federal Courts in Georgia comparing Section 43(a) of the Lanham Act and the GUDTPA have held plaintiffs routinely bring both claims:  "The similarity of the [Lanham Act and GUDTPA] is further evidenced by Georgia plaintiffs, who often bring claims for trademark or trade dress protection under both the Lanham Act and the GUDTPA." Kason Indus. v. Component Hardware Group, 120 F.3d 1199, 1203 (11th Cir. Ga. 1997).

Here, Defendants falsely represented that Plaintiff's product is distributed by Defendants, when Defendants knew all along that the product Defendants distribute is not the product pictured in the photograph. (See Amended Complaint Ex. D-2).[9]  As a result, Defendants engaged in deception to violate at least sections (1), (2), (3), (5), (9) and (12) of the GUDTPA[10] by (1) passing off; (2) causing likelihood of confusion as to source of goods; (3) causing likelihood of confusion as to affiliation with another; (5) representing that goods have sponsorship or approval; that they do not have; (9) advertising goods

---

[9] Defendants' argument that "there are no facts alleged to show that the consuming public was even aware of Plaintiff's product" ignores Plaintiff's allegations in the amended complaint at para. 11 (Duer is in the business of…selling medicine dosage adherence tools), para. 13 (Duer markets her product under the trademark "Take-N-Slide"), para. 16 (attaching Duer's marketing materials as Exhibit C-1 and C-2), and para. 18 (alleging that Duer's trade dress has become well known to the consuming public).  Plaintiff alleges an injunctive remedy, litigation expenses, and attorney's fees as a result of Defendants' GUDTPA violation. (Amended Complaint at para. 123, 124).  To the extent Defendants argue Plaintiff has not alleged deceptive conduct, Plaintiff references allegations that Defendant knew that the product featured in the photograph at Exhibit D-2 is not the product distributed by Defendants, but rather an imitation.  (Amended Complaint at para. 28, 38, 39, 54-56).  In any event, Plaintiff has included additional allegations regarding deceit in the proposed second amended complaint attached hereto.

[10] See Those sections of O.C.G.A. 10-1-372 describe unlawful conduct as follows:  (1) passing off; (2) causing likelihood of confusion as to source of goods; (3) causing likelihood of confusion as to affiliation with another; (5) representing that goods have sponsorship or approval; that they do not have; (9) advertising goods with intent not to sell them as advertised; (12) engaging in conduct that creates a likelihood of confusion

with intent not to sell them as advertised; (12) engaging in conduct that creates a likelihood of confusion. <u>See</u> O.C.G.A. 10-1-372.

Contrary to Defendants' argument, it is not the copying of Plaintiff's photograph that gives rise to this claim.  Rather, it is the false representation that the actual product featured in the photograph is distributed by Defendants, when, in fact, Defendants know they do not distribute that actual product.  Plaintiff properly pleads that Defendants were deceptive in making such statement.  Thus, there is no preemption.

### E.   <u>Plaintiff Properly Pleads Its Fraud Claim.</u>

Rule 9(b) of the Federal Rules of Civil Procedure provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  "Rule 9(b) must not be read to abrogate Rule 8, however, and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading." <u>Friedlander v. Nims</u>, 755 F.2d 810, 813 (11th Cir. 1985). Although Rule 9(b) effectively modifies the general notice pleading requirements of Rule 8(a)(2), Rule 8(d)(1) still dictates that each averment of a pleading of fraud be "simple, concise, and direct." <u>United States ex rel. Grubbs v. Kanneganti</u>, 565 F.3d 180, 186 (5th Cir. 2009).

Courts allow the plaintiff extra leeway in pleading when the necessary information is under the exclusive control of the defendant. Otherwise, defrauders might be rewarded for successfully concealing the details of their fraud.  United States v. Baxter Int'l, Inc., 345 F.3d 866, 880-885 (11th Cir. 2003). Rigid enforcement of Rule 9(b) in fraud against corporate defendant "may permit sophisticated defrauders to conceal the details of their fraud." Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989).

In Georgia, the elements of fraud are (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damages.  TechBios, Inc. v. Champagne, 301 Ga. App. 592, 594 (2009) (denying motion to dismiss fraud claim arising from defendants' representations that it "would seek to identify business opportunities for [plaintiff] and that they would present such opportunities to [plaintiff]"); see also, O.C.G.A. § 51-6-2.

Defendants allege that Plaintiff's fraud claim should be dismissed on two grounds, (1) that "Duer failed to plead how she was misled" and (2) Duer failed to plead what Defendants gained by the alleged fraud.  Defendants' arguments fail.  Semantically, Defendants argue that the false statements made by Defendants were made to Duer's distributor Richard Cosgrove, not Duer, and therefore, Duer does not properly allege she was misled.  That argument is disingenuous.  Duer plainly alleges a relationship between

Duer and Cosgrove and that Defendants' false statements to him were made to her.  (See Amended Complaint at para. 19 ("During 2010-2011 Duer, **through her distributor Richard Cosgrove of Anatomed, Inc.**, had significant discussions with Lilly and BDA regarding the purchase of Duer's Take-N-Slide by Defendants.")

Defendants next argue that Plaintiff has not alleged that the statements made by Defendants were false.  That argument is frivolous.  Plaintiff alleges Defendants represented they were not moving forward with the project.  (Amended Complaint at para. 25, 75, 77, 79, 90).  In fact, Defendants were secretly moving forward with the project, as Plaintiff became aware in September 2013 when a person who received one of Defendants' products mistook it for Plaintiff's product and contacted Plaintiff to inquire about obtaining more products.  (See Amended Complaint at para. 26; proposed Second Amended Complaint at para. 26-27).

Defendants' next argument that Duer fails to allege how she was misled is wrong. Defendants misled Duer by falsely telling her on July 1, 2011, January17, 2012, August 6, 2013 that Defendants were not selling the product and on July 10, 2010 deceptively calling Duer's distributor to obtain pricing information under false pretense that Defendant BDA wanted to sell the product to Amgen.  During that call, Defendant BDA concealed from Duer that BDA was a competitor for the same product.  Had BDA not

been deceptive, BDA would never have obtained pricing information from Plaintiff's distributor.  (Amended Complaint at para. 93).

Defendants have demonstrated a pattern of deceit beginning at least as early as June 2011 (amended complaint at para. 25), throughout 2012 and 2013 (amended complaint at para. 75, 77, 79, 90).  Defendants continue their pattern of deception by now claiming to have received permission to manufacture the product from Mr. Navare (BDA Answer to Amended Complaint at para. 26), but at the same time claiming Defendants "designed-around a product in the public domain" (Defendants' motion to dismiss [Doc. 35 at p. 20].

If Defendants designed-around Ms. Duer's product, why would Defendants need a license from Mr. Navare who claims to be a co-inventor of Duer's product?  Similarly, if Duer's product does not have protectable trade dress and Duer's patent is invalid, why would Defendants need a license from a third party to copy Duer's product?  Why have Defendants thus far refused to provide a copy of the purported license to Plaintiff?

Plaintiff has also properly alleged what Defendants gained through this fraud. Defendants have sold products they otherwise would not have sold and established a market position in which they would otherwise not be. (Amended Complaint at para. 94-96).  Through discovery Plaintiff intends to find out the extent of Defendants' advertising, marketing and sales.  At this point, however, the extent of Defendants'

unlawful conduct is known only to Defendants.  Likewise, the extent to which

Defendants used the pricing information they deceived Plaintiff into providing is, at this

point, known only to Defendants, although this will certainly be a topic for discovery.

Plaintiff plainly alleges Defendants benefited from their deceptive conduct.  (Amended

Complaint at para. 94).

IV.     PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES IS PROPERLY PLED.

       "Georgia law holds that '(fraud), if found, is tortious conduct' and will justify

punitive damages." Gower v. Cohn, 643 F.2d 1146 (5th Cir. Ga. 1981), citing Diana v.

Monroe, 132 Ga. App. 669, 672, 209 S.E.2d 70 (1974); see also, O.C.G.A. 51-12-5.1

"(b) Punitive damages may be awarded only in such tort actions in which it is proven by

clear and convincing evidence that the defendant's actions showed willful misconduct,

malice, *fraud*, wantonness, oppression, or that entire want of care which would raise the

presumption of conscious indifference to consequences.").  Plaintiff's fraud count

incorporates the previous allegations in her amended complaint (para. 128).  The

willfulness, malice, fraud and entire want of care described in Plaintiff's counts for trade

dress infringement, false advertising, unfair competition, fraud and tortious interference

counts form a proper basis for Plaintiff's punitive damages claim.

V.      PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND TO CURE ANY
        PLEADING DEFICIENCIES.

In the event Plaintiff's amended complaint is insufficient, Plaintiff requests leave to file the second amended complaint attached hereto.  See, e.g., Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1275 (11th Cir. 2006) (district court has supervisory obligation to order repleading sua sponte under Fed. R. Civ. P. 12(e) when complaint is insufficient under Fed. R. Civ. P. 9); see also Fed. R. Civ. P. 15 (stating that in response to a request to amend a pleading, "The court should freely give leave when justice so requires.")

Here, Defendants cannot claim to be prejudiced by the filing of a second amended complaint.  In the Second Amended Complaint Plaintiff withdraws her counts for conversion and unjust enrichment.  The discovery period has been open less than thirty days.  The parties have not exchanged documents and no depositions have been taken. Defendants should be held accountable for the actions described in Plaintiff's complaint.

Respectfully submitted this 15th day of September, 2014.

FLYNN PEELER & PHILLIPS LLC

*/s/Charles E. Peeler*
Charles E. Peeler
Georgia Bar No. 570399
517 West Broad Avenue
PO Box 7 (31702)
Albany, Georgia 31701
Tel: 229-446-4886
Fax: 229-446-4884
cpeeler@fpplaw.com

- 25 -

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1, NDGA, the undersigned counsel hereby certifies that the foregoing complies with the font and point selections approved by the Court in LR 5.1B and 5.1C.  The foregoing pleading was prepared on a computer using the Times New Roman font (14 Point).

By: <u>/s/Charles E. Peeler</u>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2014, I electronically filed the foregoing *OPPOSITION TO DEFENDANTS' MOTION TO DISMISS* with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

> Virginia L. Carron
> Finnegan, Henderson, Farrabow, Garrett & Dunner, LLP
> 3200 SunTrust Plaza
> 303 Peachtree Street, NE
> Atlanta, Georgia 30308
> *Attorney for Defendant Eli Lilly and Company*

> John R. Gibson
> Duane Morris, LLP
> 1075 Peachtree Street, NE
> Suite 2000
> Atlanta, Georgia 30309
> *Attorney for Defendant Bensussen Deutsch & Associates*

FLYNN PEELER & PHILLIPS LLC

*/s/Charles E. Peeler*
Charles E. Peeler
Georgia Bar No. 570399
517 West Broad Avenue
PO Box 7 (31702)
Albany, Georgia 31701
Tel: 229-446-4886
Fax: 229-446-4884
cpeeler@fpplaw.com