UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA DUER,<br><br>*Plaintiff*,<br>       v.<br>BENSUSSEN DEUTSCH & ASSOCIATES, INC.; ELI LILLY AND COMPANY,<br><br>*Defendant*. | CIVIL ACTION FILE<br><br>NO. 14-cv-01589-ELR |

**PLAINTIFF LISA DUER OPENING CLAIM**
**CONSTRUCTION BRIEF**

Plaintiff Lisa Duer hereby files her Opening Claim Construction Brief, as follows:

INTRODUCTION

The invention in the '358 patent is straight forward, as are the claim terms in the patent. The claim terms should be construed consistent with their customary and ordinary meaning. Defendants' proposed constructions depart from the ordinary and customary meaning in an attempt to avoid infringement. Review of the '358 patent, in connection with evidence of ordinary and customary meaning,

results in claim construction consistent with Plaintiff's proposed claim interpretation.

## SUMMARY OF THE INVENTION

Inventor Lisa Duer is an individual who encountered difficulty keeping up with whether medications had been taken at appropriate times. She set out to solve this problem. Through trial and error, she invented a device for recording periodic medicinal dosages. Her invention, as set forth in the '358 patent, is a curved strip that adheres to the body of a pill bottle. The strip includes multiple slides that are moved by the user to record when a dosage is taken.

Beginning in 2010, extensive discussions took place between Defendants and Mrs. Duer's distributor regarding the purchase of Mrs. Duer's product by Defendants. In or around July 2011, Defendants abruptly ended those discussions. In September 2013, Mrs. Duer discovered that Defendants had copied Mrs. Duer's product in violation of the patent rights and other rights. Mrs. Duer brings this action to enforce her rights.

## LEGAL STANDARDS APPLICABLE TO CLAIM CONSTRUCTION

To determine the meaning of claims, courts "look first to the intrinsic evidence of record," that is, the (i) claims; (ii) specification; and (iii) prosecution history of the patent. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (citation omitted). Such intrinsic evidence is "the most

significant source of the legally operative meaning of disputed claim language." *Id.* Claim terms should be construed according to their "ordinary and customary meaning," from the perspective of a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). However, a patentee may choose "to be his own lexicographer" by giving certain terms unique or uncommon meanings. *See Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 888 (Fed. Cir. 1984). Where the proper construction of a claim is not clear after consideration of intrinsic evidence, the court may refer to "extrinsic evidence," such as expert testimony, inventor testimony, learned treatises and other sources. *Phillips*, 415 F.3d at 1317-18.

## CONSTRUCTION OF DISPUTED CLAIM TERMS

Local Patent Rule 6.1, requires the parties to exchange a list of claim terms which the parties contend should be construed by the Court. Plaintiff's position is that claim terms should be given their ordinary and customary meaning. Therefore, Plaintiff did not identify terms for judicial construction. Defendants' position is that ten terms require judicial construction. Those ten terms are reflected in the parties' Joint Claim Construction Statement [Doc. 71], and discussed below.

Term 1:  "front plate"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| front plate | This term should be construed according to its ordinary and customary meaning.<br><br>The front structure of an assurance dosage strip. | The curved, thin, user-facing portion of an assurance dosage strip. |

The "front plate" of the invention is just that.  One of ordinary skill in the art recognizes the term "front plate" to mean the front structure of the dosage strip. (Kemnitzer Decl. at para. 5, a true and correct copy of which is attached hereto as Exhibit A).  The front plate is identified in Figures 1 and 2 as numeral 100.  The patent claims add a limitation that the front plate is "curved" (*see, e.g., Col. 8, Ln. 25*).  Contrary to Defendants' construction, however, there is nothing in the patent or its file history that adds the requirement that the front plate be "thin." (Kemnitzer Decl. at para. 5).

Term 2: "front plate body"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| front plate body | This term should be construed according to its ordinary and customary meaning.<br><br>Front plate body means the body of the front plate. | The non-user-interacting portion of the front plate that is adjacent to the face plate. |

The "front plate body" is just that. It indicates that the front plate has a body structure. (Kemnizter Decl. at para. 6). There is nothing in the patent or its file history to support an interpretation that the front plate body is limited to "the non-user-interacting portion of the front plate that is adjacent to the face plate" as Defendant contends. (Kemnitzer Decl. at para. 6). To the contrary, the front plate body may include a portion of the front plate that interacts with the user. *See, e.g.,* Fig.1 at element 110; Col. 7, Ln. 37.

Term 3:  "front plate top side"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| front plate top side | This term should be construed according to its ordinary and customary meaning.<br><br>Front plate top side means the surfaces of the front plate generally visible to the user during normal use. | The user-facing surface of the front plate. |

"Front plate top side" simply refers to the top side of the front plate, as distinguished from the "bottom side" of the front plate.  *See, e.g.,* Col. 7, Ln. 21. Contrary to Defendants' proposed construction, the "front plate top side" is not limited to the "user-facing surface of the front plate."  (Kemnitzer Decl. at para. 7). As discussed in more detail below, the "user-facing surface of the front plate" is more aptly defined as the "face plate."  *Id.*

Term 4:  "face plate"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Face plate | This term should be construed according to its ordinary and customary meaning.<br><br>Face plate means the portion of the front plate top side facing the user during normal use. | The prominent portion of the front plate top side that houses the slide bases and with which the user interacts during normal use. |

"Face plate" refers to that portion of the front plate top side that faces the user during normal use.  *See, e.g.,* Fig. 1, numeral 115; Col. 7, Ln. 38.  Although the face plate may include openings through which slides may protrude, nothing in the patent requires the face plate to "house slide bases." (Kemnitzer Decl. at para. 8).

Term 5: "slide gate cavity"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Slide gate cavity | This term should be construed according to its ordinary and customary meaning.<br><br>Slide gate cavity means an area of the front plate bottom side across which the slide travels. | The hollow area correlating with the face plate through which the slide travels. |

    The slide gate cavity is an area of the front plate bottom side.  The slide travels across the slide gate cavity.  *See, e.g.,* Fig. 5, numeral 160.  Contrary to Defendants' proposed construction, the slide gate cavity is not limited to "correlating with the face plate."  (Kemnitzer Decl. at para. 9).

Term 6: "plurality of a pin holes disposed in the front plate bottom side"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Plurality of a pin holes disposed in the front plate bottom side | This term should be construed according to its ordinary and customary meaning.<br><br>Plurality of pin holes disposed in the front plate bottom side is a means for securing the front plate with the back plate. | Plurality of pin holes arranged in the front plate bottom side into which protrusions on the back plate top side are snap fit. |

Plurality of pin holes disposed in the front plate bottom side means just that. The claims recite additional elements of protrusions extending from the back plate, and the protrusions and pin holes snap fitting, but the meaning of the claim term at issue is simply a plurality of pin holes disposed in the front plate bottom side. The patent teaches that the front plate and back plate should be affixed to each other, with the slide assemblies in between. One means disclosed in the patent to affix the front plate and back plate is a pin hole and protrusion snap fit. One of ordinary skill in the art will appreciate that there are multiple other means available to secure the front plate and back plate together. *See, e.g.,* Col. 7, Ln 64- Col. 8, Ln. 12. A snap fit is one means for doing so. (Kemnitzer Decl. at para. 10).

Term 7: "back plate having a plurality of protrusions disposed on the back plate top side"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Back plate having a plurality of protrusions disposed on the back plate top side. | This term should be construed according to its ordinary and customary meaning.<br><br>Back plate base having a plurality of a protrusions disposed on the back plate top side is a means for securing the front plate with the back plate. | Back plate base having a plurality of protrusions arranged on the back plate top side that snap fit into pin holes arranged in the front plate bottom side. |

Back plate having a plurality of protrusions disposed on the back plate top side means just that. The claims recite additional elements of protrusions snap fitting into corresponding pin holes, but the meaning of the claim term at issue is simply a plurality of protrusions disposed on the back plate top side.  The patent teaches that the front plate and back plate should be affixed to each other, with the slide assemblies in between.  One means disclosed in the patent to affix the front plate and back plate is a pin hole and protrusion snap fit.  One of ordinary skill in the art will appreciate that there are multiple other means available to secure the front plate and back plate together.  *See, e.g.,* Col. 7, Ln 64- Col. 8, Ln. 12.  A snap fit is one means for doing so.  (Kemnitzer Decl. at para. 11).

Term 8: "slide base"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Slide base | This term should be construed according to its ordinary and customary meaning.<br><br>Slide base means the base of the slide. | Curved structure that supports each finger button. |

Slide base means the base of the slide.  The patent describes slide assemblies comprised of several items, one of which is a slide base. *See, e.g.,* Col. 7, ln. 41. An embodiment of the slide base is depicted in Figure 5 at numeral 210.  The

patent claims recite that the slide assemblies are curved, but the definition of slide base, in and of itself, does not include this limitation. *See, e.g.,* Col. 8, Ln. 24-27. (Kemnitzer Decl. at para. 12).

Term 9:  Slide base channel

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Slide base channel | This term should be construed according to its ordinary and customary meaning.<br><br>Slide base channel means a channel area through which the slide travels. | A groove in the user-facing portion of the slide base. |

Slide base channel means an area through which the slide base travels. There are multiple means available to one of ordinary skill in the art to form the slide base channel. (Kemnitzer decl. at para. 13). One of ordinary skill in the art does not read the patent to limit the slide base channel to a "groove in the user facing portion of the slide base." (Kemnitzer decl. at para. 13). For example, the slide base channel may be formed between the front plate bottom side and the back plate top side. (Kemnitzer decl. at para. 13).

Term 10: "slide base channel surface having distinctive coloring"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Slide base channel surface having distinctive coloring | This term should be construed according to its ordinary and customary meaning.<br><br>Slide base channel surface having distinctive coloring means the surface of the slide base channel that has distinctive coloring. | The surface of the groove in the user-facing portion of the slide base having colors that reinforce whether or not a dosage has been taken. |

Slide base channel surface having distinctive coloring means the surface of the slide base channel that has distinctive coloring. The patent teaches one of ordinary skill in the art that "the slide base channel surface may have one or more distinctive colors to reinforce if a dosage has been taken, e.g., red may show in the 'dosage taken' position and green may show in the 'dosage not taken' position." Col. 7, Ln. 43-46. (Kemnitzer Decl. at para. 14). Contrary to Defendants' proposed construction, one of ordinary skill in the art does not read the patent to limit the slide base channel to a "groove in the user-facing portion of the slide base" or that the distinctive coloring of the slide base channel need be present on any such groove. (Kemnitzer Decl. at para. 14). What is significant is that the distinctive coloring in the slide base channel is visible to a user during normal use

to indicate the status of whether or not a dosage has been taken.  (Kemnitzer Decl. at para. 14).

## CONCLUSION

The invention described in the patent is straightforward, as are the claim terms.  Each term should be defined by its ordinary and customary meaning to one of ordinary skill in the art.  Defendants' proposed constructions seek to overly limit the claim terms in an attempt to avoid infringement.  Plaintiff's proposed constructions should be adopted as properly reflecting the scope of the patent.

Respectfully submitted this 13th day of March, 2015

                FLYNN PEELER & PHILLIPS, LLC

                */s/Charles E. Peeler*
                Charles E. Peeler
                Georgia Bar No. 570399
                517 West Broad Avenue
                Albany, Georgia 31701
                229-446-4886 (p)
                229-446-4884 (f)
                cpeeler@fpplaw.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), Northern District of Georgia, specifically Times New Roman 14 point.

*/s/Charles E. Peeler*
Charles E. Peeler
Georgia Bar No. 570399

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2015, I caused a true and correct copy of the foregoing *PLAINTIFF LISA DUER'S OPENING CLAIM CONSTRUCTION BRIEF* to be electronically filed through the Court's CM/ECF system which shall cause service to be electronically made upon the following:

| | |
|---|---|
| Kevin Costanza<br>Michael P. Hogan<br>Seed IP Law Group PLLC<br>701 Fifth Avenue, Suite 5400<br>Seattle, WA 98104 | L. Scott Burwell<br>Finnegan Henderson Farabow &<br>Dunner, LLP<br>11955 Freedom Drive, Suite 800<br>Reston, Virginia 20190 |
| John R. Gibson<br>Duane Morris, LLP<br>1075 Peachtree Street, NE<br>Suite 2000<br>Atlanta, Georgia 30309 | Virginia L. Carron<br>Finnegan, Henderson, Farrabow,<br>Garrett & Dunner, LLP<br>3200 SunTrust Plaza<br>303 Peachtree Street, NE<br>Atlanta, Georgia 30308 |
| *Attorneys for BDA* | *Attorneys for Eli Lilly & Company* |

This the 13th day of March, 2015.

FLYNN PEELER & PHILLIPS, LLC

*/s/Charles E. Peeler*
Charles E. Peeler
Georgia Bar No. 570399