**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

LISA DUER,

               *Plaintiff*,

    v.

BENSUSSEN DEUTSCH &
ASSOCIATES, INC.; ELI LILLY AND
COMPANY,

         *Defendants*.

CIVIL ACTION FILE

NO. 14-cv-01589-ELR

**DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF**

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................1

II.     LEGAL STANDARDS .........................................................................2

III.    U.S. PATENT NO. 7,614,358 ...............................................................3

IV.     DEFENDANTS' CLAIM CONSTRUCTIONS ....................................5

        A.      "front plate" ...............................................................................6

        B.      "front plate body" ......................................................................9

        C.      "front plate top side" ...............................................................12

        D.      "face plate" ...............................................................................14

        E.      "slide gate cavity" ....................................................................17

        F.      "slide base" ...............................................................................19

        G.      "slide base channel" and "slide base channel surface having
                distinctive coloring" .................................................................21

        H.      "plurality of a pin holes disposed in the front plate bottom side"
                and "back plate base having a plurality of a protrusions
                disposed on the back plate top side" .......................................24

## I.     <u>INTRODUCTION</u>

Plaintiff has sued Defendants for infringement of U.S. Patent 7,614,358 (filed Sep. 9, 2007) ("the '358 patent"). Plaintiff's patent discloses a "dosage reminder device." Although the technology is simple, Plaintiff's case for patent infringement is not, since several elements are missing from the accused dosage reminder device. (Ex. B, Defendants' Noninfringement & Invalidity Contentions (Oct. 30, 2014).) Because the technology is straightforward in this case, all of the claim terms should have their ordinary and customary meanings. But the parties disagree as to what those ordinary meanings are in the context of the intrinsic evidence in the '358 patent. The parties seek this Court's assistance in construing the meaning of the ten disputed claim terms.

Defendants' proposed constructions are consistent with ordinary meaning and take into account the intrinsic evidence and the canons of claim construction. Defendants' constructions give independent meaning to each claim term, can be read together coherently, and will provide guidance to the jury regarding what the patent actually claims. Plaintiff's constructions, on the other hand, are vague, overlapping, circular, legally impermissible, and often disregard the intrinsic evidence and/or the ordinary meaning of claim terms.

## II.   **LEGAL STANDARDS**

The construction of claims in a patent case is a matter of law for the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996); *see Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 835 (2015) (reviewing fact finding in claim construction under clear error standard).

Words in a patent claim generally are given the "ordinary and customary meaning" that they would have to a person of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (internal quotation marks omitted). The specification and patent drawings help demonstrate "what the inventor intended to claim in his invention." *Waner v. Ford Motor Co.*, 331 F.3d 851, 854 (Fed. Cir. 2003); *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1153 (Fed. Cir. 1997) (stating that the patent drawings are highly relevant when construing certain limitations of the claims). "It is therefore entirely appropriate for a court, when conducting claim construction, to rely

heavily on the written description for guidance as to the meaning of the claims." *Phillips*, 415 F.3d at 1317. "In addition to consulting the specification, we have held that a court should also consider the patent's prosecution history, if it is in evidence." *Id.* (internal quotation marks omitted). Extrinsic evidence—such as expert and inventor testimony, dictionaries, and learned treatises—may also "be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

## III.   U.S. PATENT NO. 7,614,358

The '358 patent is titled "Method and Device for Recording Periodic Medicinal Dosages." The dosage reminder device disclosed by the patent is comprised of a front plate, a slide assembly, and a back plate connected to the front plate. (Ex. A, U.S. Patent No. 7,614,358 at Abstract.) The slide assembly includes slides that are capable of sliding to indicate whether or not a dosage has been taken. (*Id.* at 6:13–16.) The slides are comprised of several elements, including a slide base channel surface having distinctive coloring to reinforce if a dosage has been taken—"e.g., red may show in the 'dosage taken' position and green may show in the 'dosage not taken' position." (*Id.* at 7:41–47, Claim 1 8:33–36.)

The front plate is comprised of several elements, including a front plate body and a face plate, and a plurality of key holes and a plurality of pin holes disposed

on the bottom of the front plate. (*Id.* at Claim 1 8:28–32.) The back plate has a "plurality of protrusions disposed on the back plate top side, . . . dimensioned and positioned to snap fit into each corresponding pin hole" on the top plate bottom side." (*Id.* at Claim 1 8:37–41.)

The patent contains several drawings which illustrate the claimed invention. Figures 1 and 5, with the disputed claim terms highlighted, are as follows:



(*Id.* at Figs.1 & 5.) The patent has one independent claim and thirteen dependent claims. All of the disputed claims are located in Claim 1. Plaintiff has asserted Claims 1, 2, 3, 6, 8, and 9 against Defendants. Claims 2, 3, 6, 8, and 9 depend either directly or indirectly from Claim 1.

4

## IV.   DEFENDANTS' CLAIM CONSTRUCTIONS

Defendants' proposed constructions are all consistent with the ordinary and customary meaning, as understood in light of the claims, specification, and prosecution history. *See Phillips*, 415 F.3d at 1313 (stating that the person of ordinary skill in the art reads the claims in the context of the entire patent, including the specification). Ultimately, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be [ ] the correct construction." *Id.* at 1316. The disputed claim terms are:

- front plate;
- front plate body;
- front plate top side;
- face plate;
- slide gate cavity;
- slide base;
- slide base channel;
- slide base channel surface having distinctive coloring;
- plurality of a pin holes disposed in the front plate bottom side; and
- back plate base having a plurality of a protrusions disposed on the back plate top side.

The first four claim terms are related to the "front plate" of the dosage assurance strip, the part that faces the user of the device. (*Infra* Sections IV.A–D.)

The "slide gate cavity" and "slide base"-related claim terms all relate to the slide assemblies, the space the slides occupy and move through, and the surface of

the slide base having distinctive colors. (*Infra* Sections IV.E–G.) These claim terms describe a structure that relates directly to the function and purpose of the claimed device.

The "pin holes" and "protrusions" terms relate to the structure of the device and how the front and back plate are connected. (*Infra* Section IV.H.)

### A. "front plate"

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| front plate | The front structure of an assurance dosage strip.[1] | The curved, thin, user-facing portion of an assurance dosage strip. |

Defendants' proposed construction is consistent with the ordinary and customary meaning. *See Phillips*, 415 F.3d at 1313. The ordinary meaning is further supported by the dictionary definition of both "front" and "plate." The definition of "front" is: "The forward part or surface, as of a building." (Ex. D, *Am. Heritage College Dictionary* 547 (3rd Ed. 2000).) The definition of "plate" is: "A smooth, flat, relatively thin, rigid body of uniform thickness." (*Id.* at 1047.) These dictionary definitions are consistent with Defendants' construction; and where

---

[1]     Plaintiff prefaces **all** proposed constructions with the phrase: "This term should be construed according to its ordinary and customary meaning." Plaintiff's argumentative preface is omitted from each of Plaintiff's constructions in order to avoid repetition and to focus on the constructions.

Defendants' proposed constructions differ it is because of context in the intrinsic evidence.

The context in which "front plate" is used in Claim 1 is instructive. *Phillips*, 415 F.3d at 1314. Claim 1 states that "the front plate, the plurality of slide assemblies, the back plate[,] and the dosage indicator are **curved** and collectively form an assurance dosage strip for attachment to a medicine vial." (Ex. A at Claim 1 8:24–27 (emphasis added).) In this context, a person of ordinary skill in the art would understand "front plate" not as **flat** but as a **curved** component.

The specification informs the construction of "front plate." *Phillips*, 415 F.3d at 1316. In context,[2] a person of ordinary skill in the art understands that the "front plate" is the portion of the assurance dosage strip that is user-facing. The patent drawings reinforce Defendants' proposed construction. *See CVI/Beta Ventures*, 112 F.3d at 1153 (stating that the patent drawings may be "highly

---

[2]     The specification describes the functionality of an assurance dosage strip and the way that the assurance dosage strip uses slides and indicators "to facilitate the proper taking" of medication. (Ex. A at 6:7–27.) To accomplish this, the "front of the front plate may have visual and/or tactile indicators corresponding to each slide to indicate 1st dosage, 2nd dosage, . . . ." (*Id.* at 6:18–20.) The assurance dosage strip is also configured so that the slides are inserted into the corresponding holes in the front plate so that the user may move the slides into positions to indicate whether or not a dosage has been taken. (*Id.* at 6:8–15.)

relevant"). The patent drawings demonstrate that the front plate is curved (Figures 1, 2, 5), thin (Figures 1, 5), and user-facing (Figures 1–5).

Plaintiff's proposed definition of "front **plate**" as "[t]he front **structure** of an assurance dosage strip" is impermissibly broad and overlaps with Plaintiff's proposed construction of "front plate body." (*Infra* Section IV.B.) Collectively, Plaintiff's constructions do not sufficiently differentiate between the "front plate" and "front plate body." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995) (refusing to disregard claim limitations and giving meaning to all claim terms); *Pediatric Med. Devices, Inc. v. Ind. Mills & Mfg., Inc.*, 961 F. Supp. 2d 1241, 1248 (N.D. Ga. 2013) (holding that meaning must be given to all the terms of a claim and constructions that render claim terms superfluous are disfavored). Plaintiff's proposed construction is vague and will not help the jury determine infringement.

**B. "front plate body"**

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| front plate body | Front plate body means the body of the front plate. | The non-user-interacting portion of the front plate that is adjacent to the face plate. |

Defendants' proposed construction is consistent with the ordinary and customary meaning. *See Phillips*, 415 F.3d at 1313. Because the term "body" is susceptible to many definitions, the intrinsic evidence is particularly important for claim construction: The "'full' and 'exact' description of the claimed invention . . . informs the proper construction of the claims." *Id.* at 1316.

Defendants' proposed construction of "front plate body" incorporates their proposed construction of "front plate." Under this construction, the "front plate body" is an element of "[t]he curved, thin, user-facing portion of an assurance dosage strip." This construction is consistent with Claim 1, which describes the front plate as comprising a number of separate and distinct elements, including a front plate body and a face plate. (Ex. A at Claim 1 8:28–32.)

The patent drawings are highly instructive in construing the meaning of "front plate body." *See CVI/Beta Ventures*, 112 F.3d at 1153. Like Claim 1, Figure 1 shows that the front plate body (**110**) and face plate (**115**) are separate and distinct portions of the front plate (**100**):



(Ex. A at Fig.1 (partial), 7:37–40.) And the portions of the assurance dosage strip that are important for user-interaction—the dosage indicators (**140**), finger button holes (**130**), and finger buttons (**250**)—are linked to the face plate. (*Infra* Section IV.D.) Conversely, the dosage indicators, finger button holes, and finger buttons are not linked, and have nothing to do with, the front plate body. Because of this, the front plate body should be construed to mean **the non-user-interacting** portion of the front plate.

The patent drawings further illustrate that the front plate body adjoins the face plate. (Ex. A at Fig.1.) In light of this intrinsic evidence, the front plate body

and face plate form separate and distinct portions of the front plate. *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1325 (Fed. Cir. 2011) (construing claim terms as distinct where figure in the specification distinguishes the claim terms and a patent claim likewise differentiates between the claim terms). Because the patent separately claims the elements, and depicts them as separate portions of the front plate, the front plate body necessarily sits **adjacent to the face plate**.

Conversely, Plaintiff's proposed construction is circular and vague. Plaintiff unhelpfully proposes construing "front plate body" as "the body of the front plate." *Serverside Grp. Ltd. v. Tactical 8 Techs., L.L.C.*, 927 F. Supp. 2d 623, 659 (N.D. Iowa 2013) (rejecting plaintiff's construction of "secure unique identifier" as "unique identifier which is secure" because it fails to clarify and explain what the patentee covered by the term). Plaintiff's proposal does not even attempt to provide the ordinary and customary meaning of "body" in the context of the claimed invention.

Unlike Defendants' proposed constructions, Plaintiff's proposed constructions cannot be read coherently across claim terms. Read together with the construction for "front plate," Plaintiff proposes construing "front plate body" as "the body of the front structure of an assurance dosage strip." There is no

distinction between the words "body" and "structure" used in Plaintiff's constructions. These constructions should be rejected because they give similar meanings to the terms "front plate" and "front plate body" and thus render a claim term superfluous. *Exxon Chem. Patents*, 64 F.3d at 1557; *Pediatric Med. Devices*, 961 F. Supp. 2d at 1248 (holding that meaning must be given to all the terms of a claim and constructions that render claim terms superfluous are disfavored).

### C. "front plate top side"

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| front plate top side | Front plate top side means the surfaces of the front plate generally visible to the user during normal use. | The user-facing surface of the front plate. |

Defendants' proposed construction is consistent with the ordinary and customary meaning. The context of Claim 1 is particularly instructive. *Phillips*, 415 F.3d at 1314. Claim 1 provides that the assurance dosage strip comprises "a front plate having a front plate top side, a front plate bottom side, a front plate left side and a front plate right side." (Ex. A at Claim 1 8:14–18.) The "front plate top side," then, is the "user facing surface of the front plate;" as compared to the front

plate bottom side, which is the surface of the front plate facing the slide assemblies and the back plate.[3]

Conversely, Plaintiff's proposed construction is excessively narrow and indefinite. Instead of "user-facing," Plaintiff proposes construing "top side" as "generally visible to the user during normal use." This proposed construction imports uncertainty by adding the term "generally." *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014) (discussing indefiniteness standard). Further, there is no reason to restrict the construction of "top side" by limiting it to visibility "during normal use."

Plaintiff's construction of "front plate top side" also overlaps with Plaintiff's construction of "face plate." The only differences in Plaintiff's two constructions are that the "front plate top side" is a **generally-visible surface**, whereas the "face plate" is a **portion** of the front plate top side **facing the user**. There is little or no distinction between these constructions. *Pediatric Med. Devices*, 961 F. Supp. 2d

---

[3]      The usage of "front plate top side" in dependent Claims 8 and 14 also illuminate the meaning of this claim term. *Phillips*, 415 F.3d at 1314–15. Claims 8 and 14 add limitations wherein the assurance dosage strip "has a logo disposed on the front plate top side." (Ex. A at Claim 8 9:18–20 & Claim 14 10:14–17.) Because a logo on a product only makes sense if it is visible to a user, these claims reinforce that the ordinary and customary meaning of "top side" is "[t]he user-facing surface."

at 1248 (rejecting overlapping construction). In fact, Plaintiff's proposed constructions represent an attempt to read Claim 1 onto the accused device and to impermissibly eliminate or conflate claim terms in order to avoid a judgment of noninfringement. *See AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-CV-3393 YGR, 2014 WL 2891675, at *5 (N.D. Cal. June 25, 2014) (rejecting "unclear and manifestly litigation-driven" constructions).[4]

### D. **"face plate"**

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| face plate | Face plate means the portion of the front plate top side facing the user during normal use. | The prominent portion of the front plate top side that houses the slide bases and with which the user interacts during normal use. |

Defendants' proposed construction is consistent with the ordinary and customary meaning. *Phillips*, 415 F.3d at 1313. The ordinary and customary meaning is further supported by the dictionary definition of "face." The definition of "face" is: "The most significant or prominent surface of an object, especially:

---

[4] In fact, Plaintiff's initial proposal for this claim term avoided the obvious overlap between Plaintiff's constructions of "front plate top side" and "face plate" by proposing an unhelpful definition instead. (Ex. C, Plaintiff's Preliminary Claim Construction (Dec. 18, 2014) (defining "Front plate top side" as "one of at least four sides of the front plate.").) This shows that Plaintiff's constructions are litigation-driven and not consistent with the intrinsic evidence.

(a) The surface present to view; the front; (d) A marked side: *the face of a clock*." (Ex. D, *Am. Heritage* 488.) These dictionary definitions are consistent with Defendants' construction of face plate as the part of the front plate top side that is **prominent** and that—because of the presence of the finger button holes and dosage indicators markings—the **user interacts with** when the product is used as described in the patent.

The specification and patent drawings illuminate the proper construction of "face plate." Figure 1 shows that the finger button holes (**130**) and dosage indicators (**140**) are on the face plate (**115**). (Ex. A at Fig.1.) Together with the written description of how the claimed device functions (through use of finger buttons sliding to indicate whether a dosage was taken), the patent drawings support Defendants' construction. The face plate is not just a "portion . . . facing the user" but rather it is a distinct, labeled, structural element of the assurance dosage strip that the user interacts with during use as described in the specification.

Figures 1 and 5 further demonstrate the relationship between the face plate and the slide bases (**210**) beneath the face plate in the slide gate cavity (**160**). (*Id.* at Figs.1 & 5.) These patent drawings demonstrate that Defendants' construction comprehensively describes what the patent applicant intended to claim in the patent. *See Waner*, 331 F.3d at 854 ("The specification and drawings of the [ ]

patent demonstrate that [the construction] most adequately represents what the inventor intended to claim in his invention.")[5]

Plaintiff's construction, on the other hand, is circular and unhelpful. First, as described above (*supra* Section IV.C), Plaintiff's constructions for "front plate top side" and "face plate" overlap and fail to meaningfully provide different meanings for the two terms. Second, Plaintiff's construction for "face plate" is too broad because it also includes the front plate body portion of Figure 1 (**110**) without distinguishing it from the face plate (**115**). As described in the patent drawings, the front plate body and the face plate are **both** portions of the front plate top side that faces the user. But different claim terms should be construed to mean different things. *See Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 769–70 (Fed. Cir. 1996) (reversing district court's construction that "obliterated" the distinction

---

[5] Defendants' construction also differentiates the face plate from other claim elements, such as the front plate body. As the Federal Circuit has previously distinguished between structural elements by examining the relationship of the structural elements in patent drawings, Defendants' constructions likewise distinguish between the front plate body and the face plate, among other elements, as described in the specification and patent drawings. *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1348 (Fed. Cir. 2012) (relying on the description of the claim term as illustrated in the figures to place the claim terms in context).

between structurally distinct claim terms); *Exxon Chem. Patents*, 64 F.3d at 1557

(giving independent meaning to all claim terms).

### E. "slide gate cavity"

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| slide gate cavity | Slide gate cavity means an area of the front plate bottom side across which the slide travels. | The hollow area correlating with the face plate through which the slide travels. |

Defendants' proposed construction is consistent with the ordinary and

customary meaning, as understood in light of the intrinsic evidence. The ordinary

meaning of "cavity" is generally "a hollow." Hollows are empty, three-

dimensional (volumetric) **spaces**, not two-dimensional **surfaces**. And the ordinary

meaning of slide gate cavity as an empty, volumetric "hollow area" is consistent

with the intrinsic evidence.

The claims, specification, and patent drawings describe the slide gate cavity

as part of the front plate. (Ex. A at Claim 1 8:28–30, 7:37–40, Figs.1 & 5.) The

patent drawings and specification confirm that the slide gate cavity is the hollow

area beneath the face plate (**115**); the patent drawings also show that the slide

assemblies are housed and the slides travel between positions in this hollow area.

(*Id.* at 6:13–16, 7:31–47, Figs.1 & 5.) The patent drawings are highly instructive in

showing that the slide gate cavity is **not** correlated with the front plate body (**110**), which does not house the slides. Rather, the drawings show that it is correlated with the face plate, and that the slides travel through the slide gate cavity's hollow space. *See CVI/Beta Ventures*, 112 F.3d at 1153.[6]

Plaintiff's construction, while similar to Defendants', is nonetheless misleading. Plaintiff's construction situates the slide gate cavity in "an area of the front plate bottom side." Plaintiff's construction incorrectly describes the cavity not as a three-dimensional volumetric "hollow" but rather as the two-dimensional space on a surface ("an area of the front plate bottom side"). Additionally, Plaintiff's construction describes the slide as traveling **across** the front plate bottom side surface. Plaintiff's attempt to construe "cavity" as a two-dimensional space on a surface is contrary to the ordinary and customary meaning of the term. *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 734 (Fed. Cir. 2014), *cert. denied*,

---

[6]     Dependent Claims 3 and 9 support Defendants' constructions, too. *Phillips*, 415 F.3d at 1314–15 (recognizing the context of usage in dependent claims). Defendants' constructions recognize that a person of ordinary skill in the art would read the patent and understand the correlation between the dosage indicators on the face plate and the slides in the slide gate cavity. Claims 3 and 9 make this correlation explicit by including as a claim limitation "a dosage indicator corresponding to each slide assembly." (Ex. A at Claim 3 9:7–8, Claim 9 10:1–2.)

135 S. Ct. 957 (2015) (rejecting claim construction contrary to its ordinary meaning in the absence of supporting intrinsic evidence).[7]

**F.  "slide base"**

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| slide base | Slide base means the base of the slide. | Curved structure that supports each finger button. |

Defendants' proposed construction is consistent with the ordinary and customary meaning, as understood in light of the intrinsic evidence. The ordinary meaning of "base" is generally "a supporting part" or "foundation." A person of ordinary skill in the art would therefore understand that the slide base is the part of the slide assembly that supports the finger button.

The claims, specification, and patent drawings also describe the slide base as a structure that supports the finger button. Figure 1 shows that the slide base (**210**)

---

[7]    Plaintiff had initially proposed construing "slide gate cavity" as "an area **through** which the slide travels." (Ex. C at 2 (emphasis added).) Defendants agreed to this construction, at least in part, and Defendants' proposed construction integrates Plaintiff's initial construction. Perhaps realizing that Plaintiff's construction for "slide gate cavity" was exactly the same as her initial construction for "slide base channel," Plaintiff altered the construction and now posits that a cavity is a surface area that the slides travel **across**. This is indicative of improper and unsupported litigation-driven constructions. *See AngioScore*, 2014 WL 2891675, at *5 (rejecting "manifestly litigation-driven" construction).

is the structure at the bottom of the slide, providing stability for the finger button (**250**) and with a channel (**230**) providing a surface for distinctive coloring (**240**). The patent drawings also show that the top side of the slide base faces the user— along with the slide base channel surface having distinctive coloring (**240**)—and that the bottom side faces the back plate. (Ex. A at Figs.1 & 5.) Last, a person of ordinary skill in the art would also understand that the slide base, like the front plate, is curved. (*E.g.*, *id.* at Claim 1 8:24–27.)

Plaintiff's construction of slide base is circular and unhelpful. Construing "slide base" as "the base of the slide" provides no guidance to the jury as to this claim element, and provides little assistance to the Court when construing closely-related terms, such as "slide base channel" and "slide base channel having distinctive coloring." *Serverside Grp.*, 927 F. Supp. 2d at 659 ("[W]hen the plaintiffs' patent attorneys argue in written submissions prior to a *Markman* hearing that I should construe "secure unique identifier" as "unique identifier which is secure," it appears that no one—at least no one but me—is laughing.").

20

### G. "slide base channel" and "slide base channel surface having distinctive coloring"

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| slide base channel | Slide base channel means a channel area through which the slide travels. | A groove in the user-facing portion of the slide base. |
| slide base channel surface having distinctive coloring | Slide base channel surface having distinctive coloring means the surface of the slide base channel that has distinctive coloring. | The surface of the groove in the user-facing portion of the slide base having colors that reinforce whether or not a dosage has been taken. |

Defendants' proposed constructions are consistent with the ordinary and customary meaning of these claim terms. *See Phillips*, 415 F.3d at 1313. The ordinary and customary meaning is further supported by the dictionary definition of "channel." The most relevant definition is: "A trench, furrow, or groove." (Ex. D, *Am. Heritage* 234.) This dictionary definition is consistent with Defendants' construction of slide base channel as "a **groove**" in the slide base.

The patent drawings are especially instructive for these claim terms. *See CVI/Beta Ventures*, 112 F.3d at 1153. Neither the slide base channel (**230**) nor the slide base channel surface (**240**) is labeled on Figure 5, which shows the back-plate-facing portion of the slide base (**210**). Figure 5 does, however, label and

show the slide gate cavity (**160**), and the corresponding area through which the slide base moves when the finger button is moved to a different position. (*Supra* Section IV.E.) But Figure 1 shows the slide base channel as part of the slide base, and that the slide base channel is part of the **user-facing portion of the slide base** (*Supra* Section IV.F). Figure 1 also shows that the slide base channel surface is part of the slide base and also is user-facing. This makes sense in context, as the patent claims a "slide base channel surface having distinctive coloring" as part of the slide assembly. (Ex. A at Claim 1 8:34–35.) Further, the slide base channel surface is part of the way the device **reinforces whether or not a dosage has been taken**, and the only way this would work is if the slide base channel surface is user-facing. (*Id.* at Claim 1 8:34–35, 7:42–47.)

Plaintiff's proposed construction of "slide base channel" disregards the literal claim language, the patent drawings, and the context of use in the specification. First, Plaintiff's construction uses the word "channel" to define a term containing the same word, providing no help to the Court or the jury as to the meaning of the term. *Serverside Grp. Ltd.*, 927 F. Supp. 2d at 659. Second, Plaintiff disregards the word "base" in the claim term. A correct construction gives meaning to all the claim terms. *Merck*, 395 F.3d at 1372. Third, Plaintiff's construction of slide base channel as a space "through which the slide travels" has

no support in the specification or patent drawings. Instead, Figure 1 shows that the slide base channel (and the slide base channel surface) forms part of the slide base, contrary to Plaintiff's constructions. S*ee Gen. Protecht Grp., Inc. v. Int'l Trade Comm'n*, 619 F.3d 1303, 1310 (Fed. Cir. 2010) (rejecting proposed construction where the specification described the terms differently and the patent drawings clearly labeled the terms separately).

Moreover, Plaintiff's construction of "slide base channel" directly contradicts the claim term "slide base channel surface having distinctive coloring." If, as Plaintiff proposes, a channel is something that the slide travels through, the channel is an **empty space** and **cannot have a surface** to put distinctive coloring onto. And even if such a surface is possible, Plaintiff's proposed construction of "slide base channel surface having distinctive coloring" fails to identify which surface in the assurance dosage strip will have the distinctive coloring. Nor does Plaintiff's construction provide any rationale that distinctive coloring on such a surface would actually work in the manner described in the specification. *Cf. Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350 (Fed. Cir. 1999) (stating preference for construing the claims to preserve validity, but finding patent invalid where the only permissible interpretation had no utility).

### H. "plurality of a pin holes disposed in the front plate bottom side" and "back plate base having a plurality of a protrusions disposed on the back plate top side"

| Disputed Claim Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| plurality of a pin holes disposed in the front plate bottom side | Plurality of pin holes disposed in the front plate bottom side is a means for securing the front plate with the back plate. | Plurality of pin holes arranged in the front plate bottom side into which protrusions on the back plate top side are snap fit. |
| back plate base having a plurality of a protrusions disposed on the back plate top side | Back plate base having a plurality of a protrusions disposed on the back plate top side is a means for securing the front plate with the back plate. | Back plate base having a plurality of protrusions arranged on the back plate top side that snap fit into pin holes arranged in the front plate bottom side. |

Defendants' proposed constructions for these two claim terms are consistent with the ordinary and customary meaning. Here, the claim context is particularly instructive. *Phillips*, 415 F.3d at 1314. Claim 1 describes pin holes and protrusions that are "dimensioned and positioned to snap fit" the front plate and back plate together. (Ex. A at Claim 1, 7:31–32, 7:37–41.) Claim 2 further confirms that the pin holes and protrusions are specifically arranged in a manner that permits snap-fitting. (*Id.* at Claim 2 8:44–9:6.) *Phillips*, 415 F.3d at 1314–15 (recognizing the context of usage in dependent claims). The specification confirms that the pin

24

holes and protrusions are **arranged**—"dimensioned and positioned"—to **snap fit** the front plate and back plate together. (Ex. A at 7:39–40, 7:48–50.) *See Waner*, 331 F.3d at 855 (construing the structural arrangement of the invention in light of the claims, specification, and drawings).

Plaintiff's construction, meanwhile, improperly construes these claim elements as if the claim language is in means-plus-function format. But Claim 1 is not in means-plus-function form and 35 U.S.C. § 112(f) cannot apply. *See Depuy Spine, Inc. v. Medtronic Sofamor Sanek, Inc.*, 469 F.3d 1005, 1023 (Fed. Cir. 2006) (analyzing under former 35 U.S.C. § 112 ¶6); *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1362 (Fed. Cir. 2004) (same). In any event, Claim 1—and the dependent claims—recite a particular structure and explicitly claim securing the front plate and back plate by snap-fitting. Plaintiff's construction ignores the literal claim language in a transparent attempt to stretch the claims to cover the accused device. Plaintiff's construction should be rejected.

Respectfully submitted this 13th day of March, 2015.

/s/ Eric A. Lindberg
Kevin S. Costanza
Lead Attorney
Email: kevinC@SeedIP.com
Eric A. Lindberg
Email: EricL@SeedIP.com
Michael P. Hogan
Email: MikeH@SeedIP.com
**Seed Intellectual Property Law Group**
701 Fifth Avenue
Suite 5400
Seattle, WA 98104-7092
Telephone:  (206) 622-4900

Matthew C. Gaudet
Email:  mcgaudet@duanemorris.com
(Georgia State Bar No. 287759)
John R. Gibson
Email:  jrgibson@duanemorris.com
(Georgia State Br No. 454507)
S. Neil Anderson
Email:  snanderson@duanemorris.com
(Georgia State Bar No. 757113)
**DUANE MORRIS, LLP**
1075 Peachtree Street, Suite 2000
Atlanta, Georgia  30309
Telephone:  (404) 253-6900
Facsimile:  (404) 253-6901

*Attorneys for Defendant Bensussen*
*Deutsch & Associates, Inc.*

/s/ L. Scott Burwell
L. Scott Burwell (*pro hac vice*)
**Finnegan, Henderson, Farabow,**

**Garrett & Dunner, L.L.P.**
11955 Freedom Drive
Reston, Virginia 20190
Telephone: (571) 203-2700
Facsimile: (202) 408-4400
Email: scott.burwell@finnegan.com

Virginia L. Carron
Georgia Bar No. 112770
**Finnegan, Henderson, Farabow,**
**Garrett & Dunner, L.L.P.**
3500 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, Georgia 30308
Telephone: (404) 653-6400
Facsimile: (404) 653-6444
virginia.carron@finnegan.com

*Attorneys for Defendant Eli Lilly and*
*Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1, NDGa., the undersigned counsel hereby certifies that the foregoing complies with the font and point selections approved by the Court in LR 5.1B and 5.1C.   The foregoing pleading was prepared on a computer using the Times New Roman font (14 point).

By:  <u>/s/ Eric A. Lindberg      </u>
     Eric A. Lindberg

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

By:  /s/ Eric Lindberg

Eric Lindberg
*Counsel for Defendant Bensussen Deutsch & Associates, Inc.*