UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA DUER,<br><br>*Plaintiff*,<br>v.<br>BENSUSSEN DEUTSCH & ASSOCIATES, INC.; ELI LILLY AND COMPANY,<br><br>*Defendant*. | CIVIL ACTION FILE<br><br>NO. 14-cv-01589-ELR |

**PLAINTIFF LISA DUER RESPONSE TO DEFENDANTS'**
**OPENING CLAIM CONSTRUCTION BRIEF**

Plaintiff Lisa Duer hereby files her response to the opening claim construction brief of Defendant showing as follows:

In their claim construction brief, many of Defendants' proposed constructions are inconsistent with the plain and ordinary meaning afforded the terms by one of ordinary skill in the art. Despite initially identifying an expert witness, Defendants have withdrawn that expert and have chosen not to rely on any expert testimony to support that their interpretations are consistent with the plain and ordinary meaning to one of ordinary skill in the art.

1

As set forth in Plaintiff's opening claim construction brief and in the deposition of Ronald Kemnitzer attached hereto as Exhibit A, Plaintiff's proposed constructions are based first and foremost on the intrinsic evidence of record.  Mr. Kemnitzer's testimony is not offered to contradict any term's plain and ordinary meaning, but is offered, as is permissible, to assist the Court in ensuring that Plaintiff's proposed claim construction is not inconsistent with clearly expressed and widely held understandings in the pertinent technical field.  *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999), c*iting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1585 (Fed. Cir. 1996).

Term 1:  "front plate"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| front plate | The front structure of an assurance dosage strip. | The curved, thin, user-facing portion of an assurance dosage strip. |

Defendant's proposed construction of "front plate" as being limited as "curved", "thin" and "user-facing" is not supported by the intrinsic evidence of record.  The patent recites two plates, a front plate and a back plate.  (*See, e.g.,* abstract, 7:34-40; 7:48-54).  Nothing in the patent requires the front plate to be thin.  The patent claims add a limitation that the front plate be "curved" (8:24-27), but the definition of front plate does not independently include this limitation.

Second, Defendant points to nothing in the patent that requires that the front plate be thin.  To the contrary, Mr. Kemnitzer testified that the patent does not include limitations on the thickness of the front plate.  (*See, e.g.,* Kemnitzer depo at 100:7-103:16, a true and correct copy of which is attached hereto as Exhibit A).

Third, Defendant's attempt to define the front plate as the "user facing portion" of the assurance dosage strip is misleading.  The front-plate is comprised of a user facing portion, but it is also includes elements that are not "user facing" such as the "front plate bottom side" (8:16-17), "slide gate cavity" (8:28-32), "key holes" (8:28-32), and "pin holes" (8:28-32).  Defendants' limitation of "user facing portion" is overly limiting, not supported by the patent and is confusing.

Term 2:  "front plate body"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| front plate body | Front plate body means the body of the front plate. | The non-user-interacting portion of the front plate that is adjacent to the face plate. |

The "front plate body" is just that.  It indicates that the front plate has a body structure.  *See* Kemnitzer deposition at 107:8-22; 109:14 ("My interpretation of what the front plate body is, is just that, front plate body, devoid of finger button holes, braille knobs, et cetera"; "Body refers to an overall structure.").

3

Defendant's interpretation that the front plate body is limited to "the non-user-interacting portion of the front plate that is adjacent to the face plate" is overly limiting.  To the contrary, the front plate body may include a portion of the front plate that interacts with the user.  *See, e.g.,* Fig.1 at element 110; Col. 7, Ln. 37.  In several of Defendants' proposed constructions, Defendants draw a distinction between "user-interacting" and "non-user-interacting."  The patent, however, does not use those terms, nor does the patent otherwise describe the elements of the invention by orienting parts of the invention relative to the user.

Term 3:  "front plate top side"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| front plate top side | Front plate top side means the surfaces of the front plate generally visible to the user during normal use. | The user-facing surface of the front plate. |

There is little distinction between the parties' proposed constructions of "Front plate top side."  As used in the patent, the front plate has a top side as distinguished from the bottom side.  8:16-17.  The front plate top side is generally visible to the user during normal use, while the front plate bottom side is not.  User-facing is over-limiting.  User-visible more accurately describes the front plate top side as distinguished from the front plate bottom side. (Kemnitzer deposition at 171:24-173:1).

Term 4: "face plate"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Face plate | Face plate means the portion of the front plate top side facing the user during normal use. | The prominent portion of the front plate top side that houses the slide bases and with which the user interacts during normal use. |

The parties agree that the face plate is a portion of the front plate top side. The face plate is a surface that, in the preferred embodiment, has adjacent holes for finger buttons and includes a dosage indicator. *See, e.g.,* Fig. 1, numeral 115; Col. 7, Ln. 38. Kemnitzer depo at 125:25-126:10. The face plate is the "surface." The finger button holes are separate. *Id.* Where Defendants' construction is inaccurate, however, is in Defendants' portrayal of the face plate as "housing the slide bases." The finger buttons are visible when viewing the face plate, but the slide bases are "housed" between the front plate bottom side and the back plate top side.

Term 5: "slide gate cavity"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Slide gate cavity | Slide gate cavity means an area of the front plate bottom side across which the slide travels. | The hollow area correlating with the face plate through which the slide travels. |

There is not much difference between the Plaintiff's and Defendants' proposed construction of slide gate cavity, with the exception of Defendants' requirement that the slide gate cavity "correlate with the face plate." Nothing in the patent requires the slide gate cavity to correlate with the face plate. For example, the slide gate cavity correlates with the front plate bottom side, not the face plate, in Fig. 5 at element 160. *See also,* Column 7, line 39; Kemnitzer deposition at 130:6-21.

Term 6: "plurality of a pin holes disposed in the front plate bottom side"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Plurality of a pin holes disposed in the front plate bottom side | Plurality of pin holes disposed in the front plate bottom side is a means for securing the front plate with the back plate. | Plurality of pin holes arranged in the front plate bottom side into which protrusions on the back plate top side are snap fit. |

The patent requires that the front plate and back plate be secured together. The embodiment described in the patent is a snap fit involving pin holes and protrusions disposed in the bottom side of the front plate and the top side of the back plate. This, of course, is not the only means by which one of ordinary skill in the art would understand that the front and back plate could be secured together. Kemnitzer deposition at 142:4-21. The issue with Defendants' proposed definition

is that it asks that the phrase "plurality of a pin holes disposed in the front plate bottom side" be construed to include the "snap fit" limitation that is already in the claim.  *See* '358 patent at 8:40.

Term 7:  "back plate having a plurality of protrusions disposed on the back plate top side"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Back plate having a plurality of protrusions disposed on the back plate top side. | This term should be construed according to its ordinary and customary meaning.<br><br>Back plate base having a plurality of a protrusions disposed on the back plate top side is a means for securing the front plate with the back plate. | Back plate base having a plurality of protrusions arranged on the back plate top side that snap fit into pin holes arranged in the front plate bottom side. |

The patent requires that the front plate and back plate be secured together. The embodiment described in the patent is a snap fit involving pin holes and protrusions disposed in the bottom side of the front plate and the top side of the back plate.  This, of course, is not the only means by which one of ordinary skill in the art would understand that the front and back plate could be secured together. Kemnitzer deposition at 142:4-21.  The issue with Defendants' proposed definition is that it asks that the phrase "plurality of a pin holes disposed in the front plate

bottom side" be construed to include the "snap fit" limitation that is already in the claim. *See* '358 patent at 8:40.

Term 8: "slide base"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Slide base | Slide base means the base of the slide. | Curved structure that supports each finger button. |

Defendants improperly attempt to include two limitations into the definition of "slide base". First Defendants' definition includes a limitation that the slide base is "curved." Technically, the patent claims recite that the slide assemblies are curved, and the definition of slide base, in and of itself, does not include this limitation. *See, e.g.,* Col. 8, Ln. 24-27. That said, during his deposition Mr. Kemnitzer agreed that the embodiment of the slide bases reflected in the patent were curved. Kemnitzer deposition at 150:16-22.

Second, Defendants improperly seek to limit the definition of slide base to "supporting each finger button." As pointed out by Mr. Kemnitzer during his deposition, however, lots of elements support the finger button: "The bottom plate supports it, the face plate surface supports it, and the slide base supports it. Without all those elements, it doesn't work. They all support it. And finger holes do as well, because they limit the movement of the button." Kemnitzer deposition at 151:4-9.

Term 9:  Slide base channel

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Slide base channel | A recessed area on the top surface of the slide base. | A groove in the user-facing portion of the slide base. |

Prior to Mr. Kemnitzer's deposition, Plaintiff modified its definition of slide base channel closer to Defendants' definition.  After continuing to study the patent between the time of initial claim construction disclosures and the deposition, Mr. Kemnitzer states "I've been conflicted about this construction for some time.  Largely because of the use of cavity in this application, and use of cavity in the term slide gate cavity, and both have a direct relationship to the finger buttons.  And so in this declaration, paragraph 13, I misconstrued the term finger button channel with [slide base channel]."  Kemnitzer deposition at 154:2-13.  Mr. Kemnitzer states that the definition of slide base channel as a recessed area on the top surface of the slide base is clear.  Kemnitzer depositon at 157:3-5.

Defendants' definition, however, improperly seeks to limit the slide base channel to a "groove", not a channel.  "A groove to me indicates something like if I got my pen-knife out and I scraped it along here, it will create a groove, more of a very narrow indentation in the surface.  And I see this more as a channel.  If you think of, like an irrigation channel shape, more like I'm describing a broad U shape."  Kemnitzer deposition at 158:21-159:1.

Term 10: "slide base channel surface having distinctive coloring"

| Disputed term | Plaintiff's construction | Defendants' construction |
|---|---|---|
| Slide base channel surface having distinctive coloring | Slide base channel surface having distinctive coloring means the surface of the slide base channel that has distinctive coloring. | The surface of the groove in the user-facing portion of the slide base having colors that reinforce whether or not a dosage has been taken. |

Defendants' proposed construction is erroneous in that it defines the slide base channel as a groove, not a channel. Kemnitzer deposition at 158:21-159:1. What is significant is that the distinctive coloring in the slide base channel is visible to a user during normal use to indicate the status of whether or not a dosage has been taken. (Kemnitzer Decl. at para. 14).

## CONCLUSION

Plaintiff's proposed constructions should be adopted as properly reflecting the scope of the patent.

Respectfully submitted this 21st day of April, 2015.

    FLYNN PEELER & PHILLIPS, LLC

    */s/Charles E. Peeler*
    Charles E. Peeler
    Georgia Bar No. 570399
    517 West Broad Avenue
    Albany, Georgia 31701
    229-446-4886 (p)
    229-446-4884 (f)
    cpeeler@fpplaw.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), Northern District of Georgia, specifically Times New Roman 14 point.

>
> */s/Charles E. Peeler*
> Charles E. Peeler
> Georgia Bar No. 570399

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2015, I caused a true and correct copy of the foregoing *PLAINTIFF LISA DUER'S RESPONSE TO DEFENDANT'S OPENING CLAIM CONSTRUCTION BRIEF* to be electronically filed through the Court's CM/ECF system which shall cause service to be electronically made upon the following:

| | |
|---|---|
| Kevin Costanza<br>Michael P. Hogan<br>Seed IP Law Group PLLC<br>701 Fifth Avenue, Suite 5400<br>Seattle, WA 98104 | L. Scott Burwell<br>Finnegan Henderson Farabow &<br>Dunner, LLP<br>11955 Freedom Drive, Suite 800<br>Reston, Virginia 20190 |
| John R. Gibson<br>Duane Morris, LLP<br>1075 Peachtree Street, NE<br>Suite 2000<br>Atlanta, Georgia 30309 | Virginia L. Carron<br>Finnegan, Henderson, Farrabow,<br>Garrett & Dunner, LLP<br>3200 SunTrust Plaza<br>303 Peachtree Street, NE<br>Atlanta, Georgia 30308 |
| *Attorneys for BDA* | *Attorneys for Eli Lilly & Company* |

This the 21st day of April, 2015.

FLYNN PEELER & PHILLIPS, LLC

*/s/Charles E. Peeler*
Charles E. Peeler
Georgia Bar No. 570399