**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| LISA DUER,<br><br>   *Plaintiff*,<br><br>  v.<br><br>BENSUSSEN DEUTSCH &<br>ASSOCIATES, INC.; ELI LILLY AND<br>COMPANY,<br><br>   *Defendants*. | CIVIL ACTION FILE<br><br>NO. 14-cv-01589-ELR |

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................1

II.   ARGUMENT.............................................................................2

     A.    The Court Should Disregard Plaintiff's Expert Testimony .................3

     B.    The Court Should Disregard Plaintiff's Extrinsic Evidence................7

     C.    Defendants' Proposed Constructions, Unlike Plaintiff's,
         Accurately Reflect the Ordinary Meaning in Light of the
         Intrinsic Evidence ...................................................................8

         1.    "front plate".................................................................9

         2.    "front plate body".....................................................10

         3.    "front plate top side".................................................11

         4.    "face plate"................................................................12

         5.    "slide gate cavity" .....................................................12

         6.    "slide base" ...............................................................13

         7.    "slide base channel"..................................................13

         8.    "slide base channel surface having distinctive coloring" .........14

         9.    "plurality of a pin holes disposed in the front plate bottom side"
            and "back plate base having a plurality of a protrusions
            disposed on the back plate top side"........................................15

III.   CONCLUSION...........................................................................15

## I.  __INTRODUCTION__

The Federal Circuit has repeatedly emphasized the importance in claim construction of giving words their "ordinary and customary meaning" in the context of the claim language, the specification, and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). This "intrinsic" evidence is "always highly relevant" and usually "dispositive." *Id.* at 1315. Conversely, "extrinsic" evidence is often less reliable and inherently flawed. *Id.* at 1318–19. Defendants' proposed claim constructions and claim construction arguments follow *Phillips*. Plaintiff's do not. Three problems stand out.

First, Plaintiff has chosen to rely extensively on extrinsic expert testimony, even though the intrinsic evidence unambiguously informs the proper meaning of the claim terms and the technology is simple.

Second, Plaintiff's opening brief (D.I. 86) and her expert's declaration (D.I. 86-1) consist mostly of conclusory assertions regarding claim term meaning with very little reliance on—or discussion of—the intrinsic evidence.

Third, Plaintiff has repeatedly failed to make timely disclosures of extrinsic evidence. On March 26, the morning of her expert's deposition, Plaintiff disclosed extrinsic dictionary definitions, which her expert had relied upon when writing his declaration. (Lindberg Decl., Ex. A.) Plaintiff failed to disclose her intent to rely

on the dictionary definitions in the exchange of preliminary proposed constructions (Patent L.R. 6.2(a)) and in the Joint Claim Construction Statement (Patent L.R. 6.3(b)(2)). (D.I. 71.) Plaintiff also failed to disclose her reliance on dictionary definitions in her opening brief (D.I. 86), in response to a document subpoena to Mr. Kemnitzer (D.I. 88), and when emailing Defendants to disclose that Mr. Kemnitzer was relying only on intrinsic evidence, pursuant to an agreement between the parties to provide any new evidence to opposing counsel by March 20. (Lindberg Decl., Ex. B.)

Because of Plaintiff's litigation-driven approach to claim construction, Plaintiff's proposed constructions contradict the intrinsic evidence and each other. In fact, Plaintiff has already abandoned her proposed construction of "slide base channel." (Lindberg Decl., Ex. A; Lindberg Decl. Ex. C, Dep. of Ronald B. Kemnitzer at 73:6–8, 156:11–16, March 26, 2015 (hereinafter "Dep.").) Defendants request that the Court reject Plaintiff's flawed arguments and adopt Defendants' proposed constructions.

## II.   <u>ARGUMENT</u>

The Court should disregard the testimony of Plaintiff's expert, Mr. Kemnitzer. The Court should also disregard any extrinsic evidence that Plaintiff failed to disclose in the Joint Claim Construction Statement. Finally, the Court

should adopt Defendants' proposed constructions and construe the claim terms according to their plain and ordinary meaning in light of the intrinsic evidence.

### A. <u>The Court Should Disregard Plaintiff's Expert Testimony</u>

In *Phillips*, the Federal Circuit emphatically stated that "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." 415 F.3d at 1318. Mr. Kemnitzer's opinions are entitled to no weight or consideration for at least **six separate reasons**.

**First**, the proper constructions of the claim terms are clear in light of the intrinsic evidence. As Plaintiff admits, when the intrinsic evidence clearly informs the proper construction of a claim, the Court should not rely on expert testimony or other sources of extrinsic evidence. (D.I. 86 at 3 (citing *Phillips*).) Mr. Kemnitzer testified that the intrinsic evidence unambiguously informs the meaning of the claim terms. For example, he admitted that persons of ordinary skill in the art could understand the claim terms considering only the intrinsic evidence. (Dep. 88:17–22; *see* Dep. 54:10–14 (he corrected his construction "by going back and thoroughly examining the patent language in conjunction with the illustrations").) Further, he admitted that each claim term's meaning was clear after considering the

intrinsic evidence.[1] Mr. Kemnitzer has not identified any claim term that has a unique or uncommon meaning as defined in the patent or as understood in the field. *Phillips*, 415 F.3d at 1316, 1318. Expert testimony under these circumstances is unhelpful and inappropriate. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) (holding that expert testimony is entitled to no weight when the intrinsic evidence is unambiguous).

**Second**, there is no dispute that the technology in this case is simple. (D.I. 86 at 1; D.I. 87 at 1.) Mr. Kemnitzer agrees. (50:22–52:1.) In cases involving simple technology, "the ordinary and customary meaning of claim language as understood by a person of ordinary skill in the art may be readily apparent to a lay judge." *Phillips*, 415 F.3d at 1314. Mr. Kemnitzer concedes that "little education" and "a very low level of sophistication" are required to qualify as a person of ordinary skill in the art. (80:17–22; 81:6–24.) *See Flexi-Mat Corp. v. Dallas Mfg. Co.*, No. CIV.A. 04-10162-DPW, 2006 WL 962161, at *8 (D. Mass. Apr. 11, 2006) (rejecting reliance on expert testimony when the technology was simple).[2]

---

[1]     E.g., Dep. 95:23–96:12 (front plate), 108:20–109:8 (front plate body), 121:18–122:9 (front plate top side), 126:19–127:7 (face plate), 152:2–13 (slide base); *see* Dep. 131:19–22 (construing slide gate cavity in context).

[2]     This is not a case where an expert is needed to provide background on the technology or explain how the invention works in order to give meaning to a claim term. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

**Third**, Mr. Kemnitzer's testimony does not provide evidence as to how a person of ordinary skill would construe the claim term. Mr. Kemnitzer's declaration does not define a person of ordinary skill in the art. And during the deposition, Mr. Kemnitzer provided a shifting, incoherent definition of who a person of ordinary skill in the art would be, ranging from no education or experience (Dep. 79:3–81:1 (improperly basing opinion on the inventor's knowledge)), to someone familiar with taking pills (Dep. 81:6–81:23 (including "just about all of us")), to a designer with "manufacturing" experience (Dep. 82:25–86:14 (describing a person curious enough to examine a wall switch)). Further, Mr. Kemnitzer provides no evidence at all to corroborate his assertions regarding how an undefined person of ordinary skill in the art would understand the claim terms.[3]

**Fourth**, Mr. Kemnitzer's testimony is too conclusory and unsupported to be probative or entitled to any weight. *Phillips*, 415 F.3d at 1318 ("[C]onclusory, unsupported assertions by experts as to the definition of a claim term are not useful

---

[3]    *Symantec Corp. v. Computer Associates Int'l, Inc.*, 522 F.3d 1279, 1290–91 (Fed. Cir. 2008) (expert testimony that does not identify the accepted meaning in the field is unhelpful); *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1137 n.3 (Fed. Cir. 2007) (according little or no weight to expert testimony where the expert failed to present evidence of the generally accepted meaning to persons of ordinary skill in the art).

to a court.") As he admits (Dep. 106:11–16), Mr. Kemnitzer's declaration and testimony contains no references to industry publications or other independent sources. *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1361 (Fed. Cir. 2005) (rejecting an expert's proposed construction because it was just a conclusory statement with no corroboration from, e.g., industry publications). Further, Mr. Kemnitzer often cites no intrinsic evidence to support his assertions. *Kenall Mfg. Co. v. Genlyte Thomas Group LLC*, 413 F. Supp. 2d 937 (N.D. Ill. 2006) (ruling that although the expert reviewed the patents, the expert's report had little probative value since it only presented conclusory, unsupported assertions).

**Fifth**, Mr. Kemnitzer's testimony is often at odds with claim constructions mandated by the intrinsic evidence. For example, he misconstrued "slide base channel" in his written declaration, even after repeatedly reviewing the intrinsic evidence. At his deposition he admitted that his testimony on that claim term was erroneous and had been contrary to the intrinsic evidence. (E.g., Dep. 54:4–14.) Mr. Kemnitzer also ignores explicit claim limitations when construing several terms. (*See infra* Sections III.C.8, III.C.9.)

**Sixth**, Mr. Kemnitzer's testimony is litigation-driven, and therefore likely to be biased and unlikely to result in a reliable interpretation of the claim term. *Phillips*, 415 F.3d at 1318–19. Mr. Kemnitzer has already changed his construction

of one proposed claim term without considering any new evidence. (Dep. 55:17–56:4.)[4]

For these reasons the Court should disregard Mr. Kemnitzer's flawed testimony and construe the disputed claim terms based on the intrinsic evidence and the plain and ordinary meanings of the terms. *See Skyline Zipline Global, LLC v. Domeck*, 922 F. Supp. 2d 1130, 1139 (D. Haw. 2013) (rejecting conclusory expert declaration and relying on intrinsic evidence, as supported by dictionary definition, to define "spreader" in its plain and ordinary sense).

## B. The Court Should Disregard Plaintiff's Extrinsic Evidence

On the morning of Mr. Kemnitzer's deposition, Plaintiff disclosed new extrinsic evidence—several dictionary definitions—that Plaintiff and Mr. Kemnitzer may rely on to support Plaintiff's proposed constructions. Mr. Kemnitzer considered these definitions before submitting his opening declaration. (Dep. 20:16–25:4, 136:23–137:7.) This is the sort of litigation-by-ambush that the Patent Local Rules are intended to prevent. Plaintiff not only failed to disclose this

---

[4]     Also undercutting Plaintiff's credibility is deposition testimony where both Mr. Kemnitzer and Plaintiff's counsel took credit for being the author of Mr. Kemnitzer's declaration.  (Compare Dep. 71:24–72:5, 74:10–18 (expert claiming to have written every single word of his declaration), *with* Dep. 75:15–21 (Plaintiff's counsel stating that he wrote the first draft of the declaration).)

evidence according to Patent L.R. 6.2 & 6.3, but also did not cite the definitions in Mr. Kemnitzer's declaration or in her opening brief. (D.I. 86; Dep. 53:17–21.) Plaintiff's dictionary definitions should be excluded.

Defendants are wary that Plaintiff's response brief will include new extrinsic evidence or testimony from Mr. Kemnitzer beyond the contents of his opening declaration. Such evidence should be excluded. *Phillips*, 415 F.3d at 1318–19 (noting that expert reports generated for litigation can suffer from bias and unreliability, especially when offered in a form not subject to cross-examination). Mr. Kemnitzer testified that he considered no extrinsic evidence other than the dictionary definitions. (Dep. 87:18–88:5.) He testified that he had no knowledge of any opinions about claim construction that he did not identify in his declaration. (Dep. 73:12–15.) He also testified that he would not change his opinion unless new evidence was introduced into the case. (Dep. 55:12–16.) Because no new evidence has been introduced, there is no justification that allows Plaintiff to submit new evidence or expanded expert testimony.

### C. Defendants' Proposed Constructions, Unlike Plaintiff's, Accurately Reflect the Ordinary Meaning in Light of the Intrinsic Evidence

Defendants incorporate by reference the detailed arguments in their opening brief for each disputed claim term. (D.I. 87 at 6–25.) Defendants' opening brief demonstrates how a person of ordinary skill in the art would understand the

ordinary and customary meaning of each claim term by citing intrinsic evidence and explaining its relevance. This well-settled approach to claim construction is not in dispute. Plaintiff's own expert agrees that the ordinary and customary meaning of claim terms depends on the context of the patent. (Dep. 86:15–20.) And Plaintiff's expert agrees that the patent drawings are particularly relevant in this case and can help inform a person of ordinary skill about the meaning of the claim terms. (E.g., Dep. 51:2–6.)

But Plaintiff's constructions and supporting arguments ignore the importance of considering the intrinsic evidence and of reading the specification to determine the meaning of the claim terms. Plaintiff barely cites the patent and provides scant explanation for her claim construction proposals.

### 1.    "front plate"

In the opening brief, Defendants showed that their proposed construction is consistent with the ordinary and customary usage in dictionary definitions. (D.I. 87 at 6 (defining a plate as, among other things, "thin").) *See Phillips*, 415 F.3d at 1314 (holding that dictionaries may be helpful to ascertain the commonly-understood meaning of words).

Plaintiff, on the other hand, relies on a conclusory statement by her expert. Mr. Kemnitzer neither cites nor discusses any intrinsic evidence, either to support

Plaintiff's proposed construction or to criticize Defendants' proposed construction. (D.I. 86-1 ¶ 5.) Further, Plaintiff ignores the obvious overlap between her constructions of "front plate" and "front plate body." Plaintiff proposes construing "front plate" as "[t]he front **structure** . . . ," while at the same time proposes construing "front plate body" as "the body of the front plate." But Mr. Kemnitzer testified that the ordinary meaning of body "refers to an overall **structure**." (Dep. 109:13–14 (emphasis added).) How can both the "front plate" and the "front plate body" be the front structure? *Pediatric Med. Devices, Inc. v. Indiana Mills & Mfg., Inc.*, 961 F. Supp. 2d 1241, 1248 (N.D. Ga. 2013) (rejecting overlapping constructions).

### 2.    "front plate body"

In support of her proposed construction, Plaintiff relies on a conclusory statement by her expert. And Mr. Kemnitzer neither cites nor discusses any intrinsic evidence, either to support Plaintiff's proposed construction or to criticize Defendants' proposed construction. (D.I. 86-1 ¶ 6.)

Plaintiff's proposed construction has two problems. First, the construction is circular and fails to explain what is covered by this claim term. *Serverside Grp. Ltd. v. Tactical 8 Techs., L.L.C.*, 927 F. Supp. 2d 623, 659 (N.D. Iowa 2013) (rejecting plaintiff's construction of "secure unique identifier" as "unique identifier

which is secure" because it fails to clarify what the term covers). Second, the construction overlaps conceptually with the proposed construction of "front plate," as discussed in Section III.C.1. This overlap was apparent during Mr. Kemnitzer's deposition, as he repeatedly conflated front plate and front plate body. (E.g., Dep. 107:12–22, 173:8–174:4.)

Despite criticizing Defendants' proposed construction in his declaration, Mr. Kemnitzer conceded at his deposition that the "face plate is raised from the surface of the . . . front plate to create the area in which the slide, the cavities are going to be created." (Dep. 112:4–9.) This supports Defendants' proposal to construe the claim term as "[t]he non-user-interacting portion of the front plate" because, as shown by Figure 1, the slides correlate with the dosage indicators, finger button holes, and finger buttons—the user-interacting portions that are related to the face plate and ***have nothing to do with*** the front plate body.

### 3. "front plate top side"

Plaintiff's proposed construction is similar to Defendants', and yet Plaintiff criticizes Defendants' proposed construction with little explanation and a single citation to the specification. Plaintiff provides no evidence or explanation for why Defendants' proposed construction better describes the "face plate." Further, if the face plate is the "user-facing surface," Plaintiff does not adequately explain how

her proposed construction of front plate top side is meaningfully different from her definition of face plate. *Pediatric Med. Devs.*, 961 F. Supp. 2d at 1248 (rejecting overlapping constructions).

### 4.    "face plate"

Plaintiff does not dispute Defendants' construction of the face plate as the portion "with which the user interacts during normal use." Plaintiff does, however, rely on an unsupported, conclusory statement by her expert to criticize Defendants' argument that the face plate correlates with the slide bases. (D.I. 86-1 ¶ 8.) Plaintiff's criticism ignores the intrinsic evidence, such as Figures 1 & 5, which support Defendants' construction. And Mr. Kemnitzer admitted that the face plate is "raised . . . to create the area in which the slide, the cavities are going to be created." (Dep. 112:4–9.) He further admitted that the back plate and slide gate cavities—which are under the raised face plate—defines and controls the movement of the slide bases. (Dep. 134:12–21.)

### 5.    "slide gate cavity"

Plaintiff does not dispute that the plain and ordinary meaning of the word "cavity" is a hollow area. (*See* Dep. 135:6–23 (testifying that the dictionary definition of cavity is "a hollow place, a hollow, hole, or pocket").) Nevertheless, Plaintiff relies on a conclusory, unsupported assertion from her expert to argue that

the slide gate cavity is not correlated with the face plate. Mr. Kemnitzer testified to the contrary, however, and admitted that the raised face plate creates the slide gate cavities. (Dep. 112:4–9; Dep. 133:2–6 (admitting that the face plate is raised to create space for the slide gate cavity).)

### 6.    "slide base"

Plaintiff's construction of slide base is conclusory and circular. *Serverside Grp.*, 927 F. Supp. 2d at 659. Plaintiff's expert also recanted his criticism of Defendant's proposed construction, testifying that the slide bases are indeed curved. (Dep. 150:1–22 ("I stand corrected. My last statement was clearly in error. . . . I'm not about to argue that the base is not curved.").)

### 7.    "slide base channel"

Plaintiff's original construction was conclusory and did not rely on any intrinsic evidence other than the boilerplate language that is contained in every patent. (Dep. 140:10–18.) But at the 11th hour, Plaintiff and Mr. Kemnitzer recanted and proposed a new construction.[5] Mr. Kemnitzer testified that he reached this new construction by thoroughly examining the patent, and especially the

---

[5]    On March 26, Plaintiff proposed the following:  "Slide base channel is a recessed area on the top of surface of the slide base."  (Lindberg Decl., Ex. A.)

patent drawings, which is exactly the approach Defendants have advocated throughout claim construction.

The new construction is very similar to Defendants' proposed construction, and Defendants see no meaningful distinction between a "recessed area," which means an indentation, and a "groove." If Plaintiff had examined the patent and proposed this construction earlier, Defendants would have agreed and reduced the number of claim terms in dispute. Because there is no longer a material dispute about this claim term, Defendants adopt Plaintiff's proposed construction.

### 8.    "slide base channel surface having distinctive coloring"

Again, Plaintiff's proposed construction is circular and conclusory. *Serverside Grp.*, 927 F. Supp. 2d at 659. Plaintiff attempts to ignore the claim language and argues that the main "significan[ce] is that the distinctive coloring in the slide base channel is visible to a user during normal use." (D.I. 86 at 12.) But Mr. Kemnitzer admitted that Claim 1 of the patent **requires** the distinctive coloring to be on the **surface** of the slide base channel. (Dep. 167:4–8 (emphasis added).)

Because Plaintiff abandoned her old construction of slide base channel and Defendants agree to the new construction, Defendants' construction for this claim term becomes: "The surface of the [**recessed area on the top of surface of the slide base**] having colors that reinforce whether or not a dosage has been taken."

14

     **9.**    **"plurality of a pin holes disposed in the front plate bottom side" and "back plate base having a plurality of a protrusions disposed on the back plate top side"**

The dispute between the parties on these claim terms concerns Plaintiff's insistence that these claim terms disclose "a means for securing" the front and back plates together, while Defendants contend that the patent claims snap-fitting, and only snap-fitting. Plaintiff attempts to frame the issue by stating that snap-fitting is "one means disclosed" and arguing that other means are available. (D.I. 86 at 9–10.) But Plaintiff's proposed construction ignores the intrinsic evidence. Claim 1 specifies snap-fitting as the means for securing the plates. (D.I. 87 at 24–25.) And Mr. Kemnitzer admitted that: (1) no other means is described in the patent; (2) only one orientation of pins and protrusions is described in the patent; (3) snap-fitting is claimed as the means for securing the plates in Claim 1; and (4) no other means were claimed in the patent. (Dep. 143:24–144:22.)

## III.  <u>**CONCLUSION**</u>

Defendants respectfully request that the Court construe the claims according to Defendants' proposals. Defendants also respectfully request that the Court disregard Mr. Kemnitzer's testimony, along with any other extrinsic evidence Plaintiff attempts to rely upon but has failed to identify.

Respectfully submitted this 21st day of April, 2015.

/s/ Eric A. Lindberg
Kevin S. Costanza
Lead Attorney
Email: kevinC@SeedIP.com
Eric A. Lindberg
Email: EricL@SeedIP.com
Michael P. Hogan
Email: MikeH@SeedIP.com
**Seed Intellectual Property Law Group**
701 Fifth Avenue
Suite 5400
Seattle, WA 98104-7092
Telephone:  (206) 622-4900

Matthew C. Gaudet
Email:  mcgaudet@duanemorris.com
(Georgia State Bar No. 287759)
John R. Gibson
Email:  jrgibson@duanemorris.com
(Georgia State Br No. 454507)
S. Neil Anderson
Email:  snanderson@duanemorris.com
(Georgia State Bar No. 757113)
**DUANE MORRIS, LLP**
1075 Peachtree Street, Suite 2000
Atlanta, Georgia  30309
Telephone:  (404) 253-6900
Facsimile:  (404) 253-6901

*Attorneys for Defendant Bensussen
Deutsch & Associates, Inc.*

/s/ L. Scott Burwell
L. Scott Burwell (*pro hac vice*)
**Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P.**
11955 Freedom Drive
Reston, Virginia 20190

16

Telephone: (571) 203-2700
Facsimile: (202) 408-4400
Email: scott.burwell@finnegan.com

Virginia L. Carron
Georgia Bar No. 112770
**Finnegan, Henderson, Farabow,**
**Garrett & Dunner, L.L.P.**
3500 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, Georgia 30308
Telephone: (404) 653-6400
Facsimile: (404) 653-6444
virginia.carron@finnegan.com

*Attorneys for Defendant Eli Lilly and*
*Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1, NDGa., the undersigned counsel hereby certifies that the foregoing complies with the font and point selections approved by the Court in LR 5.1B and 5.1C.  The foregoing pleading was prepared on a computer using the Times New Roman font (14 point).

By:  /s/ Eric A. Lindberg
Eric A. Lindberg

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2015, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

By:  /s/ Eric Lindberg

Eric Lindberg
*Counsel for Defendant Bensussen Deutsch & Associates, Inc.*