Exhibit C

```
 1                UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
 2                     ATLANTA DIVISION

 3      - - - - - - - - - - - - - - - -
          LISA DUER,                   :
 4                                     :
              Plaintiff,              :   CIVIL ACTION
 5                                     :   FILE NO.
          vs                           :
 6                                     :   14-cv-01589-ELR
          BENSUSSEN DEUTSCH &          :
 7        ASSOCIATES, INC.; ELI        :
          LILLY AND COMPANY,           :
 8                                     :
              Defendant.              :
 9                                     :
        - - - - - - - - - - - - - - - -
10

11

12

13              VIDEOTAPED DEPOSITION OF

14               RONALD B. KEMNITZER

15                 ROANOKE, VIRGINIA

16                  MARCH 26, 2015

17

18

19

20

21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   (800) 288-3376
     www.depo.com
23   FILE NO.:  A90308E

24

25   REPORTED BY:  CECELIA BROOKMAN, RPR
```

A90308E
## RONALD B. KEMNITZER     MARCH 26, 2015

**Page 2**

```
 1          A P P E A R A N C E S :
 2
 3   FOR THE PLAINTIFF:
 4       FLYNN PEELER PHILLIPS
         BY:  CHARLES E. PEELER
         517 West Broad Avenue
 5       Albany, GA 31701
         229.446.4886
 6       cpeeler@fpplaw.com
 7
 8   FOR THE DEFENDANT BENSUSSEN DEUTSCH & ASSOCIATES, INC.:
 9       SEED IP
         BY:  MICHAEL P. HOGAN
         701 Fifth Avenue, Suite 5400
10       Seattle, WA 98104
         206.694.4819
11       mikeh@seedip.com
12
13   FOR THE DEFENDANT ELI LILLY AND COMPANY
14       FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER,
         LLP
         BY:  L. SCOTT BURWELL
15       Two Freedom Square
         11955 Freedom Drive
16       Reston, VA 20190
         571.203.2700
17       scott.burwell@finnegan.com
18
19   ALSO PRESENT:
20       Ms. Arleen Palmberg, Assistant General
         Patent Counsel, Eli Lilly and Company
21       Ms. Lisa Whitaker, Videographer
22
23
24
25
```

**Page 3**

```
 1             I N D E X
 2
     WITNESS:    RONALD B. KEMNITZER
 3
 4   EXAMINATION                          PAGE
 5       By Mr. Hogan                        5
         By Mr. Peeler                     171
 6       By Mr. Hogan                      173
 7
 8
 9             E X H I B I T S
10
     NUMBER      DESCRIPTION              PAGE
11
12   K-1    Listing of material reviewed by
            Mr. Kemnitzer               17
13
     K-2    Notice of subpoena for deposition    25
14
     K-3    Copy of web site for Mr. Kemnitzer   29
15
     K-4    Plaintiff Lisa Duer Opening Claim
16          Construction Brief          43
17   K-5    Declaration of Mr. Kemnitzer    43
18   K-6    United States Patent         48
19   K-7    United States Patent and Trademark
            Office Issue Notification   56
20
     K-8    Copy of pages from dictionary    138
21
22
23
24
25                                    08:34:36
```

**Page 4**

```
 1   ROANOKE, VA; THURSDAY, MARCH 26, 2015; 8:34 a.m.
 2
 3          THE VIDEOGRAPHER:  I am Lisa Whitaker, your
 4   videographer, and I represent Atkinson-Baker in
 5   Glendale, California.                       08:34:43
 6          The date is March 26th, 2015.  The time is
 7   8:34 a.m.  This deposition is taking place at Hotel
 8   Roanoke and Conference Center, 110 Shenandoah Avenue
 9   Northeast, Roanoke, Virginia.
10          This is Case No. 14-cv-01589-ELR, entitled  08:34:59
11   Duer versus JBDA and Eli Lilly.  The deponent is Ronald
12   Kemnitzer.  This deposition is being taken on behalf of
13   the defendant.
14          Your court reporter is Cece Brookman, from
15   Atkinson-Baker.                              08:35:22
16          Will the attorneys please introduce
17   themselves.
18          MR. PEELER:  My name is Charlie Peeler, and
19   I represent the plaintiff.
20          MR. HOGAN:  Michael Hogan from Seed IP in  08:35:30
21   Seattle, on behalf of defendant Bensussen Deutsch &
22   Associates, Inc, or BDA.
23          MR. BURWELL:  Scott Burwell from Finnegan,
24   on behalf of defendant Eli Lilly and Company.
25          MS. PALMBERG:  Arleen Palmberg, Eli Lilly
```

**Page 5**

```
 1   and Company.
 2
 3          RONALD B. KEMNITZER,
 4   having been sworn by the Registered Professional
 5   Reporter, Cecelia Brookman, to tell the truth, the whole
 6   truth, and nothing but the truth, testified as follows:
 7
 8             EXAMINATION
 9   BY MR. HOGAN:
10       Q.  Good morning, sir.                    08:35:58
11       A.  Good morning.
12       Q.  Could you please -- well, before we start, I want
13   to -- Charlie, we have an upcoming briefing deadline for
14   responsive marketing briefs.  Can I have a promise from
15   you that we'll get a signed errata within two weeks of  08:36:11
16   his deposition?
17          MR. PEELER:  I don't know when I'm going to
18   get the transcript, Mike, so how can I promise that?
19          MR. HOGAN:  We can order them within a week
20   today.                                        08:36:23
21          MR. PEELER:  A week turnaround?  I'll talk
22   to Ron about it.
23          MR. HOGAN:  We can get the transcript
24   probably in a week or probably three days.  Depends if
25   we talk to the reporter.  All I'm saying is we would  08:36:33
```

**A90308E**
**RONALD B. KEMNITZER      MARCH 26, 2015**

## Page 6

1  like -- I think we're entitled to a corrected transcript
2  before the next set of briefing is due.  That's what I'm
3  asking for.
4        MR. PEELER:  I'll talk to Ron about it, see
5  what his schedule is.                          08:36:45
6        MR. HOGAN:  Okay.  We'll visit that later, I
7  think, before we're done today.
8  BY MR. HOGAN:
9    Q. Sir, is there any reason you're unable to testify
10  completely and truthfully today?               08:37:03
11    A. No.
12    Q. You're not currently on any medication?
13    A. No.
14    Q. You haven't been drinking this morning?
15    A. No.                                        08:37:10
16    Q. Okay.  You've been deposed before, I gather?
17    A. Yes.
18    Q. Okay.  So just real quick ground rules.  I'm
19  going to ask you some questions today.
20    A. Uh-huh.                                    08:37:19
21    Q. If you don't understand the question, please ask
22  me to repeat it; I'm happy to do that.  If you don't
23  understand it for any reason, any word -- I speak
24  quickly sometimes.  If you didn't get it, just tell me
25  to repeat it, I'm happy to do that.  Okay?     08:37:29

## Page 7

1    A. Okay.
2    Q. If you answer the question, I'm assuming you
3  understood the question as asked, or we'll clarify it.
4  Is that fair?
5    A. Okay.                                       08:37:37
6    Q. If you want to take a bio break, you're certainly
7  entitled to do that.  I would just ask that if we have a
8  question pending or awaiting an answer, I get an answer
9  and then we do a break after that.  Is that fair?
10    A. Okay, that's fair.                          08:37:48
11        MR. PEELER:  Let me just ask you, we're
12  going to reserve all objections except for those to the
13  form of the question and responsiveness of the answer.
14  Is that agreeable?
15        MR. HOGAN:  I just think we're going to    08:38:01
16  follow federal rules.  I figure, if you have a form --
17        MR. PEELER:  That's what they say, unless
18  you have a different understanding of them.
19        MR. HOGAN:  I'm going to follow federal
20  rules.                                          08:38:10
21        MR. PEELER:  Is that your understanding of
22  them?
23        MR. HOGAN:  I'm not going to say your
24  understanding is correct or incorrect.  I'm saying the
25  federal rules will control here.                08:38:16

## Page 8

1        MR. PEELER:  And then also I want to note
2  for the record that this deposition is limited to claim
3  construction issues.
4        MR. HOGAN:  Agreed.
5  BY MR. HOGAN:                                    08:38:24
6    Q. Okay.  Sir, would you please give me your name
7  and address.
8    A. Ronald B. Kemnitzer.  I reside at 2103 Grandin
9  Road Southwest, Roanoke, Virginia.
10    Q. Grandin?                                    08:38:35
11    A. Grandin, G-r-a-n-d-i-n.
12    Q. Could you just briefly give me your educational
13  background.
14    A. I have an undergraduate degree in industrial
15  design from the University of Cincinnati.  I have a     08:38:57
16  master's degree in design from Northern Illinois
17  University.
18    Q. Anything further?  That's all?
19    A. A partial study for master's in business
20  education, business administration.             08:39:23
21    Q. Did you complete that?
22    A. No, I did not.
23    Q. Where was that?
24    A. Loyola College, Baltimore, Maryland, and Chicago.
25    Q. I'm going to ask you some background questions    08:39:38

## Page 9

1  that are necessary for a deposition, nothing personal.
2  Have you ever been convicted of a crime, sir?
3    A. No, other than minor traffic offenses.
4    Q. We're not counting those.
5    A. Okay.                                       08:39:50
6    Q. Ever been excused from an academic post you've
7  ever held?
8    A. No.
9    Q. Ever been accused of academic or other ethics
10  violations?                                     08:40:00
11    A. No.
12    Q. What's your current employment?
13    A. I'm retired.  I'm retired with a title of
14  professor emeritus.  So technically speaking, I'm
15  retired, but I still have, I guess, a formal association    08:40:15
16  with the university.
17    Q. That's Virginia Tech?
18    A. Virginia Tech.  Virginia Polytechnic Institute
19  and State University.
20    Q. Virginia Tech is okay, for our purposes?   08:40:31
21    A. Virginia Tech is fine.
22    Q. Okay.  As professor emeritus, do you have space
23  at the university still?
24    A. I do.
25    Q. So you have an office?                      08:40:39

| | |
|---|---|
| 1   A. Yes. | 1   evenly split. |
| 2   Q. Do you go in every day? | 2   Q. So you were a teacher -- let me back up -- a |
| 3   A. No. | 3   professor at Virginia Tech; right? |
| 4   Q. Once a week? | 4   A. Yes. |
| 5   A. Once or twice a semester.   08:40:44 | 5   Q. How long did you do that for?   08:43:06 |
| 6   Q. Okay. You don't teach any classes, do you? | 6   A. I was with Virginia Tech for 10 years. |
| 7   A. I taught a class in the fall semester this | 7   Q. During that time at Virginia Tech, did you teach |
| 8   academic year, one class. They met one day a week. | 8   classes? |
| 9   Q. Fall 2014? | 9   A. Yes. |
| 10   A. Uh-huh.   08:41:08 | 10   Q. Did you teach any classes dealing with patent law   08:43:14 |
| 11   Q. Do you teach anything now? | 11   or patent issues? |
| 12   A. No. | 12   A. Those issues are a part of our curriculum, part |
| 13   Q. Do you have a research group? | 13   of our studio curriculum. There are five years of -- |
| 14   A. No. | 14   four years of studio classes titled industrial design |
| 15   Q. You're not on the advisory board of any students?   08:41:13 | 15   studio. And we cover patent issues in all of those   08:43:39 |
| 16   A. No. | 16   classes on an ongoing basis, but we don't have a |
| 17   Q. Advisory board is probably the wrong term, but | 17   specific class that's tailored to that. |
| 18   it's the... | 18   Q. Did you teach those patent classes? |
| 19   A. No. Aside from that one class that I taught to | 19   A. Yes. |
| 20   cover another professor who was on leave, I've had no   08:41:27 | 20   Q. What type of classes did you teach personally?   08:43:53 |
| 21   formal interaction with the school at all. | 21   A. I taught virtually all of the classes in the |
| 22   Q. And you consult; is that correct? | 22   industrial design program, to include the studio class I |
| 23   A. Yes. | 23   just mentioned, human factors, drawing classes, history |
| 24   Q. I'll ask you some questions about your teaching | 24   of industrial design, design research methods. |
| 25   experience. Let me back up, sorry.   08:41:49 | 25   Q. What's a studio class?   08:44:10 |
| Page 10 | Page 12 |

| | |
|---|---|
| 1   You consult. Generally what do you consult | 1   A. A studio class is a class where we teach students |
| 2   for, what clients? I don't want names, obviously, | 2   how to design, how to organize a problem, how to |
| 3   nothing confidential. What kind of consulting. | 3   research issues, how to do patent searches, how to look |
| 4   A. My consulting at this point in my life is | 4   at prior art, how to examine the current state of the |
| 5   consulting as an expert witness. My consulting work as   08:42:02 | 5   art, and then to start to conceptualize concepts,   08:44:28 |
| 6   a designer is -- I'm retired. | 6   solutions to those problems, and then carry those |
| 7   Q. You're an expert witness. You consult as an | 7   through a systematic process of evolution and refinement |
| 8   expert witness largely on design matters? | 8   to a final design where they can be as detailed as |
| 9   A. Design and utility matters and trade dressing | 9   having CAD files for production. |
| 10   matters.   08:42:24 | 10   Q. That is design patents, utility patents?   08:44:46 |
| 11   Q. You say design and utility. You're familiar with | 11   A. Yes. |
| 12   patents; right? | 12   Q. Both. Do you consider yourself an expert in |
| 13   A. Yes. | 13   patent law? |
| 14   Q. United States patents? | 14   A. I consider myself to be knowledgeable, a |
| 15   A. Yes.   08:42:29 | 15   knowledgeable designer on patent law.   08:45:05 |
| 16   Q. You said trade dress as well? | 16   Q. I'm not sure I understand that. A knowledgeable |
| 17   A. Yes. | 17   designer about patent law? |
| 18   Q. You consult largely for plaintiffs, largely for | 18   A. Well, your question was do I consider myself an |
| 19   defendants, mixture of both? | 19   expert on patent law. Not from the context of |
| 20   A. Mixture of both.   08:42:38 | 20   practicing law. I'm not a lawyer. My interpretation   08:45:24 |
| 21   Q. Do you know what that mixture is? | 21   with expert in patent law would be somebody who |
| 22   A. It's very -- best of my memory, it's very | 22   practices law. |
| 23   slightly in favor of plaintiffs. | 23   Q. You're not that person; right? |
| 24   Q. 55? | 24   A. I don't practice law. |
| 25   A. 55 percent, something like that. It's pretty   08:42:51 | 25   Q. You're not that person, are you? You're not an   08:45:39 |
| Page 11 | Page 13 |

A90308E
RONALD B. KEMNITZER      MARCH 26, 2015

**Page 14**

1  expert in patent law; right?
2  A. By a doubt it's not just offered, no.
3  MR. PEELER:  Objection.
4  BY MR. HOGAN:
5  Q. You've taught classes -- I assume you've taught          08:45:50
6  classes regarding plastics manufacturing?
7  A. Yes.
8  Q. Have you ever taught any classes specifically
9  directed to over-the-counter medical devices?
10  A. We -- our design program does not have classes          08:46:04
11  devoted to specific types of products, nor, for that
12  matter, do any of the other industrial design programs
13  in the United States, that I'm aware of, except for
14  three that I'm aware of that offer specialized classes
15  in transportation design.                                  08:46:26
16  But aside from that, our classes, our studio
17  classes, are typical in that we do not teach how to
18  design specific categories of products, but how to
19  design products in general.
20  Q. Okay.  Would it be fair to say, then, that if I         08:46:47
21  could try to recap the three reaches or practice areas
22  of your educational career -- and this is just from
23  Wikipedia -- your three main areas are interdisciplinary
24  design, user focused design, and culturally informed
25  design.  Is that fair?                                     08:47:17

**Page 15**

1  A. Ask me that again, please.
2  Q. Sure.  So I don't have a document for this, but
3  this is information I'm aware of.  You have three main
4  research or practice areas when you were actively --
5  before you retired.  And I understand those to be        08:47:29
6  interdisciplinary design, user focused design, and
7  culturally informed design.  Is that fair?
8  A. It includes those; it included those aspects,
9  yes.
10  Q. And others?                                            08:47:42
11  A. Yes.
12  Q. What others?
13  A. Well, if I'm -- now, are we speaking
14  educationally, or in my practice as a designer?
15  Q. Both.                                                  08:47:58
16  A. It really depends on what the project is.  The
17  project can vary in complexity from a very simple
18  product, like designing a screwdriver, to designing
19  something much more complex, like a -- an automated
20  prescription dispensing machine that goes out and picks  08:48:23
21  and counts 600 oral solid prescriptions, packages them
22  in, and verifies their authenticity, and prints a label
23  and puts it on it.  So those are kind of two extremes.
24  Depending on what the category of product is and the
25  complexity of product, it may include a lot of different  08:48:46

**Page 16**

1  things.
2  Q. Okay.  What's user focused design?                     08:49:05
3  A. User focused design is focusing on a person who
4  is using the product.  And it's -- the goal is to make
5  that interaction between the user and the product
6  seamless, to avoid confusion, to minimize the misuse of
7  the product.  And another part of it is to make the
8  product pleasurable to use.
9  Q. Did you do anything to prepare for today's             08:49:41
10  deposition?
11  A. I reviewed the patent.  I reviewed -- the patent
12  at issue.  I reviewed -- rereviewed the file history of
13  the patent.  I reviewed all of the prior art, patents
14  listed on the patent at issue.  And I've reviewed the
15  documents that have been shared between both parties,     08:50:07
16  that have been made available to me.
17  Q. What are those documents?
18  A. I have a list here of all the documents that I've
19  reviewed.
20  Q. Okay.                                                  08:50:20
21  A. Want me to read it?
22  MR. HOGAN:  I would like that produced.  We
23  don't have a copy of that.
24  MR. PEELER:  It's what he just said.  But
25  you can mark it, if you want.                             08:50:28

**Page 17**

1  THE WITNESS:  I just prepared this
2  yesterday.
3  MR. HOGAN:  For the record, Mr. Kemnitzer
4  has provided a declaration in support of plaintiff's
5  claim construction, opening brief in this case.  The      08:50:47
6  materials considered, none is identified.  Not none of
7  it.  On the declaration it identifies a patent file
8  history, and nothing more.
9  MR. PEELER:  The stuff on the list is in the
10  patent file history.                                      08:51:01
11  MR. HOGAN:  Not all of it is, Charlie.
12  Dictionary definitions were received this morning, the
13  joint claim construction statement.
14  Do you just have one copy of this?
15  THE WITNESS:  Yes.                                        08:51:22
16  MR. PEELER:  You can have it.
17  MR. HOGAN:  I can have it?
18  MS. PALMBERG:  He said this is the only
19  copy.
20  MR. HOGAN:  I'll make this Exhibit 1.          08:51:30
21  (Exhibit No. K-1 was marked for
22  identification.)
23  BY MR. HOGAN:
24  Q. I'm going to keep this here and come back to
25  this.                                                     08:52:15

## A90308E
## RONALD B. KEMNITZER      MARCH 26, 2015

| | |
|---|---|
| 1     Okay.  So if I understand you correctly, you | 1   A. -- of last year. |
| 2 reviewed everything that's listed on this document which | 2   Q. -- December 2014 -- I'm not saying you should |
| 3 has now been labeled Exhibit 1. | 3 give me the exact date for each document; I doubt you'll |
| 4     We'll call this Kemnitzer 1.  I'm going to | 4 remember off the top of your head.  But roughly from the |
| 5 abbreviate it K-1, if that's okay, Charlie?  08:52:29 | 5 time frame spanning from December 2014 to when?  08:54:45 |
| 6   MR. PEELER:  Yes, fine with me. | 6   A. To this past week. |
| 7 BY MR. HOGAN: | 7   Q. Say March 23rd?  Is that Monday?  Yes, give or |
| 8   Q. Okay.  I'll ask that again.  If I understand your | 8 take.  Could it be to March 23rd? |
| 9 testimony correctly, you've reviewed all the documents | 9   A. Yes. |
| 10 that are listed in Exhibit Kemnitzer 1; right?  08:52:41 | 10   Q. What did he provide you this week?  08:55:04 |
| 11   A. Uh-huh. | 11   A. I think the last document I received was a copy |
| 12   Q. Okay. | 12 of my final declaration. |
| 13   MR. PEELER:  Ron, you've got to answer with | 13   Q. Okay.  Did you not have it before that time? |
| 14 a yes or no as opposed to a shake of the head. | 14   A. I did, but he confirmed that that was the |
| 15   THE WITNESS:  I'm sorry.  In response to the  08:52:51 | 15 declaration that was submitted.  08:55:29 |
| 16 subpoena copy that I received, it instructed me to | 16   Q. I don't know if you know this.  We received some |
| 17 provide a list of all the materials that I reviewed | 17 documents this morning from Mr. Peeler, dictionary |
| 18 during the course of my involvement in this case.  And | 18 definitions from a dictionary from 1960. |
| 19 so I prepared this list last night, going through all of | 19   Q. Are you aware of those?  08:55:41 |
| 20 the records that I had, and to the best of my knowledge,  08:53:11 | 20   A. Yes. |
| 21 this is complete. | 21   Q. Do you know what the definitions were? |
| 22 BY MR. HOGAN: | 22   A. Yes.  They're on the list.  May I refer to it? |
| 23   Q. Okay.  I appreciate that.  The subpoena, which | 23   Those were definitions of base, cavity, and |
| 24 I'm going to show you in a second, actually asked for | 24 hollow, and also channel. |
| 25 production of documents, not just a list.  Did your  08:53:21 | 25       08:55:53 |
| Page 18 | Page 20 |

| | |
|---|---|
| 1 attorney ask for a list?  If he did, that's different. | 1   Q. How did those definitions come to be?  Who found |
| 2   A. My attorney suggested that I prepare this -- | 2 those? |
| 3   MR. PEELER:  Hold on, hold on.  Don't say | 3   A. I found base, cavity, and hollow. |
| 4 what I suggested or not.  But I think your testimony is | 4   Q. Why were you looking for them? |
| 5 clear as to what you looked at.  08:53:37 | 5   A. Because they were -- definitions of those terms  08:56:07 |
| 6   THE WITNESS:  All right. | 6 were discussed in the claim construction documents, and |
| 7 BY MR. HOGAN: | 7 I was looking at them. |
| 8   Q. In preparing this list, what records did you go | 8   Q. You found them yourself -- not found by |
| 9 through and review?  How did you come up with this list? | 9 Mr. Peeler, you did it yourself; correct? |
| 10   A. All the files on my computer, and the printed  08:53:47 | 10   A. Yes.  08:56:30 |
| 11 files that I have. | 11   Q. When did you do that? |
| 12   Q. Were those materials provided to you by | 12   A. I don't know the dates.  Somewhere in that window |
| 13 Mr. Peeler? | 13 between December and now. |
| 14   A. Some of them are. | 14   Q. Was it closer to now or closer to December? |
| 15   Q. What about the ones that were not?  08:54:02 | 15   A. I don't know.  08:56:41 |
| 16   A. I provided them. | 16   Q. You couldn't tell me if it was say, February? |
| 17   Q. You went out and found them? | 17 Was it recently or was it a month ago? |
| 18   A. Yes. | 18   A. I couldn't tell you reliably that it was |
| 19   Q. Yourself? | 19 February. |
| 20   A. Yes.  08:54:10 | 20   Q. Can you give me your best recollection?  08:56:53 |
| 21   Q. When did you -- when were these materials | 21   A. Between December and now. |
| 22 provided to you by Mr. Peeler? | 22   Q. Okay.  We'll come back to the definitions |
| 23   A. Over a period of time from my engagement in the | 23 themselves specifically, in a little bit. |
| 24 case, which was roughly December -- | 24   Are you aware that we also received a new |
| 25   Q. So from --  08:54:32 | 25 proposed claim construction this morning from  08:57:10 |
| Page 19 | Page 21 |

A90308E
RONALD B. KEMNITZER      MARCH 26, 2015

| | |
|---|---|
| 1  Mr. Peeler? | 1       THE WITNESS:  Change the question. |
| 2       A. Yes. | 2  BY MR. HOGAN: |
| 3       Q. Did you speak with him about that construction? | 3       Q. Let me ask it again.  If you don't understand, |
| 4       A. Did I what? | 4  say, "I don't understand," and I'll ask the question |
| 5       Q. Speak with him about that construction? | 5  again.  Okay? |
| 6       MR. PEELER:  Just answer yes or no. | 6       So you testified -- let me back up. |
| 7       THE WITNESS:  Yes. | 7       We received, this morning, four definitions |
| 8  BY MR. HOGAN: | 8  received from Mr. Peeler that we didn't have before; |
| 9       Q. Was that construction -- was that new | 9  right?  I'm telling you that's the case.  These |
| 10  construction your idea? | 10  definitions are not referenced in your declaration; |
| 11       A. No. | 11  correct? |
| 12       Q. Do you know whose idea it was? | 12       A. I'd have to refer back to my declaration to see |
| 13       A. Yes. | 13  that. |
| 14       Q. Whose? | 14       Q. Do you recall being provided these definitions |
| 15       A. It was both of us. | 15  along with your declaration? |
| 16       Q. How did that idea come to be? | 16       A. No, I don't. |
| 17       MR. PEELER:  Hold on.  If you want to ask | 17       Q. I have your declaration here, which we'll look |
| 18  him about the construction and what his opinions are, | 18  at.  I'll represent to you did not provide them. |
| 19  that's one thing.  But to ask him about collaboration | 19  This is the first we saw these definitions, this |
| 20  that he and I have had is impermissible, just like it | 20  morning.  Okay? |
| 21  would be if I was asking your expert. | 21       So what I'd like to know is, did you rely on |
| 22       MR. HOGAN:  Do you have an objection? | 22  these definitions specifically in forming your opinions |
| 23  You're using a speech to define the record, Charlie. | 23  as written down, expressed in your declaration in this |
| 24       MR. PEELER:  Yes, I object to that question. | 24  case. |
| 25       MR. HOGAN:  What's the objection? | 25       A. Yes. |
| Page 22 | Page 24 |
| 1       MR. PEELER:  Work product. | 1       Q. You did. |
| 2       MR. HOGAN:  It's not work product.  If he | 2       And for the record, we never had any notice |
| 3  was involved, it's not work product. | 3  of those definitions in your declaration.  I think |
| 4       THE WITNESS:  Mike, read Rule 26.  It's | 4  that's clear from the record. |
| 5  clear. | 5       While we're still on the questioning -- |
| 6       MR. HOGAN:  I have.  I'm not sure you have, | 6  we're going to come back to this, because we have a |
| 7  Charlie, based on the course of this case so far. | 7  claim term to talk about.  We'll come back to this. |
| 8       MR. PEELER:  I'm objecting to that. | 8       (Exhibit No. K-2 was marked for |
| 9       MR. HOGAN:  Are you done? | 9  identification.) |
| 10       MR. PEELER:  That's my objection, yeah. | 10  BY MR. HOGAN: |
| 11  BY MR. HOGAN: | 11       Q. I'm handing you what's been marked K-2.  Take a |
| 12       Q. Of those definitions, which did you find | 12  look at it, sir, let me know, do you recognize it? |
| 13  yourself?  All three of them? | 13       A. Yes, I do recognize this. |
| 14       A. There's four of them. | 14       Q. You received that; correct? |
| 15       Q. Base, cavity, hollow, which else? | 15       A. Yes. |
| 16       A. Base, cavity, hollow, I found. | 16       MR. PEELER:  Let me just note for the record |
| 17       Q. What's the fourth?  Channel. | 17  that we never waived proper service of it. |
| 18       So these definitions, did you rely on these | 18  BY MR. HOGAN: |
| 19  definitions when you wrote your declaration that was | 19       Q. You've seen it; correct? |
| 20  provided on March 13th. | 20       A. Yes. |
| 21       A. Yes, I considered them. | 21       Q. When is the first time you saw it? |
| 22       Q. You did?  These definitions that you provided to | 22       A. I believe it was earlier this week. |
| 23  us this morning? | 23       Q. Earlier this week.  Am I correct in |
| 24       MR. PEELER:  I sent them to him this | 24  understanding, sir, you produced no documents in |
| 25  morning. | 25  response to the subpoena; right? |
| Page 23 | Page 25 |

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

| | |
|---|---|
| 1   A. No. | 1   MR. HOGAN:  That doesn't have to do with the |
| 2   Q. No.  Do you plan on producing documents in | 2   question. |
| 3   response to the subpoena? | 3   BY MR. HOGAN: |
| 4   MR. PEELER:  We have identified the | 4   Q. Please answer the question, sir. |
| 5   documents.                              09:03:05 | 5   A. I provided this document.             09:04:39 |
| 6   MR. HOGAN:  I didn't ask you a question, | 6   Q. This document listing documents you reviewed; |
| 7   Charlie. | 7   correct? |
| 8   I asked you a question, sir. | 8   A. Have I reviewed that document? |
| 9   MR. PEELER:  I know, but -- | 9   Q. You provided this list which identifies documents |
| 10   MR. HOGAN:  Do you have an objection or are   09:03:11 | 10   you reviewed; correct?                    09:04:52 |
| 11   you just going to keep talking? | 11   A. Yes. |
| 12   MR. PEELER:  I'm going to talk and object. | 12   Q. You produced, yourself, none of these documents |
| 13   MR. HOGAN:  You might not know this, | 13   in this case; correct? |
| 14   Charlie.  In federal court you object -- I ask | 14   A. Could you define what that means, that I've |
| 15   questions, he answers.  You object to form or privilege.   09:03:21 | 15   not...                                    09:05:01 |
| 16   MR. PEELER:  I asked you about that earlier | 16   Q. I think I have the answer. |
| 17   and you wouldn't tell me, so... | 17   I think you said a minute ago that you |
| 18   MR. HOGAN:  I didn't agree with your | 18   worked as an expert witness; correct. |
| 19   characterization of Rule 26, which is ridiculous.  So | 19   A. Yes. |
| 20   I'd like you to withhold the commentary.  If you have an   09:03:31 | 20   Q. And you worked in -- expert witness in      09:05:24 |
| 21   objection, make it; if you don't, then don't make an | 21   litigation; correct? |
| 22   objection.  Don't say anything.  Okay?  Thank you. | 22   A. Yes. |
| 23   BY MR. HOGAN: | 23   Q. Okay.  You have a personal website, do you not, |
| 24   Q. Sir? | 24   sir? |
| 25   A. What.                                09:03:40 | 25   A. Yes.                                   09:05:35 |
| Page 26 | Page 28 |
| 1   Q. Do you plan on producing any documents in | 1   (Exhibit No. K-3 was marked for |
| 2   response to the subpoena? | 2   identification.) |
| 3   MR. PEELER:  Objection.  He has complied | 3   BY MR. HOGAN: |
| 4   with the subpoena. | 4   Q. That website identifies you as a design patent |
| 5   BY MR. HOGAN:                           09:03:50 | 5   and trade dress expert witness; right?      09:06:25 |
| 6   Q. Yes or no. | 6   A. Yes. |
| 7   A. I believe I have. | 7   Q. Is the information on that website up to date? |
| 8   Q. You produced documents? | 8   A. I believe so. |
| 9   A. Yes. | 9   Q. Is it missing any representations or any |
| 10   Q. Were they attached to your declaration?   09:03:54 | 10   consulting you've done?                   09:06:46 |
| 11   A. No. | 11   A. I believe that -- my answer to that is to the |
| 12   Q. They were not.  Do you think Kemnitzer 1, this | 12   best of my knowledge, it covers all of it. |
| 13   list, meets your obligation to produce documents | 13   Q. Okay.  I hand you what's been marked K-3.  I |
| 14   pursuant to the subpoena?  Is that what you think? | 14   would represent to you this is a printout of your |
| 15   MR. PEELER:  Yes.                       09:04:11 | 15   personal website.  Can you flip through it and confirm   09:07:25 |
| 16   THE WITNESS:  I believe so. | 16   that?  Let me know when you're done. |
| 17   MR. HOGAN:  Are you answering, Charlie, or | 17   (Brief pause.) |
| 18   is the witness going to answer?  Object or be quiet, | 18   THE WITNESS:  I'm done. |
| 19   please. | 19   BY MR. HOGAN: |
| 20   MR. PEELER:  I'm going to object.       09:04:19 | 20   Q. Do you agree with me, sir, that that's a printout   09:08:32 |
| 21   MR. HOGAN:  What's the objection? | 21   of your personal website? |
| 22   MR. PEELER:  That you're badgering him, that | 22   A. It appears to be. |
| 23   you're mischaracterizing the state of the subpoena.  I | 23   Q. Okay.  I would represent that that's the way it's |
| 24   object to the service of the subpoena.  In fact, it has | 24   supposed to be.  That's what we tried to do, anyway. |
| 25   not been served properly.  Those are my objections.   09:04:29 | 25   You can see down in the corner, that's your URL address   09:08:43 |
| Page 27 | Page 29 |

8 (Pages 26 to 29)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

1   in the left-hand corner, just so I'm not giving you
2   something that you're not already aware of.
3        Would you -- so as we had mentioned a moment ago,
4   across the top of every -- not every page, but the main
5   pages, Ronald Kemnitzer, design patent and trade dress    09:09:00
6   expert witness; right?
7   A. Yes.
8   Q. Would you please turn to the one, two, three,
9   fourth page in, bottom right-hand corner, there's 1/6
10  that's listed there. Fourth page in. One more, I          09:09:13
11  think. That's it.
12       Okay. This says litigation support
13  experience about a third of the way down. See that?
14  A. Uh-huh.
15  Q. It says "my client," underlined, in parens. See        09:09:33
16  that?
17  A. Uh-huh.
18  Q. This is a listing of the representation that
19  you've done?
20  A. Yes.                                                    09:09:39
21  Q. That's probably wrong. Let me try this way.
22  This is a list of the cases you've been an expert
23  witness on; correct?
24  A. Yes.
25  Q. Okay. There's several here. I'm going to go            09:09:50

Page 30

1   through them quickly. I assume you're aware of them.
2        The first one, October 1st, 2008, design
3   patent infringement; right?
4   A. Yes.
5   Q. Second one, July 6th, 2009, it says case, appeal       09:09:57
6   of denial of U.S. patent application. Provided written
7   opinion/affidavit in support of appeal. See that?
8   A. Yes.
9   Q. Was that a design patent or utility patent?
10  A. That was a utility patent.                             09:10:14
11  Q. Okay. And the outcome is?
12  A. The patent was allowed.
13  Q. The patent was allowed. Do you recall what
14  technology that was directed to?
15  A. By technology, are you referring to manufacturing      09:10:24
16  process?
17  Q. What was the subject matter of the patent?
18  A. Subject matter of the patent was a molded rocking
19  chair.
20  Q. Molded rocking chair. What was your opinion at         09:10:39
21  that date, of what the deal was?
22  A. It dealt whether or not it was a unique and
23  creative solution.
24  Q. What, the design?
25  A. The design.                                            09:10:57

Page 31

1   Q. Spokes in the design?
2   A. The design from a utilitarian point of view. One
3   of the issues was that it was obvious to a designer that
4   it could have been produced, and I opined on how
5   complicated of a process it was and how unique the        09:11:16
6   solution was.
7   Q. Okay. Do you recall what the -- so you said -- I
8   think you said the subject matter was a molded rocking
9   chair.
10  A. Yes.                                                   09:11:29
11  Q. Okay. Next one, April 12th, 2011. See that one?
12  A. Yes.
13  Q. Design patent infringement?
14  A. Yes.
15  Q. Okay. Next one, July 11, 2011, design patent          09:11:41
16  infringement?
17  A. Yes.
18  Q. Next one, March 17th, 2012, design patent
19  infringement?
20  A. Yes.                                                   09:11:53
21  Q. Next one, August 15th, 2012, design patent
22  infringement? Next one, October 4th, 2012, design
23  patent infringement?
24  A. Yes.
25  Q. Next one down, December 21st, 2012, design patent      09:12:05

Page 32

1   infringement?
2   A. This was Ethicon versus Covidien, and this
3   actually involved a utility patent.
4   Q. Are you looking at this one that says 12-21-2012?
5   A. I'm looking at the one that says 11-8-12. You          09:12:26
6   missed that.
7   Q. I missed that. Beg your pardon. Back up. That
8   was the next one in order.
9        November 8th, 2012; right? Ethicon versus
10  Covidien, design patent infringement.                     09:12:38
11  A. Yes.
12  Q. Okay. Beg your pardon.
13  A. The case also involved infringement allegations
14  for utility patents. And although I was arguing the
15  issues involved in the design patent infringement, a      09:12:50
16  large part of that argument was the corresponding
17  utility patent.
18  Q. Okay. You're saying that now?
19  A. I just said that.
20  Q. You did. It says here, in your experience,             09:13:08
21  design patent infringement; correct?
22  A. Right. That was my role in that overall case.
23  Q. Okay. Let's go to the next one, then. December
24  21st, 2012, I guess, that's Oakley?
25  A. Yes.                                                   09:13:20

Page 33

9 (Pages 30 to 33)

A90308E

RONALD B. KEMNITZER      MARCH 26, 2015

1    Q. Versus Hire Order, design patent infringement?
2    A. Yes.
3    Q. Next one is April 23rd, 2013, design patent
4    infringement; right?
5    A. Yes.                                        09:13:31
6    Q. Let's see. Next page there's several more.
7    Looks like you have about 14 here, so I'll just keep
8    going.
9         August 30th, 2013, design patent
10   infringement; right?                           09:13:42
11   A. Yes.
12   Q. September 28th, next one, 2013, design patent and
13   trade dress infringement; right?
14   A. Sorry, which one are we on now?
15   Q. September 28th, 2013.                        09:13:56
16   A. Yes.
17   Q. Okay. Next one, June 20th, 2014, design patent
18   infringement?
19   A. Yes.
20   Q. And then the last one listed here is July 8th,  09:14:06
21   2014. It's also design patent infringement; right?
22   A. Yes.
23   Q. Okay. Backing up for a second, we talked a
24   minute ago about the representation you had. The second
25   one listed here on this document, on July 6th, 2009,  09:14:25

Page 34

1    that was the appeal of a U.S. patent application. You
2    provided the written opinion affidavit in support of
3    appeal, we talked about a second ago, the molded rocking
4    chair; right?
5    A. Yes.                                        09:14:39
6    Q. Did you construe claims for purposes of that?
7    A. No.
8    Q. You argued that the design was not obvious and
9    essential then; right?
10   A. Yes.                                        09:14:54
11   Q. For the rocking chair case that we were just
12   discussing here, do you remember the name of the
13   inventor?
14   A. Yes. Cooper Woodring.
15   Q. Cooper Woodring. Can you spell that?        09:15:09
16   A. W-o-o-d-r-i-n-g.
17   Q. Thank you.
18   A. His name is listed.
19   Q. Is it there? I beg your pardon, I just missed
20   it.                                            09:15:30
21   A. May I make a correction?
22   Q. Sure.
23   A. You asked if this was a full and complete
24   listing, and I said to the best of my knowledge. But
25   there are two cases recently that I have not updated in  09:15:38

Page 35

1    my website with.
2    Q. Okay.
3    A. One of them is this case.
4    Q. Okay, this case.
5    A. And there is another case, DDS versus -- I can't  09:15:50
6    remember the name of the plaintiff, but that's also a
7    utility patent case.
8    Q. What are you doing in that case? What's your
9    role as a consultant in that case?
10   A. My role is to opine on infringement.        09:16:08
11   Q. Of a utility patent?
12   A. Of a utility patent.
13   Q. Have you provided an affidavit in that case?
14   A. It also includes trade dress.
15   Q. Trade dress, so utility plus trade dress. Have  09:16:22
16   you provided a declaration in that case?
17   A. Yes.
18   Q. You have.
19        Have you been deposed in that case?
20   A. No.                                         09:16:31
21   Q. Do you know what court that's pending in?
22   A. No, I don't. I can't recall.
23   Q. Can you give me like a state? California? New
24   York? New Jersey?
25   A. I can't recall right now.                   09:16:54

Page 36

1    Q. If you recall, would you tell me at some point
2    today?
3    A. Yeah.
4    Q. Who are the lawyers in that case? Do you know
5    the -- who are you working with, I guess?      09:17:03
6    A. I'm having a blank moment.
7    MR. PEELER: If it comes to you, you can
8    supply it later.
9    THE WITNESS: If it comes to me I'll be
10   happy to give you the name. I'm not evading your  09:17:25
11   question; it slips my mind right now.
12   BY MR. HOGAN:
13   Q. I understand. No problem.
14   A. Then there was a prior case to this, which was
15   several years prior to the first case listed, which  09:17:36
16   involved Nike, and that was a utility patent case.
17   Q. Who did you consult with?
18   A. I can't remember the name.
19   Q. Was it Nike?
20   A. Nike was my client, was the company I was   09:17:53
21   representing, yes.
22   Q. Utility patent. Do you recall what your role
23   was?
24   A. My role was to -- it was an injury claim case,
25   and my role was to opine on whether or not the claims of  09:18:18

Page 37

10 (Pages 34 to 37)

**Page 38**

1   the patent were a cause of the injury.
2   Q. Was it patent infringement?
3   A. No.
4   Q. Okay. Patent injury. I have to confess, I've
5   never heard that before.                    09:18:44
6   A. I've been -- I received -- it's not on my list
7   because I've been advised that -- I've been advised that
8   I should only show cases from the previous four years,
9   and others say I should show all of my cases, so I'm
10  just trying to keep it within a reasonable amount of   09:19:08
11  listings.
12  Q. I understand.
13      I don't know what patent injury is. It was
14  not patent infringement?
15  A. No, it was a liability. It was personal injury.   09:19:19
16  Q. Okay.
17  A. And the claim was that it was because of the way
18  the product was designed.
19  Q. Okay, so -- go ahead.
20  A. Yeah. So I had to do -- examine all of the   09:19:31
21  claims and translate those to the injury, as to whether
22  or not they could have caused it.
23  Q. The injury to the person?
24  A. Yes.
25  Q. Okay. Over the course of your career, how many   09:19:51

**Page 39**

1   cases, ball park, have you worked in as an expert
2   witness?
3       Let me back up. I understand that not all
4   your expert witness experience is listed on your
5   personal website. There are probably more cases you   09:20:06
6   worked on that aren't listed here; correct?
7   A. One or two.
8   Q. One or two. Okay.
9   A. I think there was a case, probably 20 years ago,
10  for -- it was a utility patent case involving a fishing   09:20:20
11  reel.
12  Q. Fishing reel.
13  A. Yeah.
14  Q. And did you opine on infringement or on the
15  validity?                                    09:20:36
16  A. It was a strange case. I wrote a report, but the
17  report was -- did not have the structure or the kind
18  of -- well, I just wrote a report and that was the end
19  of it, and I never heard anything more about it. I was
20  not deposed, not even advised of the outcome of the   09:20:58
21  case, and I don't know that my report was even used.
22  Q. Okay. Have you ever testified as an expert at
23  trial?
24  A. No.
25  Q. So is it fair to say you've never been   09:21:19

**Page 40**

1   disqualified as an expert in any case, have you?
2   A. No.
3   Q. Have you ever had any part of one of your expert
4   declarations or opinions struck by a court?
5   A. No.                                        09:21:33
6   Q. Have you ever been prevented from testifying in a
7   case or proceeding for any reason?
8   A. No.
9   Q. You're aware, are you not, sir, that there's
10  different standards between infringement of a design   09:21:51
11  patent and a utility patent; right?
12  A. Yes.
13  Q. What's the standard for a design patent?
14      MR. PEELER: Objection that you're asking
15  him for a legal conclusion.                   09:22:00
16  BY MR. HOGAN:
17  Q. You can answer. Go ahead.
18  A. For infringement?
19  Q. For a design patent, yes.
20  A. For infringement. That an ordinary observer   09:22:10
21  would purchase a product, thinking it would be the other
22  product, the infringing product, and in that case the
23  product is infringing.
24  Q. Ordinary observer test.
25      You're familiar with Egyptian Goddess, I   09:22:30

**Page 41**

1   assume; right?
2   A. Yes.
3   Q. We walked into that.
4       Design patents don't have claims, do they?
5   A. Yes, they do.                              09:22:40
6   Q. What do they say, typically?
7   A. The ornamental appearance of.
8   Q. I claim the ornamental appearance of picture X,
9   picture Y, picture Z; right?
10  A. Yes.                                       09:22:52
11  Q. It's true, is it not, that typically in design
12  patent cases, there is no claim construction; right?
13  A. I can't answer that for certain. I think there
14  was a period of time when there was written claim
15  construction.                                09:23:12
16  Q. Did you ever provide one of those?
17  A. No.
18  Q. I understand, since --
19  A. Not to my knowledge.
20  Q. Not to your knowledge. Beg your pardon.   09:23:20
21      I understand, since Egyptian Goddess II from the
22  federal circuit, the federal circuit ultimately
23  discourages claim construction for design cases. Are
24  you aware of that?
25  A. Yes.                                       09:23:32

A90308E
RONALD B. KEMNITZER      MARCH 26, 2015

| | |
|---|---|
| 1 | Q. Since that time have you ever done a claim |
| 2 | construction for a design patent? |
| 3 | A. No. |
| 4 | Q. Okay. And utility patent claims have actual |
| 5 | claims to the composition or the method or the       09:23:44 |
| 6 | structures disclosed in the patent; correct? |
| 7 | A. Say that again, please. |
| 8 | Q. Utility patents have claims that claim the |
| 9 | structure of the invented subject matter, for example; |
| 10 | right?       09:24:04 |
| 11 | A. They can claim the structure. |
| 12 | Q. Right. The point is utility patent claims |
| 13 | actually are more than just saying, "I claim the |
| 14 | pictures shown in A, B and C." They're actual |
| 15 | structures, they can be methods, compositions, things       09:24:16 |
| 16 | like that; right? |
| 17 | A. Yes. |
| 18 | Q. Okay. Do you know the standards of claim |
| 19 | construction in a utility patent? Let me try that |
| 20 | again. Back to the question.       09:24:37 |
| 21 | Do you know what the standard is for |
| 22 | construing the claims of a utility patent? |
| 23 | A. No, I don't know what you're referring to. |
| 24 | Q. Okay. |
| 25 | A. I know there's a process of construing the       09:24:50 |

Page 42

| | |
|---|---|
| 1 | claims, and it's a conversation between both parties. |
| 2 | Q. Okay. |
| 3 | (Exhibits Nos. K-4 and K-5 were marked for |
| 4 | identification.) |
| 5 | BY MR. HOGAN:       09:25:01 |
| 6 | Q. I'm handing you what's been marked Exhibits K-4 |
| 7 | and K-5, in that order. |
| 8 | K-4 is plaintiff's opening claim |
| 9 | construction brief in this case; correct? |
| 10 | A. Yes.       09:26:43 |
| 11 | Q. K-5 is Exhibit A to that opening brief, to make |
| 12 | it easier to refer to Exhibit K-5. Okay? |
| 13 | Take a look at -- I'm going to refer to K-5 |
| 14 | mainly, for the time being. K-5 is your declaration. |
| 15 | And attached to your declaration is your -- it looks       09:26:57 |
| 16 | like some information, personal background, list of |
| 17 | patents, CV, et cetera. Recognize that? |
| 18 | A. Yes. |
| 19 | Q. Okay. Do you agree with me, sir, K-5 is the |
| 20 | declaration you provided in this case for plaintiff's       09:27:13 |
| 21 | claim construction? |
| 22 | A. Yes. |
| 23 | Q. You also had, I think you said a minute ago, |
| 24 | attached to the back of it as your CV? |
| 25 | A. Uh-huh, yes.       09:27:27 |

Page 43

| | |
|---|---|
| 1 | Q. I want to look real quick, on top of page 1 of 11 |
| 2 | of Exhibit K-5, that's where your professional |
| 3 | background starts. |
| 4 | A. Uh-huh. |
| 5 | Q. Your professional background has got 1 through --       09:27:54 |
| 6 | some numbered paragraphs there, 1 through 8. See that? |
| 7 | A. Yes. |
| 8 | Q. This professional background does not appear in |
| 9 | this form in your personal website. Did you prepare |
| 10 | this professional background for this case?       09:28:17 |
| 11 | A. My website is a marketing instrument, and so it's |
| 12 | brief, it's to the point, and hits highlights that I |
| 13 | think would be of interest to potential clients. |
| 14 | So this is a more complete listing of, |
| 15 | particularly of things that I think are pertinent to       09:28:49 |
| 16 | this case. |
| 17 | Q. I understand. What I'm asking is a different |
| 18 | question, though. This professional background, these |
| 19 | paragraphs 1 through 8, does this always accompany your |
| 20 | CV when you provide a declaration in a patent case, or       09:29:02 |
| 21 | is it just for this case? |
| 22 | A. I can't say that I always do it exactly the same |
| 23 | way. |
| 24 | Q. When you provide a CV along with your |
| 25 | declarations, when you consult and you're an expert       09:29:19 |

Page 44

| | |
|---|---|
| 1 | witness on other cases for patent utility or design, you |
| 2 | provide a professional background every time; right? |
| 3 | A. No. |
| 4 | Q. Why did you do it this time? |
| 5 | A. I usually put this information in -- I don't       09:29:32 |
| 6 | always -- I'm not always required to file a declaration, |
| 7 | so oftentimes I'm asked to provide a report. I include |
| 8 | this within the report, so it's in the text of a report. |
| 9 | Q. I see what you're saying. So sometimes this can |
| 10 | be in the text of the report?       09:30:07 |
| 11 | A. Yes. |
| 12 | Q. And when it's not in the text of the report, you |
| 13 | provide it in this form -- |
| 14 | A. Yes. |
| 15 | Q. -- along with your CV?       09:30:13 |
| 16 | A. Yes. |
| 17 | Q. Let me try this. Whenever you act as an expert |
| 18 | in a patent case, you supply professional background in |
| 19 | one form or another, either like this as an attachment |
| 20 | to your CV, or in the report itself?       09:30:23 |
| 21 | A. Yes. |
| 22 | Q. Okay. Does this format of special background, do |
| 23 | you edit it? Does it change? Do you adjust it for |
| 24 | cases, or does it stand every time, in either format we |
| 25 | discussed?       09:30:40 |

Page 45

A90308E
RONALD B. KEMNITZER      MARCH 26, 2015

1   A. It's pretty much the same. My professional
2  background is pretty extensive, and I've designed a lot
3  of different categories and a lot of different types of
4  products. So if I'm engaged in a case that is more
5  technical, I may not include areas of experience that      09:31:08
6  are not pertinent to that.
7        MR. HOGAN: Okay. Counsel, we ask for you
8  to provide to us a list of representations by the
9  witness, according to Rule 26. We don't have that yet.
10  We have not gotten that from you or the expert, so we'd   09:31:31
11  like that, please.
12        MR. PEELER: Say that again, now?
13        MR. HOGAN: We'd like a list of
14  representations by the expert, according to Rule 26. We
15  have not received that from you or the expert so far.     09:31:42
16        MR. PEELER: Okay.
17        MR. HOGAN: You never provided that to us,
18  so we're asking you for that.
19        MR. PEELER: Right. I guess I'm being a
20  little hesitant because I don't think that at this stage  09:31:53
21  of the litigation he has to prepare a report under the
22  requirements of Rule 26. So I think he probably will in
23  this case, and we'll comply with it. Are we saying the
24  same thing?
25        MR. HOGAN: No. Is it your contention that   09:32:09

Page 46

1  his affidavit is not compliant with Rule 26?
2        MR. PEELER: No, I think his affidavit is in
3  support of this claim construction.
4  BY MR. HOGAN:
5     Q. So going back to your --      09:32:25
6        MR. PEELER: Getting back to you, to
7  supplement what he said on his representations, I don't
8  have a problem with getting you that information in a
9  couple weeks.
10        MR. HOGAN: Thank you. I don't need it      09:32:38
11  tomorrow.
12        MR. PEELER: Yes, sure.
13  BY MR. HOGAN:
14     Q. Okay. Looking back at your CV here, this is the
15  CV part of K-5 we're talking about. Numbered paragraph   09:32:47
16  5, you list a number of patents. It says here: I'm the
17  inventor of the following patents. There's a bunch
18  there; right?
19     A. Yes.
20     Q. Certainly design patents and utility patents;   09:33:01
21  right?
22     A. Or utility patents.
23     Q. Okay. Did you draft any of these patents
24  yourself?
25     A. Could you explain that term?      09:33:17

Page 47

1     Q. Did you write the text of the patent?
2     A. I don't recall.
3     Q. You have no patents that are directed to
4  over-the-counter medical devices, do you?
5     A. Yes, I do.      09:33:31
6     Q. Are they listed here?
7        MR. PEELER: I'm going to object to that
8  question as vague.
9        THE WITNESS: I'm sorry, take that back.
10  No, I don't have a patent for it.      09:33:52
11  BY MR. HOGAN:
12     Q. Okay. And you don't have a patent directed as a
13  reminder device, do you?
14     A. No.
15     Q. Keep that handy. We're going to go to Exhibit 5   09:34:01
16  in a few minutes.
17        (Exhibit No. K-6 was marked for
18  identification.)
19  BY MR. HOGAN:
20     Q. I'm handing you an exhibit that's been marked --   09:34:29
21  hang on. I did a horrible sticker job. I'm going to
22  try to fix this.
23        I'm handing you an exhibit that's been marked
24  Exhibit K-6, with a proper stamp on it. Do you
25  recognize that document, sir?      09:35:03

Page 48

1     A. Yes.
2     Q. What is it?
3     A. This is the patent at issue.
4     Q. In this lawsuit; correct?
5     A. Yes.      09:35:22
6     Q. I'm going to hand you another copy of that. It's
7  the exact same thing. We're going to look at the
8  figures and some things; I think it might be easier to
9  have two things to flip back and forth between, so you
10  can use whatever you want. It was just to expedite      09:35:34
11  things, make life a little easier, if that's okay with
12  everybody.
13        You want two?
14        MR. PEELER: I've got more than two.
15        MR. HOGAN: Don't think I was leaving you   09:35:45
16  out, Charlie.
17        MR. PEELER: No.
18  BY MR. HOGAN:
19     Q. When did you see the patent for the first time?
20     A. I saw the patent for the first time in, I      09:35:52
21  believe, December 2014.
22     Q. Who gave it to you?
23     A. I'm not sure of my recollection, whether I was
24  given a number or a file of the patent. I believe that
25  I looked the patent up.      09:36:23

Page 49

13 (Pages 46 to 49)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

| | Page 50 | | | Page 52 |
|---|---|---|---|---|

1  Q. Who did you get the number from?
2  A. From counsel.
3  Q. Okay. Have you read the patent?
4  A. Yes.
5  Q. How many times, roughly?                09:36:30
6  A. 20.
7  Q. 20. That's a lot.
8     I think you used the word counsel a second
9  ago. By counsel, do you mean Mr. Peeler?
10  A. Yes.                                     09:37:13
11  Q. Is there any other counsel you've worked with in
12  this case?
13  A. No.
14  Q. The title of this, referring now to K-5 -- sorry,
15  beg your pardon. 6. That's the 358 patent. If I refer 09:37:23
16  to it as the 358 patent, is that fair, you'll know what
17  I mean?
18  A. Yes.
19  Q. The title is method and device for recording
20  periodic medicinal dosages; right?             09:37:36
21  A. Yes.
22  Q. It's a fairly straightforward sort of device;
23  isn't it?
24  A. Yes.
25  Q. It's even kind of simple; right?            09:37:47

Page 50

1  A. In the scheme of product design, yes.
2  Q. Okay. When you read it, did you find anything
3  confusing about it?
4  A. By the fact that I read it 20 times suggests,
5  correctly, that there's a lot of connections to be made 09:38:25
6  between the text and the patent images. And so it
7  required a lot of sifting through the information to
8  really get a grasp on what was what.
9  Q. As an expert witness, being diligent, you read a
10  patent a few times, anyway; right?            09:38:57
11  A. Yes.
12  Q. In any case, you read the patent a number of
13  times?
14  A. Yes.
15  Q. Is this patent any different from any other       09:39:03
16  patent you've worked with in that regard?
17  A. No.
18  Q. You've read the claims of the 358 patent; right?
19  A. Yes.
20  Q. Did you understand them?                    09:39:12
21  A. Yes.
22  Q. When you read those claims, did you find any
23  ambiguity in those claim terms?
24  A. There was -- I had some ambiguity between some of
25  the definitions, which I worked through.       09:39:31

Page 51

1  Q. The definitions?
2  A. Yes.
3  Q. Do you believe the definitions in the patents?
4  A. Or the descriptions.
5  Q. Descriptions in the patent?                  09:39:42
6  A. Descriptions, yes.
7  Q. Okay. So you don't mean definitions in the
8  patent, you mean descriptions in the patent; right?
9  A. Yes.
10  Q. Did you find anything in the patent claims       09:39:49
11  confusing?
12  A. I think the one -- well, yes.
13  Q. You found things confusing?
14  A. I found at least one thing confusing.
15  Q. What was that?                              09:40:02
16  A. I think there were some terms that were -- two
17  terms that I think created some initial confusion for
18  me. It was channel and cavity.
19     (Exhibit No. K-7 was marked for
20  identification.)                              09:40:36
21  BY MR. HOGAN:
22  Q. So you testified that the terms channel and
23  cavity caused you some initial confusion. In your
24  declaration, I believe you testified, you state that
25  those terms have a plain, ordinary meaning; correct? 09:40:58

Page 52

1  A. Yes.
2  Q. But you were confused when you read them the
3  first time?
4  A. I was confused because both terms were used, and
5  I -- my initial thought was that they were very similar 09:41:10
6  terms, which prompted my checking the dictionary for the
7  definitions, which is why those were on that list of
8  materials that I researched.
9     After reading those definitions, and looking
10  very carefully at the use of those two terms, I can say 09:41:36
11  that today I'm very confident of what their meaning is.
12  Q. And just so we're clear, in your declaration,
13  when you talk about the terms channel and cavity, you
14  nowhere cite the dictionary definitions provided to us
15  today in support of your interpretations; right?    09:41:59
16  A. Can you say that again?
17  Q. In your declaration, for the terms channel and
18  cavity, you don't cite those dictionary definitions we
19  received this morning, in support of your
20  interpretations or your opinions, do you?        09:42:11
21  A. No.
22  Q. Why not?
23  A. I looked at those definitions to clarify my
24  understanding of the difference between the two.
25  Q. So your confusion was between the two, not the  09:42:30

Page 53

14 (Pages 50 to 53)

**Page 54**

1 meaning of the two -- of the terms specifically; is that
2 correct?
3    A. Right.
4    Q. Were you very confident in your understanding of
5 the term channel at the time you signed your    09:42:51
6 declaration?
7    A. Well, I was -- I still had some questions about
8 it, but that was my best understanding of it at the time
9 that I signed the declaration.
10    Q. Has that understanding changed since then?    09:43:27
11    A. Yes.
12    Q. Why?
13    A. By going back and thoroughly examining the patent
14 language in conjunction with the illustrations.  The
15 term channel means, in my understanding as a designer,    09:43:48
16 the terms channel and cavity can be used
17 interchangeably.  The difference between them is not
18 significantly different.  And so because of that, I had
19 some questions about the terminology about them.
20    Q. That occurred after you signed your declaration?    09:44:18
21    A. I think, after I signed the declaration, that
22 I've resolved that issue.
23    Q. Did you resolve that of your own volition, or did
24 somebody ask you to resolve that confusion?
25    A. I solved that on my own.    09:44:35

**Page 55**

1    Q. When did it occur to you that you should solve
2 that confusion?
3    A. It's been an ongoing -- it's been an ongoing
4 issue.
5    Q. Do you intend to continue resolving or evolving    09:44:48
6 your definitions in this case?
7    A. Well, if new evidence is introduced that affects
8 some of the decisions that I've made, I certainly may
9 change my opinions.  I reserve that right.
10    Q. Do you?    09:45:10
11    A. If new evidence is provided, yes.
12    Q. And you'll change your opinions at any time, you
13 could potentially; right?
14    A. I wouldn't say at any time.  I would say only if
15 new evidence is produced that changes the facts of the    09:45:36
16 case.
17    Q. But with channel and cavity, you changed your
18 mind, with no new facts coming to light; isn't that
19 true?
20       MR. PEELER:  Object.    09:46:00
21 BY MR. HOGAN:
22    Q. You can answer.
23    A. I have changed my mind about that, yes.
24    Q. With no new facts coming to light; correct?
25    A. I think, with a clear reading of the patent, and    09:46:18

**Page 56**

1 particularly the illustrations.
2    Q. And that was an event you had before you filed
3 your declaration.  It was not new evidence, was it?
4    A. No.
5    Q. I hand the witness what's been marked    09:46:43
6 Exhibit K-7.
7       I'm not going to ask you a lot of detailed
8 questions about this.  This is a document bearing Bates
9 numbers P-280 to P-390.  I'll just ask you to flip
10 through it, sir, let me know if you recognize it.    09:47:06
11       MR. PEELER:  Can we take a quick break?
12       MR. HOGAN:  Let him answer the question and
13 we'll go.
14       MR. PEELER:  You didn't ask him a question.
15       MR. HOGAN:  I asked him if he recognized it.    09:47:18
16       THE WITNESS:  Yes.
17       MR. PEELER:  Let's take a break.
18       MR. HOGAN:  Can we keep it short, less than
19 10?
20       MR. PEELER:  How about three minutes.    09:47:26
21       MR. HOGAN:  Great.
22       THE VIDEOGRAPHER:  We're off the record at
23 9:47.
24       (A recess ensued.)
25       THE VIDEOGRAPHER:  We're back on the record    09:51:40

**Page 57**

1 at 9:51.
2 BY MR. HOGAN:
3    Q. Before we went on the break, I asked you, sir, if
4 you recognized Exhibit K-7.  Do you?
5    A. Yes.    09:51:51
6    Q. What is it?
7    A. It's the file history of the patent at issue.
8    Q. File history of the 358 patent?
9    A. Yes.
10    Q. You didn't reference it anywhere in your    09:52:01
11 declaration.
12    A. No.
13    Q. So is it correct, sir, that this file history, in
14 your view, has no impact at all on the claim
15 construction in this case?    09:52:12
16       MR. PEELER:  I'm going to object that you're
17 mischaracterizing his declaration.
18 BY MR. HOGAN:
19    Q. You can answer.
20    A. You want a yes or no answer to that.  Ask the    09:52:20
21 question again.
22    Q. Am I correct, sir, that the file history of the
23 358 patent doesn't affect your opinions in this case
24 about claim construction at all?
25    A. No, you're not correct.    09:52:38

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

1   Q. You didn't cite the file history anywhere in the
2   declaration, did you?
3        MR. PEELER: Objection. That
4   mischaracterizes his declaration.
5   BY MR. HOGAN:                              09:52:53
6   Q. You can answer.
7        Let me try this way. I'll ask you another
8   question. I think, in paragraph 4 of your declaration,
9   you state that you've considered the patent file
10  history. We'll get your declaration in a second. Do   09:53:03
11  you remember that part?
12  A. Yes.
13  Q. In support of your actual construction, your
14  actual terms, there's no citation to file history, is
15  there?                                      09:53:17
16        MR. PEELER: Objection; mischaracterizes his
17  declaration.
18  BY MR. HOGAN:
19  Q. Do you recall?
20  A. When I took on the case, I reviewed all of these   09:53:22
21  materials, pretty much all of the ones that are on the
22  list, before I began my work on the case.
23  Q. I didn't ask you that. What I want to know is,
24  in your opinion, the declaration, the number of
25  paragraphs, there's no citations to file history in   09:53:36

Page 58

1   support of your opinions, are there?
2        MR. PEELER: Objection. That
3   mischaracterizes his declaration.
4   BY MR. HOGAN:
5   Q. You can answer.                          09:53:47
6   A. There are none that are cited.
7   Q. None cited. Thank you.
8        How many times did you read the file
9   history, sir?
10  A. I already answered that question.        09:53:57
11  Q. If I asked you again, I'm sorry. Let me have it
12  one more time.
13  A. Probably about 20.
14  Q. File history and patent, 20 times?
15  A. I'm sorry. You said file history?        09:54:05
16  Q. Yes.
17  A. File history, I've read the file history probably
18  four times.
19  Q. Okay. Who did you get it from?
20  A. From Mr. Peeler.                         09:54:14
21  Q. You said earlier you think you read the patent,
22  the 358 patent in this case, about 20 times; right?
23  A. Yes.
24  Q. Was that before you signed your declaration on
25  March 13th?                                 09:54:30

Page 59

1   A. And after. Before and after.
2   Q. Can you tell me how many before, how many after?
3   A. I probably read it four or five times after.
4   Q. Do you know the name of the inventor of this
5   patent, Lisa Duer?                          09:55:07
6   A. I know her name.
7   Q. Did you ever speak to her?
8   A. No.
9   Q. Did you ever meet her?
10  A. Say again, please.                       09:55:11
11  Q. You never met her?
12  A. No.
13  Q. Never exchanged e-mails with her?
14  A. No.
15  Q. One second. Okay. Turn back, please, to   09:55:18
16  Exhibit K-6. That's the 358 patent. Do you have that
17  in front of you?
18  A. Yes.
19  Q. Do me a favor, please. The abstract section, see
20  that?                                       09:56:24
21  A. Yes.
22  Q. Read that to yourself; let me know when you're
23  done.
24        (Brief pause.)
25        THE WITNESS: Okay, I'm finished.       09:56:50

Page 60

1   BY MR. HOGAN:
2   Q. Okay. I'm going to read parts of this. It
3   starts out: A dosage reminder device is disclosed.
4   A. Yes.
5   Q. It skips down a couple lines, it says: Each   09:56:59
6   slide indicates a first position for a dosage not taken,
7   a second position to indicate a dosage taken, or to a
8   third position to indicate no dosage. See that?
9   A. Yes, sir.
10  Q. Okay. Indicate to whom? Do you know who they're   09:57:10
11  referring to?
12  A. It would be indicated to the user.
13  Q. To the user. One of your areas of study and
14  specialty is user focused design; right?
15  A. Yes.                                     09:57:24
16  Q. Okay. Do you need to have a specialty in user
17  focused design to understand indicate means the user of
18  the device here?
19  A. I don't think so.
20  Q. Indicates to the user. So the user looks at the   09:57:39
21  device when sliding the slides, or trying to see whether
22  a dosage is taken or not taken; right?
23  A. Some users may look at it.
24  Q. Some may feel the Braille on the side?
25  A. Some people may be blind, some people may just   09:57:53

Page 61

16 (Pages 58 to 61)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

1  not be looking at it when they use it.
2      Q. They could slide it, interact with it, but not
3  look at it; correct?
4      A. Correct.
5      Q. Turn, please, to column 7, line 41.  About          09:58:03
6  line 41. It starts at:  Each slide assembly.  See that?
7      A. Uh-huh.
8      Q. Read to yourself, please, Line 41 to about
9  lines -- in that paragraph, Line 47.  Let me know when
10  you're done, please.                                      09:58:34
11          (Brief pause.)
12          THE WITNESS:  Yes.
13  BY MR. HOGAN:
14      Q. Okay. I'm going to read the first sentence:
15  Each slide assembly, 200, is comprised of a slide base,   09:58:56
16  210, a slide base lock, 220, a slide base channel, 230,
17  a slide base channel surface, 240, and a finger button,
18  250, period.  See that?
19      A. Yes.
20      Q. In that sentence, this word of comprised, do you   09:59:11
21  know what comprised or comprises mean in a patent,
22  utility patent?
23      A. Yes.
24      Q. What's it mean?
25      A. It means a group of.                               09:59:21
Page 62

1      Q. Okay.  Continuing on, the next sentence.  Let's
2  see here:  The slide base channel surface may have one
3  or more distinctive colors to reinforce if a dosage has
4  been taken, e.g., red may show in the dosage taken
5  position, and a green may show in the dosage not taken    09:59:42
6  position, period; right?
7      A. Yes.
8      Q. Did I read that correctly?  Okay, so reading
9  that, what's the purpose of the colors?
10      A. The purpose of the colors is to reinforce the      09:59:53
11  position of the finger button, which indicates whether
12  or not a dosage has or has not been taken.
13      Q. So do the colors reinforce position or reinforce
14  whether a dosage is taken or not taken?
15      A. It reinforces the position.                        10:00:12
16      Q. And the color lets you know whether the dosage is
17  taken or not; right?
18      A. Color indicates that a dosage has been taken, but
19  doesn't guarantee that it's been taken.
20      Q. So the purpose of that is letting you know dosage   10:00:30
21  taken, not taken; right?  Green, not taken; red -- I'm
22  sorry, I have that backwards.  Red, dosage taken; green,
23  not taken.  Right?  That's the purpose of those?
24      A. Yes.
25      Q. Turn, please, one page over, to column 6, the      10:00:54
Page 63

1  very bottom.  Line 66 or so of column 6, over to
2  line 3 of column 7, read that to yourself, and let me
3  know when you're done.
4          (Brief pause.)
5          THE WITNESS:  Do you want me to read through      10:01:21
6  the figures?
7  BY MR. HOGAN:
8      Q. No, just stop at line 3.
9          This is basically saying -- it does say:  The
10  technology described herein, together with further        10:01:28
11  advantages thereof, may best be understood by reference
12  to the following description of the simplest form of the
13  invention, taken in conjunction with the accompanying
14  drawings in which -- and it lists Figures 1 through 5;
15  is that right?                                            10:01:41
16      A. Uh-huh, yes.
17      Q. So the patent specifically refers to the figures
18  in part of the description, doesn't it?  In that passage
19  we just looked at, it specifically refers to the
20  figures; right?                                           10:01:56
21      A. To what?
22      Q. It specifically refers to the figures in the
23  patent.
24          MR. PEELER:  Objection; vague.
25  BY MR. HOGAN:                                             10:02:03
Page 64

1      Q. It does; right?  It states:  Taken in conjunction
2  with the company drawings; right?
3      A. Yes.
4      Q. Turn to figure 2, please, of the 358 patent.  See
5  that figure?                                              10:02:53
6      A. Yes.
7      Q. You've seen that before; right?
8      A. Yes.
9      Q. There are four slides pictured on that image of
10  the device; correct?                                      10:03:05
11      A. That's correct.
12      Q. Do you see, there's the finger buttons?  See
13  those?
14      A. Yes.
15      Q. And you see there is the dosage indicators.  I     10:03:14
16  think they're labeled 140 in this figure.  See that?
17      A. Yes.
18      Q. See next to the finger buttons, there's like
19  crosshatching.  See the crosshatching?  They look
20  different on either side of the finger button.  Do you    10:03:27
21  notice that?
22      A. I don't see that they look different.  There's
23  not enough information here to see that.  I don't see
24  any crosshatching at all on the other side.
25      Q. You've written a book about using markers to       10:03:38
Page 65

17 (Pages 62 to 65)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

1  render figures, haven't you?
2      A. Uh-huh, yes.
3      Q. And I believe you espouse the virtues of detail
4  in making drawings and design, don't you?
5      A. Yes.                                    10:03:49
6      Q. And the details are important to the user;
7  correct?
8      A. Yes.
9      Q. And you're an expert on that, aren't you?
10     A. Yes.                                    10:03:55
11     Q. Okay. Figure 2, see the finger buttons?
12     A. Yes.
13     Q. See the base of the finger buttons, the
14  cross-hatchings? See those?
15     A. Yes.                                    10:04:02
16     Q. You see those; right?
17     A. Yes.
18     Q. Okay. Do you know what that's supposed to
19  represent?
20     A. That is supposed to represent what's described as   10:04:07
21  240. Is it all right if I refer to the patent?
22     Q. Oh, of course.
23     A. It refers to the slide base channel surface.
24     Q. Right. So the colors, the cross-hatchings,
25  that's used to indicate whether or not a dosage is   10:04:37

Page 66

1  taken; correct?
2      A. Or not taken.
3      Q. Or not taken, exactly. Thank you.
4          And this part, right, with the finger
5  buttons and dosage indicators, faces the user.   10:04:47
6      A. Can face the user, yes.
7      Q. Can the finger button -- let me ask you this.
8  For this invention, could the finger buttons and the
9  dosage indicators not face the user?
10     A. Certainly.                              10:05:07
11     Q. How would that indicate whether a dosage is taken
12  or not?
13     A. Well, I think that, as a person becomes
14  accustomed to using this particular device, they might
15  hold the vial in a way that the buttons are on this   10:05:16
16  side, and just by feeling, they know that they can lift
17  the switch to one side or the other. So I don't think
18  they always see it, but certainly, certainly in the
19  beginning when they're getting used to the device,
20  they're going to look at it.                  10:05:35
21     Q. In this figure 2, the buttons and the indicators
22  are on top, right, on this space of the image; correct?
23     A. Yes.
24     Q. There are no figures in the patent that show
25  finger buttons on the sides, are there? I understand   10:05:47

Page 67

1  your testimony, you think they could be there, but none
2  are shown in the figures, are they?
3      A. Okay. We have to be very careful about
4  terminology, because one of the -- you asked earlier if
5  there was any confusion in my reading of the patent, but   10:06:02
6  there are some elements of the patent that are described
7  as having a top, a bottom, a left side and a right side.
8  There are other parts that are described as having four
9  sides, and so it's not always consistent terminology
10  from one component to the other.              10:06:28
11     Q. Okay, that's fine. What I'm asking you is, are
12  there any figures in the patent that show the buttons on
13  the sides?
14     A. On the sides?
15     Q. Yes. Let me try this again.            10:06:37
16         Any figures in the patent of the buttons and
17  orientation, other than this way you see here, in
18  figure 2?
19     A. There's top feeders in figures 3 and 4.
20     Q. Right. And the buttons are oriented in view;   10:06:52
21  correct?
22     A. There's bottom views in figure 5.
23     Q. I'm sorry. Your contention is figure 5 shows the
24  buttons on the bottom of this device, or is it a view
25  from the bottom up?                          10:07:08

Page 68

1      A. From the bottom up of the finger buttons.
2      Q. And looking at figure 5, the buttons, specific
3  finger button hole, it would be on the top side,
4  consistent with figure 2; right?
5      A. Say that again.                         10:07:20
6      Q. So from figure 5, you're saying it's the
7  perspective view from the bottom, but the orientation of
8  the device is not any different. The finger buttons
9  still point to the finger button holes, in the same
10  orientation as on figure 2; correct?          10:07:34
11     A. Yes.
12     Q. Could you orient the buttons in a different way
13  for the device, like say in a circle?
14         MR. PEELER: What claim are you asking him
15  to construe at this point?                    10:07:49
16         MR. HOGAN: I'm asking the question about
17  construction. Do you have an objection outside the
18  scope? Thank you.
19         MR. PEELER: I just want to understand what
20  it is.                                       10:07:58
21  BY MR. HOGAN:
22     Q. You can answer, sir.
23     A. Ask your question again, please.
24     Q. Could you have the buttons in a circle?
25     A. On this device?                         10:08:05

Page 69

18 (Pages 66 to 69)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

| | |
|---|---|
| 1 | Q. Yes. |
| 2 | A. As it's configured? |
| 3 | Q. Yes. |
| 4 | A. Well, are you talking about a circle around the |
| 5 | device, around the vial?                        10:08:22 |
| 6 | Q. Let's try that one. |
| 7 | A. They could be redesigned so that you could |
| 8 | possibly do that, although it would be -- have a lot of |
| 9 | challenges in terms of manufacturing. |
| 10 | Q. Okay. Manufactured counters do it that way. How    10:08:40 |
| 11 | about this? Say like a rectangle, how about a circle |
| 12 | like this, not a rectangle, a circle like that. Can you |
| 13 | do it that way? |
| 14 | A. I believe, in the prior art, there are some |
| 15 | devices that are on top of the cap.                 10:08:54 |
| 16 | Q. Not on the cap, on the side, a circle on the |
| 17 | side. Does that work? |
| 18 | A. Circle on the side? I mean, you could make one, |
| 19 | whether or not it would be very usable. |
| 20 | Q. Wouldn't work very well; right?              10:09:07 |
| 21 | A. Yes. |
| 22 | Q. Circle structure wouldn't work very well? |
| 23 | A. I don't think so. |
| 24 | Q. Okay. The rectangular shape of the device, it |
| 25 | fits on the long axis of a pill bottle; right?     10:09:22 |

Page 70

| | |
|---|---|
| 1 | A. Yes. |
| 2 | Q. Instead of a curved back, so it fits right on the |
| 3 | pill bottle; right? |
| 4 | A. I believe that's the intent. |
| 5 | Q. Take out K-5. That's your declaration. I'm      10:09:34 |
| 6 | going to go through this declaration of yours. This |
| 7 | is -- it says at the top, declaration of Ronald |
| 8 | B. Kemnitzer; correct? |
| 9 | A. Yes. |
| 10 | Q. It was filed March 13th, 2015; right?          10:10:18 |
| 11 | A. Yes. |
| 12 | Q. And if you look at page 6 of 6, it's -- |
| 13 | when I say page 6 of 6, I'm referring to that legend at |
| 14 | the top. |
| 15 | A. Yes.                                           10:10:33 |
| 16 | Q. Page 6 of 6 says: I declare, under penalty of |
| 17 | perjury, that the foregoing is true and correct this |
| 18 | 13th day of March, 2015, and there's a signature there. |
| 19 | See that? |
| 20 | A. Yes.                                           10:10:45 |
| 21 | Q. Is that your signature there? |
| 22 | A. Yes. |
| 23 | Q. Okay. Please look back at page 1 of 6. |
| 24 |    Did you write this declaration? |
| 25 | A. Yes.                                           10:10:58 |

Page 71

| | |
|---|---|
| 1 | Q. Every single word? |
| 2 | A. I believe so. |
| 3 | Q. When I say write, I mean you pounded it out on |
| 4 | your own computer? |
| 5 | A. Yes.                                           10:11:07 |
| 6 | Q. And this declaration contains all of your |
| 7 | opinions of the claim we're in in this case; right? |
| 8 | A. Yes, at that time. |
| 9 | Q. At that time. Again, you keep referring to the |
| 10 | fact that you want to possibly change your opinions.    10:11:25 |
| 11 | A. Yes. |
| 12 | Q. Reserve the right to? |
| 13 | A. Yes. |
| 14 | Q. Am I right in understanding, sir, that you don't |
| 15 | have confidence in your declaration as written, that    10:11:40 |
| 16 | your opinions might change? |
| 17 | A. There's one item that I want to change. |
| 18 | Q. That's the slide base channel; correct? |
| 19 | A. Yes. |
| 20 | Q. We'll get to that in a few minutes.            10:11:54 |
| 21 | A. Okay. |
| 22 | Q. Anything else, as of right now, you think you |
| 23 | want to change? |
| 24 | A. No. |
| 25 | Q. Plaintiff's opening brief on claim construction,    10:12:02 |

Page 72

| | |
|---|---|
| 1 | you read it; correct? |
| 2 | A. Yes. |
| 3 | Q. Defendant's opening brief on claim construction, |
| 4 | have you read that? |
| 5 | A. Yes.                                           10:12:16 |
| 6 | Q. Did you change your mind about slide base channel |
| 7 | before or after you read defendant's brief? |
| 8 | A. After. |
| 9 | Q. After? |
| 10 |    Exhibit K-4 is plaintiff's opening claim    10:12:40 |
| 11 | construction brief. Pull that out. |
| 12 |    Backing up. Do you have any opinions about |
| 13 | claim construction that are not identified in your |
| 14 | declaration? |
| 15 | A. Not to my knowledge.                           10:12:58 |
| 16 | Q. So page 1 is introduction, page 2 has some |
| 17 | irrelevant legal stuff in it. Go to page 3, please. |
| 18 | A. Okay. |
| 19 | Q. See the subheading about halfway down, |
| 20 | construction disputed claim terms?                 10:13:22 |
| 21 | A. Uh-huh, yes. |
| 22 | Q. Second sentence starts, says: Plaintiff's |
| 23 | position is that claim terms should be given their |
| 24 | ordinary and customary meaning, period. Did I read that |
| 25 | right?                                            10:13:34 |

Page 73

19 (Pages 70 to 73)

A90308E
RONALD B. KEMNITZER      MARCH 26, 2015

| | |
|---|---|
| 1 | A. Yes. |
| 2 | Q. Therefore, plaintiff did not identify terms for |
| 3 | judicial construction; right? |
| 4 | A. Yes. |
| 5 | Q. You've read plaintiff's opening brief.  I have to |
| 6 | assume you've read your declaration because you signed |
| 7 | it and you wrote it; right? |
| 8 | A. That's a good assumption. |
| 9 | Q. Thank you. |
| 10 | The contents of certain paragraphs of your |
| 11 | declaration are almost verbatim, the same as plaintiff's |
| 12 | opening brief.  Did you notice that? |
| 13 | A. Yes. |
| 14 | Q. You didn't write plaintiff's opening brief, did |
| 15 | you? |
| 16 | A. No. |
| 17 | Q. Do you know who did? |
| 18 | A. Mr. Peeler. |
| 19 | Q. Did you have plaintiff's brief in front of you |
| 20 | when you wrote your declaration? |
| 21 | A. I don't recall. |
| 22 | Q. Is it possible? |
| 23 | A. It's possible. |
| 24 | Q. So it's possible you wrote your declaration, |
| 25 | copying right off the plaintiff's opening brief; right? |

10:13:46 (line 5)
10:14:06 (line 10)
10:14:20 (line 15)
10:14:48 (line 20)
10:15:14 (line 25)

Page 74

| | |
|---|---|
| 1 | A. No, I didn't copy right off plaintiff's opening |
| 2 | brief. |
| 3 | Q. How about writing words that seem identical to |
| 4 | plaintiff's opening brief in your declaration? |
| 5 | A. Am I permitted to discuss collaborations with the |
| 6 | client? |
| 7 | MR. PEELER:  No. |
| 8 | BY MR. HOGAN: |
| 9 | Q. You can't tell me? |
| 10 | MR. PEELER:  I don't know what the question |
| 11 | is. |
| 12 | THE WITNESS:  Would you ask the question |
| 13 | again, please? |
| 14 | BY MR. HOGAN: |
| 15 | Q. Yes.  Did you write your declaration with |
| 16 | plaintiff's brief in front of you, and substantially |
| 17 | using the same words in plaintiff's brief, and put them |
| 18 | in your declaration? |
| 19 | MR. PEELER:  Hold on.  Are you asking if he |
| 20 | typed it?  Because I typed it, the initial draft.  I |
| 21 | want to make sure the record is clear on that. |
| 22 | MR. HOGAN:  I think the record is clear. |
| 23 | BY MR. HOGAN: |
| 24 | Q. Would you answer my question, sir? |
| 25 | A. I don't recall. |

10:15:28 (line 5)
10:15:46 (line 10)
10:15:51 (line 15)
10:16:04 (line 20)
10:16:13 (line 25)

Page 75

| | |
|---|---|
| 1 | Q. Possible, though? |
| 2 | A. It could be possible. |
| 3 | Q. Okay.  Do you recall arriving at your opinions as |
| 4 | expressed in your declaration? |
| 5 | A. Yes. |
| 6 | Q. How did you arrive at them? |
| 7 | MR. PEELER:  Objection. |
| 8 | THE WITNESS:  Well, I read the opening claim |
| 9 | constructions of the plaintiff and the defendants', |
| 10 | and then I addressed the disputed terms.  I researched |
| 11 | the patent and came to my own conclusions. |
| 12 | BY MR. HOGAN: |
| 13 | Q. Okay.  I think defendants' brief was served after |
| 14 | plaintiff's brief, so you couldn't have seen defendants' |
| 15 | brief ahead of time.  Is there a draft of your |
| 16 | declaration in existence? |
| 17 | A. I don't think so. |
| 18 | Q. So when you talk about the plaintiff's |
| 19 | construction, do you mean the joint claim construction |
| 20 | brief -- the joint claim construction statement; right? |
| 21 | You don't mean the brief? |
| 22 | A. That's what I meant. |
| 23 | Q. And you're referring to the plaintiff's -- also, |
| 24 | claim construction.  Is that what you mean? |
| 25 | A. No, I'm -- I refer to the joint construction.  I |

10:16:38 (line 5)
10:17:02 (line 10)
10:17:24 (line 15)
10:17:56 (line 20)
10:18:03 (line 25)

Page 76

| | |
|---|---|
| 1 | did have a copy of the plaintiff's preliminary claim |
| 2 | construction -- |
| 3 | Q. In front of you? |
| 4 | A. -- early on in the case. |
| 5 | Q. You had that in front of you when you were doing |
| 6 | your declaration? |
| 7 | A. Yes.  Oh, well, I'm not sure that I did have it |
| 8 | in front of me.  The preliminary claim construction? |
| 9 | Q. Yes, the joint statement. |
| 10 | A. The joint statement? |
| 11 | Q. Yes. |
| 12 | A. The joint statement, I may have, but I don't |
| 13 | recall for sure. |
| 14 | Q. Okay.  Were you involved in creating plaintiff's |
| 15 | preliminary claim construction? |
| 16 | A. We had conversations. |
| 17 | Q. With Mr. Peeler? |
| 18 | A. Yes. |
| 19 | Q. Were they your proposals for the claim |
| 20 | constructions, or you don't recall? |
| 21 | MR. PEELER:  That's just a yes or no |
| 22 | question, or an, "I don't recall." |
| 23 | THE WITNESS:  Say it again, please. |
| 24 | BY MR. HOGAN: |
| 25 | Q. Were they your proposals? |

10:18:17 (line 5)
10:18:35 (line 10)
10:18:43 (line 15)
10:18:56 (line 20)
10:19:06 (line 25)

Page 77

20 (Pages 74 to 77)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

1   A. No.
2   Q. Do you recall anything else you used in coming to
3   formulate the declaration, the opinions stated in your
4   declaration? I know we have your Exhibit K-1, you
5   consulted that stuff, you said. But anything else you    10:19:22
6   specifically remember using in forming the opinions as
7   expressed in your declaration?
8   A. No.
9   Q. Did you take any notes in the course of preparing
10  your declaration?    10:19:35
11  A. Handwritten notes?
12  Q. Yes.
13  A. No.
14  Q. Typewritten notes on a computer?
15  A. Yes. I should clarify that. I did a very rough    10:19:50
16  outline on a computer and then evolved that. So those
17  steps weren't saved.
18  Q. Those steps weren't saved.
19  Did you have any notes, though? I mean,
20  conversations, notes about drafts, notes about issues    10:20:20
21  you made for yourself. Outlined in my book are notes.
22  If it's not in the form of a declaration, those are
23  notes. Anything that's not the declaration, do you have
24  copies of that?
25  A. I have notes in my file of the -- as I read the    10:20:35

Page 78

1   patent 20 times, and read the file histories and those
2   things, I made notes for myself, yes.
3   Q. Okay. Have you talked with anybody or otherwise
4   communicated with anybody, other than Mr. Peeler, about
5   claim construction in this case?    10:20:56
6   A. No.
7   Q. Have you e-mailed anybody about the claim
8   construction in this case other than Mr. Peeler?
9   A. No.
10  MR. HOGAN: We asked for production of    10:21:05
11  witness' notes on claim constructions.
12  MR. PEELER: I don't that think you're
13  entitled to those.
14  MR. HOGAN: We are.
15  MR. PEELER: I don't think you are.    10:21:12
16  MR. HOGAN: Factual notes, we're entitled to
17  production. We can fight about that later. It's on the
18  record.
19  BY MR. HOGAN:
20  Q. Paragraph 3 of your report, second sentence says:    10:21:23
21  Testimony is one of ordinary skill in the art.
22  A. Yes.
23  Q. What does that mean?
24  A. That means somebody who is qualified, through
25  education and experience, to have designed a similar or    10:21:37

Page 79

1   identical product.
2   Q. You used the phrase one of ordinary skill in the
3   art in that sentence; right?
4   A. Yes.
5   Q. And you wrote that sentence; right?    10:21:50
6   A. Yes.
7   Q. What's that phrase mean, one of ordinary skill in
8   the art?
9   A. I just answered that.
10  Q. Let me have it again.    10:22:00
11  A. It's one -- it's a person who, through education
12  and/or experience, is capable of designing the product
13  at issue.
14  Q. And that's your definition of a person of
15  ordinary skill in the art for this patent; right?    10:22:14
16  A. Yes.
17  Q. How much education?
18  A. For this particular product, in all honesty,
19  little.
20  Q. How much is little?    10:22:29
21  A. Well, I would base it on the inventor of it, who
22  had none, from my understanding.
23  Q. So you're basing your definition of a person of
24  ordinary skill in the art on the inventor?
25  A. No, I'm basing how much education one might have,    10:22:51

Page 80

1   based on the inventor.
2   Q. How do you know the inventor had no education?
3   A. I was told that.
4   Q. By whom?
5   A. Mr. Peeler.    10:23:00
6   Q. What kind of experience would a person with
7   ordinary skill in the art have for the 358 patent?
8   A. Well, anybody who has some knowledge of the issue
9   at hand, with taking medications and understanding the
10  problems associated with keeping track of whether a    10:23:21
11  medication has been taken or not; somebody who has
12  experience taking more than one medication, and that
13  includes just about all of us, I think. And somebody
14  who has some curiosity about how it might be made less
15  confusing and better, and just using practical    10:23:47
16  experience of how things work.
17  Through education, industrial designers really
18  have a good working knowledge of manufacturing processes
19  and materials.
20  Q. I want to stop you -- I'm sorry, go ahead.    10:24:04
21  A. But I think it would take a very low level of
22  sophistication of that knowledge for this particular
23  product.
24  Q. Okay. So you just told me that a person of
25  ordinary skill in the art would have little or no    10:24:21

Page 81

21 (Pages 78 to 81)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

1   education, and their experience relevant to the fact
2   would be taking medications or having problems taking
3   medications, or being confused taking it; is that right?
4       A. I said that a person could have little or no
5   education if it was supplemented -- I didn't say this        10:24:36
6   was supplemented by experience.
7       Q. Okay. But you keep talking about designers,
8   design engineers. If a person of ordinary skill in the
9   art, according to your definition, has little or no
10  education, and their experience includes taking             10:24:48
11  medication, why would what a designer thinks mean
12  anything in this case?
13      A. Why would what?
14      Q. Why would what a designer thinks means anything
15  in this case?                                               10:24:56
16      A. Because that's one of the tests for the patent.
17      Q. One of the tests for the patent?
18      A. Yes.
19      Q. What does that mean?
20      A. Well, for example of obviousness, the test is for    10:25:02
21  a person of ordinary skill in the art, would see that by
22  combining this -- an existing design with one or more
23  other designs, that you would make the equivalent of the
24  design at issue.
25      Q. I'm sorry, so you gave me your definition of a        10:25:21

Page 82

1   person of ordinary skill in the art with little
2   education, and experience includes taking medications or
3   being confused by medication. Then you say a person of
4   ordinary skill in the art would also have opinions about
5   design and obvious analysis. That's what you just told     10:25:35
6   me. So is the person with ordinary skill in the art any
7   of those? Is that your testimony, sir?
8       A. I think I said that it could be any of those,
9   yes. In this particular case it's not a complicated,
10  highly technical product. It's something that requires     10:25:56
11  very little experience in terms of manufacturing and
12  materials in order to develop the idea concept.
13      Q. Okay. And yet -- so given your testimony just
14  now, why does it matter what a designer thinks, if the
15  person with ordinary skill in the art has little           10:26:18
16  education and experience only taking medication?
17      MR. PEELER: Objection.
18  BY MR. HOGAN:
19      Q. Can you tell me that, sir?
20      A. I didn't say that.                                   10:26:30
21      Q. You didn't say that?
22      A. No.
23      Q. Okay. So if a designer could have opinions
24  relevant to what's obvious, by obvious designs, is that
25  the person with ordinary skill in the art, a designer?     10:26:37

Page 83

1       A. It is one of them.
2       Q. How many people with ordinary skill in the art
3   are there, in your mind?
4       A. In my mind, I think everybody has ordinary skill
5   in the art for something.                                  10:26:55
6       Q. I'm talking about this patent. I just want to
7   know if your definition for a person of ordinary skill
8   in the art, for purposes of this patent, is everyone.
9   Is that fair?
10      A. No.                                                  10:27:13
11      Q. What is it, then?
12      A. A person -- I answered that. A person who has
13  experience with taking medications, with the problems of
14  taking medications, with the problems of verifying
15  dosages taken, somebody with experience and/or knowledge   10:27:27
16  of that issue, knowledge of the range of solid oral
17  medication vials, and some basic understanding of how
18  things are made, how things are -- can work. It may be
19  through education or it may just be experience at
20  working, using products that have similar kinds of         10:28:00
21  actions, flipping a switch and seeing whether it's on or
22  off. Combined, all of those elements could result in a
23  person capable of designing this product.
24      Q. Okay. And I think in your declaration, and in
25  plaintiff's opening brief, it's replete with statements    10:28:20

Page 84

1   that the claim terms at issue have a plain, ordinary
2   meaning; right?
3       A. Uh-huh, yes.
4       Q. How did -- so you gave me your opinion what you
5   believe to be a person of ordinary skill in the art.       10:29:09
6   How did you arrive at that?
7       A. By studying the device, by the patent, complexity
8   of the patent, and that's pretty much it.
9       Q. Okay. Given that, are you a person of ordinary
10  skill in the art for this patent?                          10:29:35
11      A. Yes.
12      Q. Am I?
13      A. I don't know what your knowledge of manufacturing
14  methods are.
15      Q. I read the patent and the file history.             10:29:42
16      A. Okay.
17      Q. I've taken drugs.
18      A. Have you ever made anything?
19      Q. So are you saying to me now, that a parson of
20  ordinary skill in the art needs that knowledge of          10:29:55
21  manufacturing; is that correct?
22      A. I did say that.
23      Q. Okay.
24      A. I did say that. I said it could be as a result
25  of just using things, understanding how simple             10:30:03

Page 85

22 (Pages 82 to 85)

A90308E
## RONALD B. KEMNITZER     MARCH 26, 2015

| | |
|---|---|
| 1 mechanisms work, and then translating that knowledge | 1 **Q. Okay. Patent, file history, definition?** |
| 2 into this design. | 2 A. Yes. |
| 3 **Q. So in your mind that means -- that's** | 3 **Q. Okay. Nothing further; right?** |
| 4 **manufacturing. You didn't say manufacturing. You said** | 4 A. Not to my knowledge, that I can remember at this |
| 5 **it a second time. So manufacturing, a person of** 10:30:17 | 5 moment. 10:32:55 |
| 6 **ordinary skill needs a knowledge of manufacturing as** | 6 **Q. So would a person of ordinary skill in the art** |
| 7 **well; right?** | 7 **need to consider anything other than the patent style** |
| 8 A. Well, I may have been too general and said | 8 **history to understand the words in the patent? I** |
| 9 mechanical activities, mechanical. I mean, if a person | 9 **understood you used some definitions, but I'm asking** |
| 10 has enough curiosity to look at a wall switch and 10:30:41 | 10 **you, a person of ordinary skill in the art, could it be** 10:33:13 |
| 11 examine the flipping of it or the sliding of it, and | 11 **the patent itself, including the figures and the file** |
| 12 even taking that apart, I think they probably can | 12 **history, and understand the claims?** |
| 13 generate enough technical knowledge to have designed | 13 A. That's a broad statement. Would you repeat it |
| 14 this product. | 14 again, please? Sorry for asking you to do that, but I |
| 15 **Q. You say in your declaration a few times, the** 10:30:59 | 15 want to be correct. 10:33:46 |
| 16 **customary and ordinary meaning; right?** | 16 **Q. That's fine. That's fine.** |
| 17 A. Yes. | 17 **Can you tell me, would a person of ordinary** |
| 18 **Q. What's that mean?** | 18 **skill in the art need to consider anything other than** |
| 19 A. Well, a customary and ordinary meaning, I think, | 19 **the patent and the file history to understand the claim?** |
| 20 depends on context. For instance, the term channel. If 10:31:14 | 20 A. I think some could. I think others might benefit 10:34:04 |
| 21 you're standing in an irrigation field, it may have one | 21 from looking at the actual commercial embodiment of the |
| 22 meaning; if you're watching television, it may have | 22 patent to understand the patent. |
| 23 another meaning; and in this particular case, it has yet | 23 **Q. The commercial embodiment?** |
| 24 another meaning. | 24 A. Yes. |
| 25 **Q. So the shape or structure of channel varies from** 10:31:37 | 25 **Q. What's the commercial embodiment? Have you seen** 10:34:26 |
| Page 86 | Page 88 |

| | |
|---|---|
| 1 use to use; is that your testimony? | 1 it? |
| 2 A. No, that's not my testimony. | 2 A. Yes. |
| 3 **Q. Your testimony is the meaning of the word channel** | 3 **Q. How many switches does it have on top, how many** |
| 4 **is different, depending on where it's used, in a field,** | 4 **slides? Four or seven?** |
| 5 **as a device in this case --** 10:31:57 | 5 A. Yes. 10:34:35 |
| 6 A. Yes. | 6 **Q. Both?** |
| 7 **Q. -- for a guy in the street sweeping the gutters?** | 7 A. Yes. |
| 8 A. Uh-huh. | 8 **Q. Did you consider that in forming your opinion in** |
| 9 **Q. But isn't it true the essential physical** | 9 **your declaration?** |
| 10 **properties of channel never change? Same shape; right?** 10:32:06 | 10 A. Consider what? 10:34:42 |
| 11 **How else would you know what a channel is?** | 11 **Q. Let me ask this question. When you formulated** |
| 12 MR. PEELER: Object; compound. | 12 **the opinions in your declaration, did you consider the** |
| 13 THE WITNESS: Well, my interpretation of | 13 **commercial embodiment of the claimed invention in this** |
| 14 channel as it applies to this particular patent, has | 14 **patent?** |
| 15 been informed by a combination of definitions, word 10:32:20 | 15 A. No. 10:34:54 |
| 16 definitions, and what's illustrated in the patent. | 16 **Q. But you're -- so you're telling me that for a** |
| 17 BY MR. HOGAN: | 17 **person of ordinary skill to understand the claims, they** |
| 18 **Q. And the word definitions is one that was produced** | 18 **would have to read the patent, the file history, and it** |
| 19 **to us this morning; right?** | 19 **might be beneficial to look at the commercial** |
| 20 A. Yes. 10:32:34 | 20 **embodiment?** 10:35:07 |
| 21 **Q. Anything else you considered besides the patent?** | 21 A. Yes. |
| 22 **We'll assume the file history, and the definition you** | 22 **Q. When you say "the," and when I said commercial** |
| 23 **produced this morning.** | 23 **embodiment, does it have four slides or seven slides,** |
| 24 A. And working in conjunction with the illustration | 24 **you said yes. So in your mind, those two items are** |
| 25 of the patent. 10:32:43 | 25 **interchangeable; right?** 10:35:19 |
| Page 87 | Page 89 |

23 (Pages 86 to 89)

**A90308E**
**RONALD B. KEMNITZER     MARCH 26, 2015**

| | |
|---|---|
| 1  A. The patent does not define how many buttons it | 1  accused product, which is in one of the exhibits that |
| 2  has. It's the plurality of buttons, so I would assume | 2  are listed in the materials. |
| 3  two or more. | 3  Q. Do you plan on preparing and serving a follow-up |
| 4  Q. Which embodiments have you seen? | 4  report? |
| 5  A. I've seen the Duer embodiment and the accused  10:35:35 | 5  A. Yes.  10:37:40 |
| 6  product. | 6  MR. PEELER: Hold on. |
| 7  Q. The Duer embodiment had four slides; right? | 7  THE WITNESS: If asked. |
| 8  A. I believe so. | 8  MR. PEELER: Thank you. |
| 9  Q. And the accused device has seven slides? | 9  MR. HOGAN: If he provides a report, we |
| 10  A. Seven slides.  10:35:55 | 10  reserve the right to depose him again on that report.  10:37:52 |
| 11  Q. Do you know who manufactured either of those two | 11  MR. BURWELL: And just to be clear, a |
| 12  items? | 12  follow-up report related to claim construction? |
| 13  A. Do what? | 13  MR. PEELER: It's his question. Ask him. |
| 14  Q. Do you know who manufactured those two items? | 14  MR. HOGAN: His answer. |
| 15  A. I believe the accused product was manufactured by  10:36:03 | 15  MR. PEELER: Ask him what he meant by the  10:38:04 |
| 16  one of the defendants. | 16  question. |
| 17  Q. And the Duer version with four slides, who made | 17  BY MR. HOGAN: |
| 18  that? | 18  Q. Did you understand what I meant by the question, |
| 19  A. I don't know. I don't know the name. | 19  sir? |
| 20  Q. You said that the seven slide, you think was made  10:36:15 | 20  MR. PEELER: I did not.  10:38:07 |
| 21  by one of the defendants. How do you know that? | 21  THE WITNESS: You asked if I was going to |
| 22  A. I was told that. | 22  prepare another report. |
| 23  Q. By whom? | 23  BY MR. HOGAN: |
| 24  A. Mr. Peeler. | 24  Q. Yes, on claim construction. |
| 25  Q. Could it have been made by Duer?  10:36:24 | 25  A. I don't think you said claim construction.  10:38:12 |
| Page 90 | Page 92 |

| | |
|---|---|
| 1  A. Well -- | 1  Q. I'm clarifying. On claim construction. |
| 2  MR. PEELER: What, the accused device was | 2  A. No. |
| 3  made by her? | 3  Q. No? |
| 4  MR. PEELER: Object or be quiet. | 4  A. I think we'll file -- |
| 5  BY MR. HOGAN:  10:36:36 | 5  MR. PEELER: Don't guess about what I might  10:38:20 |
| 6  Q. Do you understand the question? | 6  ask you to do for me. |
| 7  MR. PEELER: Objection. I don't understand | 7  BY MR. HOGAN: |
| 8  the question. | 8  Q. In other words, it's possible you may prepare |
| 9  BY MR. HOGAN: | 9  other declarations in this case, on other issues. Is |
| 10  Q. Do you understand the question, sir?  10:36:42 | 10  that what you mean to say?  10:38:30 |
| 11  A. Ask it again, please. | 11  A. If asked. |
| 12  MR. HOGAN: Would you read it back to him | 12  Q. Understood. |
| 13  before the colloquy, please. | 13  Turn to paragraph 5 of your declaration, |
| 14  (The record was read by the reporter as | 14  please. You read that paragraph; right? |
| 15  requested.)  10:36:57 | 15  A. Uh-huh.  10:38:46 |
| 16  MR. PEELER: Objection. | 16  Q. What's your definition of front plate? Sorry. |
| 17  BY MR. HOGAN: | 17  Let me ask that again. |
| 18  Q. Could the seven-slide version have been made by | 18  What's your construction of front plate? |
| 19  Duer? | 19  MR. PEELER: I'm going to object to that. |
| 20  A. It looks to me like it could have been, yes.  10:37:03 | 20  The court's going to construe the claim terms.  10:39:03 |
| 21  Q. Do you know for a fact whether the one you saw | 21  Q. You can answer. |
| 22  with seven slides was made by Duer or made by the | 22  MR. PEELER: Subject to that, you can |
| 23  defendants? | 23  answer. |
| 24  A. I believe that the one that I saw with the seven | 24 |
| 25  slides matched one of the photographs that I saw of the  10:37:17 | 25  BY MR. HOGAN:  10:39:12 |
| Page 91 | Page 93 |

A90308E
RONALD B. KEMNITZER      MARCH 26, 2015

1   Q. I'm looking at paragraph 5 of your declaration.
2   That's what I'm asking you about. What's it state
3   there?
4   A. It means the front structure of the dosage strip.
5   And I can refer to figure 1 and point out what I'm          10:39:23
6   referring to.
7   Q. Possibly. Let me ask you. So in paragraph 5 of
8   your declaration in this case, in support of claim
9   construction, there's no citation in this paragraph to
10  anything; isn't that true?                                   10:39:37
11  A. That's true.
12      MR. PEELER: I object to that.
13      THE WITNESS: I refer to the patent in the
14  file history.
15  BY MR. HOGAN:                                                10:39:48
16  Q. Where? Not in paragraph 5, you don't.
17  A. In context of the patent and file history.
18  Q. But you cite nothing specifically, no pages, no
19  line numbers; right?
20  A. No.                                                       10:39:55
21  Q. There's no extrinsic evidence, no dictionary
22  cited here.
23  A. No.
24  Q. No treatise cited here.
25  A. No.                                                       10:40:04
Page 94

1   A. Now, I understand -- I don't think it gives an
2   unusual meaning. I think it refers to the overall
3   structure of that particular part, which is referred to
4   in the abstract as the front plate, one of the three
5   main components.                                             10:42:01
6   Q. And your opinion is the ordinary and customary
7   meaning of the front plate is what's stated in
8   paragraph 5; right?
9   A. Yes, it's the plate on the front.
10  Q. Do you think the meaning of front plate is clear,         10:42:13
11  after considering the patent and the file history?
12  A. Yes.
13  Q. What's the ordinary and customary meaning of the
14  word plate?
15  A. In my understanding as a designer, it is a panel.         10:42:46
16  For instance, it can have a lot of different meanings.
17  A plate, there's a wall plate right over there on the
18  wall, a switch. That's a plate. There's a plate,
19  serving plate. There are plates on a ship.
20  Q. Those are examples of a plate. What's plate               10:43:21
21  mean?
22  A. A plate means a structure.
23  Q. A structure?
24  A. Yes.
25  Q. This arm of this chair I'm sitting in is a                10:43:29
Page 96

1   Q. No publication cited here.
2   A. No.
3   Q. That's your opinion; correct?
4   A. Yes.
5   Q. Given this paragraph 5 being the embodiment of            10:40:09
6   your opinion, do you think you need to provide any
7   additional explanation for the meaning of this term?
8   A. No.
9   Q. You said see figure 1. Is all of your opinion
10  about the meaning of front plate contained in                10:40:41
11  paragraph 5 of your declaration?
12  A. Yes, the front structure of the assurance dosage
13  strip.
14  Q. Yet you want to see figure 1 to point that out?
15  A. If you ask me to, I will.                                 10:40:53
16  Q. You didn't say figure 1 here in paragraph 5, did
17  you? No, you didn't. That's okay. I know the answer.
18      In your view, does the patent give any
19  unique or uncommon meaning to the term front plate?
20  A. Are you...                                                10:41:19
21  Q. We're on paragraph 5 still.
22  A. Ask the question again.
23  Q. Absolutely. In your opinion, does the patent
24  give any unusual or uncommon meaning to the term front
25  plate?                                                       10:41:34
Page 95

1   structure. That's also a plate by your definition;
2   correct?
3   A. No, it's a structure. A plate can be flat, it
4   can be rounded.
5   Q. None is provided in paragraph 5, is it, that you          10:43:48
6   just told me? It's not there, is it?
7   A. No.
8   Q. In your declaration, you said there's nothing in
9   the patent -- go to exhibit -- just to make it easier,
10  open K-4 next to your declaration, make your life            10:44:12
11  easier. I think you have it right there.
12      On page 4 you say at the bottom, last
13  sentence or so: There's nothing in the patent or its
14  file history that adds the requirement that the front
15  plate be, quote-unquote, thin, contrary to thin as           10:44:28
16  proposed construction. You wrote that there; right.
17      MR. PEELER: Where?
18      MR. HOGAN: Page 4 of Exhibit 4. I'm sorry,
19  page 4 of the brief.
20      MR. PEELER: He didn't write the brief. He                10:44:40
21  didn't tell you about the brief.
22  BY MR. HOGAN:
23  Q. I'll read from your declaration, which is
24  virtually verbatim to the brief. It says: Nothing in
25  the patent adds the requirement that the front plate be,     10:44:50
Page 97

25 (Pages 94 to 97)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

1   quote-unquote, thin.  See that?
2       A.  Yes.
3       Q.  Could the device work if the plate was thick?
4       A.  The plate is not of uniform thickness.  The plate
5   also includes the structure on the bottom side, which         10:45:10
6   has ribs.  I think it cannot be described as thin
7   because it...
8       Q.  It's your testimony --
9           MR. PEELER:  Hold on.
10          Were you finished with your answer?              10:45:25
11          THE WITNESS:  No -- yes, I am finished.
12  BY MR. HOGAN:
13      Q.  Okay.  You just testified that the plate includes
14  the bottom side as well; is that correct?
15      A.  Yes.                                            10:45:34
16      Q.  Of the plate or of the device?  I'm not sure I
17  understand.
18          MR. PEELER:  I'm going to object that
19  there's more than one plate referenced, and I want to
20  make sure we get a clear record.                        10:45:49
21          MR. HOGAN:  Stop coaching the witness,
22  Charlie.  You can object.  Don't say anything.
23          MR. PEELER:  What I'm not going to do is sit
24  here --
25          MR. HOGAN:  It's clarified.  You tried to do    10:45:56

Page 98

1   that.  You have to be quiet.
2           MR. PEELER:  It's your job to trick him by
3   not using the terms that are in the patent.
4           MR. HOGAN:  It's a term he used.  Object to
5   vague.                                                  10:46:07
6           MR. PEELER:  In your question, you're
7   talking about --
8           MR. HOGAN:  Stop talking, Charlie.
9           MR. PEELER:  In your question you're talking
10  about front plate, and then you drop the front, and you 10:46:12
11  start talking about the plate.  You know there's
12  something called a face plate.  So ask a clear question
13  and I won't object.
14          MR. HOGAN:  Are you done coaching the
15  witness, Charlie?                                       10:46:24
16          MR. PEELER:  I never began.
17          MR. HOGAN:  You just did.  All this colloquy
18  was completely irrelevant.
19          Here's the story.  We'll go back and review
20  Rule 30 again.  I'm sure you've not read that one.  You 10:46:27
21  can object to form or on privilege.
22          The coaching and the talking, if he's not
23  sure what a question means, I expect of you this
24  morning, ask for clarification.  I'll gladly give it.
25  I'll ask a new question, or I'll read the question back. 10:46:41

Page 99

1   You don't need to clarify it for him.  I'm asking him
2   the questions, not you.
3   BY MR. HOGAN:
4       Q.  Pardon me, sir, I'm sorry.  Let's go back to
5   where we were, shall we?                                10:46:50
6       A.  Yes.
7       Q.  I asked you a question, could the plate be thick.
8   We're talking about the term front plate in the patent.
9   We're looking at paragraph 5 of your declaration.  You
10  say:  Defendants' construction is wrong because in      10:47:03
11  another climate it would be thin.  Could the front plate
12  be thick?
13      A.  Nowhere in the patent is it described as thick or
14  thin, but the illustration in figure 1 shows it to be
15  of -- in a dimension from the top surface to the bottom 10:47:18
16  surface, varying thicknesses.
17          I think thin is a limiting definition of it,
18  because I can see clearly in figure 1, three separate
19  thicknesses.
20      Q.  Three separate thicknesses.                     10:47:51
21      A.  Are you talking --
22      Q.  Figure 1.  Three separate structures in figure 1?
23  Are you talking about --
24      A.  Three separate --
25      Q.  -- the front plate?                             10:48:03

Page 100

1       A.  The front plate has three separate thicknesses.
2   It's shown.
3       Q.  Point them out.
4       A.  This edge, this edge, that edge.  Those are
5   thicknesses.  That they extend is not a complete        10:48:16
6   definition of it.
7       Q.  You say in your CV and your personal statement of
8   professional experience, you're -- you have experience
9   in manufacturing and industrial design; right?
10      A.  Uh-huh.                                         10:48:33
11      Q.  Isn't it true, when you make consumer devices,
12  and devices like this, the thickness of the device for
13  molded plastic should be uniform; isn't that true?
14      A.  Not necessarily at all.
15      Q.  When is that not necessarily true?              10:48:43
16      A.  All the time.  All the time.
17      Q.  Based on?
18      A.  Well, the particular need of the product.
19      Q.  Is there a need in this instance, that you're
20  aware of?                                               10:48:59
21      A.  No, not at all.
22      Q.  Why don't you look at the patent, paragraph 6.
23  I'm sorry, column 6.  Column 6, starting at Line 25.
24  I'm going to read 25 to about 27:  The assurance dosage
25  strip is dimensioned to be placed on a container, e.g., 10:49:38

Page 101

26 (Pages 98 to 101)

A90308E
## RONALD B. KEMNITZER     MARCH 26, 2015

| | |
|---|---|
| **Page 102** | **Page 104** |

1 medicine vial, vitamin bottle, etc., to facilitate the
2 proper taking of the contents of the container.  See
3 that?
4     A. Uh-huh, yes.
5     Q. That doesn't suggest to you that the device      10:49:52
6 itself should also be thick and uniform so the pill
7 bottles can be attached to it?
8     A. No, it doesn't say that to me.
9     Q. As an expert designer, you think -- that says
10 that to you; right?  That doesn't suggest that?      10:50:09
11         MR. PEELER:  Objection; vague.
12         THE WITNESS:  Wasn't your question the front
13 plate?
14 BY MR. HOGAN:
15     Q. Yeah.      10:50:16
16     A. The front plate doesn't come in contact with the
17 pill bottle.
18     Q. But the device --
19     A. The back plate.
20     Q. The device is on the pill bottle, right, and the      10:50:22
21 front plate is part of the device?
22     A. No, I interpret that as referring to the back
23 plate, not necessarily the front plate.  The front plate
24 could be any shape and it could still be attached to the
25 container.      10:50:49

Page 102

1     Q. It could be a circle?
2     A. It's irrelevant as to what it would be, but if
3 the back plate is curved, and the same curvature as the
4 container, it can be attached.  The front plate could
5 have spikes on it and it's still attached to the      10:51:04
6 container, which is what it says.  It doesn't, in my
7 mind, predicate the shape of the front plate.
8     Q. Does the word spikes appear in the paragraph I
9 just read?  Is that what your testimony is?
10     A. My testimony is that this paragraph, line 23 --      10:51:22
11 25, in column 6, does not address the shape or
12 configuration of the front plate.
13     Q. I was talking about the thickness, though.  Still
14 the same testimony?  It doesn't affect the thickness of
15 the front plate?      10:51:39
16     A. No.
17     Q. All right.  Let's go to paragraph 6 of your
18 report.  Do you have that in front of you?  That's K-5.
19     A. I'm sorry?
20     Q. We're on your report, K-5, paragraph 6.      10:51:57
21     A. My declaration?
22     Q. Yes.  I said your report; I'm sorry, I mean
23 declaration.
24         It's on the bottom of page 1 and it goes to the
25 top of page 2.  Got that?      10:52:16

Page 103

1     A. Yes.
2     Q. Okay.  In paragraph 6 you state:  The front plate
3 body means the body of the front plate.
4     A. Yes.
5     Q. Right?  You provide no explanation for that      10:52:36
6 meaning, no rationale, no details here; isn't that
7 right?
8         MR. PEELER:  Objection.
9         THE WITNESS:  Correct.
10 BY MR. HOGAN:      10:52:49
11     Q. Correct.  The next couple sentences of
12 paragraph 6, you say why the defendant's construction is
13 incorrect; right?
14     A. Say that --
15     Q. I'm sorry, I'll say that again.  The next two      10:53:03
16 sentences of paragraph 6 and to the end of paragraph 6,
17 you give reasons why you believe defendant's
18 construction of front plate body is wrong; right?
19     A. Well, I also say in the context of the patent and
20 file history, which includes the images of the patent as      10:53:24
21 well as the keys to the patent, which are here.  The
22 front plate is number 100, which includes that entire
23 structure.
24     Q. Okay, so let's try it again.  So paragraph 6
25 consists of three sentences; right?      10:53:49

Page 104

1     A. Okay.
2     Q. The first sentence says:  In the context of the
3 patent and file history, the front plate body means the
4 body of the front plate.
5     A. Yes.      10:54:03
6     Q. The other two sentences, you talk about why the
7 defendants' construction is wrong; right?
8     A. Right.
9     Q. Okay.  In paragraph 6 you provide no rationale
10 and no description why you think front plate body means      10:54:14
11 the body of the front plate.  All you have is the one
12 sentence here; right?
13     A. I think that's sufficient.
14     Q. Okay.  And you make no such cite to the patent
15 and the file history; right?      10:54:29
16     A. I do not call out those numbers, but I refer to
17 the fact that the patent, and file history in
18 particular, the patent clearly states that.
19     Q. You make no specific cites to the patent, file
20 history in paragraph 6; right?      10:54:43
21     A. No.
22     Q. You make no specific cite to --
23     A. Except that I consider in the context of the
24 patent to be a specific reference.
25     Q. With no column, no line number, no page listed      10:54:52

Page 105

27 (Pages 102 to 105)

A90308E
RONALD B. KEMNITZER      MARCH 26, 2015

1   here.  Answer me that.  You have no column, no line
2   number, no page in paragraph 6; isn't that true?
3       A. I didn't see that in these either.  I didn't feel
4   it was necessary to do that.
5       Q. That's fine.                          10:55:10
6       A. I didn't see those citations even in the joint
7   claim construction.
8       Q. Okay.  I appreciate that.  The fact is, they're
9   not in your declaration, are they?
10      A. No.                                    10:55:23
11      Q. You cite no publication, no treatise, no article?
12      A. No, I did cite a publication.  I cited the
13  patent.
14      Q. No other publications, no treatise, no articles,
15  no scholarly articles --                     10:55:34
16      A. No.
17      Q. -- correct?
18          Do you think the patent gives the term front
19  plate body a unique or uncommon meaning?
20      A. I think --                             10:55:47
21          THE VIDEOGRAPHER:  Excuse me.  Could you
22  move the paper off of the microphone.
23          THE WITNESS:  Oh, I'm sorry.
24          Do you mind if I tear these pages apart?
25  BY MR. HOGAN:                                 10:56:15

Page 106

1       Q. I gave you a set of documents for that purpose.
2   Here's the exhibit.  You can tear that one up as you see
3   fit.
4       A. I will say that there are a lot of numbers
5   referring to these illustrations, and I confess that I   10:56:40
6   have not memorized all of the numbers and their
7   corresponding names.  So having this will help me.
8       Q. So I guess my question I have asked, I'll reask
9   it after you've looked at the documents for a second.
10  Does the patent give the claim term front plate body an  10:57:05
11  uncommon or unique meaning?
12      A. I think in order for me to get my mind wrapped
13  around that, I had to really sort out the numbering
14  system on the patent and its correlation to the terms.
15  And this 100 is pointing to that top plate, but not      10:57:30
16  touching it, and it says the front plate body is
17  comprised of the front plate body, or the front plate is
18  comprised of a front plate body, 110.
19          Now, that's not pointing to any of these
20  other elements, so my interpretation of what the front   10:57:57
21  plate body is, is just that, front plate body, devoid of
22  finger button holes, Braille knobs, et cetera.
23      Q. And I will direct you briefly, sir -- I want to
24  ask two things.  The description you just gave me in
25  support of your construction or understanding of front   10:58:21

Page 107

1   plate body, that's not in your declaration, is it?  It's
2   one sentence, without the explanation you just gave me;
3   right?
4       A. Right.
5       Q. Paragraph -- column 7, line 37 of the patent,    10:58:36
6   I'll read that sentence to you:  The front plate, 100,
7   is comprised of a front plate body, 110, a face plate,
8   115, a rib edge, 120, et cetera, et cetera.  See that?
9       A. Yes.
10      Q. Okay.  Isn't the numeral 110 labeled in figure 1?  10:59:08
11      A. Yes.
12      Q. Yes, it is.  I guess, does the patent give unique
13  or uncommon meaning to this claim term, front plate
14  body?
15          MR. PEELER:  Objection; asked and answered.   10:59:25
16          THE WITNESS:  Yes.
17  BY MR. HOGAN:
18      Q. It gives a unique, uncommon meaning to it?
19      A. Uncommon?  What do you mean by uncommon?
20      Q. I'm asking you, does it?  Is the meaning of front  10:59:34
21  plate body in this patent unique and uncommon?
22      A. I don't know that it's uncommon.  I will say that
23  it took me a little bit of time reading through this
24  numerous times, and going through the numbering system
25  and the descriptions, to really get my mind wrapped      10:59:55

Page 108

1   around what they are describing, as compared to the
2   numbers and the illustrations.
3       Q. Do you think front plate body in this patent has
4   its ordinary and customary meanings?
5       A. Yes.                                   11:00:19
6       Q. Okay.  Do you think the meaning of front plate
7   body is clear, after considering the patent figures?
8       A. Yes.
9       Q. I want to -- so the term is front plate body;
10  right?  We agree on that?                     11:01:10
11      A. Yes.
12      Q. Okay.  I want to ask you a related question.
13  What's the customary and ordinary meaning of body?
14      A. Body refers to an overall structure.
15      Q. In plaintiff's construction, a front plate body   11:01:24
16  is the body of the front plate?
17      A. Yes.
18      Q. And the body is the overall structure?
19      A. Yes.
20      Q. You don't provide a definition or explanation of  11:01:32
21  body in your declaration, do you?
22      A. No.  Only in terms of referring to the patent,
23  which refers to it as that.
24      Q. I'm going to look at that real quick.  Keep your
25  dec. open.  You have figure 1 there; right?  11:02:00

Page 109

**Page 110**

1   A. Yes.
2   Q. Okay. Go to figure 1. Front plate body is 110;
3   right? See that?
4   A. Yes.
5   Q. And the face plate is 115.                    11:02:07
6   A. Yes.
7   Q. See that?
8   A. Yes.
9   Q. The finger button holes and dosage indicators are
10  shown in figure 1 on the face plate; right?        11:02:16
11  A. Yes.
12  Q. And in 110, there's no finger button hole or
13  dosage indicator shown; right?
14  A. Yes.
15  Q. In this figure 1, in this -- actually, figure 1,  11:02:24
16  all the figures in the patent, is there a dosage
17  indicator or a finger button on the front plate body, at
18  space 110?
19  A. Space 110 includes the base plate.
20  Q. That's not what I asked you, sir. Does any        11:03:10
21  figure in the patent show a finger button hole, a finger
22  button, or a dosage indicator on space 110?
23  A. No.
24  Q. No.
25  A. I take that back. Again, 110 includes part       11:03:19

**Page 111**

1   number 115, which is the face plate. The patent -- I
2   can explain my rationale for this.
3   Q. And none of this is in your declaration, by the
4   way; correct?
5   A. No.                                              11:03:40
6   Q. The explanation you're giving me now.
7   A. No.
8   Q. None of it's there?
9   A. No.
10  Q. In this --                                       11:03:46
11      MR. PEELER: Hold on. He wasn't done.
12      THE WITNESS: No.
13  BY MR. HOGAN:
14  Q. You weren't done?
15  A. No, I wasn't finished.                           11:03:53
16  Q. Go ahead.
17  A. Number 100 -- the way they have numbered the
18  patent drawing on figure 1 there's a 100, 200, 300.
19  Those arrows do not -- they point to those three basic
20  structures that are in the abstract.               11:04:09
21      110 refers to the face plate body. We know
22  in the patent that it has a plurality of finger holes.
23  The finger holes can change. There could be anywhere
24  from two to as many as you can cram on there.
25      This preferred embodiment illustrates four    11:04:29

**Page 112**

1   finger holes, but that -- the patent doesn't limit it to
2   four finger holes, it allows for expansion of the number
3   of finger holes.
4       That's accomplished -- in this particular
5   version of this, the face plate is raised from the      11:04:51
6   surface of the --
7   Q. Front plate body?
8   A. -- front plate body to create the area in which
9   the slide, the cavities are going to be created. So the
10  face plate, in order to accommodate this flexibility    11:05:13
11  that's a part of the patent, can expand, or can get
12  longer or shorter. So the face plate is that portion of
13  the front plate that is raised. That can change. Okay?
14      So conceivably, if you added enough holes,
15  like seven, the face plate could extend from top to      11:05:39
16  bottom, and this surface that you want to refer to as a
17  separate element could disappear, and that's --
18  Q. So -- I'm sorry, go ahead.
19  A. And also, in my mind, that's been clarified by
20  the numbering system, where all of the principal        11:05:57
21  elements of the design are numbered in 10s. So it's
22  110, 120, 130, and you can see that the face plate is
23  number 115, which tells me that it's a subset of 110.
24  Q. And in that seven-hole embodiment; right?
25  A. Yeah.                                             11:06:25

**Page 113**

1   Q. Structure 110 couldn't exist; right?
2   A. It disappears.
3   Q. It disappears, it's not there?
4   A. Not there. Now, no, no, 110 doesn't disappear.
5   110 is still the overall structure. It's just that     11:06:35
6   recess, that lower level that goes away.
7   Q. I think, when you say 110 of the overall
8   structure, 100 is the front plate, and you referred to
9   the arrow. Front plate body is not the overall
10  structure, front plate is; correct?                    11:06:53
11  A. Front plate is everything.
12  Q. On the front plate?
13  A. It's the front plate body, the holes, the
14  Braille, all of those things.
15  Q. Does element 110 include element 120, under your   11:07:04
16  opinion?
17  A. Well, no. I think those, in terms of them all
18  being -- if we look at 100 as being the overall,
19  everything, I think 110 and 120 are two separate
20  elements.                                              11:07:38
21  Q. And 140 would be a separate element as well;
22  right?
23  A. Yes.
24  Q. How does 110 differ from 100?
25  A. 110 is a component of 100. One of several         11:07:49

A90308E
## RONALD B. KEMNITZER     MARCH 26, 2015

| | |
|---|---|
| 1 | components of 100. |
| 2 | **Q. Take a look on page two of your declaration.** |
| 3 | **Paragraph 7 starts out: In the context of the patent** |
| 4 | **and file history, the term front plate top side means** |
| 5 | **surfaces of the front plate generally visible to the** 11:08:21 |
| 6 | **user during normal use. Did I read that right?** |
| 7 | A. Uh-huh. |
| 8 | **Q. Okay. So the term here is front plate, top side.** |
| 9 | **The second sentence says: Front plate, top side, in** |
| 10 | **quotes, simply refers to the top side of the front plate** 11:08:41 |
| 11 | **as distinguished from the bottom side of the front** |
| 12 | **plate. Did I read that sentence correctly?** |
| 13 | A. Yes. |
| 14 | **Q. And there's a cite there that says see, e.g.,** |
| 15 | **column 7, line 21; right?** 11:08:53 |
| 16 | A. Uh-huh. |
| 17 | **Q. Okay. Then if you look at the next two sentences** |
| 18 | **of paragraph 7, read them to yourself and let me know** |
| 19 | **when you're done.** |
| 20 | A. What am I reading? 11:09:13 |
| 21 | **Q. The next two sentences of paragraph 7 of your** |
| 22 | **declaration.** |
| 23 | A. Starting with "contrary"? |
| 24 | **Q. Yes.** |
| 25 | (Brief pause.) 11:09:22 |

Page 114

| | |
|---|---|
| 1 | BY MR. HOGAN: |
| 2 | **Q. Finished?** |
| 3 | A. Uh-huh. |
| 4 | **Q. Those two sentences there, you're stating why you** |
| 5 | **think defendants' construction is wrong; right?** 11:09:46 |
| 6 | A. Uh-huh. |
| 7 | **Q. Okay. So the first two sentences of paragraph 7** |
| 8 | **talk about plaintiff's construction, the second two** |
| 9 | **sentences of paragraph 7 talk about defendants'** |
| 10 | **construction; right?** 11:10:01 |
| 11 | A. Uh-huh. |
| 12 | **Q. So this is the only rationale you provide in the** |
| 13 | **first two sentences of paragraph 7 about the meaning of** |
| 14 | **that claim term; right?** |
| 15 | A. Uh-huh. 11:10:10 |
| 16 | **Q. No further description, no explanation, just the** |
| 17 | **two sentences; right?** |
| 18 | A. Right. |
| 19 | **Q. And then you reference column 7, line 21. Turn** |
| 20 | **to column 7, line 21, please. And that's -- the middle** 11:10:22 |
| 21 | **of the paragraph, that says -- I'll read the first** |
| 22 | **sentence: The technology disclosed herein will now be** |
| 23 | **described in -- that's Line 20. Line 21 -- in detail** |
| 24 | **with reference to at least one preferred embodiment.** |
| 25 | **That's line 21; right?** 11:10:46 |

Page 115

| | |
|---|---|
| 1 | A. Uh-huh. |
| 2 | **Q. You're relying on that; right?** |
| 3 | A. Uh-huh. |
| 4 | **Q. So you think front plate, top side, is a** |
| 5 | **preferred embodiment of the patent; is that correct? I** 11:10:54 |
| 6 | **mean it's here in your report. Or your declaration,** |
| 7 | **rather.** |
| 8 | A. Which one of these are you on now? |
| 9 | **Q. We're on -- Exhibit 5 is your report, paragraph 7** |
| 10 | **that you have right there. We're in the plaintiff's** 11:11:31 |
| 11 | **brief now, I believe; right?** |
| 12 | A. The only difference -- I'm sorry. |
| 13 | **Q. I can reask the question, if you want.** |
| 14 | A. Ask the question, because I'm afraid I'm not... |
| 15 | **Q. No problem. Absolutely.** 11:12:08 |
| 16 | **So we're looking at your definition of** |
| 17 | **paragraph 7, and you've supplied this cite to the second** |
| 18 | **sentence of paragraph 7. That's column 7, line 21 of** |
| 19 | **the patent at issue. I read that line to you, line 21,** |
| 20 | **for context. The technology disclosed herein will now** 11:12:27 |
| 21 | **be described in -- that's line 20. Line 21 states:** |
| 22 | **Detail with reference to at least one preferred** |
| 23 | **embodiment. And that's line 21.** |
| 24 | A. Yes. |
| 25 | **Q. So your opinion is that front plate, top side,** 11:12:43 |

Page 116

| | |
|---|---|
| 1 | the construction of that is based on the one preferred |
| 2 | embodiment in the patent; is that right? |
| 3 | A. No, it's because there is one preferred |
| 4 | embodiment. There's other embodiments, and that's -- |
| 5 | that has been what has helped me understand that there 11:13:04 |
| 6 | could be more embodiments, more finger holes in that |
| 7 | area, to expand. |
| 8 | I frankly, have very little difference of |
| 9 | opinion between these two constructions, except that |
| 10 | yours says user-facing surface of the front plate, and 11:13:25 |
| 11 | ours refers to surfaces. |
| 12 | **Q. That was actually as of a month ago, but be that** |
| 13 | **as it may.** |
| 14 | A. This is my opinion. |
| 15 | **Q. That's your opinion, thank you.** 11:13:43 |
| 16 | Multiple embodiments. So putting out of |
| 17 | your mind the seven-slide embodiment, because you know |
| 18 | in the figures it describes -- I'll just leave it to the |
| 19 | figures. In the 358 patent there's only one embodiment |
| 20 | shown, and it has four slides; right? 11:13:59 |
| 21 | A. (No audible answer.) |
| 22 | **Q. And all the drawings in the patent are different** |
| 23 | **perspectives of the same four-slide device, aren't they?** |
| 24 | A. Uh-huh, yes. The patent is extremely clear that |
| 25 | there could be more. 11:14:14 |

Page 117

30 (Pages 114 to 117)

A90308E
RONALD B. KEMNITZER      MARCH 26, 2015

Page 118

1   Q. More embodiments. For example, there could be
2   Braille indicators; right?
3       A. But they also indicate, I think -- I recall they
4   actually say they go to more numbers. They name numbers
5   of buttons, 1, 2, 3, 4, 5, 6.                    11:14:28
6       Q. You're referring to protrusions and pinholes.
7   There's no numbered buttons in the claims.
8       A. You may be right, I may be wrong.
9       Q. Look at claim 2, column 8, about a third of the
10  way down.                                        11:14:48
11      A. I'm sorry?
12      Q. I was pointing to claim 2. Where are you?
13      A. In column 6, line 18, the front of the plate may
14  have visual and/or tactile indicators corresponding to
15  each slide to indicate first dosage, second dosage,  11:15:04
16  third dosage, fourth dosage, et cetera.
17      Q. So you're interpreting that to give more slides?
18      A. Yes.
19      Q. Okay. So based on that -- there's nothing shown
20  in the patent, but based on that line, you think there's  11:15:18
21  more embodiments disclosed by the patent; is that right?
22      A. Yes, plus the numerous references in the patent
23  to -- that this is only one of many possible
24  embodiments.
25      Q. Do you know of any more references to embodiments  11:15:31

Page 119

1   other than the one you showed me?
2       A. No, I don't have a list of them.
3       Q. And there's none cited in your declaration
4   either?
5       A. No.                                        11:15:44
6       Q. Just the one in line 21, column 6.
7           As stated in paragraph 7, you considered the
8   patent and the file history in your opinion of the
9   meaning of this claim term; right?
10      A. Yes.                                        11:15:59
11      Q. Anything else that you considered?
12      A. Again, I think the term surfaces is consistent
13  with my interpretation of what's labeled 110 and 115,
14  being in this embodiment at different heights, but then
15  also, if the user facing surface of the front plate, top  11:16:28
16  side, is -- in actuality, if a person is looking
17  directly at -- straight at the device with not even the
18  slightest bit of turn, they're going to see the face
19  plate and see those three surfaces.
20          But if they're holding it in any other kind  11:17:00
21  of ordinary way, they're going to see these surfaces,
22  they're going to see that surface, they're going to see
23  that surface, and all those. So just technically, they
24  would see surfaces.
25      Q. I'm sorry. So you keep aligning 110 and 115, but  11:17:15

Page 120

1   I think you testified earlier 110 and 120 are different,
2   110 and 140 are different; right? They're not the same?
3       A. Yeah, they're different. They're different
4   surfaces.
5       Q. But 115 is different?                       11:17:31
6       A. Yeah, so that's why I say surfaces.
7       Q. Surfaces, that's not a typo, that's intentional,
8   surfaces, plural?
9       A. Yes.
10      Q. So your interpretation of front plate, top side,  11:17:41
11  singular, encompasses plural; right?
12      A. Yes.
13      Q. Based on column 7, line 21? That's the cite you
14  give here.
15      A. Well, it's based more on looking at the       11:17:56
16  illustrations.
17      Q. None of which you cite in your declaration.
18      A. Other than saying based on the patent, context of
19  the patent.
20      Q. None of which you cited here, just column 7,  11:18:07
21  line 21; right?
22      A. Yes.
23      Q. Okay. Do you think this claim term, front plate,
24  top side, has a unique or uncommon meaning in the
25  patent?                                           11:18:20

Page 121

1       A. Well, I think there would be different ways of
2   describing it, but I'm comfortable with it.
3       Q. Okay. So the answer to my question was yes;
4   right?
5       A. The answer to your question is?              11:18:44
6       Q. It's actually no. Does the patent give the claim
7   term a unique or uncommon meaning?
8       A. It gives it a meaning that I can accept.
9       Q. But is it unique and uncommon?
10      A. Unique and uncommon sounds to me like the same  11:19:00
11  thing.
12      Q. Is it one or the other? Is it unique? Is it
13  uncommon?
14      A. If it's unique, it must, by definition, be
15  uncommon.                                         11:19:12
16      Q. That's not what I'm asking, though, is it?
17      A. Then I can't answer the question.
18      Q. Is the meaning of the claim term unique?
19      A. I can't answer that.
20      Q. You don't know?                            11:19:27
21      A. I don't know.
22      Q. It's not the plain, ordinary meaning?
23      A. I think it's the plain, ordinary meaning.
24      Q. So it's the plain, ordinary meaning, but you
25  can't tell me whether it's unique, the meaning of that  11:19:37

A90308E
RONALD B. KEMNITZER    MARCH 26, 2015

1    claim term.  Is that your testimony, sir?
2    A.  I can tell you that it's my -- for me, it's a
3    plain, ordinary, understandable meaning.
4    Q.  Okay.  And you can understand that clear meaning
5    from reading the patent and file history?    11:19:53
6    A.  Yes.
7    Q.  Nothing else, no publications, no articles, no
8    treatises; right?
9    A.  No.
10   Q.  One follow-up question.  You can refer to    11:20:00
11   figure 1 if you need to.  So your opinion in the meaning
12   of front plate, top side, that includes element 120,
13   sides, plural; right?  That includes that part?
14   A.  No, it does not include 120.
15   Q.  So is your construction, this construction    11:20:59
16   surfaces, plural, the front plate, is that incorrect?
17   A.  The front plate, top side, would be, in my
18   understanding, this area, this area, and this area.  I'm
19   pointing to what's labeled 110, 140 -- but not 1 -- 115,
20   and the unnumbered surface at the other end.    11:21:28
21   Q.  Do you draw a distinction between looking at the
22   device at an angle or head on, in how you consider the
23   meaning of front plate, top side?
24   A.  Yes, straight on.
25   Q.  Straight on.    11:22:05

Page 122

1    A.  Well, it really doesn't matter.  It's what one
2    would see looking at it straight on.
3    Q.  But not at an angle?
4    A.  No.
5    Q.  No.  When you use surfaces, you mean 110, 115 is    11:22:21
6    encompassed in the meaning of the front plate, top side?
7    A.  Yes.  I would not construe 120 as being the top
8    side.  And in this embodiment there's another edge
9    shown.  There's another --
10   Q.  Okay.    11:22:51
11   A.  There's another unnumbered edge there that I
12   will --
13   Q.  That's essentially the corollary to 110?
14   A.  110, on top side.
15   Q.  Okay.  Do you have plaintiff's brief in front of    11:23:03
16   you?
17   A.  Yes.
18   Q.  Look at the construction, second paragraph down:
19   Front plate, top side, means the surface of the front
20   plate generally visible to the user during normal use?    11:23:16
21   A.  Uh-huh.
22   Q.  So generally, is it too broad, then, front on
23   means front, heads up, which is at an angle?  You said
24   at an angle --
25   A.  I think the term generally makes it -- describes    11:23:25

Page 123

1    it quickly.
2    Q.  So generally doesn't describe angle.  You're
3    looking at the top and you can see the side as well.
4    That's not included there?
5    A.  Generally, you would look at the front surface.    11:23:36
6    You would see the side surfaces.
7    Q.  You would see the side surfaces if you look at
8    the front?
9    A.  Well, I think we're getting into the -- maybe an
10   issue of usability, user interaction.  Do I think, when    11:23:52
11   a person is holding that vial and that device in their
12   hand, looking at it, I think what they see, what they
13   are perceiving, are the front surfaces.  I don't think,
14   in ordinary use, they're really seeing the sides.  It's
15   not registering.    11:24:17
16   Q.  So if this is the device, right, and this is the
17   strip here, generally, visible to a normal user is
18   looking dead on.  That's excluded, looking at an angle,
19   seeing 120 and 110, and 115; right?
20   A.  Right.    11:24:34
21   Q.  So 15 degrees changes your construction?
22   A.  It may change what is visible, but it may not
23   change so much what you're seeing, what you're looking
24   at.
25   Q.  Visible versus looking at?    11:24:46

Page 124

1    A.  Yes.  We're parsing terms, I think.
2    Q.  That's claim construction.  One second.  So --
3    and you disagree with defendants' construction?
4    A.  Well --
5    Q.  Because you're saying front plate, top side, not    11:25:27
6    limited to the user-facing surface of the front plate;
7    right?
8    A.  I think the term surface limits it.
9    That's their, can be more than one.
10   Q.  Let's go to paragraph 8 of your declaration, sir.    11:26:04
11   Probably turn to page 7 of plaintiff's brief.  That's
12   the same claim term.  You got that?
13   A.  Uh-huh.
14   Q.  Paragraph 8 consists of two sentences; am I
15   right?    11:26:29
16   A.  Uh-huh.
17   Q.  The first one reads:  In the concept of the
18   patent and the file history, the term face plate means a
19   portion of the front plate, top side, facing the user
20   during normal use.  Although the face plate may include    11:26:40
21   openings through which slides protrude, nothing in the
22   patent requires the face plate to, quote, house slide
23   bases, end quote.  Did I read that right?
24   A.  Yes.
25   Q.  Okay.  Do you have any other rationale or    11:26:56

Page 125

32 (Pages 122 to 125)

A90308E
## RONALD B. KEMNITZER     MARCH 26, 2015

1  explanation to add to that paragraph 8 for the meaning
2  of the claim term face plate?
3      A. Yeah, because the face plate, because they have
4  numbered it individually, I think my interpretation of
5  it is that it refers only to that surface.  It does not          11:27:29
6  refer to the openings.
7      Q. Okay.
8      A. The openings are, in my mind, a separate claim.
9      Q. You mean the finger button holes; right?
10     A. Yes.                                                        11:27:51
11     Q. Just to be clear, so in your paragraph 8 here you
12  make no specific references to patent style history;
13  right?  No lines or pages or columns; correct?
14     A. No.
15     Q. And you don't cite specifically to any              11:28:19
16  publications or articles or treatises or scholarly
17  publications, do you?
18     A. No.
19     Q. Do you think the term face plate is unique, as
20  used in the patent?                                        11:28:38
21     A. I think it's -- in my mind it's unique in this
22  particular application, because it differentiates that
23  area of the -- of 110, the front plate body.
24     Q. Do you know the meaning of front -- I'm sorry, I
25  lost my place.                                            11:29:10

Page 126

1          Do you think the meaning of face plate is
2  clear, after considering the patent and file history?
3  I'm sorry, that's a whole different question.  I'll ask
4  you again.  I'm sorry, bad question.
5          Do you think the meaning of face plate is              11:29:31
6  clear, after considering the patent and file history?
7      A. Yes, it's clear to me.
8          MR. HOGAN:  We've been -- how long have we
9  been going?
10         THE VIDEOGRAPHER:  Three hours.                         11:29:57
11         MR. HOGAN:  Since our short break I meant,
12  I'm sorry.
13         THE VIDEOGRAPHER:  9:51 we came back on.
14         MR. HOGAN:  Do you want to do a short break,
15  bio break?                                                      11:30:12
16         THE WITNESS:  Sure.
17         MR. HOGAN:  Let's take a short break,
18  please.
19         THE VIDEOGRAPHER:  Off the record at 11:30.
20         (A recess ensued.)                                      11:43:36
21         THE VIDEOGRAPHER:  We're back on the record
22  at 11:43.
23  BY MR. HOGAN:
24     Q. Okay.  Looking at your declaration, sir, let's go
25  to paragraph 9, at the bottom of page -- goes from        11:43:45

Page 127

1  page 2 of 6 to 3 of 6.  Actually, I'm wrong.  It's the
2  bottom of page 2 of 6.  See that?
3      A. Yes.
4      Q. If you want to get there, in the plaintiff's
5  brief it's also on page 8 of 15, if you want to                 11:44:00
6  reference that.
7          Okay.  Paragraph 8 of your declaration
8  contains, looks like two sentences; right?
9      A. Uh-huh.
10     Q. First one reads:  In the context of the patent          11:44:19
11  and file history, the term face plate means a portion of
12  the front plate, top side, facing the user -- beg your
13  pardon, we just did that.  Bad question.  That was
14  paragraph 8.  We're on paragraph 9.  I'm sorry.  Start
15  over.                                                      11:44:39
16     A. We can go back to that, if you want.
17     Q. It was long enough the first time.
18         Let's go to paragraph 9.  Paragraph 9 is at the
19  bottom of page 2.  See that?
20     A. Yes.                                                      11:44:51
21     Q. Okay.  And that's two sentences.  See that?
22     A. Uh-huh.
23     Q. The first sentences in paragraph 9 reads:  In the
24  context of the patent, file history, the term slide gate
25  cavity means an area of the front plate bottom side       11:45:01

Page 128

1  across which the slide travels, period.  There's a cite
2  there, it says see, e.g., figure 5, numeral 160.  See
3  that?
4      A. Uh-huh.
5      Q. The next sentence reads:  Contrary to defendants'        11:45:12
6  proposed construction, the slide gate cavity is not
7  limited to, quote, correlating with the face plate.  See
8  that?
9      A. Yes.
10     Q. Okay.  Figure 5, numeral 160.                            11:45:27
11     A. Yes.
12     Q. You got that?
13     A. Yes.
14     Q. Okay.  So you cite figure 5, numeral 160 in
15  support of your opinion?                                        11:45:39
16     A. Uh-huh.
17     Q. Nothing else is specifically cited, no page, no
18  columns, no lines; right?
19     A. Right.
20     Q. You cite no publications, no treatises, no               11:45:45
21  scholarly articles; right?
22     A. Correct.
23     Q. The second sentence is essentially you
24  disagreeing, saying why you think defendants'
25  construction is wrong?                                    11:46:04

Page 129

33 (Pages 126 to 129)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

1    A. Right.

2    Q. This is all the rationale and explanation you
3    have for the meaning of slide gate cavity; right?  As
4    put forth in your declaration, that's it; right?

5    A. Yes.                                          11:46:20

6    Q. Does the patent give an uncommon meaning to the
7    claim term slide gate cavity?

8    A. Well, I think it's -- I don't think it's a very
9    good term for it, because the term cavity represents
10   something that is enclosed, and -- and if that's the   11:47:02
11   case, then it should also include the sides, because --
12   the slide gate cavity, in my feeling, is that space
13   that's created not only by the surface that the 160 is
14   pointing to, but also component 150, which is -- I have
15   to be careful with my numbers -- slide gate, and there  11:47:53
16   is actually -- my best reading of the numbers is that
17   there is a slide gate type structure that surrounds each
18   of these areas, defined as slide gate cavity.

19   Now, I also -- my interpretation also is
20   that 130, the finger hole buttons, are part of that    11:48:22
21   cavity.

22   Q. Okay.  And none of the explanation you just gave
23   me is in your declaration, is it?  It's not there, is
24   it, sir?

25   A. Well, I think it is.  I say --                 11:48:46

Page 130

1    Q. In the two sentences of that section of your
2    declaration, where you just --

3    MR. PEELER:  Were you finished with your
4    answer?

5    THE WITNESS:  No, I can continue.                11:49:01

6    BY MR. HOGAN:

7    Q. You didn't answer my question.  The explanation
8    you just gave me about your interpretation of slide gate
9    cavity is not contained in the two sentences provided in
10   your declaration, is it?                         11:49:13

11   A. I think you asked me if that was a good, accurate
12   definition for that term.

13   Q. I asked you if it was uncommon, and you gave me
14   some information, trying to explain why you thought it
15   was a little bit unusual.                        11:49:26

16   A. Confusing.

17   Q. So you think that term is confusing?

18   A. Somewhat confusing.

19   Q. So you wouldn't construe that term according to
20   the plain, ordinary meaning, would you?          11:49:35

21   A. Well, I can give that ordinary meaning and
22   understanding by looking at what's around it.

23   Q. And you just told me that the slide gate cavity
24   includes the slide gate, 130 -- I'm sorry, slide gate,
25   150, and the slide gate cavity, 130; is that correct?   11:49:56

Page 131

1    A. Well, technically speaking, the -- I think the
2    finger hole button also is part of that cavity because
3    it provides limitation on how far the slide can travel
4    in the other direction.  And the cavity, slide gate
5    cavity, to me means a cavity in which the slide -- the   11:50:20
6    finger button can slide.  Now I'm done.

7    Q. I think I asked you earlier this morning, sir,
8    your book is very popular, very well known, is used as a
9    basis for teaching undergraduates design, the precision
10   of using markers to draw images.  We talked about that   11:50:43
11   earlier, didn't we?

12   A. Uh-huh.

13   Q. And one of the things you've espoused throughout
14   your career is detail and precision in drawings; right?

15   A. Yes.                                          11:50:54

16   Q. And 150, on figure 5, slide gate -- I'm sorry,
17   160, slide gate cavity, does that point to the slide
18   gate, 150?

19   A. No.

20   Q. No, it doesn't.  Does it point to the finger       11:51:04
21   button hole, 130?

22   A. No.

23   Q. Does it point to the buttons, finger buttons,
24   with a number, 250?  It doesn't, does it?

25   A. It points to a surface.  Yes, that calls it a       11:51:15

Page 132

1    cavity.

2    Q. I think you testified earlier, we were talking
3    about the face plate.  You said that face plate is
4    raised to create space for the slide gate cavity.
5    Remember that?                                    11:51:36

6    A. Yes.

7    Q. Wouldn't you agree, sir, the hollow area covering
8    of the face plate is the slide gate cavity?

9    A. It's part of it.  I think without further
10   definition, sliding of the finger buttons would not be   11:51:47
11   precise and controllable.

12   Q. So looking at your declarations, also in
13   plaintiff's brief, but we can look at your declaration,
14   you write:  The term slide gate cavity means an area of
15   the front plate, bottom side, across which the slide     11:52:13
16   travels; right?

17   A. Yes.

18   Q. Is this a physical structure?

19   A. Is the slide gate cavity a physical structure?

20   Yes.                                             11:52:26

21   Q. It's not a space bounded by a structure?

22   A. It's pointing to a surface.  Surface is a
23   structure.

24   Q. Have you ever had a cavity in your tooth?

25   A. Yes.                                          11:52:47

Page 133

34 (Pages 130 to 133)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

1   Q. Is it enclosed or is it open?
2   A. It's closed now.
3   Q. By the dentist; right?
4   A. You know, this term cavity and channel have both
5   been, in my mind, not clearly defined by the patent.   11:53:01
6   Q. So they're unclear. They're confusing?
7   A. They're a little bit confusing.
8   Q. They're --
9   A. I think --
10   Q. Right?   11:53:16
11   A. But I'm content with my interpretation of them.
12   I clearly see the area that is defining the movement
13   of -- defining and controlling the movement of the
14   finger buttons.
15   Q. So a cavity is controlling the movement of the   11:53:32
16   finger buttons; is that your testimony?
17   A. Partially controlling it.
18   Q. Partially controlling it.
19   A. It's also -- the back plate is very much a part
20   of that, because without it the buttons would not be   11:53:45
21   able to be retained in a cavity.
22       MR. HOGAN: Do you have the definition of
23   cavity you provided this morning, Charlie? I didn't get
24   a hard copy. I have it on my phone, but it's hardly an
25   exhibit.   11:54:05

Page 134

1       MR. PEELER: I know I said that I did, but I
2   don't know if I did that.
3       MR. HOGAN: Do you have them, sir?
4       THE WITNESS: I have them.
5   BY MR. HOGAN:   11:54:17
6   Q. Fantastic. Can I see them and take these pages
7   as well? These pages are all from the same dictionary;
8   right?
9   A. No. One of them is from an online dictionary.
10   Q. Okay. Let's see if I can figure those out. They   11:54:35
11   look the same to me, but they look like they're from the
12   same book.
13   A. No, I'm sorry, they're all from the Webster.
14   Q. This is Webster's edition, copyrighted 1960, at
15   the top. Are you with me?   11:54:57
16   A. Yes.
17   Q. Give me one second. In this exhibit you have
18   here, page 133, and I'll mark this, highlighted is the
19   word cavity. Did you highlight that?
20   A. Uh-huh.   11:55:16
21   Q. Definition says a hollow place, a hollow hole or
22   pocket. And you relied on this in forming your opinion?
23   A. Partially.
24   Q. Partially. The dictionary definition -- let me
25   back up.   11:55:36

Page 135

1       The plaintiff's position in this case is
2   plain, ordinary meaning for this term, is it not?
3       MR. PEELER: Object to the characterization
4   of the plaintiff's position.
5   BY MR. HOGAN:   11:55:52
6   Q. Take a look at the plaintiff's brief. It's right
7   by your left hand, right here. Are you on page 8.
8   A. Yes.
9   Q. Plaintiff's construction, I'm reading down that
10   column. It states, and correct me if I'm wrong, it   11:56:00
11   says: This term should be construed according to the
12   ordinary and customary meaning. Did I read that right?
13   A. Yes.
14   Q. Then below that it says: Slide gate cavity means
15   an area of the front plate, bottom side, across which   11:56:11
16   the slide travels.
17   A. Yes.
18   Q. The definition you provided us right now, and
19   counsel gave us this morning before the deposition, the
20   definition is a hollow place, a hollow hole, pocket;   11:56:22
21   right?
22   A. Yes.
23   Q. When did you first see the definition of cavity
24   in this Merriam Webster's dictionary in terms of this
25   case?   11:56:43

Page 136

1   A. I think when I was doing my declaration.
2   Q. So prior to or on the day of March 13th?
3   A. Yes.
4   Q. So you had this definition of cavity in front of
5   you, but your opinion is as stated here in your   11:56:59
6   declaration; correct?
7   A. Yes.
8   Q. And I think you've added to that the explanation,
9   which is not in your declaration, that includes
10   structure such as the slide gate and the finger button   11:57:14
11   hole; is that right?
12   A. Uh-huh. And the back plate.
13   Q. And the back plate.
14       Anything else you want to add to your
15   construction today?   11:57:24
16   A. I'm not sure what you're asking me.
17   Q. So you've added an explanation to your
18   construction of slide gate cavity.
19       MR. PEELER: Objection; mischaracterization.
20   BY MR. HOGAN:   11:57:42
21   Q. You stated today it includes the slide gate and
22   the finger button hole, which is not in your
23   declaration; correct?
24   A. I told you that in context of your question as to
25   whether or not the term cavity had unique meaning, and   11:57:51

Page 137

35 (Pages 134 to 137)

A90308E
## RONALD B. KEMNITZER    MARCH 26, 2015

1  explained to you that it had some ambiguity to it, but
2  that I was satisfied with the term cavity because of the
3  space that is created with this surface defined as 160,
4  with the slide gate, defined by 130, by the back plate,
5  310, and by the finger button holes, 130.  Collectively      11:58:17
6  they form, in my mind, a cavity.
7       Q.  You used space just now.  Cavity or a space?
8       A.  A cavity or space.  I think a space can be a
9  cavity.
10          MR. HOGAN:  I'm going to make this exhibit         11:58:59
11  Kemnitzer K-8.
12          (Exhibit No. 8 was marked for
13  identification.)
14  BY MR. HOGAN:
15       Q.  Moving on.  Page 3 of 6 of your declaration,      11:59:27
16  paragraph 10.  And so this claim term -- and it's
17  actually page 8 of 15 to 9 of 15, and to 10 of 15, also.
18  It's the plaintiff's brief for the construction
19  discussed by the plaintiff.  Your declaration is page 3
20  to 4, Paragraphs 10 and 11.  Okay?  If that wasn't        11:59:51
21  clear, I apologize.  Let's try it again.  Ignore that.
22          Let's look at paragraph 10 of your
23  declaration.  We're looking at pages 8 to 9 of the
24  plaintiff's brief.
25       A.  Yes.                                             12:00:06

Page 138

1       Q.  Beg your pardon for the interruption, sir.
2  Paragraph 10 is a longer paragraph.  It looks like
3  there's one, two, three, four, five sentences there.
4  I'm not going to read them all.  It's your declaration.
5  I assume you know what the content of paragraph 10 is.    12:00:49
6          The first sentence states:  In the context
7  of the patent and file history, the term plurality of
8  pinholes disposed in the front plate, bottom side, is
9  self-explanatory.  The next sentence, next two
10  sentences, you provide some explanation of that; right?  12:01:06
11       A.  Yes.
12       Q.  The third sentence, one, two, three -- beg your
13  pardon, fourth sentence, it says:  One means disclosed
14  in the patent to fix the front plate and back plate is
15  pinhole and protrusion snap fit; right?                  12:01:24
16       A.  Uh-huh.
17       Q.  Next sentence reads:  One of ordinary skill in
18  the art will appreciate that there are multiple other
19  means available to secure the front plate and back plate
20  together.                                                12:01:39
21       A.  Yes.
22       Q.  Then there's a citation there to column 7, Line
23  64, column 8, line 12.  We'll get to that.  The last
24  sentence reads:  A snap fit is one means for doing so.
25       A.  Yes.                                             12:01:45

Page 139

1       Q.  So when you say "means," are you referring to the
2  means plus function construction of patent law?
3       A.  I'm referring to the means of attaching one part
4  to another.
5       Q.  Okay.  Let's do this first.  Look at column 7,   12:02:03
6  Line 64, over to Column 8, line 12.  I'm not going to
7  ask you to read that, that's a pretty lengthy citation.
8          Are you with me on column 7?
9       A.  Uh-huh.
10       Q.  Every U.S. patent has a caveat section like this,  12:02:24
11  before the claims begin; right?
12       A.  Right.
13       Q.  And every U.S. patentee wants a patent that can
14  be construed as broadly as possible; right?
15       A.  Yes.                                             12:02:42
16       Q.  Every U.S. patent has one of these.  That's been
17  my experience.  Is that your experience as well?
18       A.  Pretty much so.
19       Q.  Okay.  Do you -- this section -- this citation,
20  I'm sorry, column 7, column 8, this is a general caveat  12:03:03
21  saying there could be other -- it says other
22  embodiments, these are exemplary, et cetera; right?  I'm
23  paraphrasing.
24       A.  Yes, I understand.
25       Q.  Okay.  No other structures for securing a back   12:03:18

Page 140

1  plate to the front plate are stated in this section, are
2  they?
3       A.  Not specifically.
4       Q.  Not specifically.
5          Are you familiar with -- I think I asked you     12:03:30
6  this; I'll ask more clearly this time.  Are you familiar
7  with means plus function under 35 USC, section 112,
8  paragraph 6?
9       A.  No.
10       Q.  You never heard of that?                         12:03:40
11       A.  No.
12       Q.  So you have no understanding at all of that
13  statutory construction?
14       A.  I answered that question.
15       Q.  I'm sorry, I misspoke.  You have no understanding  12:03:50
16  at all of that statutory section; right?
17       A.  No.
18       Q.  In your declaration, sir, is it your opinion that
19  the holes are structural or functional?
20       A.  They're both.                                    12:04:31
21       Q.  They're both.  Same with the protrusions,
22  structural and functional?
23       A.  They're structural.  I'm not so sure that they're
24  functional in terms of the use of the product.  They
25  hold the product together.                               12:04:59

Page 141

36 (Pages 138 to 141)

A90308E
RONALD B. KEMNITZER    MARCH 26, 2015

| | |
|---|---|
| 1 | Q. Snap fitting. Structural or functional? |
| 2 | A. Both. |
| 3 | Q. Both. |
| 4 | Are other means of connecting -- sorry. Are |
| 5 | other ways of connecting the front plate to the back   12:05:17 |
| 6 | plate stated in the patent specifically? |
| 7 | A. Certainly inasmuch as the paragraph that you have |
| 8 | just referred to, and I believe there are some other |
| 9 | spots. Without going through the patent, I think that |
| 10 | there was some other mention of a embodiment of this,   12:05:40 |
| 11 | that this is one way of doing this, and I believe it |
| 12 | refers to it in the notes. |
| 13 | Q. Paragraph 10, I read to you several sentences |
| 14 | from paragraph 10. We looked at the citation. There's |
| 15 | no other citation, specific citation of the patent   12:06:01 |
| 16 | without history provided here, other than what's in |
| 17 | paragraph 10; right? |
| 18 | A. No, just a reference to myself as a designer, |
| 19 | understanding that there are many ways to accomplish the |
| 20 | connection between the front plate and the back plate   12:06:19 |
| 21 | beyond the one that is listed as a preferred embodiment. |
| 22 | Q. I understand that's your testimony just now. No |
| 23 | other references specifically to the patent or the file |
| 24 | history by line, by page number, by paragraph were |
| 25 | provided here; is that correct?   12:06:36 |

Page 142

| | |
|---|---|
| 1 | A. No. |
| 2 | Q. And there's one orientation claimed in the |
| 3 | patent; right? |
| 4 | A. Yes. |
| 5 | Q. The only thing claimed in Claim 1 is snap   12:08:53 |
| 6 | fitting; right? |
| 7 | A. Is what fitting? |
| 8 | Q. Snap fitting. |
| 9 | A. Snap fitting, yes. |
| 10 | Q. I think we can move --   12:09:02 |
| 11 | A. But I think it might have also said that there |
| 12 | are other ways of doing it. I'm fairly certain that I |
| 13 | saw that somewhere. |
| 14 | Q. They're not cited in your declaration in |
| 15 | paragraph 10. If they occur to you today, before we   12:09:18 |
| 16 | break, before we finish, then please let me know. But I |
| 17 | don't see any in the patent as I look at it, and I don't |
| 18 | see any in your declaration either. So if we missed it, |
| 19 | I'd be happy to hear it. But being that -- you said |
| 20 | there are other ways you could put these two things   12:09:34 |
| 21 | together, but they're not claimed; right? |
| 22 | A. Right. |
| 23 | Q. They're not claimed as snap fitting; right? |
| 24 | A. Right. And snap fitting can be done in other |
| 25 | ways.   12:09:47 |

Page 144

| | |
|---|---|
| 1 | A. No. |
| 2 | Q. No publications, no scholarly articles, no |
| 3 | treatises? |
| 4 | A. No. |
| 5 | Q. Not even a Kemnitzer publication to explicate   12:06:43 |
| 6 | your understanding of design; right? Nothing like that? |
| 7 | A. No. |
| 8 | Q. Do you know the meaning of plurality of pinholes |
| 9 | exposed in the front plate, bottom side? It's clear, |
| 10 | since they're in the patent; right? Here you say   12:07:21 |
| 11 | they're self-explanatory. |
| 12 | A. I think it's self-explanatory. |
| 13 | Q. No uncommon usage in that phrase? |
| 14 | A. I don't think so. |
| 15 | Q. Do you have any opinions as to the meaning   12:08:02 |
| 16 | of this claim, other than what's provided here in |
| 17 | paragraph 10 of your declaration? |
| 18 | A. Well, I think in terms of a designer of ordinary |
| 19 | skill would see that it really makes no functional |
| 20 | difference whether the pin protrusions are on the top   12:08:29 |
| 21 | side or the bottom side, and I think that there are many |
| 22 | other ways of attaching the front side to the bottom |
| 23 | side that are in common practice. |
| 24 | Q. But no other ways are described in the patent, |
| 25 | are they?   12:08:46 |

Page 143

| | |
|---|---|
| 1 | Q. That's your opinion; right? |
| 2 | A. Well, it's a very informed opinion. |
| 3 | Q. I understand. |
| 4 | Let's look at paragraph 11, paragraph 11 of |
| 5 | your declaration. This is directed to -- well, it's   12:09:55 |
| 6 | your declaration. You wrote it. I assume you're |
| 7 | familiar with it. Paragraph 11 is directed to the term |
| 8 | back plate having a plurality of protrusions disposed on |
| 9 | the back plate, top side; right? |
| 10 | A. Uh-huh.   12:10:20 |
| 11 | Q. So the first sentence of paragraph 11 states: In |
| 12 | the context of patent and file history, the term back |
| 13 | plate having a plurality of protrusions disposed on the |
| 14 | back plate, top side, is likewise self-explanatory. |
| 15 | A. Yes.   12:10:31 |
| 16 | Q. Is your testimony for the plurality of pinholes, |
| 17 | I think that applies to the back plate protrusions; |
| 18 | right? |
| 19 | A. Yes. |
| 20 | Q. Self-evident from the patent?   12:10:40 |
| 21 | A. Yes. |
| 22 | Q. Plain, ordinary meaning of that claim term? |
| 23 | A. Functionally speaking, there's no difference |
| 24 | whether the pins are on the top or the bottom. |
| 25 | Q. And the basis of your opinion is that plurality   12:10:54 |

Page 145

37 (Pages 142 to 145)

A90308E
## RONALD B. KEMNITZER     MARCH 26, 2015

| | |
|---|---|
| 1 | of protrusions is the same as the plurality of the |
| 2 | pinholes? |
| 3 | A. Same. |
| 4 | Q. Same rationale; right?  They're put together and |
| 5 | are designed; right?                                    12:11:06 |
| 6 | A. Yes. |
| 7 | Q. And again, we can belabor this or we can go |
| 8 | through it quickly.  So second to last paragraph, or |
| 9 | starting sentence in paragraph 11, it's the top of |
| 10 | page 4:  One of ordinary skill in the art will          12:11:34 |
| 11 | appreciate that there are multiple other means available |
| 12 | to secure the front plate and back plate together. |
| 13 | A. Yes. |
| 14 | Q. And you say, just like from paragraph 11, a snap |
| 15 | fit is one means for doing so.  As we talked about a     12:11:43 |
| 16 | second ago, the only means disclosed and claimed is a |
| 17 | snap fitting, and the protrusions of the back side of |
| 18 | the patent.  That's all that's described; right? |
| 19 | A. Yes. |
| 20 | Q. We're on page 4 of 6 in your report.  Do you have    12:12:13 |
| 21 | that? |
| 22 | A. Yes. |
| 23 | Q. You might want to have handy page 10 of |
| 24 | plaintiff's brief, in case you need to refer to it. |
| 25 | Page 10 of 15.                                          12:12:27 |

Page 146

| | |
|---|---|
| 1 | Okay.  You prepared paragraph 12.  I assume |
| 2 | you read what's there.  The first sentence reads:  In |
| 3 | the concept of the patent and file history, the term |
| 4 | slide base means the base of the slide.  See that? |
| 5 | A. Uh-huh.                                              12:12:53 |
| 6 | Q. You say -- the next sentence reads: The patent |
| 7 | describes slide assemblies comprised of several items, |
| 8 | one of those being a slide base, column 7, line 41. |
| 9 | So do you have paragraph 7, line 41? |
| 10 | A. Paragraph 7, line 64?                                12:13:31 |
| 11 | Q. Line 41 is what I'm looking at.  Paragraph 12 in |
| 12 | your declaration. |
| 13 | A. Yeah. |
| 14 | Q. I think you're in 13. |
| 15 | A. Oh, sorry.                                           12:13:43 |
| 16 | Q. No problem.  You got that? |
| 17 | A. Yes. |
| 18 | Q. Okay.  Do you have column 7, line 41? |
| 19 | A. Yes. |
| 20 | Q. I'll read it to you.  It says:  Each slide          12:13:52 |
| 21 | assembly, 200, is comprised of a slide base, 210, a |
| 22 | slide base lock, 220, et cetera.  That's what it says; |
| 23 | right? |
| 24 | A. Yes. |
| 25 | Q. It does not say a slide base assembly, 200, may    12:14:04 |

Page 147

| | |
|---|---|
| 1 | be comprised of, does it? |
| 2 | A. It says is comprised of. |
| 3 | Q. Right.  The next sentence in your report says: |
| 4 | An embodiment of the slide base is depicted at figure 5, |
| 5 | numeral 210.  See that in your report?                  12:14:27 |
| 6 | A. Uh-huh. |
| 7 | Q. Let's go to figure 5, 210.  You got that figure 5 |
| 8 | in the patent? |
| 9 | A. Yes. |
| 10 | Q. That's the bottom view of the one embodiment of    12:14:40 |
| 11 | the device; correct? |
| 12 | A. Uh-huh, yes. |
| 13 | Q. And 210 points to what? |
| 14 | A. The bottom of the finger button. |
| 15 | Q. The slide base; right?                               12:14:53 |
| 16 | A. The bottom of the slide base, yes. |
| 17 | Q. And in fact, in the patent we just read, 210 is |
| 18 | the slide base; right? |
| 19 | A. Yes. |
| 20 | Q. If you look at figure 1 of the patent.              12:15:13 |
| 21 | A. Got it. |
| 22 | Q. See 210 there? |
| 23 | A. Yes. |
| 24 | Q. Points to the -- it's the slide base again.  210 |
| 25 | is the same number in both figures; right?              12:15:39 |

Page 148

| | |
|---|---|
| 1 | A. Yes. |
| 2 | Q. See where it points? |
| 3 | A. Yes. |
| 4 | Q. Where does it point to? |
| 5 | A. Top surface.                                         12:15:44 |
| 6 | Q. Top surface.  Okay. |
| 7 | And then the last part of your |
| 8 | declaration -- I know I'm jumping back and forth, beg |
| 9 | your pardon.  So we're back at your declaration, |
| 10 | paragraph 12, the last sentence.  I'll read that to you. 12:16:01 |
| 11 | It says:  The patent claims recite that the slide |
| 12 | base -- the slide assemblies are curved, but the |
| 13 | definition of slide base, in and of itself, does not |
| 14 | include this limitation.  See column 8, lines 24-27. |
| 15 | See that?                                               12:16:19 |
| 16 | A. Uh-huh. |
| 17 | Q. Let's go to column 8, line 24-27.  That's part of |
| 18 | claim 1, is it not? |
| 19 | A. Yes. |
| 20 | Q. That reads:  Wherein the front plate, the          12:16:30 |
| 21 | plurality of slide assemblies, the back plate, and the |
| 22 | dosage indicator are curved and collectively form an |
| 23 | assurance dosage strip for attachment to a medicine |
| 24 | vial.  It says curved; right?  The device is curved. |
| 25 | A. Yes.                                                 12:16:52 |

Page 149

38 (Pages 146 to 149)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

1   **Q.** So you say in your declaration the patent claim
2   assemblies are curved, but you say they don't need to be
3   so. You're looking at figure 1. Do you have figure 1
4   there?
5   **A.** Yes.                                    12:17:09
6   **Q.** 210. They look curved, don't they?
7   **A.** Yes, they do.
8   **Q.** Look at figure 5, please, sir.
9   **A.** Yes.
10  **Q.** 210. They look curved, don't they?      12:17:22
11  **A.** Yes, they do.
12  **Q.** Is there any figure in the patent that shows the
13  slide base that are not curved?
14  **A.** No. And I stand corrected. My last statement
15  was clearly in error.                          12:17:41
16  **Q.** So that part of defendant's construction, not so
17  bad; right? Curved structure supports the finger
18  button. At least the structure is curved. We can agree
19  on that; right?
20  **A.** Yes. So technically speaking, it doesn't say the  12:18:04
21  slide base, it says the slide assemblies. But I'm not
22  about to argue that the base is not curved.
23  **Q.** Okay. I think you said a minute ago, we were
24  looking at figure 5, the slide base, the bottom view.
25  It's the bottom of the slide base; right?      12:18:30

Page 150

1   **A.** Yes.
2   **Q.** And so the bottom of the slide base supports the
3   slide; right?
4   **A.** Everything supports the slide that I mentioned
5   before. The bottom plate supports it, the face plate  12:18:40
6   surface supports it, and the slide base supports it.
7   Without all of those elements, it doesn't work. They
8   all support it. And finger holes do as well, because
9   they limit the movement of the button.
10  **Q.** What you just told me, that's not in your  12:19:05
11  declaration, is it?
12  **A.** Where?
13  **Q.** I asked you if -- we looked at the bottom of the
14  slide base, 210. I think you said earlier it supports
15  the slide. You said no, everything else does, too, the  12:19:18
16  base, the front plate, the finger hole. But that
17  explanation you just gave me, that's not in your
18  declaration, is it?
19  **A.** No.
20  **Q.** It's not there?                          12:19:43
21  **A.** They're not there, nor are the protrusions,
22  plurality of protrusions. That doesn't mean that I
23  don't recognize that they exist.
24  **Q.** But they're not in your declaration, clearly;
25  correct?                                        12:19:58

Page 151

1   **A.** No, not in that particular sentence.
2   **Q.** Okay. In the context of the 358 patent, does the
3   patent give the term slide base an uncommon meaning?
4   **A.** Well, base can be defined as the bottom surface,
5   or the base could be defined as the lower portion of an  12:20:27
6   object, and so I don't think that it is an unusual
7   construction of the definition.
8   **Q.** So the plain, ordinary meaning of the term
9   applies; right?
10  **A.** I think so.                              12:20:46
11  **Q.** Do you think the meaning of slide base is clear
12  after you considered the patent and the file history?
13  **A.** Yes.
14  **Q.** Let's look at paragraph 13 of your declaration.
15  Back to the bottom of page 4 of 6 of your declaration;  12:21:34
16  right, sir?
17  **A.** Yes.
18  **Q.** Okay. Also, this claim term -- okay. The claim
19  term is described in that paragraph as slide base
20  channel. Page 11 of the plaintiff's brief, it's also  12:21:48
21  discussed this, if you want to flip there for quick
22  reference. You might look at that.
23  **A.** Sorry, paragraph 11?
24  **Q.** I'm sorry, page 11 of 15. Do you have all that?
25  **A.** Uh-huh.                                  12:22:17

Page 152

1   **Q.** You wrote paragraph 13. I assume you know what
2   is contained therein -- are you all right?
3   **A.** They have modesty panels on these two, and
4   there's just enough room to stick my legs in between
5   them. Being the modest person that I am, I'm running  12:22:37
6   into them a lot.
7   **Q.** We'll tell the hotel, lodge a claim after we're
8   done here.
9       Okay, back to the patent. The first sentence of
10  paragraph 13 reads: In the context of the patent and  12:22:49
11  file history, the term slide base channel means the
12  channel area through which the slide base travels.
13  That's stated in your declaration; right?
14  **A.** That is.
15  **Q.** And I understand, as of this morning, plaintiff  12:23:02
16  is taking a different construction; correct?
17  **A.** Yes.
18  **Q.** And that construction is a recessed area on the
19  top surface of the slide base.
20  **A.** Correct.                                 12:23:14
21  **Q.** Is that your understanding as well?
22  **A.** Yes.
23  **Q.** We got that via e-mail from counsel for plaintiff
24  this morning, about 7:30 or so.
25  **A.** Yes.                                     12:23:22

Page 153

39 (Pages 150 to 153)

A90308E
RONALD B. KEMNITZER      MARCH 26, 2015

| | |
|---|---|
| 1 | Q. So when did you arrive at this new construction? |
| 2 | A. Well, I've been conflicted about this |
| 3 | construction for some time. Largely because of the use |
| 4 | of cavity in this application, and use of cavity in the |
| 5 | term slide gate cavity, and both have a direct           12:23:50 |
| 6 | relationship to the finger buttons. And so in this |
| 7 | declaration, paragraph 13, I misconstrued the term |
| 8 | finger button channel with slide gate. |
| 9 | Q. With slide base channel? |
| 10 | A. The slide base channel, yes. So it's wrong. And   12:24:22 |
| 11 | I understand that 240, this slide base channel, is a |
| 12 | recessed area on the top surface of the base, slide by |
| 13 | the base. |
| 14 | Q. And you're looking at figure 1; right? |
| 15 | A. Figure 1, number 2 -- 230 is the one that points   12:24:45 |
| 16 | to this. |
| 17 | Q. Slide base channel; right? |
| 18 | A. And 240 points to the surface of the channel. |
| 19 | Q. Okay. |
| 20 | A. Part of my confusion was that it didn't look like   12:24:59 |
| 21 | a channel, by my understanding of the term channel. But |
| 22 | I got -- was able to magnify -- since the writing of the |
| 23 | declaration, I was able to magnify the patent to the |
| 24 | point where I could see some detail in this drawing that |
| 25 | does graphically indicate a channel, albeit a very   12:25:24 |

Page 154

| | |
|---|---|
| 1 | channel? |
| 2 | A. I think so. |
| 3 | Q. Okay. You needed the magnified version to |
| 4 | actually get there, though; right? |
| 5 | A. Well, you can see from even your copy, that the   12:27:46 |
| 6 | line quality is not really strong. You can see in this |
| 7 | front edge of that recessed channel, there is a double |
| 8 | line that's back from the edge of the base. I could see |
| 9 | that. So that's first clue. And then enlarging it |
| 10 | verified that for me.   12:28:15 |
| 11 | Q. So this clarification or correction of the |
| 12 | construction occurred by you looking at a blown-up copy |
| 13 | of the patent, not by considering any other material; is |
| 14 | that right? |
| 15 | A. No. The text of the patent had a lot to do with   12:28:37 |
| 16 | it. |
| 17 | Q. Okay. Just -- |
| 18 | A. And I was having some conflict between what I was |
| 19 | seeing here, what I was reading in the patent, and the |
| 20 | fact that channel and cavity were being used kind of   12:28:47 |
| 21 | interposably. I think it's confusing. If I were |
| 22 | writing the patent, I would have used two separate |
| 23 | terms. |
| 24 | Q. Do you think the meaning of this claim term -- |
| 25 | A. That's the whistle telling all the people working   12:29:21 |

Page 156

| | |
|---|---|
| 1 | shallow channel. But there is a dimensional drop on |
| 2 | that surface. |
| 3 | Q. Okay. So was that based on -- I assume you say |
| 4 | magnify like a blow-up copy, like a magnifying glass? |
| 5 | A. I blew up the digital file.   12:25:47 |
| 6 | Q. Like 150 times, just made it bigger? |
| 7 | A. Yes. |
| 8 | Q. When did you do that? |
| 9 | A. It was after the writing of the declaration. |
| 10 | Q. Was it recently, like in the last week?   12:25:58 |
| 11 | A. It was in the last -- well, it's been two weeks |
| 12 | since the declaration. It's been about the last week, |
| 13 | yeah. |
| 14 | Q. I'm going to ask you a question. I don't want to |
| 15 | know exactly what you said or exactly what he said, but   12:26:16 |
| 16 | did you communicate this to counsel, your change of |
| 17 | opinion on this claim term? |
| 18 | A. Yes. |
| 19 | Q. Do you know about when you did that? |
| 20 | A. I think we've been discussing it. Initially   12:26:28 |
| 21 | discussed it a few days ago, and reached an agreement |
| 22 | yesterday evening. |
| 23 | Q. So without magnifying the drawing, like with a |
| 24 | magnifying glass, would a person of ordinary skill in |
| 25 | the art understand the meaning of the claim term   12:27:27 |

Page 155

| | |
|---|---|
| 1 | at the train factory they can go home -- I guess it's |
| 2 | lunch now. Sorry. |
| 3 | Q. Do you think that the meaning of slide base |
| 4 | channel is clear, after considering the patent? |
| 5 | A. Yes, it's clear to me.   12:29:44 |
| 6 | Q. And slide base channel has its plain, ordinary |
| 7 | meaning here; right? |
| 8 | A. Yes. I believe in the joint -- |
| 9 | Q. I didn't bring the joint statement. |
| 10 | A. Okay. I believe in that, there was some   12:30:10 |
| 11 | definitions that were there, and that is when I went |
| 12 | back to my definitions, to see if they were compatible, |
| 13 | because I think that had a definition for channel, and I |
| 14 | wanted to compare that with hollow, and my comparison |
| 15 | led me to believe that they're really the same thing.   12:30:34 |
| 16 | Q. Can I see Exhibit 7? |
| 17 | I see in your joint claim of construction |
| 18 | statement, my recollection is the defendants provided a |
| 19 | definition of channel. Is there a page missing from |
| 20 | this?   12:31:07 |
| 21 | A. There's three. |
| 22 | Q. Three pages. Okay, sorry. Never mind. |
| 23 | So it's clear to you, as an expert in this |
| 24 | case, the meaning of slide base channel, from looking at |
| 25 | the magnified image --   12:31:26 |

Page 157

40 (Pages 154 to 157)

A90308E
## RONALD B. KEMNITZER      MARCH 26, 2015

1    A. Yes.
2    Q. -- figure 1, do you think it would be clear to a
3  person of ordinary skill in the art, reading the patent,
4  knowing the meaning of the word slide base channel?
5    A. I think so.                                    12:31:35
6    Q. Okay.
7    A. Eventually.
8    Q. If they look at the figure?
9    A. If they look at it long enough and hard enough,
10 and compare it to the slide gate cavity, they'll be able   12:31:50
11 to -- I was able to figure out, finally, the difference
12 between them.
13   Q. So plaintiff's construction is a recessed area on
14 the top surface of the slide base; right?  I didn't
15 bring the e-mail I have it in, but I have it written      12:32:13
16 down on my copy of the brief.
17   A. Yes.
18   Q. The defendant's construction is a groove in the
19 user facing portion of the slide base.  Are those
20 constructions all that different?                        12:32:24
21   A. Well, a groove to me indicates something like if
22 I got my pen-knife and I scraped it along here, it
23 will create a groove, more of a very narrow indentation
24 in the surface.  And I see this more as a channel.  If
25 you think of, like an irrigation channel shape, more      12:32:45

Page 158

1  like I'm describing a broad U shape.
2    Q. A flat U versus a V?
3    A. Yeah.  So that would be my interpretation.
4    Q. Would you agree -- I'm sorry, go ahead.
5    A. That would be my interpretation of those two     12:33:01
6  terms, and --
7    Q. The terms being recess and groove; right?
8    A. Between a recessed channel and a groove.  My
9  preference would be a recessed channel is more
10 descriptive accurately, from my point of view.            12:33:17
11   Q. Would you agree with me that those definitions
12 are pretty close?  They're sort of shades of the same
13 color, aren't they?
14       MR. PEELER:  Objection; asked and answered.
15       THE WITNESS:  I see a difference in them.         12:33:27
16 BY MR. HOGAN:
17   Q. Okay.  One is V-shaped, one is U-shaped?
18   A. Yes.
19   Q. So just to back up, to make sure we're all the
20 same wavelength here, paragraph 13 in your declaration,   12:34:05
21 the citation to column 7, Line 64, column 8, line 12,
22 are you still relying on that for the construction?  I
23 would say no.
24   A. Yeah, I would say no.
25   Q. Okay.  So you're relying on the dictionary of --    12:34:21

Page 159

1  figure 5 -- figure 1, essentially; right?
2    A. Yeah, figure 1, and also the -- yeah, the slide
3  base channel definition, 230.
4    Q. Would you agree with me that it seems, from your
5  testimony today and the construction, it's your position  12:35:35
6  that the ordinary and customary meaning of the word
7  channel is a recessed area; is that right?
8    A. Yes.
9    Q. And you're saying a U-shaped channel as different
10 from a V-shaped channel?                                  12:36:07
11   A. It doesn't show a V-shaped channel.  It shows a
12 channel that's flat from side to side.
13   Q. And you're interpreting groove as a V-shaped
14 channel; that's your consideration?
15   A. Yes.                                               12:36:23
16   Q. Did you rely on a dictionary for that?
17   A. No, just experience.
18   Q. That's your opinion?
19   A. Yes.
20   Q. And you're not going to cite a dictionary or a    12:36:28
21 treatise or a publication saying a groove is a narrow
22 V-shaped channel?
23   A. No.  In education we try to be very clear and
24 specific about terms we use when we're describing our
25 designs, and we drill that into students.  And it's      12:36:44

Page 160

1  important also, as a professional, to try to be as
2  accurate -- descriptive and accurate as we can be, so
3  there's no misunderstanding.
4    Q. Do you think a person of ordinary skill in the
5  art -- let's take your first cut at that -- little to no  12:37:03
6  education and experience in taking pills, do you think
7  their term would be a narrow groove-shaped channel, or
8  could be just like a recessed area?
9    A. I think, if you put a drawing of a rectangle in
10 front of somebody and say draw a channel in this from     12:37:24
11 side view, and then give another sheet, draw a
12 groove, I think you would get different things.  My
13 feeling is that you would get something close to what
14 I'm describing, that a groove might just be a irregular
15 kind of shape.                                           12:37:49
16   Q. Some difference.  Okay.
17       Let's turn to paragraph 14 of your declaration.
18 It's on page 5 of 6.  You might also talk about the
19 plaintiff's claim construction on page 12 of 15.  Do you
20 have that handy, in case you need it?                    12:38:10
21   A. Yes.
22   Q. Does the change of your construction of slide
23 base channel affect your construction of slide base
24 channel surface having a distinctive coloring?
25   A. No.                                                12:38:54

Page 161

41 (Pages 158 to 161)

## A90308E
## RONALD B. KEMNITZER     MARCH 26, 2015

1  Q. No. Why not?
2  A. Because I was wrong in that previous
3  interpretation, and I believe that I'm correct.
4  Q. 13 was wrong, as you testified a minute ago. 14
5  is okay, though; right?                    12:39:18
6  A. Yes.
7  Q. And 14, I'm going to read the first sentence of
8  14: In the context of the patent and file history, the
9  term slide base channel surface having distinctive
10  coloring means the surface of the slide base channel  12:39:41
11  that has distinctive coloring.
12  A. Yes.
13  Q. I read that correctly, if inartfully?
14  A. Yes.
15  Q. Okay. I asked you about whether the change of  12:39:50
16  your position on slide base channel affected this,
17  because this construction incorporates slide base
18  channel in it.
19  A. Yes.
20  Q. Can you explain that to me?        12:39:57
21  A. I think I was -- I don't know that I have a good
22  explanation of that, other than I just got confused
23  between slide gate cavity and slide gate channel in the
24  context of the movement of the...
25  Q. Okay.                               12:40:30
Page 162

1  A. It was a mistake.
2  Q. I guess I'm trying -- I'm not trying to beat you
3  up on slide base channel only. It's talking about slide
4  base channel surface having a distinctive coloring.
5  A. Yes.                                 12:40:39
6  Q. And I guess my question is, based on the change
7  of interpretation of slide base channel, what impact on
8  slide base channel surface has a distinctive coloring?
9  MR. PEELER: Objection.
10  THE WITNESS: Recognizing my error in the  12:40:57
11  previous section didn't change my mind about this. I
12  was wrong with that one, I was right with this one.
13  BY MR. HOGAN:
14  Q. So even though -- I'm looking at the
15  brief, and it's actually in your -- I'll read it from  12:41:19
16  your declaration. First sentence begins: The term
17  slide base channel surface having distinctive coloring
18  means the surface of the slide base channel that has
19  distinctive coloring.
20  Slide base channel is in that construction, but  12:41:34
21  it's your position that despite the change I've been
22  getting on slide base channel, your construction and
23  opinion on the meaning of slide base channel having
24  distinctive coloring is unaffected; is that right?
25  A. Yes.                                 12:41:49
Page 163

1  Q. Why?
2  A. I think I answered that.
3  Q. You told me about the mistake and confusion with
4  cavity and channel; I got that. But given that it's
5  slide base channel is the underlying foundation of this  12:41:59
6  construction and that has changed this morning, so your
7  testimony has no impact on the meaning of this claim
8  term; is that right?
9  A. Yeah. I just confused slide gate channel with
10  slide gate cavity. Simple as that. Indefensible, but  12:42:20
11  that's what happened.
12  Q. Things happen all the time. No problem.
13  A. In a perfect world, nothing is perfect.
14  Q. So do you think there's any unique or uncommon
15  meaning to this claim term?                12:42:51
16  A. No. I think it's clearly defined by the reading
17  of the text in conjunction with viewing of the drawings.
18  It's not -- I don't like the term. I think the term in
19  itself is somewhat confusing.
20  As I said before, I probably would have made  12:43:31
21  an effort, were I involved in the -- defining these
22  terms, to give a little bit more clarity and
23  differentiation between some of the terms.
24  Q. Why is it significant that the specific coloring
25  be on the slide base channel? Sorry, slide base channel  12:44:02
Page 164

1  surface? I'll ask the question again. I'll reask it.
2  Why is it significant that distinctive
3  coloring be on the slide base channel surface?
4  A. I think at some point in the text of the patent,
5  it says that the slide base surface may be colored. So  12:44:28
6  in my mind, that means that there could be other means
7  of identifying through color. The color could be on the
8  body of the device. It could also be a different color
9  on either side of the finger button. So I interpreted
10  that reading to mean that the color indication doesn't  12:44:55
11  have to be on that surface.
12  Q. Okay. That's not what I asked you, though.
13  A. Although --
14  Q. What's the significance of the color?
15  A. What's what?                          12:45:08
16  Q. The significance of the color. Why is the color
17  there? What function does the color serve?
18  A. Indicates dosage taken.
19  Q. That's right. The patent describes red or green
20  for not taken or taken; right?             12:45:17
21  A. Uh-huh.
22  Q. So you just said that the colors could be on the
23  back plate. Did I hear you right?
24  A. Colors could be on the face plate. The colors
25  could also be on either side of the finger button.  12:45:41
Page 165

42 (Pages 162 to 165)

A90308E
RONALD B. KEMNITZER     MARCH 26, 2015

| | |
|---|---|
| 1  There are other ways of doing it.  There's also just the | 1  Q. It says:  I offer this declaration in connection |
| 2  position of the switch, which is an indicator, too, of | 2  with the plaintiff's opening brief on claim |
| 3  the button.  And particularly instructive for blind | 3  construction.  This declaration does not include all of |
| 4  people, because they can't see the color. | 4  my opinions -- I'm sorry.  This declaration does not |
| 5  Q. Right.  I understand printed with Braille on some 12:46:08 | 5  include all opinions I may offer in this lawsuit.  Did I 12:59:34 |
| 6  of the color.  Okay? | 6  read that correctly? |
| 7  A. Yes. | 7  A. Yes. |
| 8  Q. All of the figures show the slide based channel | 8  Q. What does that last sentence mean? |
| 9  surface with distinctive coloring on the slide base, | 9  MR. PEELER:  Without disclosing what -- the |
| 10  don't they? 12:46:19 | 10  substance of topics you and I have discussed beyond 12:59:45 |
| 11  A. Yes. | 11  claim construction. |
| 12  Q. There's no figures, there's no description in the | 12  BY MR. HOGAN: |
| 13  patent of the coloring being on the face plate, is | 13  Q. I don't want to know what you told your lawyer, |
| 14  there? | 14  he told you.  I want to know what that means to you. |
| 15  A. Other than the reference that I referred to that 12:46:26 | 15  A. It means that I will, if asked, write a report 12:59:55 |
| 16  said they may be colored.  It doesn't mean -- | 16  stating my reasons for believing that there is |
| 17  Q. The slide base channel surface may be colored? | 17  infringement. |
| 18  A. May be colored. | 18  Q. Patent infringement? |
| 19  Q. And actually, I meant ones they are colored; | 19  A. Patent infringement. |
| 20  right?  They're red and green. 12:46:43 | 20  Q. Trade dress infringement? 01:00:17 |
| 21  A. Later in the patent it describes as being | 21  MR. PEELER:  Don't.  I mean, just don't -- |
| 22  colored. | 22  if asked. |
| 23  Q. So you're talking about the defendants' claims | 23  THE WITNESS:  If asked. |
| 24  talk about a tactile or nontactile indicator on the face | 24  BY MR. HOGAN: |
| 25  plate; right? 12:46:53 | 25  Q. Trademark infringement, if asked? 01:00:21 |
| Page 166 | Page 168 |

| | |
|---|---|
| 1  A. Uh-huh. | 1  A. If asked. |
| 2  Q. Or they can be Braille on the face plate; right? | 2  Q. Do you know anything about copyrights? |
| 3  A. Yes. | 3  A. Yes. |
| 4  Q. That's not distinctive coloring.  The distinctive | 4  Q. Copyright infringement report, if asked? |
| 5  coloring has got to be on the slide base channel 12:47:01 | 5  A. Yes. 01:00:30 |
| 6  surface; right?  That's what's shown and what's claimed; | 6  Q. You haven't prepared those at this point, have |
| 7  right? | 7  you? |
| 8  A. Yes. | 8  A. No. |
| 9  MR. HOGAN:  I'm getting close to the end. | 9  Q. Do you have any other opinions on the meaning of |
| 10  Can we take a short break and I'll collect my notes? 12:47:46 | 10  any of the claim terms in the 358 patent, apart from 01:00:39 |
| 11  I'll probably have some more questions, so we're not | 11  what is in your declaration that we talked about today? |
| 12  done yet.  Can I collect my notes? | 12  A. No, not at this time. |
| 13  MR. PEELER:  Sure. | 13  Q. And I include in that the slide base channel |
| 14  MR. HOGAN:  Five-ish?  Five, ten? | 14  update today. |
| 15  THE VIDEOGRAPHER:  Off the record, 12:48. 12:48:02 | 15  A. Yes. 01:00:53 |
| 16  (A recess ensued.) | 16  Q. Okay.  Any other opinions, you said no, they're |
| 17  THE VIDEOGRAPHER:  Back on the record at | 17  all in the report; right?  All in the declaration.  I'm |
| 18  12:59. | 18  sorry, strike that.  Let me ask that again.  It was not |
| 19  BY MR. HOGAN: | 19  a clear question. |
| 20  Q. We were talking about your declaration before the 12:59:03 | 20  All your opinions on the meaning of the claim 01:01:11 |
| 21  break.  Remember that, sir? | 21  terms, they're in the declaration as written, with the |
| 22  A. Yes. | 22  addition from this morning; right? |
| 23  Q. Paragraph 15 of your declaration, it's on page 5 | 23  A. Yes. |
| 24  of 6. | 24  Q. Do you have any other opinions on any of the |
| 25  A. Yes. 12:59:20 | 25  claim terms, whether in dispute or not, in the 358 01:01:22 |
| Page 167 | Page 169 |

43 (Pages 166 to 169)

A90308E
RONALD B. KEMNITZER      MARCH 26, 2015

**Page 170**

1  patent, that are not in your report, other than we
2  talked about today?
3      A. Not --
4          MR. PEELER:  Let me object that that's
5  outside the scope, but you can answer it.          01:01:36
6          THE WITNESS:  Yeah, I reviewed the -- my
7  report, my declaration, and I'm satisfied with all of
8  the definitions as amended today.
9  BY MR. HOGAN:
10     Q. Okay.  And you have no other opinions of any    01:01:52
11 other claim terms as you sit here today; is that right?
12     A. No, I don't have any other opinions today.
13     Q. Is there anything else you want to state about
14 your declaration or your interpretation of the claim
15 terms that you've not already said today?            01:02:14
16         MR. PEELER:  Objection.
17         THE WITNESS:  I don't have any other
18 questions for you to ask me.
19 BY MR. HOGAN:
20     Q. You want to go home, I understand.              01:02:29
21         Is there any other opinions you have
22 about -- sorry.  Try that again.
23         Is there any other opinions you have about
24 defendant's construction, not in your report or talked
25 about it today?                                       01:02:44

**Page 171**

1      A. No, I've expressed my opinions.
2      Q. Apart from paragraph 4 in your report, which
3  references patent file history, and there's Exhibit 1 we
4  looked at today, the list of things you reviewed --
5      A. Yes.                                            01:03:50
6      Q. -- and we also got the definition this morning
7  regarding cavity and slide base channel.
8      A. Uh-huh.
9      Q. Apart from those materials and the information
10 identified in Exhibit 1, is there anything else that you 01:03:59
11 have relied upon or considered in forming the opinions
12 as stated in your affidavit -- sorry, declaration?
13     A. No.  Those are all from material, articles that
14 I've considered.
15         MR. HOGAN:  I think right now, at this         01:04:22
16 moment, we have no more further questions for
17 Mr. Kemnitzer.  We reserve the right, if he puts another
18 report in this case, to depose him again.  But for
19 right now, I'm done.
20         MR. PEELER:  I've just got one follow-up.      01:04:33
21
22         EXAMINATION
23 BY MR. PEELER:
24     Q. You were asked some questions about front plate,
25 top side.                                             01:04:41

**Page 172**

1      A. Uh-huh.
2      Q. Did that include the generally visible sides of
3  the front plate?
4      A. There is -- well, the front plate is -- let me
5  find my -- so front plate is 110, the structure of this. 01:05:18
6  And the top side, in the patent it refers to it
7  having a top side, a left side, and a right side.  And
8  this is the front plate, and there's a top and there's a
9  bottom, as the base before, in terms of finger buttons.  So
10 as the base before, in terms of finger buttons.  So    01:05:58
11 everything that we see here is on the top side, not the
12 bottom side.  And I think there was a -- sorry.  So all
13 of the sides are missing a part of the top side.
14         And in normal use, I think there is the term
15 called user facing.  Well, this device is attached to a  01:06:57
16 prescription vial.  And if you've used a prescription
17 vial, and if you haven't, God bless you, you're very
18 lucky, but you know that the instructions and the words
19 are wrapped around the vial.  They're difficult to read,
20 because you have to hold the vial and turn it as you're  01:07:19
21 reading.  And for somebody with impaired vision or
22 limited dexterity -- all those things that you need
23 medicine for does that -- it's very difficult.  But in
24 the course of user interaction, they are turning the
25 vial, and so they are going to see all of the surfaces   01:07:41

**Page 173**

1  of that top plate.
2          MR. PEELER:  Those are the questions I have.
3          MR. HOGAN:  I'm going to follow that up with
4  a few questions.
5
6          FURTHER EXAMINATION
7  BY MR. HOGAN:
8      Q. You said 110 is the front plate.  110 is the
9  front plate body, 100 is the front plate.
10     A. Yeah.  But 110, the body contains all of the     01:08:06
11 other components.
12     Q. That's your testimony, front plate body, 110,
13 contains all the other components, 120, 140, 130, 180;
14 is that right?
15     A. In terms of this definition, front plate, top    01:08:26
16 side, I think this is the front plate on the 100.  The
17 top side is everything we see here.  The bottom side is
18 everything we don't see here, on the other side.  All
19 right?
20     Q. Okay.  And the explanation you gave opposing      01:08:45
21 counsel, Mr. Peeler, to his question about the meaning
22 of front plate, top side, none of that explanation is in
23 your declaration; am I right?
24     A. I believe I say that it's -- that 150 involves
25 the top side, the whole structure that we see here.      01:09:06

44 (Pages 170 to 173)

A90308E
RONALD B. KEMNITZER      MARCH 26, 2015

1   **Q. I'm sorry, 150 or 115?**
2   A.  No, 110.
3   **Q. 110.**
4   A.  Sorry.
5       But the -- your construction of the user          01:09:17
6   facing surface of the front plate, I think is maybe
7   incorrect, because if a user is using it, as I just
8   said, he's going to see all the surfaces.
9   **Q.  In paragraph 7 of your declaration, that's where**
10  **you talk about meaning of front plate, top side, and you**   01:09:39
11  **have two sentences that criticize defendant's**
12  **construction.  And the explanation you just gave about**
13  **the pill bottle with the label wrapped around it, none**
14  **of that is in paragraph 7; correct?**
15  A.  Yes.  Front plate, top side, simply refers to the      01:09:55
16  top side of the front plate, as distinguished from the
17  bottom side.
18      MR. HOGAN:  I think we're done.
19      MR. PEELER:  Great, thank you.
20      THE VIDEOGRAPHER:  Off the record at 1:10.          01:10:47
21      (The deposition concluded at 1:10 p.m.)
22
23
24
25
                                    Page 174

1           REPORTER'S CERTIFICATE
2
3
4       I, CECELIA BROOKMAN, RPR, certify:
5       That the foregoing proceedings were taken
6   before me at the time and place therein set forth, at
7   which time the witness was put under oath by me;
8       That the testimony of the witness, the
9   questions propounded, and all objections and statements
10  made at the time of the examination were recorded
11  stenographically by me and were thereafter transcribed;
12      That the foregoing is a true and correct
13  transcript of my shorthand notes so taken.
14      I further certify that I am not a relative
15  or employee of any attorney of the parties, nor
16  financially interested in the action.
17      I declare under penalty of perjury under the
18  laws of Virginia that the foregoing is true and correct.
19  Dated this      day of          , 2015.
20
21
22
            CECELIA BROOKMAN, RPR
23
24
25
                                    Page 175

---
**A**
---
**abbreviate** 18:5
**able** 134:21 154:22,23
  158:10,11
**about** 5:22 6:4 10:24
  13:17 19:15 22:3,5,18
  22:19 25:7 26:16 30:13
  34:7,24 35:3 39:19
  47:15 51:3 53:13 54:7
  54:19,19 55:23 56:8,20
  57:24 59:13,22 62:5,8
  65:25 68:3 69:16 70:4
  70:11,11 73:6,12,19
  75:3 76:18 78:20,20
  79:4,7,17 81:13,14
  82:7 83:4 84:6 93:5
  94:2 95:10 97:21 99:7
  99:10,11 100:8,23
  101:24 103:13 105:6
  115:8,9,13 118:9 131:8
  132:10 133:3 146:15
  150:22 153:24 154:2
  155:12,19 160:24
  161:18 162:15 163:3
  163:11 164:3 166:23
  166:24 167:20 169:2
  169:11 170:2,13,22,23
  170:25 171:24 173:21
  174:10,12
**Absolutely** 95:23 116:15
**abstract** 60:19 96:4
  111:20
**academic** 9:6,9 10:8
**accept** 121:8
**accommodate** 112:10
**accompany** 44:19
**accompanying** 64:13
**accomplish** 142:19
**accomplished** 112:4
**according** 46:9,14 82:9
  131:19 136:11
**accurate** 131:11 161:2,2
**accurately** 159:10
**accused** 9:9 90:5,9,15
  91:2 92:1
**accustomed** 67:14
**across** 30:4 129:1
  133:15 136:15
**act** 45:17
**action** 1:4 175:16
**actions** 84:21
**actively** 15:4
**activities** 66:9
**actual** 42:4,14 58:13,14
  88:21
**actuality** 119:16
**actually** 18:24 33:3 42:13
  110:15 117:12 118:4
  121:6 128:1 130:16
  138:17 156:4 163:15
  166:19
**add** 126:1 137:14
**added** 112:14 137:8,17
**addition** 169:22
**additional** 95:7
**address** 8:7 29:25
  103:11
**addressed** 76:10
**adds** 97:14,25
**adjust** 45:23
**administration** 8:20

**advantages** 64:11
**advised** 38:7,7 39:20
**advisory** 10:15,17
**affect** 57:23 103:14
  161:23
**affected** 162:16
**affects** 55:7
**affidavit** 35:2 36:13 47:1
  47:2 171:12
**afraid** 116:14
**after** 7:9 53:9 54:20,21
  60:1,1,2,3 73:7,8,9
  76:13 96:11 107:9
  109:7 127:2,6 152:12
  153:7 155:9 157:4
**again** 15:1 18:8 24:3,5
  42:7,20 46:12 53:16
  57:21 59:11 60:10
  68:15 69:5,23 72:9
  75:13 77:23 80:10
  88:14 91:11 92:10
  93:17 95:22 99:20
  104:15,24 110:25
  119:12 127:4 138:21
  146:7 148:24 165:1
  169:18 170:22 171:18
**ago** 21:17 28:17 30:3
  34:24 35:3 39:9 43:23
  50:9 117:12 146:16
  150:23 155:21 162:4
**agree** 26:18 29:20 43:19
  109:10 133:7 150:18
  159:4,11 160:4
**agreeable** 7:14
**Agreed** 8:4
**agreement** 155:21
**ahead** 38:19 40:17 76:15
  81:20 111:16 112:18
  159:4
**Albany** 2:5
**albeit** 154:25
**aligning** 119:25
**allegations** 33:13
**allowed** 31:12,13
**allows** 112:2
**almost** 74:11
**along** 24:15 44:24 45:15
  158:22
**already** 30:2 59:10
  170:15
**although** 33:14 70:8
  125:20 165:13
**always** 44:19,22 45:6,6
  67:18 68:9
**ambiguity** 51:23,24
  138:1
**amended** 170:8
**amount** 38:10
**analysis** 83:5
**and/or** 80:12 84:15
  118:14
**angle** 122:22 123:3,23
  123:24 124:2,18
**another** 10:20 16:7 36:5
  45:19 49:6 58:7 86:23
  86:24 92:22 100:11
  123:8,9,11 140:4
  161:11 171:17
**answer** 7:2,8,8,13 18:13
  22:6 27:18 28:4,16
  29:11 40:17 41:13

  55:22 56:12 57:19,20
  58:6 59:5 69:22 75:24
  92:14 93:22,24 95:17
  98:10 106:1 117:21
  121:3,5,17,19 131:4,7
  170:5
**answered** 59:10 80:9
  84:12 108:15 141:14
  159:14 164:2
**answering** 27:17
**answers** 26:15
**anybody** 79:3,4,7 81:8
**anything** 8:18 10:11 16:9
  26:22 39:19 51:2 52:10
  72:22 78:2,5,23 82:12
  82:14 85:18 87:21 88:7
  88:18 94:10 98:22
  119:11 137:14 169:2
  170:13 171:10
**anyway** 29:24 51:10
**anywhere** 57:10 58:1
  111:23
**apart** 86:12 106:24
  169:10 171:2,9
**apologize** 138:21
**appeal** 31:5,7 35:1,3
**appear** 44:8 103:8
**appearance** 41:7,8
**appears** 29:22
**application** 31:6 35:1
  126:22 154:4
**applies** 87:14 145:17
  152:9
**appreciate** 18:23 106:8
  139:18 146:11
**April** 32:11 34:3
**area** 112:8 117:7 122:18
  122:18,18 126:23
  128:25 133:7,14
  134:12 136:15 153:12
  153:18 154:12 158:13
  160:7 161:8
**areas** 14:21,23 15:4 46:5
  61:13 130:18
**argue** 150:22
**argued** 35:8
**arguing** 33:14
**argument** 33:16
**Arleen** 2:19 4:25
**arm** 96:25
**around** 70:4,5 107:13
  109:1 131:22 172:19
  174:13
**arrive** 76:6 85:6 154:1
**arriving** 76:3
**arrow** 113:9
**arrows** 111:19
**art** 13:4,5 16:13 70:14
  79:21 80:3,8,15,24
  81:7,25 82:9,21 83:1,4
  83:6,15,25 84:2,5,8
  85:5,10,20 88:6,10,18
  139:18 146:10 155:25
  158:3 161:5
**article** 106:11
**articles** 106:14,15 122:7
  126:16 129:21 143:2
  171:13
**aside** 10:19 14:16
**asked** 7:3 18:24 26:8,16
  35:23 45:7 56:15 57:3

  55:22 56:12 57:19,20
  59:11 68:4 79:10 92:7
  92:21 93:11 100:7
  107:8 108:15 110:20
  131:11,13 132:7 141:5
  151:13 159:14 162:15
  165:12 168:15,22,23
  168:25 169:1,4 171:24
**asking** 6:3 22:21 40:14
  44:17 46:18 68:11
  69:14,16 75:19 88:9,14
  94:2 100:1 108:20
  121:16 137:16
**aspects** 15:8
**assemblies** 147:7
  149:12,21 150:2,21
**assembly** 62:6,15
  147:21,25
**Assistant** 2:19
**associated** 81:10
**Associates** 1:7 2:7 4:22
**association** 9:15
**assume** 14:5 31:1 41:1
  74:6 87:22 90:2 139:5
  145:6 147:1 153:1
  155:3
**assuming** 7:2
**assumption** 74:8
**assurance** 95:12 101:24
  149:23
**Atkinson-Baker** 1:21 4:4
  4:15
**ATLANTA** 1:2
**attached** 27:10 43:15,24
  102:7,24 103:4,5
  172:15
**attaching** 140:3 143:22
**attachment** 45:19 149:23
**attorney** 19:1,2 175:15
**attorneys** 4:16
**audible** 117:21
**August** 32:21 34:9
**authenticity** 15:22
**automated** 15:19
**available** 16:16 139:19
  146:11
**Avenue** 2:4,9 4:8
**avoid** 16:6
**awaiting** 7:8
**aware** 14:13,14 15:3
  20:20 21:24 30:2 31:1
  40:9 41:24 101:20
**away** 113:6
**axis** 70:25
**a.m** 4:1,7
**A90308E** 1:23

---
**B**
---
**B** 1:14 3:2,9 5:3 8:8
  42:14 71:8
**back** 10:25 12:2 17:24
  21:22 24:6,12 25:6,7
  33:7 39:3 42:20 43:24
  47:5,6,14 48:9 49:9
  54:13 56:25 60:15 71:2
  71:23 91:12 99:19,25
  100:4 102:19,22 103:3
  110:25 127:13,21
  128:16 134:19 135:25
  137:12,13 138:4
  139:14,19 140:25
  142:5,20 145:8,9,12,14

  145:17 146:12,17
  149:8,9,21 152:15
  153:9 156:8 157:12
  159:19 165:23 167:17
**background** 8:13,25
  43:16 44:3,5,8,10,18
  45:2,18,22 46:2
**Backing** 34:23 73:12
**backwards** 63:22
**bad** 127:4 128:13 150:17
**badgering** 27:22
**ball** 39:1
**Baltimore** 8:24
**base** 20:24 21:3 23:15,16
  62:15,16,16,17 63:2
  66:13,23 72:18 73:6
  80:21 110:19 147:4,4,8
  147:21,22,25 148:4,15
  148:16,18,24 149:12
  149:13 150:21,22,24
  150:25 151:2,6,14,16
  152:3,4,5,11,19 153:11
  153:12,19 154:9,10,11
  154:12,13,17 156:8
  157:3,6,24 158:4,14,19
  160:3 161:23,23 162:9
  162:10,16,17 163:3,4,7
  163:8,17,18,20,22,23
  164:5,25,25 165:3,5
  166:9,17 167:5 169:13
  171:7 172:10
**based** 23:7 81:1 101:17
  117:1 118:19,20
  120:13,15,18 155:3
  163:6 166:8
**bases** 125:23 150:13
**basic** 84:17 111:19
**basically** 64:9
**basing** 80:23,25
**basis** 12:16 132:9 145:25
**Bates** 56:8
**BDA** 4:22
**bearing** 56:8
**beat** 163:2
**becomes** 67:13
**before** 5:12 6:2,7,16 15:5
  20:13 24:8 38:5 56:2
  57:3 58:22 59:24 60:1
  60:2 65:7 73:7 91:13
  136:19 140:11 144:15
  144:16 151:5 164:20
  167:20 172:10 175:6
**beg** 33:7,12 35:19 41:20
  50:15 128:12 139:1,12
  149:8
**began** 58:22 99:16
**begin** 140:11
**beginning** 67:19
**begins** 163:16
**behalf** 4:12,21,24
**being** 4:12 24:14 43:14
  46:19 51:9 82:3 83:3
  95:5 113:18,18 119:14
  123:7 144:19 147:8
  153:5 156:20 159:7
  166:13,21
**belabor** 146:7
**believe** 35:22 27:7,16
  29:8,11 49:21,24 52:3
  52:24 66:3 70:14 71:4
  72:2 85:5 90:8,15

91:24 104:17 116:11
142:8,11 157:8,10,15
162:3 173:24
**believing** 168:16
**below** 136:14
**beneficial** 89:19
**benefit** 88:20
**Bensussen** 1:6 2:7 4:21
**besides** 87:21
**best** 11:22 18:20 21:20
29:12 35:24 54:8 64:11
130:16
**better** 81:15
**between** 16:5,15 21:13
21:21 40:10 43:1 49:9
51:6,24 53:24,25 54:17
117:9 122:21 142:20
153:4 156:18 158:12
159:8 162:23 164:23
**beyond** 142:21 168:10
**bigger** 155:6
**bio** 7:6 127:15
**bit** 21:23 108:23 119:18
131:15 134:7 164:22
**blank** 37:6
**bless** 172:17
**blew** 155:5
**blind** 61:25 166:3
**blown-up** 156:12
**blow-up** 155:4
**board** 10:15,17
**body** 104:3,3,18 105:3,4
105:10,11 106:19
107:10,16,17,18,21,21
108:1,7,14,21 109:3,7
109:9,13,14,15,16,18
109:21 110:2,17
111:21 112:7,8 113:9
113:13 126:23 165:8
173:9,10,12
**book** 65:25 78:21 132:8
135:12
**both** 11:19,20 13:12
15:15 16:15 22:15 43:1
53:4 89:6 134:4 141:20
141:21 142:2,3 148:25
154:5
**bottle** 70:25 71:3 102:1
102:17,20 174:13
**bottles** 102:7
**bottom** 30:9 64:1 68:7,22
68:24,25 69:1,7 97:12
98:5,14 100:15 103:24
112:16 114:11 127:25
128:2,19,25 133:15
136:15 139:8 143:9,21
143:22 145:24 148:10
148:14,16 150:24,25
151:2,5,13 152:4,15
172:9,9,12 173:17
174:17
**bounded** 133:21
**Braille** 61:24 107:22
113:14 118:2 166:5
167:2
**break** 7:6,9 56:11,17
57:3 127:11,14,15,17
144:16 167:10,21
**brief** 3:16 17:5 29:17
43:9,11 44:12 60:24
62:11 64:4 72:25 73:3

73:7,11 74:5,12,14,19
74:25 75:2,4,16,17
76:13,14,15,20,21
84:25 97:19,20,21,24
114:25 116:11 123:15
125:11 128:5 133:13
136:6 138:18,24
146:24 152:20 158:16
163:15 168:2
**briefing** 5:13 6:2
**briefly** 8:12 107:23
**briefs** 5:14
**bring** 157:9 158:15
**broad** 2:4 88:13 123:22
159:1
**broadly** 140:14
**Brookman** 1:25 4:14 5:5
175:4,22
**bunch** 47:17
**Burwell** 2:14 4:23,23
92:11
**business** 8:19,20
**button** 62:17 63:11 65:20
67:7 69:3,9 107:22
110:9,12,17,21,22
126:9 132:2,6,21
137:10,22 138:5
148:14 150:18 151:9
154:8 165:9,25 166:3
**buttons** 65:12,18 66:11
66:13 67:5,8,15,21,25
68:12,16,20,24 69:1,2
69:8,12,24 90:1,2
118:5,7 130:20 132:23
132:23 133:10 134:14
134:16,20 154:6
172:10

---

**C**

**C** 2:1 42:14
**CAD** 13:9
**California** 4:5 36:23
**call** 18:4 105:16
**called** 99:12 172:15
**calls** 132:25
**came** 76:11 127:13
**cap** 70:15,16
**capable** 80:12 84:23
**career** 14:22 38:25
132:14
**careful** 68:3 130:15
**carefully** 53:10
**carry** 13:6
**case** 4:10 17:5 18:18
19:24 23:7 24:9,24
28:13 31:5 33:13,22
35:11 36:3,4,5,7,8,9,13
36:16,19 37:4,14,15,16
37:24 39:9,10,16,21
40:1,7,22 43:9,20
44:10,16,20,21 45:18
46:4,23 50:12 51:12
55:6,16 57:15,23 58:20
58:22 59:22 72:7 77:4
79:5,8 82:12,15 83:9
86:23 87:5 93:9 94:8
130:11 136:1,25
146:24 157:24 161:20
171:18
**cases** 30:22 35:25 38:8,9
39:1,5 41:12,23 45:1

45:24
**categories** 14:18 46:3
**category** 15:24
**cause** 38:1
**caused** 38:22 52:23
**caveat** 140:10,20
**cavities** 112:9
**cavity** 20:24 21:3 23:15
23:16 52:18,23 53:13
53:18 54:16 55:17
128:25 129:6 130:3,7,9
130:12,18,21 131:9,23
131:25 132:2,4,5,5,17
133:1,4,8,14,19,24
134:4,15,21,23 135:19
136:14,23 137:4,18,25
138:2,6,7,8,9 154:4,4,5
156:20 158:10 162:23
164:4,10 171:7
**Cece** 4:14
**Cecelia** 1:25 5:5 175:4
175:22
**Center** 4:8
**certain** 41:13 74:10
144:12
**certainly** 7:6 47:20 55:8
67:10,18,18 142:7
**CERTIFICATE** 175:1
**certify** 175:4,14
**cetera** 43:17 107:22
108:8,8 118:16 140:22
147:22
**chair** 31:19,20 32:9 35:4
35:11 96:25
**challenges** 70:9
**change** 24:1 45:23 55:9
55:12 72:10,16,17,23
73:6 87:10 111:23
112:13 124:22,23
155:16 161:22 162:15
163:6,11,21
**changed** 54:10 55:17,23
164:6
**changes** 55:15 124:21
**channel** 20:25 23:17
52:18,22 53:13,17 54:5
54:15,16 55:17 62:16
62:17 63:2 66:23 72:18
73:6 86:20,25 87:3,10
87:11,14 134:4 152:20
153:11,12 154:8,9,11
154:11,17,18,21,21,25
155:1 156:1,7,20 157:4
157:6,13,19,24 158:4
158:24,25 159:8,9
160:3,7,9,10,11,12,14
160:22 161:7,10,23,24
162:9,10,16,18,23
163:3,4,7,8,17,18,20
163:22,23 164:4,5,9,25
164:25 165:3 166:8,17
167:5 169:13 171:7
**characterization** 26:19
136:3
**CHARLES** 2:4
**Charlie** 4:18 5:13 17:11
18:5 22:23 23:7 26:7
26:14 27:17 49:16
98:22 99:8,15 134:23
**checking** 53:6
**Chicago** 8:24

**Cincinnati** 8:15
**circle** 69:13,24 70:4,11
70:12,16,18,22 103:1
**circuit** 41:22,22
**citation** 58:14 94:9
139:22 140:7,19
142:14,15,15 159:21
**citations** 58:25 106:6
**cite** 53:14,18 58:1 94:18
105:14,22 106:11,12
114:14 116:17 120:13
120:17 126:15 129:1
129:14,20 160:20
**cited** 59:6,7 94:22,24
95:1 106:12 119:3
120:20 129:17 144:14
**cites** 105:19
**CIVIL** 1:4
**claim** 3:15 8:2 17:5,13
21:6,25 25:7 37:24
38:17 41:8,12,14,23
42:1,8,11,13,18 43:8
43:21 47:3 51:23 57:14
57:24 69:14 72:7,25
73:3,10,13,20,23 76:8
76:19,20,24 77:1,8,15
77:19 79:5,7,11 85:1
88:19,22 92:12,24,25
93:1,20 94:8 106:7
107:10 108:13 115:14
118:9,12 119:9 120:23
121:6,18 122:1 125:2
125:12 126:2,8 130:7
138:16 143:16 144:5
145:22 149:18 150:1
152:18,18 153:7
155:17,25 156:24
157:17 161:19 164:7
164:15 168:2,11
169:10,20,25 170:11
170:14
**claimed** 89:13 144:2,5
144:21,23 146:16
167:6
**claims** 35:6 37:25 38:21
41:4 42:4,5,8,12,22
43:1 51:18,22 52:10
88:12 89:17 118:7
140:11 144:11 166:23
**clarification** 99:24
156:11
**clarified** 98:25 112:19
**clarify** 7:3 53:23 78:15
100:1
**clarifying** 93:1
**clarity** 164:22
**class** 10:7,8,19 12:17,22
12:25 13:1,1
**classes** 10:6 12:8,10,14
12:16,18,20,21,23 14:5
14:6,8,10,14,16,17
**clear** 19:5 23:5 25:4
53:12 55:25 75:21,22
92:11 96:10 98:20
99:12 109:7 117:24
122:4 126:11 127:2,6,7
138:21 143:9 152:11
157:4,5,23 158:2
160:23 169:19
**clearly** 100:18 105:18
134:5,12 141:6 150:15

151:24 164:16
**client** 30:15 37:20 75:6
**clients** 11:2 44:13
**climate** 100:11
**close** 159:12 161:13
167:9
**closed** 134:2
**closer** 21:14,14
**clue** 156:9
**coaching** 98:21 99:14,22
**collaboration** 22:19
**collaborations** 75:5
**collect** 167:10,12
**collectively** 138:5 149:22
**College** 8:24
**colloquy** 91:13 99:17
**color** 63:16,18 159:13
165:7,7,8,10,14,16,16
165:17 166:4,6
**colored** 165:5 166:16,17
166:18,19,22
**coloring** 161:24 162:10
162:11 163:4,8,17,19
163:24 164:24 165:3
166:9,13 167:4,5
**colors** 63:3,9,10,13
66:24 165:22,24,24
**column** 62:5 63:25 64:1
64:2 101:23,23 103:11
105:25 106:1 108:5
114:15 115:19,20
116:18 118:9,13 119:6
120:13,20 136:10
139:22,23 140:5,6,8,20
140:20 147:8,18
149:14,17 159:21,21
**columns** 126:13 129:18
**combination** 87:15
**Combined** 84:22
**combining** 82:22
**come** 17:24 19:9 21:1,22
22:16 25:6,7 102:16
**comes** 37:7,9
**comfortable** 121:2
**coming** 141:8 163:4,8,17,19
134:18 142:22 78:2
**commentary** 26:20
**commercial** 88:21,23,25
89:13,19,22
**common** 143:23
**communicate** 11:4
**communicated** 79:4
**company** 1:7 2:12,20
4:24 5:1 37:20 65:2
**compare** 157:14 158:10
**compared** 109:1
**comparison** 157:14
**compatible** 157:12
**complete** 8:21 18:21
35:23 44:14 101:5
**completely** 6:10 99:18
**complex** 15:19
**complexity** 15:17,25
85:7
**compliant** 47:1
**complicated** 32:5 83:9
**complied** 27:3
**comply** 46:23
**component** 68:10
113:25 130:14
**components** 96:5 114:1
173:11,13

A90308E
## RONALD B. KEMNITZER        MARCH 26, 2015

composition 42:5
compositions 42:15
compound 87:12
comprised 62:15,20,21
    107:17,18 108:7 147:7
    147:21 148:1,2
comprises 62:21
computer 19:10 72:4
    78:14,16
conceivably 112:14
concept 83:12 125:17
    147:3
concepts 13:5
conceptualize 13:5
concluded 174:21
conclusion 40:15
conclusions 76:11
Conference 4:8
confess 38:4 107:5
confidence 72:15
confident 53:11 54:4
confidential 11:3
configuration 103:12
configured 70:2
confirm 29:15
confirmed 20:14
conflict 156:18
conflicted 154:2
confused 53:2,4 82:3
    83:3 162:22 164:9
confusing 51:3 52:11,13
    52:14 81:15 131:16,17
    131:18 134:6,7 156:21
    164:19
confusion 16:6 52:17,23
    53:25 54:24 55:2 68:5
    154:20 164:3
conjunction 54:14 64:13
    65:1 87:24 164:17
connecting 142:4,5
connection 142:20 168:1
connections 51:5
consider 13:12,14,18
    88:7,18 89:8,10,12
    105:23 122:22
consideration 160:14
considered 17:6 23:21
    58:9 87:21 119:7,11
    152:12 171:11,14
considering 96:11 109:7
    127:2,6 156:13 157:4
consistent 68:9 69:4
    119:12
consists 104:25 125:14
construction 3:16 8:3
    17:5,13 21:6,25 22:3,5
    22:9,10,18 41:12,15,23
    42:2,19 43:9,21 47:3
    57:15,24 58:13 69:17
    72:25 73:3,11,13,20
    74:3 76:19,19,20,24,25
    77:2,8,15 79:5,8 92:12
    92:24,25 93:1,18 94:9
    97:16 100:10 104:12
    104:18 105:7 106:7
    107:25 109:15 115:5,8
    115:10 117:1 122:15
    122:15 123:18 124:21
    125:2,3 129:6,25 136:9
    137:15,18 138:18
    140:2 141:13 150:16

152:7 153:16,18 154:1
    154:3 156:12 157:17
    158:13,18 159:22
    160:5 161:19,22,23
    162:17 163:20,22
    164:6 168:3,11 170:24
    174:5,12
constructions 76:9
    77:20 79:11 117:9
    158:20
construe 35:6 69:15
    93:20 123:7 131:19
construed 136:11
    140:14
construing 42:22,25
consult 10:22 11:1,1,7
    11:18 37:17 44:25
consultant 36:9
consulted 78:5
consulting 11:3,4,5,5
    29:10
consumer 101:11
contact 102:16
contained 95:10 131:9
    153:2
container 101:25 102:2
    102:25 103:4,6
contains 72:6 128:8
    173:10,13
content 134:11 139:5
contention 46:25 68:23
contents 74:10 102:2
context 13:19 86:20
    94:17 104:19 105:2,23
    114:3 116:20 120:18
    128:10,24 137:24
    139:6 145:12 152:2
    153:10 162:8,24
continue 55:5 131:5
Continuing 63:1
contrary 97:15 114:23
    129:5
control 7:25
controllable 133:11
controlling 134:13,15,17
    134:18
conversation 43:1
conversations 77:16
    78:20
convicted 9:2
Cooper 35:14,15
copies 78:24
copy 3:14,20 16:23 17:14
    17:19 18:16 20:11 49:6
    75:1 77:1 134:24 155:4
    156:5,12 158:16
copying 74:25
Copyright 169:4
copyrighted 135:14
copyrights 169:2
corner 29:25 30:1,9
corollary 123:13
correct 7:24 10:22 21:9
    24:11 25:14,19,23 28:7
    28:10,13,18,21 30:23
    33:21 39:6 42:6 43:9
    49:4 52:25 54:2 55:24
    57:13,22,25 62:3,4
    65:10,11 66:7 67:1,22
    68:21 69:10 71:8,17
    72:18 73:1 85:21 88:15

95:3 97:2 98:14 104:9
    104:11 106:17 111:4
    113:10 116:5 126:13
    129:22 131:25 136:10
    137:6,23 142:25
    148:11 151:25 153:16
    153:20 162:3 174:14
    175:12,18
corrected 6:1 150:14
correction 35:21 156:11
correctly 18:1,9 51:5
    63:8 114:12 162:13
    168:6
correlating 129:7
correlation 107:14
corresponding 33:16
    107:7 118:14
counsel 2:20 46:7 50:2,8
    50:9,11 136:19 153:23
    155:16 173:21
counters 70:10
counting 9:4
counts 15:21
couple 47:9 61:5 104:11
course 18:18 23:7 38:25
    66:22 78:9 172:24
court 1:1,21 4:14 26:14
    36:21 40:4
court's 93:20
cover 10:20 12:15
covering 133:7
covers 29:12
Covidien 33:2,10
cpeeler@fpplaw.com
    2:6
cram 111:24
create 112:8 133:4
    158:23
created 52:17 112:9
    130:13 138:3
creating 77:14
creative 31:23
crime 9:2
criticize 174:11
crosshatching 65:19,19
    65:24
cross-hatchings 66:14
    66:24
culturally 14:24 15:7
curiosity 81:14 86:10
current 9:12 13:4
currently 6:12
curriculum 12:12,13
curvature 103:3
curved 71:2 103:3
    149:12,22,24,24 150:2
    150:6,10,13,17,18,22
customary 73:24 86:16
    86:19 96:6,13 109:4,13
    112:12 160:6
cut 161:5
CV 43:17,24 44:20,24
    45:15,20 47:14,15
    101:7

────────────

__D__

__D__ 3:1
date 4:6 20:3 29:7 31:21
Dated 175:19
dates 21:12
day 10:2,8 71:18 137:2

175:19
days 5:24 155:21
DDS 36:5
dead 124:18
deadline 5:13
deal 31:21
dealing 12:10
dealt 31:22
dec 109:25
December 19:24 20:2,5
    21:13,14,21 32:25
    33:23 49:21
decisions 55:8
declaration 3:17 17:4,7
    20:12,15 23:19 24:10
    24:12,15,17,23 25:3
    27:10 36:16 43:14,15
    43:20 44:20 45:6 52:24
    53:12,17 54:6,9,20,21
    56:3 57:11,17 58:2,4,8
    58:10,17,24 59:3,24
    71:5,6,7,24 72:6,15
    73:14 74:6,11,20,24
    75:4,15,18 76:4,16
    77:6 78:3,4,7,10,22,23
    84:24 86:15 89:9,12
    93:13 94:1,8 95:11
    97:8,10,23 100:9
    103:21,23 106:9 108:1
    109:21 111:3 114:2,22
    116:6 119:3 120:17
    125:10 127:24 128:7
    130:4,23 131:2,10
    133:13 137:1,6,9,23
    138:15,19,23 139:4
    141:18 143:17 144:14
    144:18 145:5,6 147:12
    149:8,9 150:1 151:11
    151:18,24 152:14,15
    153:13 154:7,23 155:9
    155:12 159:20 161:17
    163:16 167:20,23
    168:1,3,4 169:11,17,21
    170:7,14 171:12
    173:23 174:9
declarations 40:4 44:25
    93:9 133:12
declare 71:16 175:17
defendant 1:8 2:7,12
    4:13,21,24
defendants 11:19 76:9
    76:13,14 90:16,21
    91:23 100:10 105:7
    115:5,9 125:3 129:5,24
    157:18 166:23
defendant's 73:3,7
    104:12,17 150:16
    158:18 170:24 174:11
define 22:23 28:14 90:1
defined 130:18 134:5
    138:3,4 152:4,5 164:16
defining 134:12,13
    164:21
definition 80:14,23 82:9
    82:25 84:7 87:22 88:1
    93:16 97:1 100:17
    101:6 109:20 116:16
    121:14 131:12 133:10
    134:22 135:21,24
    136:18,20,23 137:4
    149:13 152:7 157:13

175:19
157:19 160:3 171:6
    173:15
definitions 17:12 20:18
    20:22,24 21:1,5,22
    23:12,18,19,22 24:7,10
    24:14,19,22 25:3 51:25
    52:1,3,7 53:7,9,14,18
    53:23 55:6 87:15,16,18
    88:9 157:11,12 159:11
    170:8
degree 8:14,16
degrees 124:21
denial 31:6
dentist 134:3
depending 15:24 87:4
depends 5:24 15:16
    86:20
depicted 148:4
deponent 4:11
depose 92:10 171:18
deposed 6:16 36:19
    39:20
deposition 1:13 3:13 4:7
    4:12 5:16 8:2 9:1 16:10
    136:19 174:21
describe 124:2
described 64:10 66:20
    68:6,8 98:6 100:13
    115:23 116:21 143:24
    146:18 152:19
describes 117:18 123:25
    147:7 165:19 166:21
describing 109:1 121:2
    159:1 160:24 161:14
description 3:10 64:12
    64:18 105:10 107:24
    115:16 166:12
descriptions 52:4,5,6,8
    108:25
descriptive 159:10 161:2
design 8:15,16 11:8,9,11
    12:14,22,24,24 13:2,8
    13:10 14:10,12,15,18
    14:19,24,24,25 15:6,6
    15:7 16:2,3 29:4 30:5
    31:2,9,24,25 32:1,2,13
    32:15,18,21,22,25
    33:10,15,21 34:1,3,9
    34:12,17,21 35:8 40:10
    40:13,19 41:4,11,23
    42:2 45:1 47:20 51:1
    61:14,17 66:4 82:8,22
    82:24 83:6 86:2 101:9
    112:21 132:9 143:6
designed 38:18 46:2
    79:25 86:13 146:5
designer 11:6 13:15,17
    15:14 32:3 54:15 82:11
    82:14 83:14,23,25
    96:15 102:9 142:18
    143:18
designers 81:17 82:7
designing 15:18,18
    80:12 84:23
designs 82:23 83:24
    160:25
despite 163:21
detail 66:3 115:23
    116:22 132:14 154:24
detailed 13:8 56:7
details 66:6 104:6

A90308E
RONALD B. KEMNITZER        MARCH 26, 2015

Deutsch 1:6 2:7 4:21
develop 83:12
device 48:13 50:19,22
 61:3,18,21 65:10 67:14
 67:19 68:24 69:8,13,25
 70:5,24 85:7 87:5 90:9
 91:2 98:3,16 101:12
 102:5,18,20,21 117:23
 119:17 122:22 124:11
 124:16 148:11 149:24
 165:8 172:15
devices 14:9 48:4 70:15
 101:11,12
devoid 107:21
devoted 14:11
dexterity 172:22
dictionary 3:20 17:12
 20:17,18 53:6,14,18
 94:21 135:7,9,24
 136:24 159:25 160:16
 160:20
differ 113:24
difference 53:24 54:17
 116:12 117:8 143:20
 145:23 158:11 159:15
 161:16
different 7:18 15:25 19:1
 40:10 44:17 46:3,3
 51:15 54:18 65:20,22
 69:8,12 87:4 96:16
 117:22 119:14 120:1,2
 120:3,3,5 121:1 127:3
 153:16 158:20 160:9
 161:12 165:8
differentiates 126:22
differentiation 164:23
difficult 172:19,23
digital 155:5
diligent 51:9
dimension 100:15
dimensional 155:1
dimensioned 101:25
direct 107:23 154:5
directed 14:9 31:14 48:3
 48:12 145:5,7
direction 132:4
directly 119:17
disagree 125:3
disagreeing 129:24
disappear 112:17 113:4
disappears 113:2,3
disclosed 42:6 61:3
 115:22 116:20 118:21
 139:13 146:16
disclosing 168:9
discourages 41:23
discuss 75:5
discussed 21:6 45:25
 138:19 152:21 155:21
 168:10
discussing 35:12 155:20
dispensing 15:20
disposed 139:8 145:8,13
dispute 169:25
disputed 73:20 76:10
disqualified 40:1
distinction 122:21
distinctive 63:3 161:24
 162:9,11 163:4,8,17,19
 163:24 165:2 166:9
 167:4,4

distinguished 114:11
 174:16
DISTRICT 1:1,1
DIVISION 1:2
document 15:2 18:2 20:3
 20:11 28:5,6,8 34:25
 48:25 56:8
documents 16:15,17,18
 18:9,25 20:17 21:6
 25:24 26:2,5 27:1,8,13
 28:6,9,12 107:1,9
doing 36:8 77:5 137:1
 139:24 142:11 144:12
 146:15 166:1
done 6:7 23:9 29:10,16
 29:18 30:19 42:1 60:23
 62:10 64:3 99:14
 111:11,14 114:19
 132:6 144:24 153:8
 167:12 171:19 174:18
dosage 61:3,6,7,8,22
 63:3,4,5,12,14,16,18
 63:20,22 65:15 66:25
 67:5,9,11 94:4 95:12
 101:24 110:9,13,16,22
 118:15,15,16,16
 149:22,23 165:18
dosages 50:20 84:15
double 156:7
doubt 14:2 20:3
down 24:23 29:25 30:13
 32:25 61:5 73:19
 118:10 123:18 136:9
 158:16
draft 47:23 75:20 76:15
drafts 78:20
draw 122:21 132:10
 161:10,11
drawing 12:23 111:18
 154:24 155:23 161:9
drawings 64:14 65:2
 66:4 117:22 132:14
 164:17
dress 11:16 29:5 30:5
 34:13 36:14,15,15
 168:20
dressing 11:9
drill 160:25
drinking 6:14
Drive 2:15
drop 99:10 155:1
druggist 85:17
due 6:2
Duer 1:3 3:15 4:11 60:5
 90:5,7,17,25 91:19,22
DUNNER 2:13
during 12:7 18:18 114:6
 123:20 125:20

E

E 2:1,1,4 3:1,9
each 20:3 61:5 62:6,15
 118:15 130:17 147:20
earlier 25:22,23 26:16
 59:21 68:4 120:1 132:7
 132:11 133:2 151:14
early 77:4
easier 43:12 49:8,11
 97:9,11
edge 101:4,4,4 108:8
 123:8,11 156:7,8

edit 45:23
edition 135:14
education 8:20 79:25
 80:11,17,25 81:2,17
 82:1,5,10 83:2,16
 84:19 160:23 161:6
educational 8:12 14:22
educationally 15:14
effort 164:21
Egyptian 40:25 41:21
either 45:19,24 65:20
 90:11 106:3 119:4
 144:18 165:9,25
element 112:17 113:15
 113:15,21 122:12
elements 68:6 84:22
 107:20 112:21 113:20
 151:7
Eli 1:7 2:12,20 4:11,24
 4:25
embodiment 88:21,23
 88:25 89:13,20,23 90:5
 90:7 95:5 111:25
 112:24 115:24 116:5
 116:23 117:2,4,17,19
 119:14 123:8 142:10
 142:21 148:4,10
embodiments 90:4
 117:4,6,16 118:1,21,24
 118:25 140:22
emeritus 9:14,22
employee 175:15
employment 9:12
enclosed 130:10 134:1
encompassed 123:6
encompasses 120:11
end 39:18 104:16 122:20
 125:23 167:9
engaged 46:4
engagement 19:23
engineers 82:8
enlarging 156:9
enough 65:23 86:10,13
 112:14 128:17 153:4
 158:9,9
ensued 56:24 127:20
 167:16
entire 104:22
entitled 4:10 6:1 7:7
 79:13,16
equivalent 82:23
errata 5:15
error 150:15 163:10
espouse 66:3
espoused 132:13
essential 35:9 87:9
essentially 123:13
 129:23 160:1
et 43:17 107:22 108:8,8
 118:16 140:22 147:22
etc 102:1
Ethicon 33:2,9
ethics 9:9
evading 37:10
even 39:20,21 50:25
 86:12 106:6 119:17
 143:5 156:5 163:14
evening 155:22
evenly 12:1
event 56:2
Eventually 158:7

ever 9:2,6,7,9 14:8 39:22
 40:3,6 41:16 42:1 60:7
 60:9 85:18 133:24
every 10:2 30:4,4 45:2,24
 72:1 140:10,13,16
everybody 49:12 84:4
everyone 84:8
everything 18:2 113:11
 113:19 151:4,15
 172:11 173:17,18
evidence 55:7,11,15
 56:3 94:21
evolution 13:7
evolved 78:16
evolving 55:5
exact 20:3 49:7
exactly 44:22 67:3
 155:15,15
examination 3:4 5:8
 171:22 173:6 175:10
examine 3:24 38:20
 86:11
examining 54:13
example 42:9 82:20
 118:1
examples 96:20
except 7:12 14:13
 105:23 117:9
exchanged 60:13
excluded 124:18
Excuse 106:21
excused 9:6
exemplary 140:22
exhibit 17:20,21 18:3,10
 25:8 29:1 43:11,12
 44:2 48:15,17,20,23,24
 52:19 56:6 57:4 60:16
 73:10 78:4 97:9,18
 107:2 116:9 134:25
 135:17 138:10,12
 157:16 171:3,10
exhibits 43:3,6 92:1
exist 113:1 151:23
existence 76:16
existing 82:22
expand 112:11 117:7
expansion 112:2
expect 99:23
expedite 49:10
experience 10:25 30:13
 33:20 39:4 46:5 79:25
 80:12 81:6,12,16 82:1
 82:6,10 83:2,11,16
 84:13,15,19 101:8,8
 140:17,17 160:17
 161:6
expert 11:5,7,8 13:12,19
 13:21 14:1 22:21 28:18
 28:20 29:5 30:6,22
 39:1,4,22 40:1,3,44:25
 45:17 46:10,14,15 51:9
 66:9 102:9 157:23
explain 47:25 111:2
 131:14 162:20
explained 138:1
explanation 95:7 104:5
 108:2 109:20 111:6
 115:16 126:1 130:2,22
 131:7 137:8,17 139:10
 151:17 162:22 173:20
 173:22 174:12

explicate 143:5
exposed 143:9
expressed 24:23 76:4
 78:7 171:1
extend 101:5 112:15
extensive 46:2
extremely 117:24
extremes 15:23
extrinsic 94:21
e-mail 153:23 158:15
e-mailed 79:7
e-mails 60:13
e.g 63:4 101:25 114:14
 129:2

F

face 67:6,9 99:12 108:7
 110:5,10 111:1,21
 112:5,10,12,15,22
 119:18 125:18,20,22
 126:2,3,19 127:1,5
 128:11 129:7 133:3,3,8
 151:5 165:24 166:13
 166:24 167:2
faces 67:5
facilitate 102:1
facing 119:15 125:19
 128:12 158:19 172:15
 174:6
fact 27:24 51:4 72:10
 82:1 91:21 105:17
 106:8 148:17 156:20
factors 12:23
factory 157:1
facts 55:15,18,24
Factual 79:16
fair 7:4,9,10 14:20,25
 15:7 39:25 50:16 84:9
fairly 50:22 144:12
fall 10:7,9
familiar 11:11 40:25
 141:5,6 145:7
Fantastic 135:6
far 23:7 46:15 132:3
FARABOW 2:13
favor 11:23 60:19
February 21:16,19
federal 7:16,19,25 26:14
 41:22,22
feeders 68:19
feel 61:24 106:3
feeling 67:16 130:12
 161:13
few 48:16 51:10 72:20
 86:15 155:21 173:4
field 86:21 87:4
Fifth 2:9
fight 79:17
figure 7:16 65:4,5,16
 66:11 67:21 68:18,22
 68:23 69:2,4,6,10 94:5
 95:9,14,16 100:14,18
 100:22,22 108:10
 109:25 110:2,10,15,15
 110:21 111:18 122:11
 129:2,10,14 132:16
 135:10 148:4,7,7,20
 150:3,3,8,12,24 154:14
 154:15 158:2,8,11
 160:1,1,2
figures 49:8 64:6,14,17

64:20,22 66:1 67:24
68:2,12,16,19 88:11
109:7 110:16 117:18
117:19 148:25 166:8
166:12
**file** 1:5,23 16:12 17:7,10
45:6 49:24 57:7,8,13
57:22 58:1,9,14,25
59:8,14,15,17,17 78:25
79:1 85:15 87:22 88:1
88:11,19 89:18 93:4
94:14,17 96:11 97:14
104:20 105:3,15,17,19
114:4 119:8 122:5
125:18 127:2,6 128:11
128:24 139:7 142:23
145:12 147:3 152:12
153:11 155:5 162:8
171:3
**filed** 56:2 71:10
**files** 13:9 19:10,11
**final** 13:8 20:12
**finally** 158:11
**financially** 175:16
**find** 23:12 51:2,22 52:10
172:5
**fine** 9:21 18:6 68:11
88:16,16 106:5
**finger** 62:17 63:11 65:12
65:18,20 66:11,13 67:4
67:7,8,25 69:1,3,8,9
107:22 110:9,12,17,21
110:21 111:22,23
112:1,2,3 117:6 126:9
130:20 132:2,6,20,23
133:10 134:14,16
137:10,22 138:5
148:14 150:17 151:8
151:16 154:6,8 165:9
165:25 172:10
**finish** 144:16
**finished** 60:25 98:10,11
111:15 115:2 131:3
**Finnegan** 2:13 4:23
**first** 24:19 25:21 31:2
37:15 49:19,20 53:3
61:6 62:14 105:2 115:7
115:13,21 118:15
125:17 128:10,17,23
136:23 139:6 140:5
145:11 147:2 153:9
156:9 161:5 162:7
163:16
**fishing** 39:10,12
**fit** 107:3 139:15,24
146:15
**fits** 70:25 71:2
**fitting** 142:1 144:6,7,8,9
144:23,24 146:17
**five** 12:13 60:3 139:3
167:14
**Five-ish** 167:14
**fix** 48:22 139:14
**flat** 97:3 159:2 160:12
**flexibility** 112:10
**flip** 29:15 49:9 56:9
152:21
**flipping** 84:21 86:11
**FLYNN** 2:3
**focused** 14:24 15:6 16:2
16:3 61:14,17

**focusing** 16:3
**follow** 7:16,19 173:3
**following** 47:17 64:12
**follows** 5:6
**follow-up** 92:3,12 122:10
171:20
**foregoing** 71:17 175:5
175:12,18
**form** 7:13,16 26:15 44:9
45:13,19 64:12 78:22
99:21 138:6 149:22
**formal** 9:15 10:21
**format** 45:22,24
**forming** 24:22 78:6 89:8
135:22 171:11
**formulate** 78:3
**formulated** 89:11
**forth** 49:9 130:4 149:8
175:6
**found** 19:17 21:1,3,8,8
23:16 52:13,14
**foundation** 164:5
**four** 12:14 23:14 24:7
38:8 59:18 60:3 65:9
68:8 89:4,23 90:7,17
111:25 112:2 117:20
139:3
**fourth** 23:17 30:9,10
118:16 139:13
**four-slide** 117:23
**frame** 20:5
**frankly** 117:8
**Freedom** 2:15,15
**from** 3:20 4:14,20,23
5:14 8:15,16 9:6 10:19
13:19 14:16,22 15:17
19:23,25 20:4,5,17,18
20:18 21:25 24:8 25:4
32:2 38:8 40:6 41:21
46:10,15 50:1,2 51:15
59:19,20 68:10,25 69:1
69:6,7 80:22 86:25
88:21 97:23 100:15
111:24 112:5,15
113:24 114:11 122:5
127:25 135:7,9,11,13
142:14 145:20 146:14
153:23 156:5,8 157:19
157:24 159:10 160:4
160:10,12 161:10
163:15 169:10,22
171:2,9,13 174:16
**front** 60:17 74:19 75:16
77:3,5,8 93:16,18 94:4
95:10,12,19,24 96:4,7
96:9,10 97:14,25 99:10
99:10 100:8,11,25
101:1 102:12,16,21,23
102:23 103:4,7,12,15
103:18 104:2,3,18,22
105:3,4,10,11 106:18
107:10,16,17,17,18,20
107:21,25 108:6,7,13
108:20 109:3,6,9,15,16
110:2,17 112:7,8,13
114:4,5,8,9,10,11
116:4,25 117:10
118:13 119:15 120:10
120:23 122:12,16,17
122:23 123:6,15,19,19

123:22,23 124:5,8,13
125:5,6,19 126:23,24
128:12,25 133:15
136:15 137:4 139:8,14
139:19 141:1 142:5,20
143:9,22 146:12
149:20 151:16 156:7
161:10 171:24 172:3,4
172:5,8 173:8,9 174:6,6
173:15,16,22 174:6,10
174:15,16
**full** 35:23
**function** 140:2 141:7
165:17
**functional** 141:19,22,24
142:1 143:19
**Functionally** 145:23
**further** 8:18 64:10 88:3
115:16 133:9 171:16
173:6 175:14

___

**G**

___

**GA** 2:5
**GARRETT** 2:13
**gate** 128:24 129:6 130:3
130:7,12,15,17,18
131:8,23,24,24,25
132:4,16,17,18 133:4,8
133:14,19 136:14
137:10,18,21 138:4
154:5,8 158:10 162:23
162:23 164:9,10
**gather** 6:16
**gave** 49:22 82:25 85:4
107:1,24 108:2 130:22
131:8,13 136:19
151:17 173:20 174:12
**general** 2:19 14:19 86:8
140:20
**generally** 11:1 114:5
123:20,22,25 124:2,5
124:17 172:2
**generate** 86:13
**GEORGIA** 1:1
**getting** 47:6,8 67:19
124:9 163:22 167:9
**give** 8:6,12 20:3,7 21:20
36:23 37:10 95:18,24
99:24 104:17 107:10
108:12 118:17 120:14
121:6 130:6 131:21
135:17 152:3 161:11
164:22
**given** 49:24 73:23 83:13
85:9 95:5 164:4
**gives** 96:1 106:18 108:18
121:8
**giving** 30:1 111:6
**gladly** 99:24
**glass** 155:4,24
**Glendale** 4:5
**go** 10:2 19:8 30:25 33:23
38:19 40:17 48:15
56:13 71:6 73:17 81:20
97:9 99:19 100:4
103:17 110:2 111:16
112:18 118:4 125:10
127:24 128:16,18
146:7 148:7 149:17
157:1 159:4 170:20
**goal** 16:4

**God** 172:17
**Goddess** 40:25 41:21
**goes** 15:20 103:24 113:6
127:25
**going** 5:17 6:19 7:12,15
7:19,23 8:25 17:24
18:4,19,24 25:6 26:11
26:12 27:18,20 30:25
34:8 43:13 47:5 48:7
48:15,21 49:6,7 54:13
56:7 57:16 61:2 62:14
67:20 71:6 92:21 93:19
93:20 98:18,23 101:24
108:24 109:24 112:9
119:18,21,22,22 127:9
138:10 139:4 140:6
142:9 155:14 160:20
162:7 172:25 173:3
174:8
**good** 5:10,11 74:8 81:18
130:9 131:11 162:21
**gotten** 46:10
**Grandin** 8:8,10,11
**graphically** 154:25
**grasp** 51:8
**Great** 56:21 174:19
**green** 63:5,21,22 165:19
166:20
**groove** 158:18,21,23
159:7,8 160:13,21
161:12,14
**groove-shaped** 161:7
**ground** 6:18
**group** 10:13 62:25
**guarantee** 63:19
**guess** 9:15 33:24 37:5
46:19 93:5 107:8
108:12 157:1 163:2,6
**gutters** 87:7
**guy** 87:7
**G-r-a-n-d-i-n** 8:11

___

**H**

___

**H** 3:9
**halfway** 73:19
**hand** 29:13 49:6 56:5
81:9 124:12 136:7
**handing** 25:11 43:6
48:20,23
**Handwritten** 78:11
**handy** 48:15 146:23
161:20
**hang** 48:21
**happen** 164:12
**happened** 164:11
**happy** 6:22,25 37:10
144:19
**hard** 134:24 158:9
**hardly** 134:24
**having** 5:4 13:9 37:6
68:7,8 82:2 107:7
145:8,13 156:18
161:24 162:9 163:4,17
163:23 172:7
**head** 18:14 20:4 122:22
**heads** 123:23
**hear** 144:19 165:23
**heard** 38:5 39:19 141:10
**heights** 119:14
**held** 9:7
**help** 107:7

**helped** 117:5
**HENDERSON** 2:13
**her** 60:6,7,9,11,13 91:3
**hesitant** 46:20
**highlight** 135:19
**highlighted** 135:18
**highlights** 44:12
**highly** 83:10
**him** 22:3,5,18,19 23:24
27:22 40:15 56:12,14
56:15 69:14 91:12
92:10,13,15 99:2 100:1
100:1 171:18
**Hire** 34:1
**histories** 79:1
**history** 12:23 16:12 17:8
17:10 57:7,8,13,22
58:1,10,14,25 59:9,14
59:15,17,17 85:15
87:22 88:1,8,12,19
89:18 94:14,17 96:11
97:14 104:20 105:3,15
105:17,20 114:4 119:8
122:5 125:18 126:12
127:2,6 128:11,24
139:7 142:16,24
145:12 147:3 152:12
153:11 162:8 171:3
**hits** 44:12
**Hogan** 2:9 3:5,6 4:20,20
5:9,19,23 6:6,8 7:15,19
7:23 8:4,5 14:4 16:22
17:3,11,17,20,23 18:7
18:22 19:7 22:8,22,25
23:2,6,9,11 24:2 25:10
25:18 26:6,10,13,18,23
27:5,17,21 28:1,3 29:3
29:19 37:12 40:16 43:5
46:7,13,17,25 47:4,10
47:13 48:11,19 49:15
49:18 52:21 55:21
56:12,15,18,21 57:2,18
58:5,18 59:4 61:1
62:13 64:7,25 69:16,21
75:8,14,22,23 76:12
77:24 79:10,14,16,19
83:18 87:17 91:4,5,9
91:12,17 92:9,14,17,23
93:7,21,25 94:15 97:18
97:22 98:12,21,25 99:4
99:8,14,17 100:3
102:14 104:10 106:25
108:17 111:13 115:1
127:8,11,14,17,23
131:6 134:22 135:3,5
136:5 137:20 138:10
138:14 159:16 163:13
167:9,14,19 168:12,24
170:9,19 171:15 173:3
173:7 174:18
**hold** 19:3,3 22:17 67:15
75:19 92:6 98:9 111:11
141:25 172:20
**holding** 119:20 124:11
**hole** 69:3 110:12,21
130:20 132:2,21
135:21 136:20 137:11
137:22 151:16
**holes** 69:6 107:22 110:9
111:22,23 112:1,2,3,14
113:13 117:6 126:9

138:5 141:19 151:8
hollow 20:25 21:3 23:15
  23:16 133:7 135:21,21
  136:20,20 157:14
home 157:1 170:20
honesty 80:18
horrible 48:21
hotel 4:7 153:7
hours 127:10
house 125:22
human 12:23

**I**

idea 22:10,12,16 83:12
identical 75:3 80:1
identification 17:22 25:9
  29:2 43:4 48:18 52:20
  138:13
identified 17:6 26:4
  73:13 171:10
identifies 17:7 28:9 29:4
identify 74:2
identifying 165:7
Ignore 138:21
Il 41:21
Illinois 8:16
illustrated 87:16
illustrates 111:25
illustration 87:24 100:14
illustrations 54:14 56:1
  107:5 109:2 120:16
image 65:9 67:22 157:25
images 51:6 104:20
  132:10
impact 57:14 163:7
  164:7
impaired 172:21
impermissible 22:20
important 66:6 161:1
inartfully 162:13
inasmuch 142:7
Inc 1:7,21 2:7 4:22
include 12:22 15:25 45:7
  46:5 113:15 122:14
  125:20 130:11 149:14
  168:3,5 169:13 172:2
included 15:8 124:4
includes 15:8 36:14
  81:13 82:10 83:2 98:5
  98:13 104:20,22
  110:19,25 122:12,13
  131:24 137:9,21
including 88:11
incorporates 162:17
incorrect 7:24 104:13
  122:16 174:7
Indefensible 164:10
indentation 158:23
indicate 61:7,8,10,17
  66:25 67:11 118:3,15
  154:25
indicated 61:12
indicates 61:6,20 63:11
  63:18 158:21 165:18
indication 165:10
indicator 110:13,17,22
  149:22 166:2,24
indicators 65:15 67:5,9
  67:21 110:9 118:2,14
individually 126:4
industrial 8:14 12:14,22

12:24 14:12 81:17
  101:9
information 15:3 29:7
  43:16 45:5 47:8 51:7
  65:23 131:14 171:9
informed 14:24 15:7
  87:15 145:2
infringement 31:3 32:13
  32:16,19,22,23 33:1,10
  33:13,15,21 34:1,4,10
  34:13,18,21 36:16 38:2
  38:14 39:14 40:10,18
  40:20 168:17,18,19,20
  168:25 169:4
infringing 40:22,23
initial 52:17,23 53:5
  75:20
Initially 155:20
injury 37:24 38:1,4,13,15
  38:21,23
instance 86:20 96:16
  101:19
Instead 71:2
Institute 9:18
instructed 18:16
instructions 172:18
instructive 166:3
instrument 44:11
intend 55:5
intent 71:4
intentional 120:7
interact 62:2
interaction 10:21 16:5
  124:10 172:24
interchangeable 89:25
interchangeably 54:17
interdisciplinary 14:23
  15:6
interest 44:13
interested 175:16
interpose 102:22
interpretation 13:20
  87:13 107:20 119:13
  120:10 126:4 130:19
  131:8 134:11 159:3,5
  162:3 163:7 170:14
interpretations 53:15,20
interpreted 165:9
interpreting 118:17
  160:13
interruption 139:1
introduce 4:16
introduced 55:7
introduction 73:16
invented 42:9
invention 64:13 67:8
  89:13
inventor 35:13 47:17
  60:4 80:21,24 81:1,2
involved 23:3 33:3,13,15
  37:16 77:14 164:21
involvement 18:18
involves 173:24
involving 39:10
IP 2:8 4:20
irregular 161:14
irrelevant 73:17 99:18
  103:2
irrigation 86:21 158:25
issue 3:19 16:12,14 49:3

54:22 55:4 57:7 80:13
  81:8 82:24 84:16 85:1
  116:19 124:10
issues 8:3 12:11,12,15
  13:3 32:3 33:15 78:20
  93:9
item 72:17
items 89:24 90:12,14
  147:7

**J**

JBDA 4:11
Jersey 36:24
job 48:21 99:2
joint 17:13 76:19,20,25
  77:9,10,12 106:6 157:8
  157:9,17
judicial 74:3
July 31:5 32:15 34:20,25
jumping 149:8
June 34:17
just 6:18,24 7:7,11,15
  8:12 12:23 14:2,22
  16:24 17:1,14 18:25
  22:6,20 25:16 26:11
  30:1 33:19 34:7 35:11
  35:19 38:10 39:18
  42:13 44:21 49:10
  53:12 56:9 61:25 64:8
  64:19 67:16 69:19
  77:21 80:9 81:13,15,24
  83:5,13 84:6,19 85:25
  92:11 97:6,9 98:13
  99:17 103:9 107:21,24
  108:2 113:5 115:16
  117:18 119:6,23
  120:20 126:11 128:13
  130:22 131:2,8,23
  138:7 142:8,18,22
  146:14 148:17 151:10
  151:17 153:4 155:6
  156:17 159:19 160:17
  161:8,14 162:22 164:9
  165:22 166:1 168:21
  171:20 174:7,12

**K**

keep 17:24 26:11 34:7
  38:10 48:15 56:18 72:9
  82:7 109:24 119:25
keeping 81:10
Kemnitzer 1:14 3:2,12
  3:14,17 4:12 5:3 8:8
  17:3 18:4,10 27:12
  30:5 71:8 138:11 143:5
  171:17
keys 104:21
kind 11:3 15:23 39:17
  50:25 81:6 119:20
  156:20 161:15
kinds 84:20
knobs 107:22
know 5:17 11:21 20:16
  20:16,22 21:12,15
  22:12 24:21 25:12 26:9
  26:13 29:16 36:21 37:4
  38:13 39:21 42:23,25
  42:23,25 50:16 56:10
  58:23 60:4,6,22 61:10
  62:9,21 63:16,20 64:3
  66:18 67:16 74:17

75:10 78:4 81:2 84:7
  85:13 87:11 90:11,14
  90:19,19,21 91:21
  95:17 99:11 108:22
  111:21 114:18 117:17
  118:25 121:20,21
  126:24 134:4 135:1,2
  139:5 143:8 144:16
  149:8 153:1 155:15,19
  162:21 168:13,14
  169:2 172:18
knowing 158:4
knowledge 18:20 29:12
  35:24 41:19,20 73:15
  81:8,18,22 84:15,16
  85:13,20 86:1,6,13
  88:4
knowledgeable 13:14,15
  13:16
known 132:8
K-1 3:12 17:21 18:5 78:4
K-2 3:13 25:8,11
K-3 3:14 29:1,13
K-4 3:15 43:3,6,8 73:10
  97:10
K-5 3:17 43:3,7,11,12,13
  43:14,19 44:2 47:15
  50:14 71:5 103:18,20
K-6 3:18 48:17,24 60:16
K-7 3:19 52:19 56:6 57:4
K-8 3:20 138:11

**L**

L 2:14
label 15:22 174:13
labeled 18:3 65:16
  108:10 119:13 122:19
language 54:14
large 33:16
largely 11:8,18,18 154:3
last 18:19 20:1,11 34:20
  97:12 139:23 146:8
  149:7,10 150:14
  155:10,11,12 168:8
later 6:6 37:8 79:17
  166:21
law 12:10 13:13,15,17,19
  13:20,21,22,24 14:1
  140:2
laws 175:18
lawsuit 49:4 168:5
lawyer 13:20 168:13
lawyers 37:4
least 52:14 115:24
  116:22 150:18
leave 10:20 117:18
leaving 49:15
led 157:15
left 68:7 136:7 172:7
left-hand 30:1
legal 40:15 73:17
legend 71:13
legs 153:4
lengthy 140:7
let 7:11 10:25 12:2 24:3,6
  25:12,16 29:16 30:21
  39:3 42:19 45:17 56:10
  56:12 58:7 59:11 60:22
  62:9 64:2 67:7 68:15
  80:10 89:11 93:17 94:7

114:18 135:24 144:16
  169:18 170:4 172:4
lets 63:16
letting 63:20
let's 33:23 34:6 56:17
  63:1 70:6 100:4 103:17
  104:24 125:10 127:17
  127:24 128:18 135:10
  138:21,22 140:5 145:4
  148:7 149:17 152:14
  161:5,17
level 81:21 113:6
liability 38:15
life 11:4 49:11 97:10
lift 67:16
light 55:18,24
like 6:1 11:25 15:18,19
  16:22 22:20 24:21
  26:20 34:7 36:23 42:16
  43:16 45:19 46:11,13
  65:18 69:13 70:11,12
  70:12 91:20 101:12
  112:15 121:10 128:8
  135:11 139:2 140:10
  143:6 146:14 154:20
  155:4,4,6,10,23 158:21
  158:25 159:1 161:8
  164:18
likewise 145:14
Lilly 1:7 2:12,20 4:11,24
  4:25
limit 112:1 151:9
limitation 132:3 149:14
limited 8:2 125:6 129:7
  172:22
limiting 100:17
limits 125:8
line 62:5,6,8,9 64:1,2,8
  94:19 101:23 103:10
  105:25 106:1 108:5
  114:15 115:19,20,23
  115:23,25 116:18,19
  116:19,21,21,23
  118:13,20 119:6
  120:13,21 139:22,23
  140:6,6 142:24 147:8,9
  147:10,11,18 149:17
  156:6,8 159:21,21
lines 61:5 62:9 126:13
  129:18 149:14
Lisa 1:3 21:3 15:1 4:3
  60:5
list 16:18 17:9 18:17,19
  18:25 19:1,8,9 20:23
  27:13 28:9 30:22 38:6
  43:16 46:8,13 47:16
  53:7 58:22 119:2 171:4
listed 16:14 18:2,10
  30:10 34:20,25 35:18
  37:15 39:4,6 48:6 92:2
  105:25 142:21
listing 3:12 28:6 30:18
  35:24 44:14
listings 38:11
lists 64:14
litigation 28:21 30:12
  46:21
little 21:23 46:20 49:11
  80:19,20 81:25 82:4,9
  83:1,11,15 108:23
  117:8 131:15 134:7

161:5 164:22
**LLP** 2:14
**lock** 62:16 147:22
**lodge** 153:7
**long** 12:5 70:25 127:8
128:17 158:9
**longer** 112:12 139:2
**look** 13:3 24:17 25:12
43:13 44:1 49:7 61:23
62:3 65:19,22 67:20
71:12,23 86:10 89:19
101:22 109:24 113:18
114:2,17 118:9 123:18
124:5,7 133:13 135:11
135:11 136:6 138:22
140:5 144:17 145:4
148:20 150:6,8,10
152:14,22 154:20
158:8,9
**looked** 19:5 49:25 53:23
64:19 107:9 142:14
151:13 171:4
**looking** 21:4,7 33:4,5
47:14 53:9 62:1 69:2
88:21 94:1 100:9
116:16 119:16 120:15
122:21 123:2 124:3,12
124:18,18,23,25
127:24 131:22 133:12
138:23 147:11 150:3
150:24 154:14 156:12
157:24 163:14
**looks** 34:7 43:15 61:20
91:20 128:8 139:2
**lost** 126:25
**lot** 15:25 46:2,3 50:7
51:5,7 56:7 70:8 96:16
107:4 153:6 156:15
**low** 81:21
**lower** 113:6 152:5
**Loyola** 8:24
**lucky** 172:18
**lunch** 157:2

**M**

**machine** 15:20
**made** 16:16 51:5 55:8
78:21 79:2 81:14 84:18
85:18 90:17,20,25 91:3
91:18,22,22 155:6
164:20 175:10
**magnified** 156:3 157:25
**magnify** 154:22,23 155:4
**magnifying** 155:4,23,24
**main** 14:23 15:3 30:4
96:5
**mainly** 43:14
**make** 16:4,7 17:20 26:21
26:21 35:21 43:11
49:11 70:18 75:21
82:23 97:9,10 98:20
101:11 105:14,19,22
126:12 138:10 159:19
**makes** 123:25 143:19
**making** 66:4
**manufactured** 70:10
90:11,14,15
**manufacturing** 14:6
31:15 70:9 81:18 83:11
85:13,21 86:4,4,5,6
101:9

**many** 38:25 50:5 59:8
60:2,2 84:2 89:3,3 90:1
111:24 118:23 142:19
143:21
**March** 1:16 4:1,6 20:7,8
23:20 32:18 59:25
71:10,18 137:2
**mark** 16:25 135:18
**marked** 17:21 25:8,11
29:1,13 43:3,6 48:17
48:20,23 52:19 56:5
138:12
**markers** 65:25 132:10
**marketing** 5:14 44:11
**Maryland** 8:24
**master's** 8:16,19
**matched** 91:25
**material** 3:12 156:13
171:13
**materials** 17:6 18:17
19:12,21 53:8 58:21
81:19 83:12 92:2 171:9
**matter** 14:12 31:17,18
32:8 42:9 83:14 123:1
**matters** 11:8,9,10
**may** 15:25 20:23 35:21
46:5 55:8 61:23,24,25
61:25 63:2,4,5 64:11
77:12 84:18,19 86:8,21
86:22 93:8 117:13
118:8,8,13 124:22,22
125:20 147:25 165:5
166:16,17,18 168:5
**maybe** 124:9 174:6
**mean** 50:9,17 52:7,8
62:21,24 70:18 72:3
76:19,21,24 78:19
79:23 80:7 82:11,19
86:9,18 93:10 96:21
103:22 108:19 116:6
123:5 126:9 151:22
165:10 166:16 168:8
168:21
**meaning** 52:25 53:11
54:1 73:24 85:2 86:16
86:19,22,23,24 87:3
95:7,10,19,24 96:2,7
96:10,13 104:6 106:19
107:11 108:13,18,20
109:6,13 115:13 119:9
120:24 121:7,8,18,22
121:23,24,25 122:3,4
122:11,23 123:6 126:1
126:24 127:1,5 130:3,6
131:20,21 136:2,12
137:25 143:8,15
145:22 152:3,8,11
155:25 156:24 157:3,7
157:24 158:4 160:6
163:23 164:7,15 169:9
169:20 173:21 174:10
**meanings** 96:16 109:4
**means** 28:14 54:15
61:17 62:25 79:24
82:14 86:3 94:4 96:22
99:23 104:3 105:3,10
114:4 123:19,23
125:18 128:11,25
132:5 133:14 136:14
139:13,19,24 140:1,2,3
141:7 142:4 146:11,15

146:16 147:4 153:11
162:10 163:18 165:6,6
168:14,15
**meant** 76:22 92:15,18
127:11 166:19
**mechanical** 86:9,9
**mechanisms** 86:1
**medical** 14:9 48:4
**medication** 6:12 81:11
81:12 82:11 83:3,16
84:17
**medications** 81:9 82:2,3
83:2 84:13,14
**medicinal** 50:20
**medicine** 102:1 149:23
172:23
**meet** 60:9
**meets** 27:13
**memorized** 107:6
**memory** 11:22
**mention** 142:10
**mentioned** 12:23 30:3
151:4
**Merriam** 136:24
**met** 10:8 60:11
**method** 42:5 50:19
**methods** 12:24 42:15
85:14
**Michael** 2:9 4:20
**microphone** 106:22
**middle** 115:20
**might** 26:13 49:8 67:14
72:16 80:25 81:14
88:20 89:19 93:5
144:11 146:23 152:22
161:14,18
**Mike** 5:18 23:4
mikeh@seedip.com
2:11
**mind** 37:11 55:18,23
73:6 84:3,4 86:3 89:24
103:7 106:24 107:12
108:25 112:19 117:17
126:8,21 134:5 138:6
157:22 163:11 165:6
**minimize** 16:6
**minor** 9:3
**minute** 28:17 34:24
43:23 150:23 162:4
**minutes** 48:16 56:20
72:20
**mischaracterization**
137:19
**mischaracterizes** 58:4
58:16 59:3
**mischaracterizing** 27:23
57:17
**misconstrued** 154:7
**missed** 33:6,7 35:19
144:18
**missing** 29:9 157:19
172:13
**misspoke** 141:15
**mistake** 163:1 164:3
**misunderstanding** 161:3
**misuse** 16:6
**mixture** 11:19,20,21
**modest** 153:5
**modesty** 153:3
**molded** 31:18,20 32:8
35:3 101:13

**moment** 30:3 37:6 88:5
171:16
**Monday** 20:7
**month** 21:17 117:12
**more** 15:19 17:8 30:10
34:6 39:5,19 42:13
44:14 46:4 49:14 59:12
63:3 81:12 82:22 90:3
98:19 117:6,6,25 118:1
118:4,17,21,25 120:15
125:9 141:6 158:23,24
158:25 159:9 164:22
167:11 171:16
**morning** 5:10,11 6:14
17:12 20:17 21:25
23:23,25 24:7,20 53:19
87:19,23 99:24 132:7
134:23 136:19 153:15
153:24 164:6 169:22
171:6
**move** 106:22 144:10
**movement** 134:12,13,15
151:9 162:24
**Moving** 138:15
**much** 15:19 46:1 58:21
80:17,20,25 85:8
124:23 134:19 140:18
**multiple** 117:16 139:18
146:11
**must** 121:14
**myself** 13:14,18 79:2
142:18

**N**

**N** 2:1 3:1
**name** 4:18 8:6 35:12,18
36:6 37:10 60:4,6
90:19 118:4
**names** 11:2 107:7
**narrow** 158:23 160:21
161:7
**necessarily** 101:14,15
102:23
**necessary** 9:1 106:4
**need** 47:10 61:16 88:7
88:18 95:6 100:1
101:18,19 122:11
146:24 150:2 161:20
172:22
**needed** 156:3
**needs** 85:20 86:6
**never** 25:2,17 38:5 39:19
39:25 46:17 60:11,13
87:10 99:16 141:10
157:22
**new** 21:24 22:9 36:23,24
55:7,11,15,18,24 56:3
99:25 154:1
**next** 6:2 32:11,15,18,21
32:22,25 33:8,23 34:3
34:6,12,17 63:1 65:18
97:10 104:11,15
114:17,21 129:5 139:17
139:9,17 147:6 148:3
**night** 18:19
**Nike** 37:16,19,20
**none** 17:6,6 28:12 59:6,7
68:1 80:22 97:5 111:3
111:8 119:3 120:17,20
130:22 173:22 174:13
**nontactile** 166:24

**normal** 114:6 123:20
124:17 125:20 172:14
**Northeast** 4:9
**Northern** 1:1 8:16
**Nos** 43:3
**note** 8:1 25:16
**notes** 78:9,11,14,19,20
78:20,21,23,25 79:2,11
79:16 142:12 167:10
167:12 175:13
**nothing** 5:6 9:1 11:3 17:8
88:3 94:18 97:8,13,24
118:19 122:7 125:21
129:17 143:6 164:13
**notice** 3:13 25:2 65:21
74:12
**Notification** 3:19
**November** 33:9
**nowhere** 53:14 100:13
**number** 3:10 47:16 49:24
50:1 51:12 58:24
104:22 105:25 106:2
111:1,17 112:2,23
132:24 142:24 148:25
154:15
**numbered** 44:6 47:15
111:17 112:21 118:7
126:4
**numbering** 107:13
108:24 112:20
**numbers** 56:9 94:19
105:16 107:4,6 109:2
118:4,4 130:15,16
**numeral** 108:10 129:2,10
129:14 148:5
**numerous** 108:24
118:22

**O**

**Oakley** 33:24
**oath** 175:7
**object** 22:24 26:12,14,15
27:18,20,24 48:7 55:20
57:16 87:12 91:4 93:19
94:12 98:18,22 99:4,13
99:21 136:3 152:6
170:4
**objecting** 23:8
**objection** 14:3 22:22,25
23:10 26:10,21,22 27:3
27:21 40:14 58:3,16
59:2 64:24 69:17 76:7
83:17 91:7,16 102:11
104:8 108:15 137:19
159:14 163:9 170:16
**objections** 7:12 27:25
175:9
**obligation** 27:13
**observer** 40:20,24
**obvious** 32:3 35:8 83:5
83:24,24
**obviously** 11:2
**obviousness** 82:20
**occur** 55:1 144:15
**occurred** 54:20 156:12
**October** 31:2 32:22
**off** 20:4 56:22 74:25 75:1
84:22 106:22 127:19
167:15 174:20
**offenses** 9:3
**offer** 14:14 168:1,5

**offered** 14:2
**office** 3:19 9:25
**oftentimes** 45:7
Oh 66:22 77:7 106:23
147:15
**okay** 6:6,16,18,25 7:1,5
7:10 8:6 9:5,20,22 10:6
14:20 16:2,20 18:1,5,8
18:12,23 20:13 21:22
24:5,20 26:22 28:23
29:13,23 30:12,25
31:11 32:7,11,15 33:12
33:18,23 34:17,23 36:2
36:4 38:4,16,19,25
39:8,22 42:4,18,24
43:2,12,19 45:22 46:7
46:16 47:14,23 48:12
49:11 50:3 51:2 52:7
59:19 60:15,25 61:2,10
61:16 62:14 63:1,8
66:11,18 68:3,11 70:10
70:24 71:23 72:21
73:18 76:3,13 77:14
79:3 81:24 82:7 83:13
83:23 84:24 85:9,16,23
88:1,3 95:17 98:13
104:2,24 105:1,9,14
106:8 108:10 109:6,12
110:2 112:13 114:8,17
115:7 118:19 120:23
121:3 122:4 123:10,15
125:25 126:7 127:24
128:7,21 129:10,14
130:22 135:10 138:20
140:5,19,25 147:1,18
149:6 150:23 152:2,18
152:18 153:9 154:19
155:3 156:3,17 157:10
157:22 158:6 159:17
159:25 161:16 162:5
162:15,25 163:14
165:12 166:6 169:16
170:10 173:20
**Once** 10:4,5
**one** 10:8,8,19 17:14
22:19 30:8,10 31:2,5
32:2,11,11,15,18,21,22
32:25 33:4,5,8,23 34:3
34:12,14,17,20,25 36:3
39:7,8 40:3 41:16
45:19 52:12,14 59:12
60:15 61:13 63:2,25
67:17 68:4,10 70:6,18
72:17 79:21 80:2,7,11
80:25 81:12 82:16,17
82:22 84:1 86:21 87:18
90:16,21 91:21,24,25
92:1 96:4 98:19 99:20
105:11 107:2 108:2
113:25 115:24 116:8
116:22 117:1,3,19
118:23 119:1,6 121:12
122:10 123:1 125:2,9
125:17 128:10 132:13
135:9,17 139:3,12,13
139:17,24 140:3,16
142:11,21 144:2
146:10,15 147:8
148:10 154:15 159:17
159:17 163:12,12
171:20

**ones** 19:15 58:21 166:19
**ongoing** 12:16 55:3,3
**online** 135:9
**only** 17:18 38:8 55:14
83:16 109:22 115:12
116:12 117:19 118:23
126:5 130:13 144:5
146:16 163:3
**open** 97:10 109:25 134:1
**opening** 3:15 17:5 43:8
43:11 72:25 73:3,10
74:5,12,14,25 75:1,4
76:8 84:25 168:2
**openings** 125:21 126:6,8
**opine** 36:10 37:25 39:14
**opined** 32:4
**opinion** 31:20 35:2 58:24
85:4 89:8 95:3,6,9,23
96:6 113:16 116:25
117:9,14,15 119:8
122:11 129:15 135:22
137:5 141:18 145:1,2
145:25 155:17 160:18
163:23
**opinions** 22:18 24:22
40:4 53:20 55:9,12
57:23 59:1 72:7,10,16
73:12 76:3 78:3,6 83:4
83:23 89:12 143:15
168:4,5 169:9,16,20,24
170:10,12,21,23 171:1
171:11
**opinion/affidavit** 31:7
**opposed** 18:14
**opposing** 173:20
**oral** 15:21 84:16
**order** 5:19 33:8 34:1 43:7
83:12 107:12 112:10
**ordinary** 40:20,24 52:25
73:24 79:21 80:2,7,15
80:24 81:7,25 82:8,21
83:1,4,6,15,25 84:2,4,7
85:1,5,9,20 86:6,16,19
88:6,10,17 89:17 96:6
96:13 109:4,13 119:21
121:22,23,24 122:3
124:14 131:20,21
136:2,12 139:17
143:18 145:22 146:10
152:8 155:24 157:6
158:3 160:6 161:4
**organize** 13:2
**orient** 69:12
**orientation** 68:17 69:7
69:10 144:2
**oriented** 68:20
**ornamental** 41:7,8
**other** 9:3,9 14:12 40:21
45:1 50:11 51:15 65:24
67:17 68:8,10,17 79:4
79:8 82:23 88:7,18
93:8,9,9 105:6 106:14
107:20 117:4 119:1,20
120:18 121:12 122:20
125:25 132:4 139:18
140:21,21,25 142:4,5,8
142:10,15,16,23
143:15,16,22,24
144:12,20,24 146:11
156:13 162:22 165:6
166:1,15 169:9,16,24

170:1,10,11,12,17,21
170:23 173:11,13,18
**others** 15:10,12 38:9
88:20
**otherwise** 79:3
**out** 15:20 19:17 49:16
61:3 71:5 72:3 73:11
94:5 95:14 101:3
105:16 107:13 114:3
117:16 135:10 158:11
158:22
**outcome** 31:11 39:20
**outline** 78:16
**Outlined** 78:21
**outside** 69:17 170:5
**over** 19:23 38:25 63:25
64:1 96:17 128:15
140:6
**overall** 33:22 96:2
109:14,18 113:5,7,9,18
**over-the-counter** 14:9
48:4
**own** 54:23,25 72:4 76:11

**P**

**P** 2:1,1,9
**packages** 15:21
**page** 3:4,10 30:4,9,10
34:6 44:1 63:25 71:12
71:13,16,23 73:16,16
73:17 97:12,18,19
103:24,25 105:25
106:2 114:2 125:11
127:25 128:1,2,5,19
129:17 135:18 136:7
138:15,17,19,23
142:24 146:10,20,23
146:25 152:15,20,24
157:19 161:18,19
167:23
**pages** 3:20 30:5 94:18
106:24 126:13 135:6,7
157:22
**Palmberg** 2:19 4:25,25
17:18
**panel** 96:15
**panels** 153:3
**paper** 106:22
**paragraph** 47:15 58:8
62:9 79:20 93:13,14
94:1,7,9,16 95:5,11,16
95:21 96:8 97:5 100:9
101:22 103:8,10,17,20
104:2,12,16,16,24
105:9,20 106:2 108:5
114:3,18,21 115:7,9,13
115:21 116:9,17,18
119:7 123:18 125:10
125:14 126:1,11
127:25 128:7,14,14,18
128:18,23 138:16,22
139:2,2,5 141:8 142:7
142:13,14,17,24
143:17 144:15 145:4,4
145:7,11 146:8,9,14
147:1,9,10,11 149:10
152:14,19,23 153:1,10
154:7 159:20 161:17
167:23 171:2 174:9,14
**paragraphs** 44:6,19
58:25 74:10 138:20

**paraphrasing** 140:23
**pardon** 33:7,12 35:19
41:20 50:15 100:4
128:13 139:1,13 149:9
**parens** 30:15
**park** 39:1
**parsing** 125:1
**parson** 85:19
**part** 12:12,12 16:7 33:16
40:3 47:15 58:11 64:18
67:4 96:3 102:21
110:25 112:11 122:13
130:20 132:2 133:19
134:19 140:3 149:7,17
150:16 154:20 172:13
**partial** 8:19
**Partially** 134:17,18
135:23,24
**particular** 67:14 80:18
81:22 83:9 86:23 87:14
96:3 101:18 105:18
112:4 126:22 152:1
**particularly** 44:15 56:1
166:3
**parties** 16:15 43:1
175:15
**parts** 61:2 68:8
**passage** 64:18
**past** 20:6
**patent** 2:20 3:18,19
12:10,11,15,18 13:3,13
13:15,17,19,21 14:1
16:11,11,13,14 17:7,10
29:4 30:5 31:3,6,9,9,10
31:12,13,17,18 32:13
32:15,18,21,23,25 33:3
33:10,15,17,21 34:1,3
34:9,12,17,21 35:1
36:7,11,12 37:16,22
38:1,2,4,13,14 39:10
40:11,11,13,19 41:12
42:2,4,6,12,19,22
44:20 45:1,18 48:1,10
48:12 49:3,19,20,24,25
50:3,15,16 51:6,10,12
51:15,16,18 52:5,8,8
52:10 54:13 55:25 57:7
57:8,23 58:9 59:14,21
59:22 60:5,16 62:21,22
64:17,23 65:4 66:21
67:24 68:5,6,12,16
76:11 79:1 80:15 81:7
82:16,17 84:6,8 85:7,8
85:10,15 87:14,16,21
87:25 88:1,7,8,11,19
88:22 89:14,18 90:1
94:13,17 95:18,23
96:11 97:9,13,25 99:3
100:8,13 101:22
104:19,20,21 105:3,14
105:17,18,19,24
106:13,18 107:10,14
108:5,12,21 109:3,7,22
110:16,21 111:1,18,22
112:1,11 114:3 116:5
116:19 117:2,19,22,24
118:20,21,22 119:8
120:18,19,25 121:6
122:5 125:18,22
126:12,20 127:2,6
128:10,24 130:6 134:5

139:7,14 140:2,10,13
140:16 142:6,9,15,23
143:10,24 144:3,17
145:12,20 146:18
147:3,6 148:8,17,20
149:11 150:1,12 152:2
152:3,12 153:9,10
154:23 156:13,15,19
156:22 157:4 158:3
162:8 165:4,19 166:13
166:21 168:18,19
169:10 170:1 171:3
172:6
**patentee** 140:13
**patents** 11:12,14 13:10
13:10 16:13 33:14 41:4
42:8 43:17 47:16,17,20
47:20,22,23 48:3 52:3
**pause** 29:17 60:24 62:11
64:4 114:25
**Peeler** 2:3,4,3:5 4:18,18
5:17,21 6:4 7:11,17,21
8:1 14:3 16:24 17:9,16
18:6,13 19:3,13,22
20:17 21:9 22:1,6,17
22:24 23:1,8,10,24
24:8 25:16 26:4,9,12
26:16 27:3,15,20,22
37:7 40:14 46:12,16,19
47:2,6,12 48:7 49:14
49:17 50:9 55:20 56:11
56:14,17,20 57:16 58:3
58:16 59:2,20 64:24
69:14,19 74:18 75:7,10
75:19 76:7 77:17,21
79:4,8,12,15 81:5
83:17 87:12 90:24 91:2
91:7,16 92:6,8,13,15
92:20 93:5,19,23 94:12
97:17,20 98:9,18,23
99:2,6,9,16 102:1
104:8 108:15 111:11
131:3 135:1 136:3
137:19 159:14 163:9
167:13 168:9,21 170:4
170:16 171:20,23
173:2,21 174:19
**penalty** 71:16 175:17
**pending** 7:8 36:21
**pen-knife** 62:21,22
**people** 61:25,25 84:2
156:25 166:4
**perceiving** 124:13
**percent** 11:25
**perfect** 164:13,13
**period** 19:23 41:14 62:18
63:6 73:24 129:1
**periodic** 50:20
**perjury** 71:17 175:17
**permitted** 75:5
**person** 13:23,25 16:3
38:23 67:13 80:11,14
80:23 81:6,24 82:4,8
82:21 83:1,3,6,15,25
84:7,12,12,23 85:5,9
86:5,9 88:6,10,17
89:17 119:16 124:11
153:5 155:24 158:3
161:4
**personal** 9:1 28:23 29:15
29:21 38:15 39:5 43:16

44:9 101:7
personally 12:20
perspective 69:7
perspectives 117:23
pertinent 44:15 46:6
PHILLIPS 2:3
phone 134:24
photographs 91:25
phrase 80:2,7 143:13
physical 87:9 133:18,19
picks 15:20
picture 41:8,9,9
pictured 65:9
pictures 42:14
pill 70:25 71:3 102:6,17
102:20 174:13
pills 161:6
pin 143:20
pinhole 139:15
pinholes 118:6 139:8
143:8 145:16 146:2
pins 145:24
place 4:7 126:25 135:21
136:20 175:6
placed 101:25
plain 52:25 85:1 121:22
121:23,24 122:3
131:20 136:2 145:22
152:8 157:6
plaintiff 1:4 2:2 3:15 4:19
36:6 74:2 138:19
153:15,23
plaintiffs 11:18,23
plaintiff's 17:4 43:8,20
72:25 73:10,22 74:5,11
74:14,19,25 75:1,4,16
75:17 76:9,14,18,23
77:1,14 84:25 109:15
115:8 116:10 123:15
125:11 128:4 133:13
136:1,4,6,9 138:18,24
146:24 152:20 158:13
161:19 168:2
plan 26:2 27:1 92:3
plastic 101:13
plastics 14:6
plate 93:16,18 95:10,19
95:25 96:4,7,9,10,14
96:17,17,18,18,19,20
96:20,22 97:1,3,15,25
98:3,4,4,13,16,19
99:10,11,12 100:7,8,11
100:25 101:1 102:13
102:16,19,21,23,23,23
103:3,4,7,12,15 104:2
104:3,18,22 105:3,4,10
105:11 106:19 107:10
107:15,16,17,17,18,21
107:21 108:1,6,7,7,13
108:21 109:3,6,9,15,16
110:2,5,10,17,19 111:1
111:21 112:5,7,8,10,12
112:13,15,22 113:8,9
113:10,11,12,13 114:4
114:5,8,9,10,12 116:4
116:25 117:10 118:13
119:15,19 120:10,23
122:12,16,17,23 123:6
123:19,20 125:5,6,18
125:19,20,22 126:2,3
126:19,23 127:1,5

128:11,12,25 129:7
133:3,3,8,15 134:19
136:15 137:12,13
138:4 139:8,14,14,19
139:19 141:1,1 142:5,6
142:20,20 143:9 145:8
145:9,13,14,17 146:12
146:12 149:20,21
151:5,5,16 165:23,24
166:13,25 167:2
171:24 172:3,4,5,8
173:1,8,9,9,12,15,16
173:22 174:6,10,15,16
plates 96:19
please 4:16 5:12 6:21 8:6
15:1 27:19 28:4 30:8
42:7 46:11 60:10,15,19
62:5,8,10 63:25 65:4
69:23 71:23 73:17
75:13 77:23 88:14
91:11,13 93:14 115:20
127:18 144:16 150:8
pleasurable 16:8
plural 120:8,11 122:13
122:16
plurality 90:2 111:22
139:7 143:8 145:8,13
145:16,25 146:1
149:21 151:22
plus 36:15 118:22 140:2
141:7
pocket 135:22 136:20
point 11:4 32:2 37:1
42:12 44:12 69:9,15
94:5 95:14 101:3
111:19 132:17,20,23
149:4 154:24 159:10
165:4 169:6
pointing 107:15,19
118:12 122:19 130:14
133:22
points 132:25 148:13,24
149:2 154:15,18
Polytechnic 9:18
popular 132:8
portion 112:12 125:19
128:11 152:5 158:19
position 61:6,7,8 63:5,6
63:11,13,15 73:23
136:1,4 160:5 162:16
163:21 166:2
possible 74:22,23,24
76:1,2 93:8 118:23
140:14
possibly 70:8 72:10 94:7
post 9:6
potential 44:13
potentially 55:13
pounded 72:3
practical 81:15
practice 13:24 14:21
15:4,14 143:23
practices 13:22
practicing 13:20
precise 133:11
precision 132:9,14
predicate 103:7
preference 159:9
preferred 111:25 115:24
116:5,22 117:1,3
142:21

preliminary 77:1,8,15
prepare 16:9 19:2 44:9
46:21 92:22 93:8
prepared 17:1 18:19
147:1 169:6
preparing 19:8 78:9 92:3
prescription 15:20
172:16,16
prescriptions 15:21
PRESENT 2:18
pretty 11:25 46:1,2 58:21
85:8 140:7,18 159:12
prevented 40:6
previous 38:8 162:2
163:11
principal 112:20
printed 19:10 166:5
printout 29:14,20
prints 15:22
prior 13:4 16:13 37:14,15
70:14 137:2
privilege 26:15 99:21
probably 5:24,24 10:17
30:21 39:5,9 46:22
59:13,17 60:3 86:12
125:11 164:20 167:11
problem 13:2 37:13 47:8
116:15 147:16 164:12
problems 13:6 81:10
82:2 84:13,14
proceeding 40:7
proceedings 175:5
process 13:7 31:16 32:5
42:25
processes 81:18
produce 27:13
produced 16:22 25:24
27:8 28:12 32:4 55:15
87:18,23
producing 26:2 27:1
product 15:18,24,25
16:4,5,7,8 23:1,2,3
38:18 40:21,22,22,23
51:1 80:1,12,18 81:23
83:10 84:23 86:14 90:6
90:15 92:1 101:18
141:24,25
production 13:9 18:25
79:10,17
products 14:11,18,19
46:4 84:20
professional 5:4 44:2,5
44:8,10,18 45:2,18
46:1 101:8 161:1
professor 9:14,22 10:20
12:3
program 12:22 14:10
programs 14:12
project 15:16,17
promise 5:14,18
prompted 53:6
proper 25:17 48:24
102:2
properly 27:25
properties 87:10
proposals 77:19,25
proposed 21:25 97:16
129:6
propounded 175:9
protrude 125:21
protrusion 139:15

protrusions 118:6
141:21 143:20 145:8
145:13,17 146:1,17
151:21,22
provide 18:17 20:10
24:18 41:16 44:20,24
45:2,7,13 46:8 95:6
104:5 105:9 109:20
115:12 139:10
provided 17:4 19:12,16
19:22 23:20,22 24:14
28:5,9 31:6 35:2 36:13
36:16 43:20 46:17
53:14 55:11 97:5 131:9
134:23 136:18 142:16
142:25 143:16 157:18
provides 92:9 132:3
publication 95:1 106:11
106:12 143:5 160:21
publications 106:14
122:7 126:16,17
129:20 143:2
Pull 73:11
purchase 40:21
purpose 63:9,10,20,23
107:1
purposes 9:20 35:6 84:8
pursuant 27:14
put 45:5 75:17 130:4
144:20 146:4 161:9
175:7
puts 15:23 171:17
putting 171:16
P-280 56:9
P-390 56:9
p.m 174:21

Q

qualified 79:24
quality 156:6
question 6:21 7:2,3,8,13
13:18 22:24 24:1,4
26:6,8 28:2,4 37:11
42:20 44:18 48:8 56:12
56:14 57:21 58:8 59:10
69:16,23 75:10,12,24
77:22 89:11 91:6,8,10
92:13,16,18 95:22 99:6
99:9,12,23,25,25 100:7
102:12 107:8 109:12
116:13,14 121:3,5,17
122:10 127:3,4 128:13
131:7 137:24 141:14
155:14 163:6 165:1
169:19 173:21
questioning 25:5
questions 6:19 8:25
10:24 26:15 54:7,19
56:8 100:2 167:11
170:18 171:16,24
173:2,4 175:9
quick 6:18 44:1 56:11
109:24 122:1
quickly 6:24 31:1 124:1
146:8
quiet 27:18 91:4 99:1
quote 125:22,23 129:7
quotes 114:10
quote-unquote 97:15
98:1

R

R 2:1
raised 112:5,13 133:4
range 84:16
rather 116:7
rationale 104:6 105:9
111:2 115:12 125:25
130:2 146:4
reached 155:21
reaches 14:21
read 16:21 23:4 50:3
51:2,4,9,12,18,22 53:2
59:8,17,21 60:3,22
61:2 62:8,14 63:8 64:2
64:5 73:1,4,7,24 74:5,6
76:8 78:25 79:1 85:15
89:18 91:12,14 93:14
97:23 99:20,25 101:24
103:9 108:6 114:6,12
114:18 115:21 116:19
125:23 136:12 139:4
140:7 142:13 147:2,20
148:17 149:10 162:7
162:13 163:15 168:6
172:19
reading 53:9 55:25 63:8
68:5 108:23 114:20
122:5 130:16 136:9
156:19 158:3 164:16
165:10 172:21
reads 125:17 128:10,23
129:5 139:17,24 147:2
147:6 149:20 153:10
real 6:18 44:1 109:24
really 15:16 51:8 81:17
107:13 108:25 123:1
124:14 143:19 156:6
157:15
reask 107:8 116:13
165:1
reason 6:9,23 40:7
reasonable 38:10
reasons 104:17 168:16
recall 24:14 31:13 32:7
36:22,25 37:1,22 48:2
58:19 74:21 75:25 76:3
77:13,20,22 78:2 118:3
recap 14:21
received 17:12 18:16
20:11,16 21:24 24:7,8
25:14 38:6 46:15 53:19
recently 21:17 35:25
155:10
recess 56:24 113:6
127:20 159:7 167:16
recessed 153:18 154:12
156:7 158:13 159:8,9
160:7 161:8
recite 149:11
recognize 25:12,13
43:17 48:25 56:10
151:23
recognized 56:15 57:4
Recognizing 163:10
recollection 21:20 49:23
157:18
record 8:2 17:3 22:23
25:2,4,16 56:22,25
75:21,22 79:18 91:14
98:20 127:19,21
167:15,17 174:20

recorded 175:10
recording 50:19
records 18:20 19:8
rectangle 70:11,12 161:9
rectangular 70:24
red 63:4,21,22 165:19
166:20
redesigned 70:7
reel 39:11,12
refer 20:23 24:12 43:12
43:13 50:15 66:21
76:25 94:5,13 105:16
112:16 122:10 126:6
146:24
reference 57:10 64:11
105:24 115:19,24
116:22 128:6 142:18
152:22 166:15
referenced 24:10 98:19
references 118:22,25
126:12 142:23 171:3
referred 96:3 113:8
142:8 166:15 172:9
referring 31:15 42:23
50:14 61:11 71:13 72:9
76:23 94:6 102:22
107:5 109:22 118:6
140:1,3
refers 64:17,19,22 66:23
96:2 109:14,23 111:21
114:10 117:11 126:5
142:12 172:6 174:15
refinement 13:7
regard 51:16
regarding 14:6 171:7
Registered 5:4
registering 124:15
reinforce 63:3,10,13,13
reinforces 63:15
related 92:12 109:12
relationship 154:6
relative 175:14
relevant 82:1 83:24
reliably 21:18
relied 135:22 171:11
rely 23:18 24:21 160:16
relying 116:2 159:22,25
remember 20:4 35:12
36:6 37:18 58:11 78:6
88:4 133:5 167:21
reminder 48:13 61:3
render 66:1
repeat 6:22,25 88:13
replete 84:25
report 39:16,17,18,21
45:7,8,8,10,12,20
92:12,22 103:18,20,22
116:6,9 146:20 148:3,5
168:15 169:4,17 170:1
170:7,24 171:2,18
REPORTED 1:25
reporter 4:14 5:5,25
91:14
REPORTERS 1:21
REPORTER'S 175:1
represent 4:4,19 24:18
29:14,23 66:19,20
representation 30:18
34:24
representations 29:9

46:8,14 47:7
representing 37:21
represents 130:9
requested 91:15
required 45:6 51:7
requirement 97:14,25
requirements 46:22
requires 83:10 125:22
rereviewed 16:12
research 10:13 12:24
13:3 15:4
researched 53:8 76:10
reserve 7:12 55:9 72:12
92:10 171:17
reside 8:8
resolve 54:23,24
resolved 54:22
resolving 55:5
response 18:15 25:25
26:3 27:2
responsive 5:14
responsiveness 7:13
Reston 2:16
result 84:22 85:24
retained 134:21
retired 9:13,13,15 11:6
15:5
review 19:9 99:19
reviewed 3:12 16:11,11
16:12,13,14,19 18:2,9
18:17 28:6,8,10 58:20
170:6 171:4
rib 108:8
ribs 98:6
ridiculous 26:19
right 11:12 12:3 13:23
14:1 18:10 19:6 24:9
25:25 29:5 30:6 31:3
33:9,22 34:4,10,13,21
35:4,9 36:25 37:11
40:11 41:1,9,12 42:10
42:12,16 45:2 46:19
47:18,21 50:20,25
51:10,18 52:8 53:15
54:3 55:9,13 59:22
61:14,22 63:6,17,21,23
64:15,20 65:1,2,7
66:16,21,24 67:4,22
68:7,20 69:4 70:20,25
71:2,3,10 72:7,12,14
72:22 73:25 74:3,7,25
74:25 75:1 76:20 80:3
80:5,15 82:3 85:2 86:7
86:16 87:10,19 88:3
89:25 90:7 92:10 93:14
94:19 96:8,17 97:11,16
101:9 102:10,20
103:17 104:5,7,13,18
104:25 105:7,8,12,15
105:20 108:3,4 109:10
109:25 110:3,10,13
112:24 113:1,22 114:6
114:15 115:5,10,14,17
115:18,25 116:2,10,11
117:2,20 118:2,8,21
119:9 120:2,11,21
121:4 122:8,13 124:16
124:19,20 125:7,15,23
126:9,13 128:8 129:18
129:19,21 130:1,3,4
132:14 133:16 134:3

134:10 135:8 136:6,7
136:12,18,21 137:11
139:10,15 140:11,12
140:14,22 141:16
142:17 143:6,10 144:3
144:6,21,22,23,24
145:1,9,18 146:4,5,18
147:23 148:3,15,18,25
149:24 150:17,19,25
151:3 152:9,16 153:2
153:13 154:14,17
156:4,14 157:7 158:14
159:7 160:1,7 162:5
163:12,24 164:8
165:19,20,23 166:5,20
166:25 167:2,6,7
169:17,22 170:11
171:15,17,19 172:7
173:14,19,23
right-hand 30:9
Road 8:9
Roanoke 1:15 4:1,8,9 8:9
rocking 31:15,20 32:8
35:3,11
role 33:22 36:9,10 37:22
37:24,25
Ron 5:22 6:4 18:13
Ronald 1:14 3:2 4:11 5:3
8:8 30:5 71:7
room 153:4
rough 78:15
roughly 19:24 20:4 50:5
rounded 97:4
RPR 1:25 175:4,22
Rule 23:4 26:19 46:9,14
46:22 47:1 99:20
rules 6:18 7:16,20,25
running 153:5

---

**S**

S 2:1 3:9
same 44:22 46:1,24 49:7
69:9 74:11 75:17 87:10
103:3,14 117:23 120:2
121:10 125:12 135:7
135:11,12 141:21
146:1,3,4 148:25
157:15 159:12,20
satisfied 138:2 170:7
saved 78:17,18
saw 24:19 25:21 49:20
91:21,24,25 144:13
saying 5:25 7:24 20:2
33:18 42:13 45:9 46:23
64:9 69:6 85:19 120:18
125:5 129:24 140:21
160:9,21
says 30:12,15 31:5 33:4
33:5,20 47:16 61:5
71:7,16 73:22 79:20
97:24 102:9 103:6
105:2 107:16 114:9,14
115:21 117:10 129:2
135:21 136:11,14
139:13 140:21 147:20
147:22 148:2,3 149:11
149:24 150:21 165:5
168:1
schedule 6:5
scheme 51:1
scholarly 106:15 126:16

129:21 143:2
school 10:21
scope 69:18 170:5
Scott 2:14 4:23
scott.burwell@finneg...
2:17
scraped 158:22
screwdriver 15:18
seamless 16:6
searches 13:3
Seattle 2:10 4:21
second 18:24 31:5 34:23
34:24 35:3 50:8 58:10
60:15 61:7 73:22 79:20
86:5 107:9 114:9 115:8
116:17 118:15 123:18
125:2 129:23 135:17
146:8,16
section 60:19 131:1
140:10,19 141:1,7,16
163:11
secure 139:19 146:12
securing 140:25
see 6:4 24:12 29:25
30:13,15 31:7 32:11
34:6 44:6 45:9 49:19
60:19 61:8,21 62:6,18
63:2 65:4,12,12,15,16
65:18,19,22,23,23
66:11,13,14,16 67:18
68:17 71:19 73:19
82:21 95:9,14 98:1
100:18 102:2 106:3,6
107:2 108:8 110:3,7
112:22 114:14 119:18
119:19,21,22,22,24
123:2 124:3,6,7,12
128:2,19,21 129:2,2,7
134:12 135:6,10
136:23 143:19 144:17
144:18 147:4 148:5,22
149:2,14,15 154:24
156:5,6,8 157:12,16,17
158:24 159:15 166:4
172:11,25 173:17,18
173:25 174:8
Seed 2:8 4:20
seeing 84:21 124:14,19
124:23 156:19
seem 75:3
seems 160:4
seen 25:19 65:7 76:14
88:25 90:4,5
Self-evident 145:20
self-explanatory 139:9
143:11,12 145:14
semester 10:5,7
sent 23:24
sentence 62:14,20 63:1
73:22 79:20 80:3,5
97:13 105:2,12 108:2,6
114:9,12 115:22
116:18 129:5,23 139:6
139:9,12,13,17,24
145:11 146:9 147:2,6
148:3 149:10 152:1
153:9 162:7 163:16
168:8
sentences 104:11,16,25
105:6 114:17,21 115:4
115:7,9,13,17 125:14

128:8,21,23 131:1,9
139:3,10 142:13
174:11
separate 100:18,20,22
100:24 101:1 112:17
113:19,21 126:8
156:22
September 34:12,15
serve 165:17
served 27:25 76:13
service 25:17 27:24
serving 92:3 96:19
set 6:2 107:1 175:6
seven 89:4,23 90:9,10,20
91:22,24 112:15
seven-hole 112:24
seven-slide 91:18
117:17
several 30:25 34:6 37:15
113:25 142:13 147:7
shades 159:12
shake 18:14
shallow 155:1
shape 70:24 86:25 87:10
102:24 103:7,11
158:25 159:1 161:15
shared 16:15
sheet 161:11
Shenandoah 4:8
ship 96:19
short 56:18 127:11,14,17
167:10
shorter 112:12
shorthand 175:13
show 18:24 38:8,9 63:4,5
67:24 68:12 110:21
160:11 166:8
showed 119:1
shown 42:14 68:2 101:2
110:10,13 117:20
118:19 123:9 167:6
shows 68:23 100:14
150:12 160:11
side 61:24 65:20,24
67:16,17 68:7,7 69:3
70:16,17,18 98:5,14
114:4,8,9,10,11 116:4
116:25 119:16 120:10
120:24 122:10,17,23
123:6,8,14,19 124:3,6
124:7 125:5,19 128:12
128:25 133:15 136:15
139:8 143:9,21,21,22
143:23 145:9,14
146:17 160:12,12
161:11 165:9,25
171:25 172:6,7,7,7,11
172:12,13 173:16,17
173:17,18,22,25
174:10,15,16,17
sides 67:25 68:9,13,14
122:13 124:14 130:11
172:2,13
sifting 51:7
signature 71:18,21
signed 5:15 54:5,9,20,21
59:24 74:6
significance 165:14,16
significant 164:24 165:2
significantly 54:18
similar 53:5 79:25 84:20

**simple** 15:17 50:25
85:25 164:10
**simplest** 64:12
**simply** 114:10 174:15
**since** 41:18,21 42:1
54:10 127:11 143:10
154:22 155:12
**single** 72:1
**singular** 120:11
**sir** 5:10 6:9 8:6 9:2 25:12
25:24 26:8,24 28:4,24
29:20 40:9 43:19 48:25
56:10 57:3,13,22 59:9
61:9 69:22 72:14 75:24
83:7,19 91:10 92:19
100:4 107:23 110:20
122:1 125:10 127:24
130:24 132:7 133:7
135:3 139:1 141:18
150:8 152:16 167:21
**sit** 98:23 170:11
**site** 3:14
**sitting** 96:25
**skill** 79:21 80:2,7,15,24
81:7,25 82:8,21 83:1,4
83:6,15,25 84:2,4,7
85:5,10,20 86:6 88:6
88:10,18 89:17 139:17
143:19 146:10 155:24
158:3 161:4
**skips** 61:5
**slide** 61:6 62:2,6,15,15
62:16,16,17 63:2 66:23
72:18 73:6 90:20 112:9
118:15 125:22 128:24
129:1,6 130:3,7,12,15
130:17,18 131:8,23,24
131:24,25 132:3,4,5,6
132:16,17,17 133:4,8
133:14,15,19 136:14
136:16 137:10,18,21
138:4 147:4,4,7,8,20
147:21,22,25 148:4,15
148:16,18,24 149:11
149:12,13,21 150:13
150:21,21,24,25 151:2
151:3,4,6,14,15 152:3
152:11,19 153:11,12
153:19 154:5,8,9,10,11
154:12,17 157:3,6,24
158:4,10,14,19 160:2
161:22,23 162:9,10,16
162:17,23,23 163:3,3,7
163:8,17,18,20,22,23
164:5,9,10,25,25 165:3
165:5 166:8,9,17 167:5
169:13 171:7
**slides** 61:21 65:9 89:4,23
89:23 90:7,9,10,17
91:22,25 117:20
118:17 125:21
**sliding** 61:21 86:11
133:10
**slightest** 119:18
**slightly** 11:23
**slips** 37:11
**snap** 139:15,24 142:1
144:5,8,9,23,24 146:14
146:17
**solid** 15:21 84:16
**solution** 31:23 32:6

**solutions** 13:6
**solve** 55:1
**solved** 54:25
**some** 6:19 8:25 10:24
19:14 20:16 37:1 43:16
44:6 49:8 51:24,24
52:16,17,23 54:7,19
55:8 61:23,24,25,25
68:6 70:14 73:16 81:8
81:14 84:17 88:9,20
131:14 138:1 139:10
142:8,10 154:3,24
156:18 157:10 161:16
164:23 165:4 166:5
167:11 171:24
**somebody** 13:21 54:24
79:24 81:11,13 84:15
161:10 172:21
**something** 11:25 15:19
30:2 83:10 84:5 99:12
130:10 158:21 161:13
**sometimes** 6:24 45:9
**somewhat** 131:18
164:19
**somewhere** 21:12
144:13
**sophistication** 81:22
**sorry** 10:25 18:15 34:14
48:9 50:14 59:11,15
63:22 68:23 81:20
82:25 88:14 93:16
97:18 100:4 101:23
103:19,22 104:15
106:23 112:18 116:12
118:11 119:25 126:24
127:3,4,12 128:14
131:24 132:16 135:13
140:20 141:15 142:4
147:15 152:23,24
157:2,22 159:4 164:25
168:4 169:18 170:22
171:12 172:12 174:1,4
**sort** 50:22 107:13 159:12
**sounds** 121:10
**Southwest** 8:9
**space** 9:22 67:22 110:18
110:19,22 130:12
133:4,21 138:3,7,7,8,8
**spanning** 20:5
**speak** 6:23 22:3,5 60:7
**speaking** 9:14 15:13
132:1 145:23 150:20
**special** 45:22
**specialized** 14:14
**specialty** 61:14,16
**specific** 12:17 14:11,18
69:2 105:19,22,24
126:12 142:15 160:24
164:24
**specifically** 14:8 21:23
24:22 54:1 64:17,19,22
78:6 94:18 126:15
129:17 141:3,4 142:6
142:23
**speech** 22:23
**spell** 35:15
**spikes** 103:5,8
**split** 12:1
**Spokes** 32:1
**spots** 142:9
**Square** 2:15

**stage** 46:20
**stamp** 48:24
**stand** 45:24 150:14
**standard** 40:13 42:21
**standards** 40:10 42:18
**standing** 86:21
**start** 5:12 13:5 99:11
128:14
**starting** 101:23 114:23
146:9
**starts** 44:3 61:3 62:6
73:22 114:3
**state** 9:19 13:4 27:23
36:23 52:24 58:9 94:2
104:2 170:13
**stated** 78:3 96:7 119:7
137:5,21 141:1 142:6
153:13 171:12
**statement** 17:13 76:20
77:9,10,12 88:13 101:7
150:14 157:9,18
**statements** 84:25 175:9
**states** 1:1 3:18,19 11:14
14:13 65:1 105:18
116:21 136:10 139:6
145:11
**stating** 115:4 168:16
**statutory** 141:13,16
**stenographically** 175:11
**steps** 78:17,18
**stick** 153:4
**sticker** 48:21
**still** 9:15,23 25:5 54:7
69:9 95:21 102:24
103:5,13 113:5 159:22
**stop** 64:8 81:20 98:21
99:8
**story** 99:19
**straight** 119:17 122:24
122:25 123:2
**straightforward** 50:22
**strange** 39:16
**street** 87:7
**strike** 169:18
**strip** 94:4 95:13 101:25
124:17 149:23
**strong** 156:6
**struck** 40:4
**structural** 141:19,22,23
142:1
**structure** 39:17 42:9,11
70:22 86:25 94:4 95:12
96:3,22,23 97:1,3 98:5
104:23 109:14,18
113:1,5,8,10 130:17
133:18,19,21,23
137:10 150:17,18
172:5 173:25
**structures** 42:6,15
100:22 111:20 140:25
**students** 10:15 13:1
160:25
**studio** 12:13,14,15,22,25
13:1 14:16
**study** 8:19 61:13
**studying** 85:7
**stuff** 17:9 73:17 78:5
**style** 88:7 126:12
**subheading** 73:19
**subject** 31:17,18 32:8
42:9 93:23

**submitted** 20:15
**subpoena** 3:13 18:16,23
25:25 26:3 27:2,4,14
27:23,24
**subset** 112:23
**substance** 168:10
**substantially** 75:16
**sufficient** 105:13
**suggest** 102:5,10
**suggested** 19:2,4
**suggests** 51:4
**Suite** 2:9
**supplement** 47:7
**supplemented** 82:5,6
**supplied** 116:17
**supply** 37:8 45:18
**support** 17:4 30:12 31:7
35:2 47:3 53:15,19
58:13 59:1 94:8 107:25
129:15 151:8
**supports** 150:17 151:2,4
151:5,6,6,14
**supposed** 29:24 66:18
66:20
**sure** 13:16 15:2 23:6
35:22 47:12 49:23
75:21 77:7,13 98:16,20
99:20,23 127:16
137:16 141:23 159:19
167:13
**surface** 62:17 63:2 66:23
100:15,16 112:6,16
117:10 119:15,22,23
122:20 123:19 124:5
125:6,8 126:5 130:13
132:25 133:22,22
138:3 149:5,6 151:6
152:4 153:19 154:12
154:18 155:2 158:14
158:24 161:24 162:9
162:10 163:4,8,17,18
165:1,3,5,11 166:9,17
167:6 174:6
**surfaces** 114:5 117:11
119:12,19,21,24 120:4
120:6,7,8 122:16 123:5
124:6,7,13 172:25
174:8
**surrounds** 130:17
**sweeping** 87:7
**switch** 67:17 84:21
86:10 96:18 166:2
**switches** 89:3
**sworn** 5:4
**system** 107:14 108:24
112:20
**systematic** 13:7

---

T

**T** 3:9
**tactile** 118:14 166:24
**tailored** 12:17
**take** 7:6 20:8 25:11 43:13
48:9 56:11,17 71:5
78:9 81:21 110:25
114:2 127:17 135:6
136:6 161:5 167:10
**taken** 4:12 61:6,7,22,22
63:4,4,5,12,14,14,17
63:18,19,21,21,21,22
63:23 64:13 65:1 67:1

67:2,3,11 81:11 84:15
85:17 165:18,20,20
175:5,13
**taking** 4:7 81:9,12 82:2,2
82:3,10 83:2,16 84:13
84:14 86:12 102:2
153:16 161:6
**talk** 5:21,25 6:4 25:7
26:12 53:13 76:18
105:6 115:8,9 161:18
166:24 174:10
**talked** 34:23 35:3 79:3
132:10 146:15 169:11
170:2,24
**talking** 26:11 47:15 70:4
82:7 84:6 99:7,8,9,11
99:22 100:8,21,23
103:13 133:2 163:3
166:23 167:20
**taught** 10:7,19 12:21
14:5,5,8
**teach** 10:6,11 12:7,10,18
12:20 13:1 14:17
**teacher** 12:2
**teaching** 10:24 132:9
**tear** 106:24 107:2
**Tech** 9:17,18,20,21 12:3
12:6,7
**technical** 46:5 83:10
86:13
**technically** 9:14 119:23
132:1 150:20
**technology** 31:14,15
64:10 115:22 116:20
**television** 86:22
**tell** 5:5 6:24 21:16,18
26:17 37:1 60:2 75:9
83:19 88:17 97:21
121:25 122:2 153:7
**telling** 24:9 89:16 156:25
**tells** 112:23
**ten** 167:14
**term** 10:17 25:7 47:25
54:5,15 86:20 95:7,19
95:24 99:4 100:8
106:18 107:10 108:13
109:9 114:4,8 115:14
119:9,12 120:23 121:7
121:18 122:1 123:25
125:8,12,18 126:2,19
128:11,24 130:7,9,9
131:12,17,19 133:14
134:4 136:2,11 137:25
138:2,16 139:7 145:7
145:12,22 147:3 152:3
152:8,18,19 153:11
154:5,7,21 155:17,25
156:24 161:7 162:9
163:16 164:8,15,18,18
172:14
**terminology** 54:19 68:4
68:9
**terms** 21:5 51:23 52:16
52:17,22,25 53:4,6,10
53:13,17 54:1,16 58:14
70:9 73:20,23 74:2
76:10 83:11 85:1 93:20
99:3 107:14 109:22
113:17 125:1 136:24
141:24 143:18 156:23
159:6,7 160:24 164:22

164:23 169:10,21,25
170:11,15 172:10
173:15
**test** 40:24 82:20
**testified** 5:6 24:6 39:22
52:22,24 98:13 120:1
133:2 162:4
**testify** 6:9
**testifying** 40:6
**testimony** 18:9 19:4 68:1
79:21 83:7,13 87:1,2,3
98:8 103:9,10,14 122:1
134:16 142:22 145:16
160:5 164:7 173:12
175:8
**tests** 82:16,17
**text** 45:8,10,12 48:1 51:6
156:15 164:17 165:4
**thank** 26:22 35:17 47:10
59:7 67:3 69:18 74:9
92:8 117:15 174:19
**their** 15:22 53:11 73:23
82:1,10 107:6 124:11
125:9 161:7
**themselves** 4:17 21:23
**thereof** 64:11
**thick** 98:3 100:7,12,13
102:6
**thickness** 98:4 101:12
103:13,14
**thicknesses** 100:16,19
100:20 101:1,5
**thin** 97:15,15 98:1,6
100:11,14,17
**thing** 22:19 46:24 49:7
52:14 121:11 144:5
157:15
**things** 16:1 42:15 44:15
49:8,9,11 52:13 79:2
81:16 84:18,18 85:25
107:24 113:14 132:13
144:20 161:12 164:12
171:4 172:22
**think** 6:1,7 7:15 19:4
20:11 25:3 27:12,14
28:16,17 30:11 32:8
39:9 41:13 43:23 44:13
44:15 46:20,22 47:2
49:8,15 50:8 52:12,16
52:17 54:21 55:25 58:8
59:21 61:19 65:16
67:13,17 68:1 70:23
72:22 75:22 76:13,17
79:12,15 81:13,21 83:8
84:4,24 86:12,19 88:20
88:20 90:20 92:25 93:4
95:6 96:1,2,10 97:11
98:6 100:17 102:9
105:10,13 106:18,20
107:12 109:3,6 113:7
113:17,19 115:5 116:4
118:3,20 119:12 120:1
120:23 121:1,23
123:25 124:9,10,12,13
125:1,8 126:4,19,21
127:1,5 129:24 130:8,8
130:25 131:11,17
132:1,7 133:2,9 134:9
137:1,8 138:8 141:5
142:9 143:12,14,18,21
144:10,11 145:17

147:14 150:23 151:14
152:6,10,11 155:20
156:2,21,24 157:3,13
158:2,5,25 161:4,6,9
161:12 162:21 164:2
164:14,16,18 165:4
171:15 172:6,12,14
173:16 174:6,18
**thinking** 40:21
**thinks** 82:11,14 83:14
**third** 30:13 61:8 118:9,16
139:12
**thoroughly** 54:13
**though** 44:18 76:1 78:19
103:13 121:16 156:4
162:5 163:14 165:12
**thought** 53:5 131:14
**three** 5:24 14:14,21,23
15:3 23:13 30:8 56:20
96:4 100:18,20,22,24
101:1 104:25 111:19
119:19 127:10 139:3
139:12 157:21,22
**through** 13:7 18:19 19:9
29:15 31:1 44:5,6,19
51:7,25 56:10 64:5,14
71:6 79:24 80:11 81:17
84:19 108:23,24
125:21 142:9 146:8
153:12 165:7
**throughout** 132:13
**THURSDAY** 4:1
**time** 4:6 12:7 19:23 20:5
20:13 25:21 41:14 42:1
43:14 45:2,4,24 49:19
49:20 53:3 54:5,8
55:12,14 59:12 72:8,9
76:15 86:5 101:16,16
108:23 128:17 141:6
154:3 164:12 169:12
175:6,7,10
**times** 50:5 51:4,10,13
59:8,14,18,22 60:3
79:1 86:15 108:24
155:6
**title** 9:13 50:14,19
**titled** 12:14
**today** 5:20 6:7,10,19
37:2 53:11,15 137:15
137:21 144:15 160:5
169:11,14 170:2,8,11
170:12,15,25 171:4
**today's** 16:9
**together** 64:10 139:20
141:25 144:21 146:4
146:12
**told** 81:3,24 83:5 90:22
97:6 131:23 137:24
151:10 164:3 168:13
168:14
**tomorrow** 47:11
**tooth** 133:24
**top** 20:4 30:4 44:1 67:22
68:7,19 69:3 70:15
71:7,14 89:3 100:15
103:25 107:15 112:15
114:4,8,9,10 116:4,25
119:15 120:10,24
122:12,17,23 123:6,7
123:14,19 124:3 125:5
125:19 128:12 135:15

143:20 145:9,14,24
146:9 149:5,6 153:19
154:12 158:14 171:25
172:6,7,8,11,13 173:1
173:15,17,22,25
174:10,15,16
**topics** 168:10
**touching** 107:16
**track** 81:10
**trade** 11:9,16 29:5 30:5
34:13 36:14,15,15
168:20
**Trademark** 3:19 168:25
**traffic** 9:3
**train** 157:1
**transcribed** 175:11
**transcript** 5:18,23 6:1
175:13
**translate** 38:21
**translating** 86:1
**transportation** 14:15
**travel** 132:3
**travels** 129:1 133:16
136:16 153:12
**treatise** 94:24 106:11,14
160:21
**treatises** 122:8 126:16
129:20 143:3
**trial** 39:23
**trick** 99:2
**tried** 29:24 98:25
**true** 41:11 55:19 71:17
87:9 94:10,11 101:11
101:13,15 106:2
175:12,18
**truth** 5:5,6,6
**truthfully** 6:10
**try** 14:21 30:21 42:19
45:17 48:22 58:7 68:15
70:6 104:24 138:21
160:23 161:1 170:22
**trying** 38:10 61:21
131:14 163:2,2
**turn** 30:8 60:15 62:5
63:25 65:4 93:13
115:19 119:18 125:11
161:17 172:20
**turnaround** 5:21
**turning** 172:24
**twice** 10:5
**two** 2:15 5:15 15:23 30:8
35:25 39:7,8 49:9,13
49:14 52:16 53:10,24
53:25 54:1 89:24 90:3
90:11,14 104:15 105:6
107:24 111:24 113:19
114:2,17,21 115:4,7,8
115:13,17 117:9
125:14 128:8,21 131:1
131:9 139:3,9,12
144:20 153:3 155:11
156:22 159:5 174:11
**type** 12:20 130:17
**typed** 75:20,20
**types** 14:11 46:3
**Typewritten** 78:14
**typical** 14:17
**typically** 41:6,11
**typo** 120:7

---
**U**
---

**U** 159:1,2
**Uh-huh** 6:20 10:10 18:11
30:14,17 43:25 44:4
62:7 64:16 66:2 73:21
85:3 87:8 93:15 101:10
102:4 114:7,16 115:3,6
115:11,15 116:1,3
117:24 123:21 125:13
125:16 128:9,22 129:4
129:16 132:12 135:20
137:12 139:16 140:9
145:10 147:5 148:6,12
149:16 152:25 165:21
167:1 171:8 172:1
**ultimately** 41:22
**unable** 6:9
**unaffected** 163:24
**unclear** 134:6
**uncommon** 95:19,24
106:19 107:11 108:13
108:18,19,19,21,22
120:24 121:7,9,10,13
121:15 130:6 131:13
143:13 152:3 164:14
**under** 46:21 71:16
113:15 141:7 175:7,17
175:17
**undergraduate** 8:14
**undergraduates** 132:9
**underlined** 30:15
**underlying** 164:5
**understand** 6:21,23
13:16 15:5 18:1,8 24:3
24:4 37:13 38:12 39:3
41:18,21 44:17 51:20
61:17 67:25 69:19 88:8
88:12,19,22 89:17 91:6
91:7,10 92:18 96:1
98:17 117:5 122:4
140:24 142:22 145:3
153:15 154:11 155:25
166:5 170:20
**understandable** 122:3
**understanding** 7:18,21
7:24 25:24 53:24 54:4
54:8,10,15 72:14 80:22
81:9 84:17 85:25 96:15
107:25 122:18 131:22
141:12,15 142:19
143:6 153:21 154:21
**understood** 7:3 64:11
88:9 93:12
**uniform** 98:4 101:13
102:6
**unique** 31:22 32:5 95:19
106:19 107:11 108:12
108:18,21 120:24
121:7,9,10,12,14,18,25
126:19,21 137:25
164:14
**United** 1:1 3:18,19 11:14
14:13
**university** 8:15,17 9:16
9:19,23
**unless** 7:17
**unnumbered** 122:20
123:11
**unusual** 95:24 96:2
131:15 152:6
**upcoming** 5:13
**update** 169:14

**updated** 35:25
**URL** 29:25
**usability** 124:10
**usable** 70:19
**usage** 143:13
**USC** 141:7
**use** 16:8 49:10 53:10
62:1 87:1,1 114:6
123:5,20 124:14
125:20 141:24 154:3,4
160:24 172:14
**used** 39:21 50:8 53:4
54:16 66:25 67:19 78:2
80:2 87:4 88:9 99:4
126:20 132:8 138:7
156:20,22 172:16
**user** 14:24 15:6 16:2,3,5
61:12,13,14,16,17,20
61:20 66:6 67:5,6,9
114:6 119:15 123:20
124:10,17 125:19
128:12 158:19 172:15
172:24 174:5,7
**users** 61:23
**user-facing** 117:10
125:6
**using** 16:4 22:23 65:25
67:14 75:17 78:6 81:15
84:20 85:25 99:3
132:10 174:7
**usually** 45:5
**utilitarian** 32:2
**utility** 11:9,11 13:10 31:9
31:10 33:3,14,17 36:7
36:11,12,15 37:16,22
39:10 40:11 42:4,8,12
42:19,22 45:1 47:20,22
62:22
**U-shaped** 159:17 160:9
**U.S** 31:6 35:1 140:10,13
140:16

---
**V**
---

**V** 159:2
**VA** 2:16 4:1
**vague** 48:8 64:24 99:5
102:11
**validity** 39:15
**varies** 86:25
**vary** 15:17
**varying** 100:16
**verbatim** 74:11 97:24
**verified** 156:10
**verifies** 15:22
**verifying** 84:14
**version** 90:17 91:18
112:5 156:3
**versus** 4:11 33:2,9 34:1
36:5 124:25 159:2
**very** 11:22,22 15:17 53:5
53:10,11 54:4 64:1
68:3 70:19,20,22 78:15
81:21 83:11 117:8
130:8 132:8,8 134:19
145:2 154:25 158:23
160:23 172:17,23
**via** 153:23
**vial** 67:15 70:5 102:1
124:11 149:24 172:16
172:17,19,20,25
**vials** 84:17

A90308E
RONALD B. KEMNITZER        MARCH 26, 2015

videographer 2:21 4:3,4
    56:22,25 106:21
    127:10,13,19,21
    167:15,17 174:20
VIDEOTAPED 1:13
view 32:2 57:14 68:20,24
    69:7 95:18 148:10
    150:24 159:10 161:11
viewing 164:17
views 68:22
violations 9:10
Virginia 1:15 4:9 8:9 9:17
    9:18,18,20,21 13:2,3,6,7
    175:18
virtually 12:21 97:24
virtues 66:3
visible 114:5 123:20
    124:17,22,25 172:2
vision 172:21
visit 6:6
visual 18:14
vitamin 102:1
volition 54:23
vs 1:5
V-shaped 159:17 160:10
    160:11,13,22

W

WA 2:10
waived 25:17
walked 41:3
wall 86:10 96:17,18
want 5:12 7:6 8:1 11:2
    16:21,25 22:17 44:1
    49:10,13 57:20 58:23
    64:5 69:19 72:10,17,23
    75:21 81:20 84:6 88:15
    95:14 98:19 107:23
    109:9,12 112:16
    116:13 127:14 128:4,5
    128:16 137:14 146:23
    152:21 155:14 168:13
    168:14 170:13,20
wanted 157:14
wants 140:13
wasn't 102:12 111:11,15
    138:20
watching 86:22
wavelength 159:20
way 29:23 30:13,21
    38:17 44:23 58:7 67:15
    68:17 69:12 70:10,13
    111:4,17 118:10
    119:21 142:11
ways 121:1 142:5,19
    143:22,24 144:12,20
    144:25 166:1
web 3:14
website 28:23 29:4,7,15
    29:21 36:1 39:5 44:9
    44:11
Webster 135:13
Webster's 135:14 136:24
week 5:19,21,24 10:4,8
    20:6,10 25:22,23
    155:10,12
weeks 5:15 47:9 155:11
well 5:12 11:16 13:18
    15:13 39:18 52:12 54:7
    55:7 67:13 70:4,20,22
    76:8 77:7 80:21 81:8

82:20 86:7,8,19 87:13
    91:1 98:14 101:18
    104:19,21 113:17,21
    120:15 121:1 123:1
    124:3,9 125:4 130:8,25
    131:21 132:1,8 135:7
    140:17 143:18 145:2,5
    151:8 152:4 153:21
    154:2 155:11 156:5
    158:21 172:4,15
went 19:17 57:3 157:11
were 12:2 15:4 17:12
    19:12,15,21 20:22,24
    21:4,5,6 27:10,12
    35:11 38:1 43:3 52:16
    52:16 53:2,4,5,7 54:4
    77:5,14,19,25 98:10
    100:5 131:3 133:2
    142:24 150:23 156:20
    156:21 157:11,12
    164:21 167:20 171:24
    175:5,10,11
weren't 78:17,18 111:14
West 2:4
we'll 5:15 6:6 7:3 18:4
    21:22 24:17 25:7 46:23
    56:13 58:10 72:20
    87:22 93:4 99:19
    139:23 153:7
we're 6:1,7 7:11,15 9:4
    25:5,6 46:18 47:15
    48:15 49:7 53:12 56:22
    56:25 72:7 79:16 95:21
    100:8,9 103:20 116:9
    116:10,16 124:9 125:1
    127:21 128:14 138:23
    146:20 149:9 153:7
    159:19 160:24 167:11
    174:18
we've 127:8 155:20
While 25:5
whistle 156:25
Whitaker 2:21 4:3
whole 5:5 127:3 173:25
Wikipedia 14:23
window 21:12
withhold 26:20
witness 3:2 11:5,7,8 17:1
    17:15 18:15 19:6 22:7
    23:4 24:1 27:16,18
    28:18,20 29:5,18 30:6
    30:23 37:9 39:2,4 45:1
    46:9 48:9 51:9 56:5,16
    60:25 62:12 64:5 75:12
    76:8 77:23 79:11 87:13
    92:7,21 94:13 98:11,21
    99:15 102:12 104:9
    106:23 108:16 111:12
    127:16 131:5 135:4
    159:15 163:10 168:23
    170:6,17 175:7,8
Woodring 35:14,15
word 6:23 50:8 62:20
    72:1 87:3,15,18 96:14
    103:8 135:19 158:4
    160:6
words 75:3,17 88:8 93:8
    172:18
work 11:5 23:1,2,3 58:22
    70:17,20,22 81:16
    84:18 86:1 98:3 151:7

worked 28:18,20 39:1,6
    50:11 51:16,25
working 37:5 81:18
    84:20 87:24 156:25
world 164:13
wouldn't 26:17 55:14
    70:20,22 131:19 133:7
wrapped 107:12 108:25
    172:19 174:13
write 48:1 71:24 72:3
    74:14 75:15 97:20
    133:14 168:15
writing 75:3 154:22
    155:9 156:22
written 24:23 31:6 35:2
    41:14 65:25 72:15
    158:15 169:21
wrong 10:17 30:21
    100:10 104:18 105:7
    115:5 118:8 128:1
    129:25 136:10 154:10
    162:2,4 163:12
wrote 23:19 39:16,18
    74:7,20,24 80:5 97:16
    145:6 153:1
www.depo.com 1:22
W-o-o-d-r-i-n-g 35:16

X

X 3:1,9 41:8

Y

Y 41:9
yeah 23:10 37:3 38:20
    39:13 102:15 112:25
    120:3,6 126:3 147:13
    155:13 159:3,24 160:2
    160:2 164:9 170:6
    173:2
year 10:8 20:1
years 12:6,13,14 37:15
    38:8 39:9
yesterday 17:2 155:22
York 36:24

Z

Z 41:9

1

1 17:20 18:3,4,10 27:12
    44:1,5,6,19 64:14
    71:23 73:16 94:5 95:9
    95:14,16 100:14,18,22
    100:22 103:24 108:10
    109:25 110:2,10,15,15
    111:18 118:5 122:11
    122:19 144:5 148:20
    149:18 150:3,3 154:14
    154:15 158:2 160:1,2
    171:3,10
1st 31:2
1/6 30:9
1:10 174:20,21
10 12:6 56:19 138:16,17
    138:20,22 139:2,5
    142:13,14,17 143:17
    144:15 146:23,25
10s 112:21
100 104:22 107:15 108:6
    111:17,18 113:8,18,24

113:25 114:1 173:9,16
11 32:15 44:1 138:20
    145:4,4,7,11 146:9,14
    152:20,23,24
11-8-12 33:5
11:30 127:19
11:43 127:22
110 4:8 107:18 108:7,10
    110:2,12,18,19,22,25
    111:21 112:22,23
    113:1,4,5,7,15,19,24
    113:25 119:13,25
    120:1,2 122:19 123:5
    123:13,14 124:19
    126:23 172:5 173:8,8
    173:10,12 174:2,3
112 141:7
115 108:8 110:5 111:1
    112:23 119:13,25
    120:5 122:19 123:5
    124:19 174:1
11955 2:15
12 139:23 140:6 147:1,11
    149:10 159:21 161:19
12th 32:11
12-21-2012 33:4
12:48 167:15
12:59 167:18
120 108:8 112:22 113:15
    113:19 120:1 122:12
    122:14 123:7 124:19
    173:13
13 147:14 152:14 153:1
    153:10 154:7 159:20
    162:4
13th 23:20 59:25 71:10
    71:18 137:2
130 112:22 130:20
    131:24,25 132:21
    138:4,5 173:13
133 135:18
138 3:20
14 34:7 161:17 162:4,7,8
14-cv-01589-ELR 1:6
    4:10
140 65:16 113:21 120:2
    122:19 173:13
15 124:21 128:5 138:17
    138:17,17 146:25
    152:24 161:19 167:23
15th 32:21
150 130:14 131:25
    132:16,18 155:6
    173:24 174:1
160 129:2,10,14 130:13
    132:17 138:3
17 3:12
17th 32:18
171 3:5
173 3:6
18 118:13
180 173:13
1960 20:18 135:14

2

2 65:4 66:11 67:21 68:18
    69:4,10 73:16 103:25
    118:5,9,12 128:1,2,19
    154:15
20 39:9 50:6,7 51:4 59:13
    59:14,22 79:1 115:23

116:21
20th 34:17
200 62:15 111:18 147:21
    147:25
2008 31:2
2009 31:5 34:25
2011 32:11,15
2012 32:18,21,22,25 33:9
    33:24
2013 34:3,9,12,15
2014 10:9 20:2,5 34:17
    34:21 49:21
2015 1:16 4:1,6 71:10,18
    175:19
20190 2:16
206.694.4819 2:10
21 114:15 115:19,20,23
    115:25 116:18,19,21
    116:23 119:6 120:13
    120:21
21st 32:25 33:24
210 62:16 147:21 148:5,7
    148:13,17,22,24 150:6
    150:10 151:14
2103 8:8
220 62:16 147:22
229.446.4886 2:5
23 103:10
23rd 20:7,8 34:3
230 62:16 154:15 160:3
24-27 149:18
240 62:17 66:21 154:11
    154:18
25 3:13 101:23,24 103:11
250 62:18 132:24
26 1:16 4:1 23:4 26:19
    46:9,14,22 47:1
26th 4:6
27 101:24
28th 34:12,15
288-3376 1:22
29 3:14

3

3 64:2,8 68:19 73:17
    79:20 118:5 128:1
    138:15,19
30 99:20
30th 34:9
300 111:18
310 138:5
31701 2:5
35 141:7
358 50:15,16 51:18 57:8
    57:23 59:22 60:16 65:4
    81:7 117:19 152:2
    169:10,25
37 108:5

4

4 58:8 68:19 97:12,18,18
    97:19 118:5 138:20
    146:10,20 152:15
    171:2
4th 32:22
41 62:5,6,8 147:8,9,11,18
43 3:16,17
47 62:9
48 3:18

**A90308E**
**RONALD B. KEMNITZER        MARCH 26, 2015**

---

**5**

**5** 3:5 47:16 48:15 64:14
68:22,23 69:2,6 93:13
94:1,7,16 95:5,11,16
95:21 96:8 97:5 100:9
116:9 118:5 129:2,10
129:14 132:16 148:4,7
148:7 150:8,24 160:1
161:18 167:23
**517** 2:4
**5400** 2:9
**55** 11:24,25
**56** 3:19
**571.203.2700** 2:16

---

**6**

**6** 50:15 63:25 64:1 71:12
71:12,13,13,16,16,23
101:22,23,23 103:11
103:17,20 104:2,12,16
104:16,24 105:9,20
106:2 118:5,13 119:6
128:1,1,2 138:15 141:8
146:20 152:15 161:18
167:24
**6th** 31:5 34:25
**600** 15:21
**64** 139:23 140:6 147:10
159:21
**66** 64:1

---

**7**

**7** 62:5 64:2 108:5 114:3
114:15,18,21 115:7,9
115:13,19,20 116:9,17
116:18,18 119:7
120:13,20 125:11
139:22 140:5,8,20
147:8,9,10,18 157:16
159:21 174:9,14
**7:30** 153:24
**701** 2:9

---

**8**

**8** 44:6,19 118:9 125:10
125:14 126:1,11 128:5
128:7,14 136:7 138:12
138:17,23 139:23
140:6,20 149:14,17
159:21
**8th** 33:9 34:20
**8:34** 4:1,7
**800** 1:22

---

**9**

**9** 127:25 128:14,18,18,23
138:17,23
**9:47** 56:23
**9:51** 57:1 127:13
**98104** 2:10